**IN THE UNITED STATES DISTRICT COURT** FILED
**FOR THE DISTRICT OF NEW MEXICO** DISTRICT COURT
DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

02 JAN 28 PM 3: 37

MLK

Clerk ALBUQUERQUE

Plaintiffs,

vs.

No. CIV _____

CIV - 0 2 - 0 1 0 3 DS WWD

MesoSystems Technology, Inc.,

Defendant.

## COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, James Seaba and Cory Phillips state as follows:

### JURISDICTION AND VENUE

1.     James Seaba is a citizen of the State of New Mexico, residing in Bernalillo County, New Mexico.

2.     Cory Phillips is a citizen of the State of New Mexico, residing in Bernalillo County, New Mexico.

3.     MesoSystems Technology, Inc. ("MesoSystems") is a corporation incorporated in the State of Washington, with its principal place of business in the State of Washington, and conducts business in the State of New Mexico at 2425 Ridgecrest Drive, S.E., Albuquerque, New Mexico. Its registered agent for service of process is Casa de Search, Inc., 9 Carlito Road, Santa Fe, New Mexico 87505.

4.     This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because Plaintiffs assert claims under the Employment Income

Security Act of 1974, 29 U.S.C. §§ 1131 et seq., to enforce their rights under the Comprehensive

Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161 et seq.

5.　　　This Court also has diversity jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1332, because Plaintiffs are citizens of New Mexico, MesoSystems is a

citizen of Washington, and Plaintiffs each seek more than $75,000 in compensatory damages,

punitive damages, and statutory damages, plus attorneys' fees and costs as provided by law.

6.　　　This Court has personal jurisdiction over Defendant MesoSystems, because most of

the conduct by MesoSystems and its officers, agents and/or employees on which this case is based

took place in New Mexico and MesoSystems has purposefully conducted business within New

Mexico, including the business that gives rise to the claims alleged in this Complaint.

7.　　　Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because a substantial

part of the events that gave rise to Plaintiffs' claims occurred in this District, and this Court has

personal jurisdiction over MesoSystems within this District, so MesoSystems is deemed to reside in

this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.　　　In May, 2001, James Seaba was employed as Chief Engineer at R&D Americas, Inc.,

a subsidiary of Honda Motor Corp., and had been employed by Honda in a managerial capacity for

many years.  James Seaba's expertise was in the area of micro-reaction technology applied to fuel

and other chemical processing.  James Seaba's total compensation from Honda exceeded $200,000

per year, with annual raises averaging approximately 12 %.

9.　　　In May, 2001, Cory Phillips also worked for R&D Americas, Inc., a subsidiary of

Honda Motor Corp., and had been employed by Honda for more than one year.  Cory Phillips'

2

expertise was in the area of research and development projects associated with fuel processor and processor component development. Cory Phillips' total compensation from Honda exceeded $100,000 per year, with a recent annual raise of 6%.

10.     In early May, 2001, Charles ("Chuck") Call, CEO of MesoSystems, began an effort to persuade James Seaba to leave his secure job at Honda, and allow Chuck Call and Chuck Call's company, MesoSystems, to fund a new company to be led by James Seaba, and owned by James Seaba, Cory Phillips and Call or MesoSystems.

11.     In May, 2001, to induce James Seaba to leave his secure employment with Honda and start this new venture, Chuck Call, acting on behalf of MesoSystems, represented he had the "know-how" to lead the new microreactor-based company into the marketplace.

12.     In May, 2001, in a further effort to induce James Seaba to leave his secure employment with Honda and start this new venture, Chuck Call, acting on behalf of MesoSystems, assured James Seaba that he, Chuck Call, would never set up the deal unfairly, as another company, Battelle had done with its micro-reactor spin-off Pholossos.

13.     In June, 2001, acting in reliance on Chuck Call's representations made on behalf of MesoSystems, James Seaba and his wife, Nancy, came to visit Albuquerque, after Chuck Call insisted that Albuquerque would be a better location for the new venture than Columbus, Ohio, where James Seaba's family and Cory Phillips' family resided.

14.     During the June, 2001 trip to Albuquerque, Chuck Call, acting on behalf of MesoSystems, made numerous promises and false representations which he intended James Seaba to convey to Cory Phillips and which were, in fact, conveyed by James Seaba to Cory Phillips, all in order to induce James Seaba and Cory Phillips to leave their secure employment and start the new business venture. Among the promises Chuck Call made were:

(a)     That James Seaba would be on the Board of Directors of MesoSystems;

(b)     That James Seaba would be CEO of the new company, if he left his employment with Honda;

(c)     That James and Nancy Seaba would be provided with a corporate membership to a local country club if they agreed to move to Albuquerque.

