IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

02 MAR -5 PM 4: 22

JAMES SEABA and
CORY PHILLIPS,

        Plaintiffs,

vs.                                  Civ. No. 02-103 LH/WWD

MESOSYSTEMS TECHNOLOGY, INC.,

        Defendant.

## RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

      This case was properly brought by Plaintiffs James Seaba and Cory Phillips in this Court and in this District. As described more fully below, Defendant's Motion is entirely predicated on a distortion of Plaintiffs' thirteen-count Complaint. Plaintiffs' Complaint is based in large part on Defendant's many tortious acts within the state of New Mexico, not on the Confidential Information, Invention and Noncompetition Agreements ("Non-Compete Agreements") Plaintiffs were required to sign. Indeed, of those thirteen counts, seven allege torts committed in New Mexico – fraud (Count I), intentional misrepresentations (Count II), negligent misrepresentations (Count III), detrimental reliance and promissory estoppel (Count IV), wrongful discharge (Count VIII), prima facie tort (Count IX), and interference with prospective contractual relations (Count X). Two other counts list statutory violations committed in New Mexico – failure to give COBRA notice (Count XI) and discrimination in the provision of COBRA benefits (Count XII). The three contract claims (Count V, VI, VII) are predicated

entirely on Defendant's breach, in New Mexico, of Plaintiffs' Offers of Employment with MesoSystems Technology, Inc. ("Employment Agreements"), which were acknowledged and agreed to by Plaintiffs as a condition of their employment. Even these contract claims have nothing to do with the Non-Compete Agreements. Because the vast majority of Plaintiffs' claims are predicated on conduct occurring in New Mexico that had absolutely nothing to do with the Non-Compete Agreements, there is no basis for dismissal of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(3). Accordingly, Defendant's Motion to Dismiss or Transfer for Improper Venue should be denied.

## INTRODUCTION

Plaintiffs James Seaba and Cory Phillips were employed by R & D Americas, Inc., a subsidiary of Honda Motor Corp. for many years. Plaintiff Seaba held a managerial position in the area of micro-reaction technology as applied to fuel and other chemical processing. Plaintiff Phillips' expertise was in the area of research and development associated with fuel processor and processor component development. In May 2001, Chuck Call, acting on behalf of the Defendant, made numerous promises and false representations to James Seaba in an attempt to get Plaintiff Seaba to leave his job with Honda in order to head a company funded by MesoSystems and owned by Mr. Seaba, Cory Phillips and Mr. Call or MesoSystems. Mr. Call made these false representations with the intent that Mr. Seaba convey the promises to Mr. Phillips; and to induce Mr. Seaba and Mr. Phillips to leave their secure employment and start the new business venture.

As part of the proposal, James Seaba and Cory Phillips were offered positions of employment with MesoSystems Technology Inc. until such time as the new venture could be

arranged. Plaintiffs were presented with two agreements. First, Plaintiffs were presented with an Employment Agreement. Second, Plaintiffs were presented with a Non-Compete Agreement. When Plaintiffs expressed concern about the Agreements, Chuck Call assured Mr. Seaba that the Agreements were intended to be of brief duration and would be changed as soon as the new company was formed. Chuck Call represented that the Agreements would only be in effect for one to two months.

In reliance on Chuck Call's promises, Plaintiffs Seaba and Phillips signed the Employment Agreements, setting forth the terms of their employment with MesoSystems Technology, Inc., and the Non-Compete Agreements, setting forth limitations on the use of confidential information and the ability to participate in a competing business. Plaintiffs signed these Agreements in late August 2001.

After Plaintiffs moved their families across the country in reliance on Defendant's promises, it soon became clear that Defendant had made a number of false statements regarding Plaintiffs' employment and that Chuck Call and MesoSystems had little intention of seeing Mr. Seaba and Mr. Phillips establish and profit from any new company. On December 6, 2001, without prior notice to the Plaintiffs, Chuck Call left voice mail messages on James Seaba and Cory Phillips' cellular phones informing them they had been fired for "just cause."

Plaintiffs now bring suit for fraud, negligent and intentional misrepresentations, detrimental reliance/promissory estoppel, breach of contract, breach of covenant of good faith and fair dealing, wrongful discharge, prima facie tort, interference with prospective contract, discrimination with regard to and refusal to provide COBRA notice, and rescission, reformation, injunction and other equitable relief. Plaintiffs' claims do not arise out of the Non-Compete

Agreements and therefore are not subject to any forum selection clause found within those Agreements.

