UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

    Plaintiffs,

v.

MESOSYSTEMS TECHNOLOGY, INC.,

    Defendant.

NO. CIV-02-0103 LH/WWD

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
# MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

## I.   SUMMARY OF REPLY

Plaintiffs do not dispute that the Noncompetition Agreement contains a valid and enforceable forum selection clause that requires any action relating to the Noncompetition Agreement to be brought in Benton County, Washington. Nor do plaintiffs argue that enforcement of the forum selection clause would be unreasonable or unjust or that the clause is invalid for reasons such as fraud or overreaching. Rather, the principal argument advanced by plaintiffs in opposition to defendant MesoSystems' motion to dismiss or transfer is that the forum selection clause does not cover all of the causes of action pleaded by plaintiffs in their Complaint.

In fact, the forum selection clause is broadly worded and applies to "any action relating to [the Noncompetition] Agreement." All of the causes of action pleaded by plaintiffs, whether contract, tort, or statutory claims, are—at least—*related to* the Noncompetition Agreement. Moreover, plaintiffs entirely fail to reckon with the broad language of this Court's own recent decision in <u>K&V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")</u>, 164 F. Supp. 2d 1260 (D.N.M. 2001), in which Judge Black stated: "The general rule is that when an action arises from a contract or contractual relationship between two parties the choice of forum clause in that contract

1

governs the parties' tort as well as contract claims." Id. at 1263. Plaintiffs' action here undoubtedly arises from a contractual relationship between the parties, and the forum selection clause thus governs all of plaintiffs' claims against MesoSystems.

In sum, plaintiffs have failed to rebut the strong presumption that forum selection clauses will be enforced. MesoSystems respectfully requests that the forum selection clause be enforced here and that this matter be dismissed for improper venue under Rule 12(b)(3) or, in the alternative, that it be transferred under 28 U.S.C. § 1406(a) to the U.S. District Court for the Eastern District of Washington.

## *II.    ARGUMENT*

### A.    Plaintiffs Do Not Dispute the Enforceability of the Forum Selection Clause

It is now well-settled that

> [f]orum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching." The opposing party has the burden "to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes b[e] deprived of his day in court."

K&V Scientific, 164 F. Supp. 2d at 1271 (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 18 (1972))[1]. Significantly, plaintiffs have *not* argued that the forum

---

[1] There are several Tenth Circuit cases upholding choice of forum clauses. *See generally* Excell, Inc. v. Sterling Boiler & Mech., 106 F.3d 318 (1997) (Complaint for breach of employment contract must be brought in state district court pursuant to a clear and mandatory forum selection clause in the contract which provided in part that if any dispute arose regarding the provisions of the contract, "jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado"); Riley v. Kingsely Underwriting Agencies, Ltd., 969 F.2d 953 *cert. denied* 506 U.S. 1021 (1992) (Court affirmed dismissal of plaintiff's securities laws and state tort law claims against foreign corporations because the choice of forum and law provisions in the parties' contracts were valid and enforceable); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342 (1992) (Removal to Federal Court held contrary to forum selection provision of contract); Nauert v. Nava Leisure USA, Inc., 2000 U.S. App. LEXIS 6862 (Forum selection clause in insurance policy held valid); Dawson v. Fitzgerald, 1999 U.S. App. LEXIS 20260 (Order of remand affirmed due to forum selection clause in contract); Charles W. Johnson v. Northern States Power Company, 2000 U.S. Dist. LEXIS 20845 (Forum selection clause mandatory and required all

2

selection clause in the Noncompetition Agreement is unreasonable or unjust. Plaintiffs have *not* argued that the forum selection clause is invalid because of fraud or overreaching.[2] Plaintiffs have *not* made any showing that trial in the Eastern District of Washington would for all practical purposes deprive them of their day in court.

In short, the *enforceability* of the forum selection clause in the Noncompetition Agreement is undisputed. Only the *interpretation* of the forum selection clause—in particular, its scope and effect—is at issue here. MesoSystems will respond to plaintiffs' arguments regarding the scope and effect of the forum selection clause in the following section of this reply memorandum.

