IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
APR 7 - 2003

CLERK

JAMES SEABA and CORY PHILLIPS,                    Civ 02-103 LH/RHS

      Plaintiffs,

vs.

MESOSYSTEMS TECHNOLOGY, INC.,

      Defendant.

## SUPPLEMENT TO ORDER DOC #59

60



MODRALL SPERLING

## Fax Transmittal Cover Sheet

Page 1 of 6
Date: April 2, 2003
Time: 4:2 PM
Client/Matter #: 65518-112

**RECEIVED AT THE OFFICE
OF THE U.S. MAGISTRATE JUDGE**

**APR - 2 2003**

**ROBERT HAYES SCOTT**

Modrall Sperling
Roehl, Harris & Sisk, P.A.

Bank of America Centre
Suite 1000
500 Fourth Street NW
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
Fax: 505.848.1891

**Please deliver the following pages to:**

Name: The Honorable Robert H. Scott

City: Albuquerque, NM

Fax number of recipient: (505) 348-2305

From: Angelo J. Artuso

---

Comments:   RE:   Seaba, et al. v. MesoSystems
CIV 02-103

Dear Judge Scott:

I have attached the excerpt from the deposition transcript that I mentioned in my earlier letter, showing the witness answered questions about the subject communications after counsel's discussion with you. Please let me know if we can provide the Court with any additional information or assistance.

Sincerely,

Angelo J. Artuso

cc:   Chris Bauman (via fax)

If you have any problem receiving our fax, please call 505.848.1800 Ext. 1894

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

EXCERPTS.TXT

8    fingertips. I would provide it tomorrow.

9              THE COURT: I am not going to rule on it on the

10   phone. Judge Snyder made a decision. The deposition went

11   forward and witness testified. I understand, Mr. Bauman,

12   you have another deposition on Friday scheduled and you

13   anticipate a similar issue, so, if you would each submit

14   any authority you want me to consider tomorrow, and I

15   would like to have it no later than 4:30 in the afternoon.

16   Then I'll enter an order.

17              MS. MANN: Thank you, Your Honor.

18              MR. BAUMAN: Thank you.

19              THE COURT: I am up on the 6th floor, Room 620.

20   You can fax it to me if you want.

21              MS. MANN: Fax number?

22              THE COURT: 348-2305.

23              MS. MANN: Thank you.

24              MR. BAUMAN: Thank you, Judge.

25              THE COURT: For your record in deposition, we

HUGHES SOUTHWEST COURT REPORTERS
Reported by: Marcia J. Schick
Albu. & S.F. (800) 943-8211

8

1    are getting off the line now and we will be in recess.

2              MS. MANN: Thank you. 4:47.

3              (End of Excerpt No. 1)

4              (Excerpt No. 2)

5              MS. MANN: I think -- wait a minute. There was

6    one other area.

7    Q.    we discussed following the ruling by Judge

8    Snyder your meetings with -- your yesterday meeting and

Page 7

EXCERPTS.TXT

9   you also said there had been another meeting with Dr. Call
10  and the lawyers about venue. Have you had any discussions
11  with Dr. Call, without lawyers present, about this
12  lawsuit? And by that I mean both telephone conversations
13  and face-to-face meetings?

14      A.    Yes.

15      Q.    And have there been many such conversations?

16      A.    More than two. Less than 10 probably. If you
17  want me to try to quantify it.

18      Q.    What was the substance of those conversations?

19      A.    Again, I speak best by example. I'll try to
20  answer your questions best I can by some citations.

21      Q.    Okay.

22      A.    Starting chronologically, I guess with the
23  venue, it was an amazement to us all and we just couldn't
24  understand why Plaintiffs in this case, who no longer
25  lived in New Mexico, were arguing that they reside in New

1   Mexico. It doesn't make sense to us, as one example.

2       Q.    Any other examples that you can think of?

3       A.    I think just the general rolling conversation
4   that it just seems all so silly, the naivity, as I
5   expressed it before, of not understanding how startups
6   work. Of not understanding partial ownership in
7   companies. Of the sadness of it all. People hurting
8   their own careers for what apparently is just outright
9   greed.

10      Q.    Have you had discussions with Dr. Call about the

EXCERPTS.TXT

11  washington lawsuit?