15.     Additional false representations made by Chuck Call, acting on behalf of MesoSystems, during the June, 2001 visit, were:

(a) his demonstration of what he represented to be his laboratory, with equipment, including a gas chromatograph, which were represented to belong to Chuck Call and MesoSystems, when, in fact, the laboratory and gas chromatograph did not belong to Call or MesoSystems, but belonged to Nanopore, an unaffiliated company;

(b) his representation that MesoSystems had an extensive amount of intellectual property that James Seaba would be able to use to start his own company, when MesoSystems did not own such intellectual property;

(c) his representation that MesoSystems had knowledge of state-of-the-art methods for commercial manufacturing micro-reactors at the machine shop about to be purchased by MesoSystems when, in fact, MesoSystems lacked any such knowledge and never completed the purchase; and

(d) his representation that MesoSystems had the infrastructure in place to build, test, and sell products created by James Seaba and Cory Phillips when, in fact, MesoSystems had no such infrastructure in place.

16.     Also in June, 2001, James Seaba also made a presentation to the Board of Directors of MesoSystems, based on Chuck Coll's representation to James Seaba that MesoSystems wanted to

support him in his new company. James Seaba presented his plan to create the new business venture. The Board of Directors of MesoSystems was impressed by James Seaba's ideas, and gave their support for James Seaba to start his new business venture.

17.   In that same visit to MesoSystems' Board of Directors, James Seaba asked to see MesoSystems' manufacturing facility. The Board of Directors of MesoSystems refused to allow James Seaba to inspect MesoSystems' manufacturing facility, because it knew that its manufacturing facility was inadequate to the tasks that would be demanded of it by the new business venture, and that if James Seaba saw the manufacturing facility, he would know that Chuck Call's promises about the adequacy of that facility were false.

18.   In June, 2001, after James Seaba and his wife returned to their home, James Seaba requested financial information about MesoSystems. Chuck Call, acting on behalf of MesoSystems, sent them what purported to be MesoSystems' balance sheet, which purported to show a profit of $200,000 for MesoSystems during the first four months of 2001. Chuck Call sent James Seaba the balance sheet to induce him to leave his secure employment with Honda, based on an erroneous belief that MesoSystems could afford to pay him, pay Cory Phillips and support the creation of a new business venture.

19.   In July, 2001, Chuck Call, acting on behalf of MesoSystems, traveled to Columbus, Ohio, where he made additional promises and misrepresentations to James Seaba and Cory Phillips, in an effort to induce them to leave their secure employment with Honda and accept employment with MesoSystems. Chuck Call represented that the founding shares of the new company would be distributed with 20% equity going to MesoSystems as "seed investor," 20 to 25% to James Seaba, and 10 to 20% each for founders like Cory Phillips. Chuck Call promised that James Seaba, Cory Phillips and Chuck Call, acting on behalf of MesoSystems, would be the founders.

20.     During the July, 2001 visit by Chuck Call, acting on behalf of MesoSystems, Call again promised that James Seaba would be placed on the Board of Directors of MesoSystems.

21.     During the July, 2001 visit by Chuck Call, acting on behalf of MesoSystems, Call again promised that James Seaba would be the CEO of the new business venture and that he, Call, would mentor James Seaba and Cory Phillips through the process of forming a new company.

22.     Following the July, 2001 visit by Chuck Call, acting on behalf of MesoSystems, intended to induce James Seaba to leave his secure employment with Honda and join MesoSystems for the purpose of forming a new company, MesoSystems sent to James Seaba an "Offer of Employment with MesoSystems Technology, Inc." Among the provisions included in the Offer of Employment were:

(a)     That James Seaba would be hired as Executive Vice President, Energy Systems and would "be tasked with business plan development associated with the creation of a new business unit focused on Micro Reaction Technology applied to fuel and other chemical processing";

(b)     That James Seaba would be paid a starting annual salary of $140,000 per year;

(c)     That James Seaba would be granted relocation expenses up to $50,000;

(d)     That MesoSystems granted James Seaba an option to purchase 275,000 shares of MesoSystems' common stock at $.70 per share, which option would not become exercisable until after the expiration of one year after the beginning of employment;

(e)     That MesoSystems granted James Seaba a signing bonus of $40,000 if he signed and returned his Offer of Employment within thirty days, but allowed MesoSystems to defer payment of the bonus until such time as MesoSystems was in receipt of new equity or strategic corporate investments equal to $100,000;

6

(f)     That MesoSystems allowed James Seaba to participate in medical insurance and other employee benefit plans maintained by MesoSystems;

(g)     That MesoSystems would pay three months' severance to James Seaba in the event MesoSystems terminated his employment without "just cause," which term was defined in the Offer of Employment; and

(h)     That James Seaba would be required to sign MesoSystems' "Confidential Information, Inventions and Noncompetition Agreement."