## DISCUSSION

I. **UNDER 28 U.S.C. §1391(B), VENUE IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO IS PROPER.**

Under 28 U. S. C. § 1391(b), when subject matter jurisdiction is not based solely on diversity of citizenship, proper venue for the suit lies only in a judicial district in the state where all the defendants reside or a judicial district in which a substantial part of the events giving rise to the plaintiff's claims. *See* 28 U.S.C. § 1391(b). In this case, Defendant does not dispute that the majority of the events giving rise to Plaintiffs' claims occurred in New Mexico, as alleged in Plaintiffs' Complaint. *See* Complaint, ¶ 7. Accordingly, venue in this district is proper.

II. **PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF THE NON-COMPETE AGREEMENTS AND ARE NOT SUBJECT TO THE FORUM SELECTION CLAUSE.**

    A. **The Majority of Plaintiffs' Claims Are Based On Defendant's Tortious Acts And On Violations of Federal Statutory Law.**

Plaintiffs' Complaint lists thirteen causes of action arising from Defendant's violations of the Employment Agreements. Among the thirteen causes of action, Plaintiffs make no claim for breach of the Non-Compete Agreement or for any other cause of action arising out of the Non-Compete Agreement. Defendant exaggerates reference within the Complaint to the Non-Compete Agreement by citing the paragraphs in which the Employment Agreements, "which incorporate the Non-Compete Agreement," are mentioned. *See* Defendant's Motion at 5. In fact, Plaintiffs' Complaint mentions the Non-Compete Agreement in only *eight* paragraphs out of a total of *one hundred and twenty-two*. Of the eight paragraphs in which Plaintiffs even mention the Non-Compete Agreements, five paragraphs merely set forth factual allegations relevant to

4

the Complaint. *See* Complaint at ¶¶ 22, 23, 24, 25, 27. The remaining three paragraphs are set forth in Plaintiffs' Count XIII, in which Plaintiffs seek relief from the Non-Compete Agreements as a remedy for Defendant's prior breach of their Employment Agreements. *See* ¶¶ 120, 121, 122.[1]

Generally, claims based on a Non-Compete Agreement are brought by an employer against an employee for participating in acts prohibited by the Non-Compete Agreement. Understandably, in that context a forum selection clause protects an employer from having to pursue a cause of action against a former or current employee in an undesirable district or venue. Here, Plaintiffs' Complaint clearly sets forth causes of action arising out of Defendant's tortious conduct in New Mexico, violations of federal statutory law, and breach of the Employment Agreements. It is well-established that a forum selection clause will bar tort claims only if resolution of those claims relates to or requires interpretation of the contract in which the forum selection clause is found. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

In this case, resolution of *none* of Plaintiffs' claims requires interpretation of the Non-Compete Agreements. For example, to resolve Plaintiffs' claim of COBRA violations will not require this Court to even look at the Non-Compete Agreements. Similarly, to resolve Plaintiffs' claim of wrongful discharge, this Court will not in any way be concerned with the Non-Compete Agreement. In fact, the same is true for every one of Plaintiffs' claims for damages. Accordingly, the forum selection clause in the Non-Compete Agreement does not guide this case. Venue in this district is proper and Defendant's motion should be denied.

---

[1] Thus, at most, those few allegations in Count XIII could be dismissed, if this Court finds they are barred by the forum selection clause. This Court need not, however, throw the baby out with the bath water by dismissing the *entire* Complaint, merely because those three paragraphs mention the Non-Compete Agreement.

**B.      Plaintiffs' Claims For Breach Of Contract Arise Out Of The Employment Agreements, Not The Non-Compete Agreements.**

Plaintiffs James Seaba and Cory Phillips were each required to sign Employment Agreements and Non-Compete Agreements, both of which were drafted by Defendant. Defendant's present Motion is premised on an attempt to conflate these two distinct documents into one. *See* Defendant's Memorandum in Support of Motion at 1. However, just because more than one document relates to a transaction does not transform the documents into a single contract. *See USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 437-38 (3rd Cir. 1993). Under Defendant's reasoning, any two contracts would have to be read together, merely because they were made between the same parties.