### B. The Forum Selection Clause Encompasses All of Plaintiffs' Claims

#### 1. Contract Interpretation

The forum selection clause in the Noncompetition Agreement states as follows:

> I irrevocably consent to the jurisdiction of the state and federal courts located in Benton County, Washington in connection with *any action relating to this Agreement*. Further, I will not bring *any action relating to this Agreement* in any other court.

Affidavit of Ned A. Godshall in Support of Defendant's Motion to Dismiss or Transfer for Improper Venue, filed herein on February 19, 2002 ("Godshall Aff."), Exs. A, B at § 5.6 (emphasis supplied). By its plain language, the forum selection clause encompasses this action. This action is manifestly an action "relating to" the Noncompetition

---

legal proceedings arising out of or related to the employment agreement to be brought in selected forum); *and compare with* SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578 (1997) (Court held that controlling factor in governing the enforcement of a choice of venue clause was whether the parties intended to commit any disputes between the parties to that court to the exclusion of all others);

[2] Plaintiffs do allege in their Response in Opposition to Defendant's Motion to Dismiss or Transfer for Improper Venue, at 3, that they were misled into signing the Noncompetition Agreement by statements made by MesoSystems. "In order to circumvent the forum selection clause, however, [the opposing party] must plead that the specific clause, as opposed to the entire contract, was obtained by fraud." K&V Scientific, 164 F. Supp. 2d at 1264 (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 591 n.14 (1974)). Plaintiffs have made no attempt to show— nor could they show—that the forum selection clause in particular was obtained by fraud.

3

Agreement. Indeed, the Noncompetition Agreement is referred to repeatedly in plaintiffs' Complaint (Complaint ¶¶ 22, 23, 24, 25, 27, 120, 121, 122), one of plaintiffs' claims specifically seeks rescission of the Noncompetition Agreement (id. at Count XIII, pages 24-25), and, perhaps most tellingly, one of the principal forms of relief plaintiffs seek in this action is to be excused from the Noncompetition Agreement. Id. at 26 (subparagraphs l, m, and n of prayer for relief).

Notably, the forum selection clause does not apply only to actions *arising out of* the Noncompetition Agreement, as plaintiffs would have it. See, e.g., Response in Opposition to Defendant's Motion to Dismiss or Transfer for Improper Venue ("Plaintiffs' Response") at 3-4 ("Plaintiffs' claims do not arise out of the Non-Compete Agreements and therefore are not subject to any forum selection clause found within those Agreements."). The forum selection clause applies to "any action *relating to* [the Noncompetition] Agreement."

Plaintiffs argue that covenants not to compete should be narrowly construed (see Plaintiffs' Response at 8), but this argument is misplaced. In its opening memorandum in support of this Motion, MesoSystems began referring to the Confidential Information, Inventions, and Noncompetition Agreement as the "Noncompetition Agreement," but as the full name of the agreement indicates, the agreement covers far more than just noncompetition obligations. The Noncompetition Agreement contains various terms of plaintiffs' employment relationship with MesoSystems, such as ownership of intellectual property, treatment of confidential and proprietary information, and provisions for the termination of the employment relationship. Godshall Aff., Ex. A, B. *One* of the terms of the employment relationship addressed in the Noncompetition Agreement is plaintiffs' noncompetition obligations. Assuming, inter alia, that plaintiffs are correct that the covenant not to compete, which is contained in Section 3 of the Noncompetition Agreement, should be construed narrowly by the Court, that does not mean that the entire agreement, including the forum selection clause found in Section 5, must be construed

4

narrowly. MesoSystems is aware of no authority that provides that forum selection clauses—as opposed to noncompetition clauses—must be narrowly construed.