12  A.  NO.

13  Q.  Are there any other general topics of

14  conversation that you have had with Dr. Call about this

15  lawsuit that we haven't covered?

16  A.  In the confines of the breadth of the answer

17  that I just gave you, I am sure I could elaborate on

18  those, but I think --

19  Q.  Those are recurring themes?

20  A.  Those are recurring themes, yes.

21  Q.  we went through -- I really am just about at the

22  end.

23  MR. LEON: we are past the four hours.

24  (End of excerpt No. 2.)

25

HUGHES SOUTHWEST COURT REPORTERS
Reported by: Marcia J. Schick
Albu. & S.F. (800) 943-8211

10

1

2  (Excerpt No. 2)

3  MS. MANN: I think -- wait a minute. There was

4  one other area.

5  Q.  we discussed following the ruling by Judge

6  Snyder your meetings with -- your yesterday meeting and

7  you also said there had been another meeting with Dr. Call

8  and the lawyers about venue. Have you had any discussions

9  with Dr. Call, without lawyers present, about this

10  lawsuit? And by that I mean both telephone conversations

11  and face-to-face meetings?

Page 9

EXCERPTS.TXT
12   A.   Yes.

13   Q.   And have there been many such conversations?

14   A.   More than two.  Less than 10 probably.  If you

15   want me to try to quantify it.

16   Q.   what was the substance of those conversations?

17   A.   Again, I speak best by example.  I'll try to

18   answer your questions best I can by some citations.

19   Q.   Okay.

20   A.   Starting chronologically, I guess with the

21   venue, it was an amazement to us all and we just couldn't

22   understand why Plaintiffs in this case, who no longer

23   lived in New Mexico, were arguing that they reside in New

24   Mexico.  It doesn't make sense to us, as one example.

25   Q.   Any other examples that you can think of?

C

1   A.   I think just the general rolling conversation

2   that it just seems all so silly, the naivity, as I

3   expressed it before, of not understanding how startups

4   work.  Of not understanding partial ownership in

5   companies.  Of the sadness of it all.  People hurting

6   their own careers for what apparently is just outright

7   greed.

8   Q.   Have you had discussions with Dr. Call about the

9   washington lawsuit?

10   A.   No.

11   Q.   Are there any other general topics of

12   conversation that you have had with Dr. Call about this

13   lawsuit that we haven't covered?

EXCERPTS.TXT

14      A.     In the confines of the breadth of the answer

15   that I just gave you, I am sure I could elaborate on

16   those, but I think --

17      Q.     Those are recurring themes?

18      A.     Those are recurring themes, yes.

19      Q.     we went through -- I really am just about at the

20   end.

21             MR. LEON:  We are past the four hours.

22             (End of excerpt No. 2.)

23

24

25

HUGHES SOUTHWEST COURT REPORTERS
Reported by:  Marcia J. Schick
Albu. & S.F. (800) 943-8211

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for
Judge Scott
505 348 2305
Apr 02 2003 4:13pm

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Apr 2 | 4:11pm | Received | 5058481891 | 1:22 | 6 | OK |

Result:
  OK - black and white fax

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

      Plaintiffs,

v.

MESOSYSTEMS TECHNOLOGY, INC.,

      Defendant.

NO. CIV-02-0103 DJS/WWD

### DEFENDANT'S EMERGENCY MOTION FOR RECONSIDERATION OF ORDER ON ATTORNEY-CLIENT PRIVILEGE FOR PROTECTIVE ORDER, FOR ORDER TO STRIKE AND FOR EXPEDITED BRIEFING

Defendant MesoSystems Technology, Inc. ("MesoSystems") by and through its

attorneys and pursuant to F.R.C.P. Rule 26(c) and N.M.R.A. 1986, Rule 11-503,

respectfully requests the Court reconsider Judge Schneider's telephonic ruling on April

1, 2003 regarding discovery of attorney-client communications on the basis of the

doctrine of joint client common interest privilege.   MesoSystems requests that the

Court enter a protective order prohibiting the plaintiffs from discovering such

communications. Finally, MesoSystems requests that the relevant portions of the

deposition of Ned Godshall be stricken from the deposition transcript.