23.     MesoSystems also sent to James Seaba its "Confidential Information, Inventions and Noncompetition Agreement" ("Non-Compete Agreement").  Among the provisions included in the Non-Compete Agreement were:

(a)     That James Seaba would not, for one year following employment, be in any way connected with a "Competing Business," defined as any business anywhere in the country whose commercial efforts were in competition with MesoSystems; and

(b)     That James Seaba transferred all right, title and interest he had in any inventions, materials, patents, trademarks or other protected intellectual property to MesoSystems.

24.     When James Seaba expressed concern about the Offer of Employment and Non-Compete Agreement, Chuck Call, acting on behalf of MesoSystems, assured him that both agreements would be changed within one to two months of James Seaba joining MesoSystems. Chuck Call, acting on behalf of MesoSystems, specifically represented that as soon as the new business venture was formed, James Seaba and Cory Phillips would be employed by the new company, so their Offer of Employment and Non-Compete Agreement would become void.

25.     Based on the promises and representations made by MesoSystems, James Seaba signed the Offer of Employment and Non-Compete Agreement at the end of July, 2001, because he

understood that these were necessary preconditions to the formation of the new business venture, and would expire as soon as the new company was formed by James Seaba, Cory Phillips and MesoSystems, which was to be owned by James Seaba, Cory Phillips and MesoSystems, and which was to be funded by MesoSystems.

26.     In August, 2001, Cory Phillips and his wife went to Albuquerque, at MesoSystem's request.  During that visit, Cory Phillips expressed concern to Chuck Call, acting on behalf of MesoSystems, about Call's representation that all intellectual property developed by James Leaba and Cory Phillips would be assigned to the new company.  In response to Cory Phillips' concerns, Chuck Call promised that all intellectual property developed by James Leaba and Cory Phillips would become the property of the new company.

27.     Thereafter, based on the promises and representations made by MesoSystems, Cory Phillips signed the Offer of Employment and Non-Compete Agreement presented to him by MesoSystems, because he understood that he had to do so in order to receive funding from MesoSystems for the new company to be formed by James Seaba, Cory Phillips and MesoSystems, to be owned by James Seaba, Cory Phillips and MesoSystems, and to be funded by MesoSystems. He also understood, based on Chuck Call's representations on behalf of MesoSystems, that the Offer of Employment and Non-Compete Agreement were intended to be of brief duration, lasting only one to two months, until the new company could be formed. The Non-Compete Agreement signed by Cory Phillips was, in all material respects, identical to the Non-Compete Agreement presented to and signed by James Seaba. The Offer of Employment signed by Cory Phillips was identical to the Offer of Employment signed by James Seaba, except that:

(a)   Cory Phillips was hired to be Senior Research Engineer, reporting to the Executive Vice President (which was to be James Seaba), working primarily on research and development projects associated with fuel processor and processor component development,

(b) Cory Phillips was to be paid  a salary of $85,000 per year;

(c) Cory Phillips was to be reimbursed up to $20,000 for relocation expenses; and

(d) Cory Phillips received 25,000 stock options.

28.     In September, 2001, in reliance on the promises made by MesoSystems, James Seaba and Cory Phillips and their families moved to Albuquerque, New Mexico to begin work for MesoSystems. MesoSystems understood that James Seaba and Cory Phillips would begin working exclusively for the to-be-formed company as soon as that could be arranged, and would devote all their efforts to that new company. MesoSystems also understood that James Seaba and Cory Phillips understood they were to become owners and founders of the new company.

29.     As soon as James Seaba and Cory Phillips arrived in Albuquerque, in reliance on the promises and representations made to them by Chuck Call, on behalf of MesoSystems, MesoSystems immediately began reneging on its promises, including but not limited to the following:

(a)     although MesoSystems had promised to pay for a corporate country club membership for the Seaba family and Chuck Call's family, Chuck Call stated on September 1, 2001, that MesoSystems did not have the money to pay for that membership at the time, but if the Seabas agreed to pay for it, MesoSystems would reimburse them;

(b)     MesoSystems requested James Seaba and Cory Phillips to charge as much of their time as possible to existing United States Department of Defense contracts, rather than charging them to the to-be-formed company, even though the work being performed had little, if any, relation to the Department of Defense contracts;

9

(c)     MesoSystems required James Seaba and Cory Phillips to buy equipment for the to-be-formed company, but to charge that equipment to United States Department of Defense contracts;

(d)     Notwithstanding his prior representations that MesoSystems had ample funds to pay the salaries of James Seaba and Cory Phillips, Chuck Call, acting on behalf of MesoSystems also requested James Seaba to take a cut in pay within days after James Seaba and his family arrived in Albuquerque;

(e)     Although his Offer of Employment stated that Cory Phillips would report to James Seaba, and he had been promised that reporting relationship by Chuck Call, acting on behalf of MesoSystems, Chuck Call required Cory Phillips to report to both Anand Chellappa and Mike Powell about activities on the United States Department of Defense;