The Tenth Circuit, in *Sterling Colorado Agency, Inc. v. Sterling Insurance Co.*, 266 F.2d 472, 476 (10th Cir. 1959), noted "considering several instruments as one is not the natural construction, and is resorted to only to effectuate the intention. They may be intended to be separate instruments and to provide for different things." *Id.* at 476 (quoting *Huyler's v. Ritz-Carlton Restaurant & Hotel Co.*, 1 F.2d 491, 492 (D.Del.1924). In *Sterling*, there were two agreements between an insurance underwriter and its representative agency. One governed the general agency relationship and the other provided for additional compensation in connection with the sale of life insurance policies. One question presented to the court was whether the termination provisions of the latter governed the former. The agency agreement was silent with respect to termination and the court found that there was no discussion of that issue between the parties. Notwithstanding the fact that the agreements were dated the same day and both dealt with the subject matter of the terms of the agency relationship, the Tenth Circuit held that the parties intended the agreements to be separate and independent and that therefore the termination

6

date provided in the life insurance agreement did not alter the at-will nature of the agency agreement. *Id.* at 476.

Likewise, in this case, even a cursory review of the Non-Compete Agreements and the Employment Agreements reveals that they are wholly separate documents, to which MesoSystems requested separate acknowledgement and signatures, and whose provisions are limited to the documents in which they appear. The Non-Compete Agreements were signed by each of the Plaintiffs and by Charles Call, President and CEO of MesoSystems Technology Inc. The Non-Compete Agreement specifies that it "is not a contract of employment and no rights of employment are hereby created." *See* Non-Compete Agreement, Section 5.1, p. 3. It also states that "this Agreement sets forth the entire Agreement, and supercedes any and all prior agreements, between me and the Company with regard to the Confidential Information, Inventions, Materials, and Proprietary Rights of the Company." *See id*, Section 5.5, p.3. Clearly, the Non-Compete Agreement relates *only* to the protection of MesoSystems' intellectual and physical property. The Non-Compete Agreement does not set forth terms of employment and in fact, relates more significantly to post-employment conduct.

In contrast, the Employment Agreements are signed by Samantha League, the director of Human Resources, and acknowledged and agreed to by each Plaintiff, as evidenced by their signatures. The Employment Agreements set forth specific details regarding the terms of each Plaintiffs' employment; including, but not limited to, compensation, bonuses, stock options, relocation expenses and benefit plans. *See e.g.*, Employment Agreements, ¶¶ 2, 3, 4, 5, 6, 7. Furthermore, the two Employment Agreements for Plaintiff Seaba and Plaintiff Phillips contain somewhat different terms regarding their respective salaries and terms of employment.

Clearly, the Non-Compete Agreements are not incorporated in, or merely provisions of, the Employment Agreements. By its own language, the Non-Compete Agreement is its own agreement, with its own provisions and clauses, including a forum selection clause.

Defendant's argument requires this Court to ignore the clear distinction between the two separate documents Defendant drafted, and read them, instead, as one contract. That argument is fatally flawed, because the two Agreements are not one contract. Moreover, it is well-established that covenants not to compete must be *narrowly* construed. *Agrigenetics, Inc. v. Rose,* 62 F.3d 268 (8th Cir. 1995). Yet, Defendant's entire premise requires this Court to construe the Non-Compete Agreement *broadly*, despite the specific language explicitly limiting application of the forum selection clause to "any action relating to this [Non-Compete] Agreement." Section 5.6. Indeed, that quoted phrase appears *twice*.

Unlike the cases cited by Defendant, Plaintiffs' claims do not relate to the Non-Compete Agreement. For example, in *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft (BMW)*, 164 F.Supp.2d 1260, 1269 (D.N.M. 2001), a suit for breach of contract, Judge Black enforced a forum selection clause that stated: "Jurisdiction for all and any dispute arising out of or in connection with this agreement is Munich." Clearly, the suit for breach of contract arose out of or was in connection with that very contract. The same was true in *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385 (1st Cir. 2001), where the plaintiff sued for breach of the very contract that contained the forum selection clause. In contrast, the claims in this lawsuit do not arise under the Non-Compete Agreement. The forum selection clause in that Agreement is, therefore, inapplicable.