Plaintiffs seek to avoid the conclusion that their lawsuit as a whole is an "action relating to" the Noncompetition Agreement by instead analyzing the application of the forum selection clause claim by claim (see Plaintiffs' Response at 4-5), but this approach is ultimately unavailing to them. Concerning plaintiffs' contract claims, as plaintiffs concede, one of their claims is directly based on the Noncompetition Agreement, seeking rescission of that Agreement. See Plaintiffs' Response at 5 n.1. This concession is very important, because it means that the only forum where all of plaintiffs' claims could be tried in one place, consistent with the forum selection clause, is in Benton County, Washington.

Plaintiffs plead three other contract claims. Plaintiffs argue that these claims are based on the Offer Letters, not the Noncompetition Agreements, but they ignore the fact that the Offer Letters—which themselves are silent on forum selection—expressly reference and incorporate the Noncompetition Agreements. The Offer Letters make no fewer than *three* separate references to the Noncompetition Agreements. In paragraph 9, the Offer Letters state: "You will sign and return the Company's standard Confidential Information and Inventions and Noncompetition Agreement, a copy of which is enclosed with this letter." Godshall Aff., Exs. C, D. In paragraph 13, the Offer Letters state: "This letter and the enclosed Confidential Information and Inventions Agreement set forth all of the terms of your employment with the Company. There is no other agreement between you and the Company." Id. In the final paragraph, the Offer Letters state: "Please acknowledge your agreement to the foregoing by signing and returning to me a copy of this letter, together with the enclosed Confidential Information and Inventions Agreement." Id. The Offer Letters clearly contemplate that the Offer Letters and the Noncompetition Agreement *together* set forth the terms of the employment

relationship—indeed, the Offer Letters expressly state that.[3] The Offer Letters manifestly are related to the Noncompetition Agreement. Claims arising out of the Offer Letters are claims "relating to" the Noncompetition Agreement.

Reduced to their essence, plaintiffs' tort claims allege that (a) plaintiffs were fraudulently induced to enter into the employment relationship with MesoSystems, including entering into the Noncompetition Agreement and Offer Letters; (b) MesoSystems failed to perform its obligations in the employment relationship, thus excusing plaintiffs from their obligations under the Noncompetition Agreement; and (c) MesoSystems wrongfully terminated the employment relationship, again, excusing plaintiffs from their obligations under the Noncompetition Agreement. These tort claims are certainly claims "relating to" the Noncompetition Agreement. Even plaintiffs' two statutory claims, for violation of COBRA, are related to the Noncompetition Agreement, because the COBRA claims are based on confusion and disagreement between the parties as to how and when the employment relationship ended, which confusion and disagreement arises out of a dispute as to when and if plaintiffs breached their duties under the Noncompetition Agreement.[4]

At bottom, this entire action, and each one of plaintiffs' claims, is about an employment relationship that disintegrated into acrimony. That employment relationship was defined and governed by the Noncompetition Agreement and the Offer Letters. Each

---

[3] Thus, plaintiffs misunderstand MesoSystems' position when they argue that MesoSystems believes that "any two contracts [must] be read together, merely because they were made between the same parties." Plaintiffs' Response at 6. Rather, it is MesoSystem's position that two contracts should be read together when they expressly state that they should be read together.

[4] In the alternative, if plaintiffs' statutory COBRA claims are found to *not* even be related to the Noncompetition Agreement, these two claims should nonetheless be transferred to the Eastern District of Washington with plaintiffs' 11 other contract and tort claims, in the interest of judicial economy and efficiency, under 28 U.S.C. § 1404(a).

of plaintiffs' individual claims, and this entire lawsuit, is plainly—at the very least—related to the Noncompetition Agreement.

### 2. Court Decisions

If the plain language of the forum selection clause covering "any action relating to" the Noncompetition Agreement were not enough to convince the Court, court decisions also support the conclusion that the forum selection clause here covers all of plaintiffs' claims. In seeking guidance on interpreting the scope of a forum selection clause, the Court need look no further than its own decision in K&V Scientific. Curiously, plaintiffs describe K&V Scientific as "a suit for breach of contract" and dismiss the case as irrelevant to whether a forum selection clause reaches tort and statutory claims, because "the suit for breach of contract arose out of or was in connection with that very contract" where the forum selection clause appeared. Plaintiffs' Response at 8. In fact, the plaintiff in K&V Scientific brought a number of "claims in tort and quasi-contract," including a fraud claim, in addition to a breach of contract claim, and the decision is directly on point. 164 F. Supp. 2d at 1263, 1264 n.4.