### FACTUAL BACKGROUND

At the deposition of Ned A.Godshall, CEO of MesoFuel, Inc., a non-party

majority-owned subsidiary of MesoSystems, the attorney for the plaintiffs attempted to

elicit testimony regarding a meeting with MesoFuel's attorneys.  The attorney for

MesoSystems, who also represents MesoFuel, objected on the basis that the

communications are subject to the attorney-client privilege. Judge Schneider was contacted by telephone and after hearing the objection ruled that because the meeting was not only attended by Dr. Godshall, but also by Charles Call, an officer and director of MesoSystems, which is also represented by MesoFuel's attorneys, no lawyer-client privilege exists merely because the two corporations are jointly represented by the same attorney. Plaintiffs' attorney then proceeded to question Dr. Godshall regarding the nature, content and the substance of the communications he had with MesoFuel's attorney. This hastily rendered ruling by the Judge Schneider is not supported by law or the facts and must be immediately reversed to prevent the closely guarded lawyer client privilege from being further eroded in the deposition of Charles Call, which is scheduled for this Friday, April 4, 2003 . In addition, those portions of Dr. Godshall's deposition that disclose privileged communications must be stricken from the record.

MesoFuel and MesoSystems are two separate yet related entities. MesoFuel is a New Mexico corporation with its principal place of business in Albuquerque. MesoFuel is a majority-owned subsidiary of MesoSystems, a Washington corporation based in Kennewick, Washington. The management and operation of MesoFuel is controlled by MesoSystems, and the legal interests of MesoFuel and MesoSystems in this matter are identical. The plaintiffs in this case claim that they were hired by MesoSystems to jointly set up MesoFuel. The fact that MesoFuel is referred to in over half (26 out of 44) of the factual allegations in the plaintiffs' complaint, and referred to by name in at least four (4) places in the complaint conclusively establishes the two company's commonality of interest in communications that take place with their attorney regarding

2

this action. *See* Amended Complaint, ¶ ¶ 10, 11,12, 15, 16, 17,18, 19, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 41.

## ARGUMENT

Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases. New Mexico law thus controls this issue. Frontier Ref., Inc. v. Gorman-Rupp Co., 136 F.3d 695, 699 (10th Cir. 1998). NMRA 1986, Rule 11-503 is the New Mexico Rule of Evidence that protects the lawyer-client privilege. The privilege may be waived by voluntary disclosure to a third person by the privilege holder. Public Serv. Co. of N.M. v. Lyons, 2000-NMCA 077, 129 N.M. 487, 10 P.3d 166. Thus, the presence of a third person during a conference with a client and an attorney "ordinarily destroys the confidentiality required to assert the attorney-client privilege." D.A.S. v. People, 863 P.2d 291, 295 (Colo. 1993).

There is no such waiver, however, when, as in the instant case, two or more individuals or entities consult an attorney for the purpose of a joint defense or common interest. See, e.g., Gordon v. Boyles, 9 P.3d 1106, 2000 Colo. LEXIS 1038 (Colo. 2000); see also Metro Wastewater Reclamation Dist. v. Cont'l Cas., 142 F.R.D. 476 (D. Colo. 1992) (communications shared with an attorney in the presence of third persons "who have a common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship"); NL Indus., Inc. v. Commercial Union Ins. Co., 144 F.R.D. 225, 230-31 (D.N.J. 1992) ("The chief instance occurs when the *same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person.

3

Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other.") (quoting 8 Wigmore, Evidence § 2312 (1992)); Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1174 (D.S.C. 1974) (same). Under this doctrine, a commonality of interest exists where different persons or entities "have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." Duplan Corp., 397 F. Supp. at 1172.

Here, MesoSystems has retained attorneys to defend it in this lawsuit. MesoFuel has an attorney-client relationship with the same attorneys and has a common interest with MesoSystems in the outcome of this litigation. When top officers of MesoFuel and MesoSystems meet--at the same time--with the attorney who represents each of those respective corporations and communicate with that attorney for the purpose of obtaining legal advice relating to the corporations' common interest in this litigation, such communications are undoubtedly protected by attorney-client privilege.