(f)     Although Chuck Call, acting on behalf of MesoSystems, had represented that MesoSystems had a laboratory facility in which James Seaba and Cory Phillips could begin work immediately, no such facility existed and James Seaba and Cory Phillips were forced to work in an office, rather than a laboratory, so they were unable to perform necessary research;

(g)     Although Chuck Call, acting on behalf of MesoSystems, had represented that MesoSystems would provide a capitalization table showing financial contributions to be made by MesoSystems to the new company, no such capitalization was begun until after James Seaba and Cory Phillips began working for MesoSystems;

(h)     Although Chuck Call, acting on behalf of MesoSystems, had promised that James Seaba would be named CEO of the to-be-formed company, once James Seaba arrived to begin work for MesoSystems, Charles Call was named future CEO of the to-be-formed company, now called MesoFuel; and

(i)      Although Chuck Call, acting on behalf of MesoSystems, had promised that MesoSystems had manufacturable designs and capability to support the products to be manufactured by the new company, when James Seaba toured MesoSystems' facility in late September, 2001, he discovered that Mesosystems' prototypes were not commercially manufacturable.

30.     Beginning in October, 2001, at the request of and on behalf of MesoSystems, James Seaba began extensive travel to find investors and partners for the to-be-formed company, MesoFuel. Despite repeated assurances that he would be reimbursed for such travel expenses, MesoSystems has to date refused to reimburse him for such expenses, totaling in excess of $13,000.

31.     In mid-October, 2001, Charles Call, acting on behalf of MesoSystems, provided a capitalization table for the to-be-formed company, MesoFuel, which stated that MesoSystems owned 80% equity in that company, and James Seaba owned 20%. The proposed capitalization table completely omitted Cory Phillips from any ownership interest in the new company, notwithstanding MesoSystems' prior contrary representations.

32.     Less than a week later, MesoSystems provided an example of another capitalization table, showing MesoSystems with 20% equity ownership, James Seaba with 15% ownership, Cory Phillips with 7% ownership, Charles Call with 15% ownership, and Anand Chellappa with 3% ownership. This example was completely contrary to all previous representations made by and on behalf of MesoSystems concerning the planned ownership interests in the to-be-formed company.

33.     In early November, 2001, James Seaba met with two members of the Board of Directors of MesoSystems, who agreed and promised that James Seaba would be the President and CEO of the to-be-formed company, MesoFuel.

34.     Unbeknownst to James Seaba and Cory Phillips, however, MesoSystems had prepared Articles of Incorporation for MesoFuel which listed Charles Call as the only member of the

Board of Directors for MesoFuel. Although MesoSystems promised James Seaba and Cory Phillips that James Seaba's name would be listed on the Articles of Incorporation for MesoFuel, such change was never made with the New Mexico Corporations Commission or other appropriate state agency.

35.     Also in early November, 2001, MesoSystems provided James Seaba and Cory Phillips with yet another capitalization table, which showed "Investor A" with an equity interest of 25%, James Seaba with a 25% interest, Anand Chellappa with a 7% interest, and Cory Phillips with a 7% interest. However, "Investor A" was represented to be a third party with no connections to MesoSystems, but, in fact, MesoSystems induced the third party, Ardesta, to invest in MesoSystems rather than investing directly in the new company, all in furtherance of the undisclosed plan to have MesoSystems control more than 50% of the new company. James Seaba and Cory Phillips stated that this capitalization table was still not acceptable, or consistent with MesoSystems' prior representations and promises.

36.     Less than a week later, MesoSystems provided James Seaba and Cory Phillips with still another capitalization, showing MesoSystems with a 32% equity interest, James Seaba with a 27.7% interest, and other founder employees with 8% interests each. James Seaba discovered that MesoSystems had misrepresented the identity of "Investor A," and planned, instead, on taking over MesoFuel itself.

37.     James Seaba provided an alternative capitalization table, which allocated to James Seaba and Cory Phillips 51% of the equity, with MesoSystems acting as only an investor, as they had previously promised to do. This to-be-formed company was and is called Red Path Energy, Inc. MesoSystems' Board of Directors agreed to the capitalization table, and also agreed to provide Red Path Energy with $300,000 for a 10% interest in that new company.

38.     Following various discussions with members of MesoSystems' Board of Directors about the to-be-formed company, at the end of November, 2001, Chuck Call, acting on behalf of MesoSystems, provided James Seaba a term sheet and a separation agreement for Red Path Energy's formation containing terms previously included in a term sheet that MesoSystems' attorneys had previously rejected as impossible and unfair.  James Seaba indicated that he would not accept those terms, just as MesoSystems had previously refused to accept those terms in connection with a different proposed deal.