It is also clear as a matter of contract law that the applicability of certain provisions may be limited to the documents in which they actually appear. *See USX Corp. v. Prime Leasing Inc.,*

8

988 F.2d at 437-38. "Each of several instruments may be construed in the light of the others, without their being considered as one for all purposes." *Sterling Colorado Agency, Inc. v. Sterling Ins. Co.,* 266 F.2d 472, 476 (10th Cir.1959)(quotation omitted); *see also* 17A C.J.S. *Contracts* § 298; 17A Am.Jur.2d *Contracts* § 388 ("Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect.... This does not mean that the provisions of one instrument are imported bodily into another; ... they may be intended to be separate instruments and to provide for entirely different things.").

Because the Agreements are separate documents that were never intended to be read as one contract, not only does the forum selection clause not apply to Plaintiffs' tort claims and statutory claims, it also does not extend to claims arising out of a breach of the Employment Agreement.

### III. UNDER 28 U.S.C. § 1404(a), DEFENDANT HAS FAILED TO MEET ITS BURDEN OF DEMONSTRATING THAT A TRANSFER IS WARRANTED.

Recognizing that proper venue may be found in more than one district, section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) places sound discretion in this Court to decide motions for transfer on a case-by-case consideration of convenience and fairness. *See Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). However, Defendant bears the burden of showing that this District is an inconvenient forum. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991), citing *Stewart Org. v. Ricoh Corp.*, 487 U. S. 22, 29 (1988)). Defendant has not even attempted to satisfy that burden.

Among the factors a court should consider when deciding whether a transfer of venue is warranted are the plaintiff's choice of forum; the accessibility of witness and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical. *See id.* (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)). Those factors weigh against Defendant's Motion in this case.

A plaintiff's choice of forum should rarely be disturbed unless the balance weighs heavily in favor of the defendant. *Scheidt v. Klein*, 956 F.2d at 965. Here, Plaintiffs Seaba and Phillips have chosen this as their forum, after Defendant persuaded them to move their families across the country and begin employment in this State. Virtually all witnesses are located in New Mexico, and Charles Call, President and CEO of MesoSystems, visits Defendant's business in New Mexico on a regular basis. Defendant maintains a significant business in New Mexico and nearly all of the events that are at issue in this case occurred here. Plaintiffs have no contacts with Washington, and no reason to pursue their litigation in a location where they neither reside nor conduct business. Therefore, Plaintiffs would be unfairly prejudiced if they were forced to prosecute their case against Defendant in Washington.

Defendant MesoSystems has not argued that it would be unduly burdensome to defend this action in New Mexico. The reason for that omission is obvious; it is not unduly burdensome for Defendant to defend this case here. Defendant conducts a substantial business in New

10

Mexico, and otherwise avails itself of the privileges connected with transacting business in this State. It cannot be said to be burdensome to also have to defend litigation arising out of its business activities in this State. Furthermore, a change of venue is not appropriate where the effect of the transfer would be simply to shift the inconvenience from one party to the other. *See Palmer v. K-Mart Corp.*, 95-1113 SC/LFG (D.N.M. filed Jan. 25, 1996); *Roc, Inc. v. Progress Drillers, Inc.*, 481 F.Supp. 147, 152 (W.D.Okla. 1979). Therefore, transfer of venue in this case is not appropriate and Defendant's Motion should be denied.

## CONCLUSION

As clearly set forth above, venue in the United States District Court for the District of New Mexico is proper. Defendant's Motion is premised upon the forum selection clause set forth in the Non-Compete Agreement. However, Plaintiffs' Complaint is not based on the Non-Compete Agreements. Furthermore, any contractual claims brought by Plaintiffs' arise out of Defendant's breach of the Employment Agreements, not the Non-Compete Agreements. The two Agreements are wholly separate contracts. There is no forum selection clause within the Offer and Agreement of Employment and therefore no grounds for dismissal of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(3). Plaintiffs respectfully request that Defendant's Motion to Dismiss or Transfer for Improper Venue be denied.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: *Lisa Mann*
Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
Attorneys for Plaintiffs
Post Office Box 2168
Bank of America Centre, Suite 1000
500 Fourth Street, N.W.
Albuquerque, New Mexico 87103-2168
Telephone: (505) 848-1800

WE HEREBY CERTIFY that a true
and correct copy of the fore-
going pleading was sent via first
class mail to all counsel of record this
5th day of March, 2002.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: *Lisa Mann*
Lisa Mann

W0217448.DOC