In K&V Scientific, the forum selection clause used broad language similar to (although arguably not as broad as) the forum selection clause in this case: "Jurisdiction for all and any dispute arising out of or in connection with this agreement is Munich." Id. at 1261. The K&V Scientific decision stated: "The general rule is that when an action arises from a contract or contractual relationship between two parties the choice of forum clause in that contract governs the parties' tort as well as contract claims." Id. at 1263. Applying that rule, Judge Black found "that all of K&V's claims against BMW, including those claims in tort and quasi-contract, are governed by the forum selection clause contained in the 1997 Agreement." Id.

Judge Black's well-reasoned decision in K&V Scientific provides a road map for the Court in this case. Plaintiffs' action undoubtedly arises from the contractual

7

employment relationship between the parties. That contractual relationship was established and defined by the Noncompetition Agreement and the Offer Letters. Under K&V Scientific, the forum selection clause in the Noncompetition Agreement governs all of plaintiffs' claims against MesoSystems, including its tort claims.

Although the Tenth Circuit has apparently not addressed the issue of whether a contractual forum selection clause covers related tort claims, other circuits to address the question have uniformly concluded that a contractual forum selection clause should govern related tort claims. See Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract."); Crescent Int'l, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3rd Cir. 1988) ("pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms"). A particularly thoughtful and thorough analysis of the issue is found in the First Circuit's decision in Lambert v. Kysar, 983 F.2d 1110 (1st Cir. 1993). That court adopted the rule that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Id. at 1121-22. The Eighth Circuit has followed Lambert in Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).

Applying the Lambert/Terra rule here, plaintiffs' tort and statutory claims unquestionably "involv[e] the same operative facts" as the breach of contract claims. All of plaintiffs' claims involve the negotiations between the parties in the spring and summer of 2001 to enter into an employment relationship, as ultimately memorialized by the Noncompetition Agreements and Offer Letters, and the disintegration of that employment relationship during the fall of 2001, culminating in the termination of the employment relationship in December 2001. Alternatively, applying the Manetti-Farrow rule, resolution of plaintiffs' tort and statutory claims relates to interpretation of the

8

Noncompetition Agreement. The Noncompetition Agreement must be interpreted to determine the rights and obligations of the parties in the employment relationship, and plaintiffs' tort and statutory claims are all related to those rights and obligations.

### 3. Conclusion

Looking at the contract language itself and directly applying that language, or applying the various standards announced in K&V Scientific, Lambert and Terra, or Manetti Farrow, leads to the same conclusion: the forum selection clause here covers plaintiffs' action, including all 13 claims. This action is undoubtedly an action relating to the Noncompetition Agreement, and the parties have agreed that any such action must be brought in the state or federal courts of Benton County, Washington.

### C.  MesoSystems Did Not Move for Transfer Under Section 1404(a), but if It Had, Transfer Would Be Appropriate Under That Section

Plaintiffs argue that transfer of this case to the Eastern District of Washington is not warranted under 28 U.S.C. § 1404(a). See Plaintiffs' Response at 9-11. MesoSystems' response to this argument is two-fold.