Although there is no case on point, New Mexico implicitly recognizes the common interest aspect of the attorney-client privilege. NMRA 1986, Rule 11-503(D)(5) provides that the only exception to privileged communications between an attorney and jointly represented clients with a common Interest, is in an action by and between the joint clients, to wit:

> As to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted In common, **when offered in an action between any of the clients**. (Italics added.)

NMRA 1986, Rule 11-503(D)(5). This lawsuit is not between MesoSystems and MesoFuel. Therefore, the common interest privilege applies. See, e.g. Fed. Dep. Ins.

4

Corp. v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000) ("when a lawyer represents

multiple clients having a common interest, communications between the lawyer and any

one (or more) of the clients are privileged as to outsiders but not *inter sese*"); Simpson

v. Motorists Mut. Ins. Co., 494 F.2d 850, 855 (7th Cir. 1974) ("The law of Ohio

recognizes that where the same attorney represents two parties having a common

interest, and each party communicates with the attorney, the communications are

privileged from disclosure at the instance of a third person.  Those communications are

not privileged, however, in a subsequent controversy between the two original

parties.")      The common interest aspect of the attorney-client privilege applies

regardless of whether there is any ownership relationship between the two (or more)

entities asserting the privilege.  However, the case for asserting the privilege is all the

more stronger when, as here, there is an ownership relationship between the entities.

In particular, there is no waiver of attorney-client privilege when parent corporations

and their subsidiaries communicate with each other.  Cary Oil Co., Inc. v. MG Ref., Inc.,

2000 U.S. Dist. Lexis 17587 (S.D.N.Y. 2000) (citing Music Sales Corp. and Tempo Music

Corp. v. Morris, 1999 U.S. Dist. LEXIS 16433, 1999 WL 974025 (S.D.N.Y. 1999));

Duplan Corp., 397 F. Supp. at 1185 ("If a corporation with a legal interest in an

attorney-client communication relays it to another related corporation, the attorney-

client privilege is not thereby waived.").

Moreover, the third party corporation need not be a party to any anticipated or

pending litigation if it shares a common interest with the party to the lawsuit with

respect to the subject matter of the communication between the client and the

attorney.  Duplan Corp., 397 F. Supp. at 1172 (common interest doctrine applies even

5

though the "third parties . . . claiming a community of interest may be distinct legal entities from the client receiving the legal advice and may be a non-party to any anticipated or pending litigation"). In United States v. American Telephone & Telegraph, 86 F.D.R. 603, 616 (D.D.C. 1986), the Court's Pretrial Order in the AT&T antitrust litigation provided that "[f]or purposes of the attorney-client privilege, the 'client' is...the named defendants...the wholly owned subsidiaries and majority-owned subsidiaries...The privilege also applies when an attorney provides legal advice or assistance jointly to AT&T considered collectively and to another corporation if the advice or assistance is on a basis that is confidential among the clients and relates to a matter in which the clients have a substantial identity or legal interest." The Court cited to Duplan Corp., 397 F.Supp 1146, in which the Court found a sufficient community of interest between a patent owner, a French corporation doing business in the United States, and some of its "associates" subsidiaries or sales, manufacturing, and use licensees of the patent, both parties and non-parties so that the attorney-client privilege applies to communications made to or received by them. Consequently, communications between common interest parent-subsidiary, MesoFuel, MesoSytems and their joint attorneys are protected by the attorney-client privilege and are subject to no exception under NMRA Rule 11-503.

WHEREFORE, MesoSystems respectfully prays the Court reconsider its order and in its place issue a protective order prohibiting the Plaintiffs from inquiring into communications between MesoSystems, MesoFuel and their attorneys. Further, MesoSystems respectfully prays the Court to order the relevant portions of the deposition of Ned Godshall be stricken from the transcript of the deposition. Because of

6

the on-going nature of the discovery at issue, because of the sensitive nature of the

privilege invoked, MesoSystems also requests the Court stay all discovery into

MesoSystems and MesoFuel communications pending its ruling on this issue and that it

order expedited briefing of the issue.

DATED:  April 2, 2003.