39.     MesoSystems employees, acting on behalf of MesoSystems, then began locking cabinets, taking inventory, and removing materials from Cory Phillips in an effort to discredit Cory Phillips and cast doubt on his reliability and trustworthiness.

40.     In early December, 2001, Chuck Call again acknowledged that he, on behalf of MesoSystems, had promised to reimburse James Seaba for the country club membership.

41.     James Seaba and Cory Phillips continued to attempt to work out terms for the to-be-formed company, at the direction of MesoSystems.

42.     On December 6, 2001, various individuals representing the United States Department of Defense were in MesoSystems' Albuquerque offices.  That same day, Chuck Call, acting on behalf of MesoSystems, left both James Seaba and Cory Phillips voice mail messages on their cellular telephones, informing them that they were fired for "just cause" and should immediately return all company property.

43.     Thereafter, MesoSystems refused to provide James Seaba and Cory Phillips with health insurance benefits to which they were entitled under federal law, unless they were willing to agree that they were entitled to receive no severance benefits.

44.     James Seaba and Cory Phillips continued to pursue funding for Red Path Energy with an outside investor.  Chuck Call and Ned Godshall, acting on behalf of MesoSystems, contacted that outside investor and pressured it to withdraw funding for Red Path Energy by making promises and threats.  The outside investor then informed James Seaba and Cory Phillips that it would not invest in Red Path Energy.

### COUNT I - Fraud

45.     Plaintiffs incorporate paragraphs 1-44 of Plaintiffs' Complaint as if hereinafter set forth.

46.     Before James Seaba and Cory Phillips agreed to leave their secure employment and move to Albuquerque to work for MesoSystems in the formation of a new company, Charles Call, acting on behalf of MesoSystems, told James Seaba that MesoSystems had laboratory facilities, marketing facilities, manufacturing facilities and equipment to support the to-be-formed company, told Plaintiffs that James Seaba would be CEO of the to-be-formed company and Cory Phillips and James Seaba would be owners of the to-be-formed company, told James Seaba that he would be on the Board of Directors of MesoSystems, told James Seaba and Cory Phillips that MesoSystems would be a passive investor in the to-be-formed company, and told James Seaba and Cory Phillips that MesoSystems would create the to-be-formed company as soon as James Seaba and Cory Phillips arrived in Albuquerque, so they could immediately begin working for that to-be-formed company, among other representations intended to induce James Seaba and Cory Phillips to leave their employment and work for MesoSystems.

47.     These statements of fact were false, were known by Charles Call, on behalf of MesoSystems to be false, and/or reasonably should have been known to be false.

14

48.     James Seaba and Cory Phillips did not know that the statements of fact were false, understood them to be true, and relied upon these representations in deciding to move their families to Albuquerque to accept the positions with MesoSystems.

49.     But for such representations, James Seaba and Cory Phillips would not have left their secure employment and moved to Albuquerque to accept positions with MesoSystems.  As a proximate result of MesoSystems' fraud, James Seaba and Cory Phillips have sustained general and special damages, included but not limited to, loss of income, consequential expenses, career damages, and emotional distress.

50.     MesoSystems' conduct was malicious, wanton and oppressive.

### COUNT II - Intentional Misrepresentations

51.     Plaintiffs incorporate paragraphs 1-50 of Plaintiffs' Complaint as if hereinafter set forth.

52.     Before James Seaba and Cory Phillips agreed to leave their secure employment and move to Albuquerque to work for MesoSystems in the formation of a new company, Charles Call, acting on behalf of MesoSystems, told James Seaba that MesoSystems had laboratory facilities, marketing facilities, manufacturing facilities and equipment to support the to-be-formed company, told Plaintiffs that James Seaba would be CEO of the to-be-formed company and Cory Phillips and James Seaba would be owners of the to-be-formed company, told James Seaba that he would be on the Board of Directors of MesoSystems, told James Seaba and Cory Phillips that MesoSystems would be a passive investor in the to-be-formed company, and told James Seaba and Cory Phillips that MesoSystems would create the to-be-formed company as soon as James Seaba and Cory Phillips arrived in Albuquerque, so they could immediately begin working for that to-be-formed company,

among other representations intended to induce James Seaba and Cory Phillips to leave their employment and work for MesoSystems.

53.     These statements of fact were false, were known by Charles Call, acting on behalf of MesoSystems to be false, and were intentionally made by Charles Call, acting on behalf of MesoSystems, with the intent that James Seaba and Cory Phillips would rely on them.

54.     James Seaba and Cory Phillips did not know that the statements of fact were false, understood them to be true, and relied upon these representations in deciding to move to Albuquerque to accept the positions with MesoSystems.

55.     But for such representations, James Seaba and Cory Phillips would not have left their secure employment and moved to Albuquerque to accept positions with MesoSystems.  As a proximate result of MesoSystems' misrepresentations, James Seaba and Cory Phillips have sustained general and special damages, included but not limited to, loss of income, consequential expenses, career damages, and emotional distress.