First, plaintiffs' argument amounts to knocking down a straw man, because MesoSystems did not move for transfer under 28 U.S.C. § 1404(a), but rather moved for dismissal or transfer under 28 U.S.C. § 1406(a) (and Rule 12(b)(3)). As stated in MesoSystems' opening memorandum at 9 n.2, the courts are in disagreement on whether Section 1404 or Section 1406 applies in the case of a forum selection clause that provides for a case to be brought in another state or federal court, and the Tenth Circuit has not addressed the question. However, the better argument appears to be that the forum selection clause renders venue *improper* in a court not designated in such clause and accordingly, that a Section 1406(a) motion to dismiss or transfer for *improper* venue is the appropriate remedy, not a Section 1404(a) motion to transfer for *inconvenient* venue. See, e.g., Jackson v. West Telemarketing Corp. Outbound, 245 F.3d 518, 523 (5th Cir. 2001); United States v. G&C Enter., Inc., 62 F.3d 35, 36-37 (1st Cir. 1995); see also

Salovaara v. Jackson National Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001) (stating that Section 1404(a) applies but also holding that the district court was within its authority to simply dismiss the action under Rule 12 rather than transfer it to another federal district court under Section 1404(a))

Second, even if the Court were to deem MesoSystems' motion to be a motion to transfer under Section 1404(a), such a motion should be granted under the circumstances of this case and this action should be transferred to the Eastern District of Washington. All the Section 1404(a) cases cited in Plaintiffs' Response involved situations where there was *no forum selection clause*. The presence of a forum selection clause, however, changes everything:

> [I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient. When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered.
>
> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system. . . . We conclude that when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, *the opponent* bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute.
>
> . . . [W]hen weighing whether transfer is justified under section 1404(a), a choice of forum clause *is a significant factor that figures centrally* in the District Court's calculus. Thus, while other factors might conceivably militate against a transfer, . . . *the venue mandated by a choice of forum clause rarely will be outweighed* by other 1404(a) factors.

In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (citations omitted) (emphasis supplied).

10

Hence, *plaintiffs* have the burden of showing why the contractual commitment to litigate disputes in Benton County, Washington, should not be honored, and they have failed to meet that burden. Section 1404(a) allows transfers "[f]or the convenience of parties and witnesses." Plaintiffs have pleaded—and MesoSystems does not dispute— that this is a case between citizens of New Mexico (plaintiffs) and a citizen of Washington (MesoSystems). Complaint ¶ 5. As pleaded in the Complaint, many of the actions at issue here were long distance negotiations between MesoSystems and plaintiffs while plaintiffs were living in Ohio or occurred when MesoSystems' chief executive officer visited plaintiffs in Ohio. Id. ¶¶ 8-12, 19-27. Presumably, relevant witnesses and documents exist in New Mexico, Ohio, and Washington. Plaintiffs argue that "[v]irtually all witnesses are located in New Mexico" (see Plaintiffs' Response at 10), but they have introduced no evidence into the record to show that the balance of convenience of the parties and witnesses tips decidedly in favor of either New Mexico or Washington. Certainly, there is nothing in the record to indicate that this is one of the rare cases where the forum selection clause is outweighed by other Section 1404(a) factors.

## III.  CONCLUSION

MesoSystems asks this Court to hold plaintiffs to their contractual commitment to litigate any actions relating to the Noncompetition Agreement in the state or federal courts of Benton County, Washington. MesoSystems asks the Court to dismiss this action for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a), giving full effect to the forum selection clause and allowing the parties the choice of refiling in either state *or* federal court in Benton County. Alternatively, MesoSystems asks the Court to transfer the case under 28 U.S.C. § 1406(a) to the U.S. District Court for the Eastern District of Washington.

DATED: March 18, 2002.

11

**BAUMAN, DOW & McINTOSH, P.C.**

By _____
Christopher P. Bauman
Attorneys for Defendant
PO Box 30684
Albuquerque, New Mexico 87190
(505) 883-3191-telephone
(505) 883-3194-facsimile


**PERKINS COIE, LLP**

By _____
Paul E. Smith
Attorneys for Defendant
One Bellevue Center
Suite 1800, 411
108th Avenue NE
Bellevue, Washington 98004-5584
(425) 453-7317-telephone
(425) 453-7350-facsimile


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Motion to Appear *Pro Hac Vice* was mailed via U.S. Mail to the following, on this /4/day of March, 2002.

Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
MODRALL LAW FIRM
Attorneys for Plaintiffs
PO Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1800

_____
Christopher P. Bauman

12