Respectfully submitted,

**BAUMAN, DOW, McINTOSH & LEÓN, P.C.**

By_____

Christopher P. Bauman
Attorneys for Defendant
PO Box 30684
Albuquerque, New Mexico 87190

**PERKINS COIE, LLP**

By_____

Paul E. Smith
One Bellevue Center, Suite 1800
411   108th Avenue NE
Bellevue, Washington 98004-5584
(425) 453-7317-telephone

I HEREBY CERTIFY that the foregoing Motion for Reconsideration of Order on
Attorney/Client Privilege for Protective Order, For Stay, For Order to Strike and for
Expedited Briefing was faxed and mailed to counsel of record on April 2, 2003.

Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
MODRALL LAW FIRM
PO Box 2168
Albuquerque, NM 87103-2168

_____

Christopher P. Bauman

7

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for
Judge Scott
505 348 2305
Apr 02 2003 4:00pm

<u>Last Fax</u>

| <u>Date</u> | <u>Time</u> | <u>Type</u> | <u>Identification</u> | <u>Duration</u> | <u>Pages</u> | <u>Result</u> |
|------|------|------|----------------|----------|-------|--------|
| Apr 2 | 3:57pm | Received | | 2:14 | 8 | OK |

Result:
  OK - black and white fax

**Bauman, Dow, McIntosh & León, P.C.**
7309 Indian School Road NE
P.O. Box 30684
Albuquerque, NM 87190-0684

Phone: (505)883-3191
Fax: (505)883-3194

# Fax



| To: | Judge Scott, U.S. District Court | From: | Christopher P Bauman |
|---|---|---|---|
| | Lisa Mann, Angelo Artuso | | |
| Fax: | 348-2305 | Date: | April 2, 2003 |
| | 848-1891 | | |
| Phone: | | Pages: | 8, including cover sheet |
| Re: | Seaba, et al. v. MesoSystems, et al. | Acct.: | 22247 |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Attached hereto is a copy of DEFENDANT'S EMERGENCY MOTION FOR RECONSIDERATION OF ORDER ON ATTORNEY-CLIENT PRIVILEGE FOR PROTECTIVE ORDER, FOR ORDER TO STRIKE AND FOR EXPEDITED BRIEFING

*SHOULD YOU HAVE ANY TROUBLE WITH RECEPTION OF THE FOLLOWING PAGES, PLEASE CALL KATHY BENSHOOF AT (505) 883-3191.*

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

*THE INFORMATION IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE UNITED STATES POSTAL SERVICE.  THANK YOU.*

*Hard copy of attached document will ___X___ will not _____ follow via regular U.S. Mail.*

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for
Judge Scott
505 348 2305
Apr 02 2003 3:36pm

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Apr 2 | 3:35pm | Received | | 0:36 | 0 | No fax |

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for
Judge Scott
505 348 2305
Apr 02 2003 3:35pm

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Apr 2 | 3:34pm | Received | | 0:36 | 0 | No fax |

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for
Judge Scott
505 348 2305
Apr 02 2003 3:06pm

<u>Last Fax</u>

| <u>Date</u> | <u>Time</u> | <u>Type</u> | <u>Identification</u> | <u>Duration</u> | <u>Pages</u> | <u>Result</u> |
|------|------|------|----------------|----------|-------|--------|
| Apr 2 | 3:02pm | Received | 5058481891 | 2:16 | 6 | OK |

Result:
  OK - black and white fax

waived by counsel's failure to object to the testimony of Mr. Treat. We are not persuaded by his argument.

Counts 48 through 57 charge Mr. Bernard with making illegal nominee loans. Two of these nominee loans were made to Mr. Treat. At trial, the government called Mr. Treat as a witness against the defendant. The gist of the testimony was that Mr. Treat had asked Mr. Barnard about the legality of making a nominee loan. Mr. Treat testified that Mr. Bernard told him that he (Mr. Bernard) had verified the legality of such a loan with an attorney, Mr. Tom Nally.

Counsel for Mr. Bernard did not object, and did not cross-examine the witness. Later in the trial, the court ruled that Mr. Bernard waived his attorney-client privilege "in regard to the loans made by Bernard to Treat" and permitted the government to call Mr. Nally as a witness. Mr. Nally testified that Mr. Bernard was his client. He denied even discussing the question of the legality of nominee loans with his client.