56.     MesoSystems' conduct was malicious, wanton and oppressive.

## COUNT III - Negligent Misrepresentations

57.     Plaintiffs incorporate paragraphs 1-56 of Plaintiffs' Complaint as if hereinafter set forth.

58.     Before James Seaba and Cory Phillips agreed to leave their secure employment and move to Albuquerque to work for MesoSystems in the formation of a new company, Charles Call, acting on behalf of MesoSystems, told James Seaba that MesoSystems had laboratory facilities, marketing facilities, manufacturing facilities and equipment to support the to-be-formed company, told Plaintiffs that James Seaba would be CEO of the to-be-formed company and Cory Phillips and James Seaba would be owners of the to-be-formed company, told James Seaba that he would be on

the Board of Directors of MesoSystems, told James Seaba and Cory Phillips that MesoSystems would be a passive investor in the to-be-formed company, and told James Seaba and Cory Phillips that MesoSystems would create the to-be-formed company as soon as James Seaba and Cory Phillips arrived in Albuquerque, so they could immediately begin working for that to-be-formed company, among other representations intended to induce James Seaba and Cory Phillips to leave their employment and work for MesoSystems.

59.     These statements of fact were false, reasonably should have been known by Charles Call, acting on behalf of MesoSystems to be false, and were negligently made by Charles Call, acting on behalf of MesoSystems, with the intent that James Seaba and Cory Phillips would rely on them.

60.     James Seaba and Cory Phillips did not know that the statements of fact were false, understood them to be true, and relied upon these representations in deciding to move to Albuquerque to accept the positions with MesoSystems.

61.     But for such representations, James Seaba and Cory Phillips would not have left their secure employment and moved their families to Albuquerque to accept positions with MesoSystems. As a proximate result of MesoSystems' misrepresentations, James Seaba and Cory Phillips have sustained general and special damages, included but not limited to, loss of income, consequential expenses, career damages, and emotional distress.

62.     MesoSystems' conduct was reckless, malicious, wanton and oppressive.

### COUNT IV - Detrimental Reliance/Promissory Estoppel

63.     Plaintiffs incorporate paragraphs 1-62 of Plaintiffs' Complaint as if hereinafter set forth.

64.     James Seaba and Cory Phillips relied to their detriment on the representations of MesoSystems in deciding to accept their employment with MesoSystems, and to leave their secure employment in Ohio and move their families to New Mexico.

65.     As a proximate result of MesoSystems' misstatements, and James Seaba's and Cory Phillips' detrimental reliance thereon, James Seaba and Cory Phillips have been damaged.

66.     MesoSystems' conduct was willful, wanton, reckless, and malicious.

### COUNT V - Breach of Contract with James Seaba

67.     Plaintiffs incorporate paragraphs 1-66 of Plaintiffs' Complaint as if hereinafter set forth.

68.     James Seaba accepted MesoSystems' offer of employment, to include salary, bonus, stock options, severance pay in the event of termination, relocation expenses, reimbursement for expenses incurred on behalf of MesoSystems, payment for corporate country club membership, a position on MesoSystems' Board of Directors, a position as President and CEO of the new to-be-formed company, an ownership interest in the new to-be-formed company, and other benefits.

69.     James Seaba fulfilled his responsibilities under the employment agreement with MesoSystems.

70.     MesoSystems has refused to provide James Seaba with the benefits contemplated by the parties and promised under the employment agreement.

71.     As a proximate result of MesoSystems' breach of contract, James Seaba has been injured.

72.     MesoSystems' breach of contract was willful, wanton, reckless, and malicious.

## COUNT VI - Breach of Contract with Cory Phillips

73.     Plaintiffs incorporate paragraphs 1-72 of Plaintiffs' Complaint as if hereinafter set forth.

74.     Cory Phillips accepted MesoSystems' offer of employment, to include salary, stock options, severance pay in the event of termination, relocation expenses, reimbursement for expenses incurred on behalf of MesoSystems, an ownership interest in the new to-be-formed company, and other benefits.

75.     Cory Phillips fulfilled his responsibilities under the employment agreement with MesoSystems.

76.     MesoSystems has refused to provide Cory Phillips with the benefits contemplated by the parties and promised under the employment agreement.

77.     As a proximate result of MesoSystems' breach of contract, Cory Phillips has been injured.

78.     MesoSystems' breach of contract was willful, wanton, reckless, and malicious.

## COUNT VII - Breach of Covenant of Good Faith and Fair Dealing

79.     Plaintiffs incorporate paragraphs 1-78 of Plaintiffs' Complaint as if hereinafter set forth.

80.     MesoSystems at all times owed to James Seaba and Cory Phillips a duty of good faith and fair dealing.

81.     As outlined above, MesoSystems breached its duty of good faith and fair dealing.

82.     As a proximate cause of MesoSystems' breach of its duty of good faith and fair dealing, James Seaba and Cory Phillips have been injured.