Fed.R.Evid. 501 pertains to privileges and provides, in part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Citing *State v. Miller*, 105 Wash. 475, 178 P. 459 (1919), and *State v. Powell*, 217 S.W. 35 (Mo.1919), Mr. Bernard argues that he did not waive the attorney-client privilege by failing to object to the testimony of Mr. Treat, a non-party to the privileged communication. He contends that the waiver of the privilege must come from the holder, i.e., the client or the attorney, and not through the testimony of a third party.

[2, 3] Mr. Bernard misperceives the nature of the trial court's ruling. Mr. Bernard willingly sacrificed his attorney-client confidentiality and privilege by voluntarily disclosing the confidential communication to Mr. Treat. Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege. *United States v. Suarez*, 820 F.2d 1158 (11th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 505, 98 L.Ed.2d 503 (1987). Mr. Bernard did this in an effort to convince Mr. Treat that the proposed nominee loan was lawful and proper. Mr. Bernard, having revealed the purported conversation between himself and his counsel in an effort to induce Mr. Treat to engage in a nominee loan, cannot later claim the protection of the attorney-client privilege. Courts need not allow the claim of attorney-client privilege when the party claiming the privilege is attempting to utilize the privilege in a manner that is not consistent with the privilege. 

[4] Furthermore, Fed.R.Evid. 108 provides that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right is affected and a timely objection was made. In the present case counsel fails to persuade us that a substantial right was affected by the testimony. Therefore, we conclude that Mr. Bernard's assertion of error is without merit.

AFFIRMED.



**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**Katherine Joanne VOIGT,**
Defendant-Appellant.

No. 88-1821.

United States Court of Appeals,
Tenth Circuit.

June 7, 1989.

Defendant was convicted in the United States District Court for the Northern Dis-

**1. Witnesses ⊜219(3)**

Defendant sacrificed his attorney-client confidentiality and privilege by voluntarily disclosing confidential communication to nonparty to the privileged communication, and after witness testified that when he asked defendant about legality of making nominee loan defendant told him that defendant had verified legality of loan with named attorney, testimony of attorney denying he had discussed legality of nominee loans with defendant client was accordingly not privileged in prosecution for bank fraud and making false entries as bank officer.

**2. Witnesses ⊜219(3)**

Any voluntary disclosure by client is inconsistent with attorney-client relationship and waives the privilege.

**3. Witnesses ⊜198(1)**

Courts need not allow claim of attorney-client privilege when party claiming privilege is attempting to utilize privilege in manner that is not consistent with privilege.

**4. Criminal Law ⊜1170½(1)**

Defendant's claim of error through admission of testimony by attorney regarding conversations with defendant client was meritless, where it was not established that substantial right was affected by testimony of attorney who denied discussing question of legality of nominee loans with defendant client after witness had testified that defendant told witness he had verified legality of nominee loan with named attorney. Fed.Rules Evid.Rule 103, 28 U.S.C.A.

Kenneth P. Snoke, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., and Ron Wallace, Asst. U.S. Atty., with him on the briefs) for the Northern District of Oklahoma, Tulsa, Okl., for plaintiff-appellee.

Janet L. Cox, of Oklahoma City, Okl., for defendant-appellant.

Before SEYMOUR, BARRETT and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Mr. Bernard appeals the judgment entered following his conviction of sixty-two criminal violations including: one count of conspiracy in violation of 18 U.S.C. § 371 (1982); one count of bank fraud in violation of 18 U.S.C. § 1344 (Supp. II 1984); and sixty counts of making false entries as a bank officer in violation of 18 U.S.C. § 1005 (1982). The case against Mr. Bernard was tried to the same jury which convicted co-defendants Bruce Bonnett, Katherine Joanne Voigt, and Lester Dierksen of the same and related criminal offenses. *See United States v. Bonnett,* 877 F.2d 1450 (10th Cir.1989); *United States v. Voigt,* 877 F.2d 1465 (10th Cir.1989); and *United States v. Dierksen,* No. 88-1712 Order & Judgment, filed June 7, 1989).

Mr. Bernard asserts four errors: (1) counts two through forty-seven charging a violation of 18 U.S.C. § 1344 do not constitute crimes under *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982); (2) the court erred in admitting into evidence a letter written by Edward L. Moore to the FDIC; (3) the court erred in permitting testimony of other wrongful acts under Fed.R.Evid. 404(b); and (4) the court erred in permitting the government to call Mr. Tom Nally, an attorney, to testify regarding conversations with Mr. Bernard. The first three issues are identical to those raised by Mr. Bonnett in his appeal, and were adopted by Mr. Bernard. We discussed and disposed of these three assertions of error in *Bonnett.* In this opinion, we shall discuss the remaining issue, issue no. 4. We AFFIRM.