83.     MesoSystems' breach of its duty of good faith and fair dealing was willful, wanton, reckless, and malicious.

## COUNT VIII - Wrongful Discharge

84.     Plaintiffs incorporate paragraphs 1-83 of Plaintiffs' Complaint as if hereinafter set forth.

85.     As discussed above, MesoSystems required James Seaba and Cory Phillips to record their working hours to United States Department of Defense contracts, even though MesoSystems was aware that James Seaba and Cory Phillips were not working on such contracts, and were not hired to work on such contracts.

86.     MesoSystems knew that James Seaba and Cory Phillips believed that their recording of time not worked on Department of Defense contracts was illegal, and feared that James Seaba and Cory Phillips would "blow the whistle" on MesoSystems, concerning these illegal activities.

87.     MesoSystems terminated the employment of James Seaba and Cory Phillips in retaliation for their disagreement with MesoSystems' instructions to illegally record time not worked on United States Department of Defense contracts, and/or in fear that James Seaba and Cory Phillips would report these illegal activities to the United States Department of Defense.

88.     The termination of employment of James Seaba and Cory Phillips was contrary to public policy.

89.     As a proximate cause of MesoSystems' wrongful discharge, James Seaba and Cory Phillips have been injured.

90.     MesoSystems' wrongful discharge of James Seaba and Cory Phillips was willful, wanton, reckless, and malicious.

### COUNT IX - Prima Facie Tort

91.     Plaintiffs incorporate paragraphs 1-90 of Plaintiffs' Complaint as if hereinafter set forth.

92.     In the event the conduct described above is found to be lawful on the part of MesoSystems, that conduct was intentionally undertaken by MesoSystems with an intent to injure James Seaba and Cory Phillips and was undertaken without justification or with insufficient justification.

93.     As a proximate cause of MesoSystems' prima facie tort, James Seaba and Cory Phillips have been injured.

94.     MesoSystems' wrongful conduct toward James Seaba and Cory Phillips was willful, wanton, reckless, and malicious.

### COUNT X - Interference with Prospective Contractual Relations

95.     Plaintiffs incorporate paragraphs 1-94 of Plaintiffs' Complaint as if hereinafter set forth.

96.     James Seaba and Cory Phillips had entered into a prospective contractual relationship with an outside investor to provide funding for Red Path Energy, Inc.

97.     Charles Call, acting on behalf of MesoSystems, was aware of that prospective contractual relationship.

98.     Charles Call and Ned Godshall, acting on behalf of MesoSystems, intentionally and improperly interfered with that prospective contractual relationship solely to harm James Seaba and Cory Phillips, or through an improper means.

99.     As a proximate cause of MesoSystems' interference with prospective contractual relationship, James Seaba and Cory Phillips have been injured.

100.    MesoSystems' wrongful conduct toward James Seaba and Cory Phillips was willful, wanton, reckless, and malicious.

### Count XI - Refusal to Provide COBRA Notice

101.    Plaintiffs incorporate paragraphs 1-100 of Plaintiffs' Complaint as if hereinafter set forth.

102.    MesoSystems maintained health and dental insurance benefits for its employees, pursuant to a plan administered by Premera Blue Cross.

103.    At all relevant times, MesoSystems employed more than twenty (20) employees.

104.    Pursuant to the Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), employers are required to provide "continuation coverage" for a period of 18 months after a qualifying event. 29 U.S.C. § 1162(2)(A)(i).

105.    The termination of James Seaba's employment and Cory Phillips' employment constituted a "qualifying event."

106.    COBRA also requires an employer of an employee under a plan to notify the plan administrator of a qualifying event within 30 days, and then requires the administrator to notify all qualified beneficiaries of their rights to continuation coverage within 14 days of receiving such notification from the employer. 29 U.S.C. §§ 1166(a)(2), (a)(4), (c).

107.    MesoSystems informed James Seaba and Cory Phillips that they were fired on December 6, 2001.

108.    On January 18, 2002, MesoSystems' attorney, Kirk A. Soderquist, provided the statutorily-required COBRA notification to the attorney representing James Seaba and Cory Phillips, but stated that he was not authorized to provide that statutorily-required notice to James Seaba and

22

Cory Phillips unless they agreed that they would make no claim to severance pay and that their employment relationship ended on December 20, 2001.

109.    On January 24, 2002, MesoSystems attorney, Richard Rohde, agreed that the statutorily-required notice could be provided to James Seaba and Cory Phillips, but stated that MesoSystems was paying for health and dental insurance coverage only through January 31, 2002, and that if James Seaba and Cory Phillips wished to elect such coverage after that date, they would have to make arrangements to do so through MesoSystems' human resources director.