[1] Mr. Bernard states his fourth issue as follows: "Where the attorney-client privilege was deemed waived, allowing the government to call Tom Nally to testify regarding conversations with Bernard in connection with the Jim Treat loan, under Rule 501 of the Federal Rules of Evidence, fundamental error was committed, denying this defendant a fair trial." Mr. Bernard argues that the court erred in ruling that the attorney-client privilege had been

## U.S. v. BERNARD 1463
Cite as 677 F.2d 1463 (10th Cir. 1989)

He further testified he was to be paid by Mr. Bonnett for making this false affidavit. In a lengthy compound question, counsel for Mr. Bonnett asked Mr. Hammer if he had told the FBI agent it was really Mrs. Hammer who was making the demand for payment. Mr. Hammer replied: "That's possible." [8]

During trial, Mr. Bonnett sought to return an FBI agent to the witness stand for the purpose of testifying that during a pretrial interview Mr. Hammer had told him it was his wife's idea he be paid for making the false affidavit. The court refused to permit Mr. Bonnett to pursue this line of questioning.

Mr. Bonnett argues the evidence of the prior statement was admissible under Fed. R.Evid. 801(d)(1). Again, we are not persuaded. The prior statements of Mr. Hammer were not made under oath, nor were they made at a trial, hearing, or other proceeding. An FBI interview of a witness or criminal suspect is not "another proceeding" under Rule 801(d)(1).

[12] Further, we do not see the inconsistency claimed. He did not deny he may have told the FBI agent Mrs. Hammer was the instigator of the agreement for payment; he responded: "That's possible." In his testimony, Mr. Hammer further explained Mr. Bonnett, Mr. Hammer, and Mrs. Hammer all agreed to the monetary payment. Because he did not deny he may have told the FBI agent the payment was his wife's idea, any further testimony of the FBI agent merely would have been cumulative to that of the witness. In United States v. McCowan, 471 F.2d 361, 364 (10th Cir.1972), we declined to find prejudicial error in the trial court's determination that the offered evidence did not contradict the witnesses testimony. Although we did not expressly so hold in McCowan, we agree with the Seventh Circuit that the determination as to whether the prior testimony is truly inconsistent is a matter within the discretion of the trial judge. United

States v. Jones, 808 F.2d 561, 568 (7th Cir.1986), cert. denied, 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987).

In light of the entire record, we are not persuaded that the trial court abused its discretion in refusing to permit this line of inquiry.

AFFIRMED.



UNITED STATES of America, Plaintiff-Appellee,

v.

Carroll G. BERNARD, Defendant-Appellant.

No. 88-1740.

United States Court of Appeals, Tenth Circuit.

June 7, 1989

Defendant was convicted in the United States District Court for the Northern District of Oklahoma, James O. Ellison, J., of one count of conspiracy, one count of bank fraud, and 60 counts of making false entries as bank officer, and he appealed. The Court of Appeals, Brorby, Circuit Judge, held that defendant sacrificed attorney-client confidentiality and privilege by voluntarily disclosing confidential communication to witness who testified that defendant told witness that defendant had verified legality of nominee loan with named attorney, and testimony of attorney that he had not discussed question of legality of nominee loans with defendant client was accordingly not privileged.

Affirmed.

---

3. Although in Mr. Bonnett's brief, at 34, he indicates that Mr. Hammer denied under oath that he had told the FBI agent the idea for the payment of money had originated with his wife,

and that Mr. Hammer's testimony at trial was in direct conflict with his earlier statement, the record does not bear out his claim.

Honorable Robert H. Scott
April 2, 2003
Page 2

presence of Mrs. Tina Call. Mrs. Call is not an employee, officer,
director, or shareholder of either MesoSystems or MesoFuel.

Regardless of the relationship between MesoSystems and MesoFuel, we
respectfully submit that Defendant has waived any claim of privilege with respect to
the communications between Mr. Call and Mr. Godshall, including communications
that occurred when MesoSystems' counsel was present.