110.    The statutorily-required notice was not provided to James Seaba and Cory Phillips until January 25, 2002, in violation of COBRA's requirements.

111.    29 U.S.C. § 1165(1) required MesoSystems to provide James Seaba and Cory Phillips with an election period of not less than sixty (60) days after the later of the date of termination or the date of notice.  MesoSystems violated that statutory requirement.

112.    James Seaba and Cory Phillips have been injured as a result of MesoSystems' violations of COBRA's requirements.

## Count XII - Discrimination in Provision of COBRA Benefits

113.    Plaintiffs incorporate paragraphs 1-112 of Plaintiffs' Complaint as if hereinafter set forth.

114.    The actions described above were intended to discriminate against James Seaba and Cory Phillips, beneficiaries of an employee benefit plan, from exercising rights to which they were entitled under the provisions of the employee benefit plan, ERISA, and COBRA.

115.    The actions described above were also intended to interfere with the attainment by James Seaba and Cory Phillips of the rights to which they were entitled as participants in MesoSystems' employee benefit plan.

116.     James Seaba and Cory Phillips have been injured as a result of MesoSystems' conduct as described above.

## COUNT XIII - Rescission, Reformation, Injunction and Other Equitable Relief

117.     Plaintiffs incorporate paragraphs 1-116 of Plaintiffs' Complaint as if hereinafter set forth.

118.     The conduct described above was wrongful, entitling James Seaba and Cory Phillips to equitable relief to remedy MesoSystems' wrongful actions.

119.     James Seaba and Cory Phillips are entitled to an injunction, precluding MesoSystems from enforcing the Employment Agreements of James Seaba and Cory Phillips, including all documents incorporated therein, because of MesoSystems' prior wrongful breach of those employment agreements.

120.     James Seaba and Cory Phillips are entitled to rescind the "Confidential Information, Inventions and Noncompetition Agreement" ("Non-Compete Agreements") due to failure of consideration, lack of consideration, MesoSystems' prior breach of the employment agreements, MesoSystems' wrongful conduct and fraud in obtaining the Non-Compete Agreements.

121.     Alternatively, James Seaba and Cory Phillips are entitled to reform their employment agreements to delete the Non-Compete Agreements, because those Non-Compete Agreements are void as against public policy, are unsupported by consideration, and due to MesoSystems' prior breach of the employment agreements, MesoSystems' wrongful conduct and fraud in obtaining the Non-Compete Agreements.

122.     Due to MesoSystems' unclean hands and other wrongful conduct, James Seaba and Cory Phillips are entitled to a declaratory judgment that they are excused from any obligations of performance under their employment agreements, including their Non-Compete Agreements, but that

MesoSystems must honor its representations and promises made in the employment agreements, and to induce James Seaba and Cory Phillips to enter into those agreements.

WHEREFORE, James Seaba and Cory Phillips respectfully request that this case be tried to a JURY and also requests this Court to award them:

(a)     Penalties in the amount of $100 per day for each day in which the statutorily-required COBRA notice was not provided to them;

(b)     Compensatory damages to compensate them for the injuries they suffered as a result of MesoSystems' violations of COBRA's requirements;

(c)     Injunctive relief directing MesoSystems to comply fully with the requirements of COBRA and ERISA for James Seaba and Cory Phillips;

(d)     Attorneys' fees and costs, as permitted under 29 U.S.C. § 1132(g);

(e)     Unpaid wages for James Seaba and Cory Phillips;

(f)     Severance pay as promised and required under MesoSystems' plans of employee benefits;

(g)     $10,000 to Cory Phillips for non-compensated consequential damages resulting from his move to Albuquerque;

(h)     $40,000 bonus as was promised to James Seaba;

(i)     Reimbursement of travel expenses incurred by James Seaba on behalf of MesoSystems;

(j)     Stock options as promised, or, alternatively, compensation for the value of such stock options, in the amount of not less than $275,000 for James Seaba and $25,000 for Cory Phillips, as established in the agreement with Ardesta Investment dated 12/31/01;

(k)     Punitive damages;

(l)      Rescission or reformation of the Employment and Non-Compete Agreements;

(m)     Injunctive relief directing MesoSystems not to enforce the Employment and Non-Compete Agreements against James Seaba and Cory Phillips;

(n)     Declaratory relief declaring the Non-Compete Agreements void as contrary to public policy or due to MesoSystems' prior breach of the employment agreements;

(o)     Other compensatory and career and expectancy damages as proved at trial; and

(p)     Such other relief as the Court declares just and proper.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: _____

Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
Attorneys for Plaintiffs
Post Office Box 2168
Bank of America Centre, Suite 1000
500 Fourth Street, N.W.
Albuquerque, New Mexico 87103-2168
Telephone: (505) 848-1800

W0210112.doc

26