Specifically, Defendant waived any privilege when, following Judge
Schneider's ruling, it permitted Mr. Godshall, without objection and without seeking a
stay of the ruling pending an appeal, to answer questions regarding such
communications. Defendant further waived any privilege, when after discussion with
your Honor it again permitted Mr. Godshall, without objection, to answer questions
regarding his communications with Mr. Call and MesoSystems' counsel. Finally, with
respect to the March 31, 2003 meeting, Defendant waived any privilege for
communications during the time that Mrs. Tina Call was present.

With respect, your Honor, we also submit that Defendant's request for
reconsideration is procedurally defective. Having consented to have Judge Schneider
determine the matter, Defendant should not be seeking reconsideration from your
Honor. In addition, Fed.R.Civ.P 72(a) provides that the District Judge to whom the
case is assigned shall hear any objections to a magistrate judge's ruling on
nondispositive matters. *See also*, 28 U.S.C. §636 (objections to magistrate judge's
ruling are determined de novo by a judge of the district court).

Please let us know if we can provide the Court with any additional
information or assistance regarding this matter.

Sincerely,

Angelo J. Artuso

Angelo J Artuso

cc:     Christopher Bauman via fax (883-3194)
        Attorney for Defendant

0289705



MODRALL SPERLING

L A W Y E R S

Angelo J. Artuso
505.848.1894
Fax: 505.848.1891
aja@modrall.com

April 2, 2003

The Honorable Robert H. Scott
United States Magistrate Judge
333 Lomas, N.W.
Albuquerque, NM 87102

Re:     James Seaba, et al. v. MesoSystems Technology, Inc.. CIV 02-0103

Dear Judge Scott:

We represent the Plaintiffs, James Seaba and Cory Phillips, in the above
referenced case. Pursuant to the Court's instruction during yesterday's deposition of
Mr. Ned Godshall, we have attached authorities related to the question of attorney-
client privilege asserted by the Defendants.

In addition to the attached case, we believe that it is important for the Court to
consider the following facts:

1.     The Defendant consented to have the issue determined by Magistrate
       Judge Schneider. Judge Schneider made his ruling. Defendant did not
       ask for a stay of the ruling pending appeal.  Rather, Defendant's
       counsel, without objection, permitted the witness, Mr. Godshall, to
       answer questions regarding communications between himself and Mr.
       Call,  CEO  of  Defendant  MesoSystems  Technology,  Inc.
       ("MesoSystems"), including communications that occurred in the
       presence of MesoSystems' counsel.

2.     Defendant's  counsel  then  approached  your  Honor  seeking
       reconsideration of Judge Schneider's ruling.

3.     Following your discussion with counsel at the deposition yesterday, Mr.
       Godshall, again without objection by Defendant's counsel, answered
       questions related to communications between himself, Mr. Call and/or
       Defendant's attorney.    We are attempting to secure a copy of this
       portion of the transcript and will forward it to your Honor as soon as we
       receive it.

4.     At a meeting on March 31, 2001, Mr. Call, Mr. Godshall, and
       Defendant's counsel prepared for the upcoming depositions in the

Modrall Sperling
Roehl Harris & Sisk P.A

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505 848 1800
www.modrall.com



## Fax Transmittal
## Cover Sheet



MODRALL SPERLING

Page 1 of 5 6
Date: April 2, 2003
Time: 2:48 PM
Client/Matter #: 65518-112

**Please deliver the following pages to:**

Name:  Honorable Robert H. Scott

City:  Albuquerque, NM

Fax number of recipient:  (505) 348-2305

From: Angelo J. Artuso

Modrall Sperling
Roehl Harris & Sisk, P.A.

Bank of America Centre
Suite 1000
500 Fourth Street NW
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-
2168

Tel: 505.848.1800
Fax: 505 848.1891

Comments:    RE: Seaba, et al. v. MesoSystems

If you have any problem receiving our fax, please call 505.848.1800 Ext. 1894

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED
AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE
UNDER APPLICABLE LAW.  If the reader of this message is not the intended recipient, or the employee or agent
responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution,
or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us
immediately by telephone, and return the original message to us at the address above via the U.S. Postal Service.  Thank
you.