IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

        Plaintiffs,

v.                                       **Civ. No. 02-103  LH/RHS**

MESOSYSTEMS TECHNOLOGY, INC.,

        Defendant.

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND FOR ATTORNEYS' FEES AND COSTS AS A SANCTION FOR PLAINTIFFS' ABUSE OF THE DISCOVERY PROCESS

### I.      INTRODUCTION

Pursuant to Federal Rules of Civil Procedure Rule 37(b)(2)(C) and Rule 37(c)(1), defendant MesoSystems Technology, Inc., ("MesoSystems") hereby moves the Court for an Order dismissing Plaintiffs' Complaint, with prejudice, for Plaintiffs' repeated abuses of the discovery process. As discussed below, Plaintiffs have engaged in a pattern of providing false answers under oath to MesoSystems' written discovery requests. Plaintiffs continued that pattern when they were asked similar questions at their oral depositions. Such behavior constitutes perjury and an attempt to perpetrate a fraud upon both the Court and MesoSystems. Further, and in light of the nature of Plaintiffs' conduct, they have engaged in a pattern of spoliation of evidence. Even further, the nature of the spoliated evidence and the scope of Plaintiffs' spoliation clearly demonstrates Plaintiffs' intention to destroy and hide evidence that is highly damaging to their position in this action. MesoSystems also requests an award of the attorneys' fees

and costs incurred in defending this litigation, including the costs incurred in uncovering Plaintiffs' deception.

## II.     STATEMENT OF FACTS

### A.     Factual Background

Plaintiffs James Seaba and Cory Phillips (collectively, "Plaintiffs") entered into an employment relationship with MesoSystems on or about September 1, 2001. See First Amended Complaint for Damages, Injunctive and Declaratory Relief ("Complaint"), ¶ 28, filed with the Court on September 4, 2002; Defendant's Answer to First Amended Complaint and Counterclaim ("Defendant's Answer"), at Counterclaim, ¶¶ 1-2, filed with the Court on December 16, 2002; Affidavit of Charles Call ("Call Aff."), ¶ 4. Upon commencement of their employment with MesoSystems, Plaintiffs were each issued laptops for use in engaging in MesoSystems-related business. See Call Aff., ¶ 5; Affidavit of Lisa Albrecht ("Albrecht Aff."), ¶ 4. During their employment, Plaintiffs removed from MesoSystems' premises, among other items, an Hewlett Packard CD-writer owned by MesoSystems. See Albrecht Aff., ¶ 4.

On December 6, 2001, Plaintiffs ceased their employment with MesoSystems. See Complaint, ¶ 42; Defendant's Answer, at Answer, ¶ 42, and at Counterclaim, ¶ 8; Call Aff., ¶ 6. On that date, MesoSystems' Chief Executive Officer, Dr. Charles Call, directed, via voicemail, both Seaba and Phillips to return all MesoSystems' property that was then in their possession, including computers, electronic files, emails, papers, and reports. See Call Aff., ¶ 6. Dr. Call further directed Plaintiffs to not delete or copy any files or other information from the MesoSystems-issued laptops and said that the deletion or copying of any such files would constitute destruction of MesoSystems' property. See id. Any use by Plaintiffs of the laptops after the cessation of their employment with MesoSystems was unauthorized. See id., ¶ 7. However, Plaintiffs did not return their MesoSystems-issued laptops at that time. Instead, after MesoSystems and its counsel made repeated demands for the return of the laptops and other MesoSystems-owned

2

items that were then in Plaintiffs possession. Plaintiffs, through their counsel, finally

returned the laptops and other items, including the HP CD-Writer, on January 30, 2002,

almost eight weeks after the cessation of their employment on December 6, 2001. See

Call Aff., ¶ 8; Albrecht Aff., ¶ 5, and Ex. A.

**B.      In the Time Between the Cessation of Plaintiffs' Employment With
          MesoSystems and the Return of the Laptops to MesoSystems, Plaintiffs
          Accessed, Copied, and Deleted Numerous Files and Electronic Data From
          Their MesoSystems-Issued Laptops.**

Before and in preparation for regaining possession of the laptops, MesoSystems

set up and implemented a strict chain of custody procedure. See Albrecht Aff., ¶¶ 6-8.

When the laptops were delivered to MesoSystems on January 30, 2002, MesoSystems

secured the laptops in a locked cabinet on company premises. See id., ¶ 8. On February

11, 2002, MesoSystems sent, via UPS, the laptops to New Technologies Armor, Inc.

("NTI"), a company specializing in the examination of computer-generated files and

media. See id., ¶ 9; Affidavit of Anton Litchfield ("Litchfield Aff."), ¶¶ 1 and 5, and Ex.

A. On February 12, 2002, NTI received the two laptops, which it then secured and stored

in NTI's evidence room. See Litchfield Aff., ¶¶ 6-7. From the time that Plaintiffs

returned the computers to MesoSystems until MesoSystems sent the computers to NTI,

no one turned on the computers or altered them in any way. See Albrecht Aff., ¶ 10.

In January 2003, NTI began its examination of the contents of the hard drives

contained on the laptops. See Litchfield Aff., ¶ 7. First, NTI made backup copies of the

hard drives (essentially an electronic fingerprint of the original hard drives) from each

laptop and used the backup copies in its examination. See id., ¶¶ 7-8. After NTI made

the backup copies, it returned the original hard drives to the laptops and returned the

laptops to the secured storage room. See id., ¶ 7. NTI then conducted an examination of

the backup hard drives from each laptop to determine their contents and the activity

performed on them during the period between December 6, 2001, Plaintiffs' last day of

employment, and January 30, 2002. the date Plaintiffs returned the laptops to MesoSystems.  See id., ¶ 8.

NTI's examination of the hard drives shows that numerous files were accessed (i.e., opened) and/or deleted between December 6. 2001. and January 30. 2002.  See Litchfield Aff., ¶ 18.  For example. Seaba's hard drive indicates the following:

- 829 files or folders were flagged as deleted from the first partition of the hard drive on or after December 6, 2001.  See Litchfield Aff., ¶ 19.

- 42 .doc files (Microsoft Word documents) were accessed from the first partition of the hard drive on or after December 6. 2001. four of which were deleted during that time.  See id.

- 44 .xls files (Excel spreadsheets) were accessed from the first partition of the hard drive on or after December 6, 2001. one of which was deleted on or after December 6. 2001.  See id.

- 595 .lnk files (shortcuts to files) were accessed from the first partition of the hard drive on or after December 6. 2001.  See id.  An examination of the .lnk files shows that on January 28, 2002. someone accessed files related to the HP CD-Writer on Seaba's laptop.  See id., ¶ 23.

- 114 files or folders were accessed from the second partition of the hard drive on or after December 6, 2001. the majority of which were Microsoft Office files.  111 files or folders on the second partition were flagged as deleted on or after December 6, 2001.  See id., ¶ 19.

- Based on the review of the .lnk files, two Microsoft Office files (.doc) were accessed from floppy disks on or after December 6, 2001.  See id.

Similarly, Phillips' hard drive indicates the following:

- 327 files or folders were flagged as deleted from the first partition of the hard drive on or after December 6, 2001.  See Litchfield Aff., ¶ 20.

- 94 .doc files were accessed from the first partition of the hard drive on or after December 6, 2001, with 49 flagged as deleted after December 6, 2001.  See id.

- 44 .xls files were accessed from the first partition of the hard drive on or after December 6, 2001, with 17 flagged as deleted on or after December 6, 2001. See id.

- At least 440 .lnk files were accessed from the first partition of the hard drive on or after December 6, 2001, at least 18 of which were deleted on or after December 6, 2001.  See id.  An examination of the .lnk files shows that on December 11, 2001 someone accessed files related to the HP CD-Writer on Phillips' laptop.  See id., ¶ 22.

- Based on a review of the .lnk files, 18 Microsoft Office documents were accessed from floppy disks and a CD-Rom called "Back-Up #1" on or after December 6, 2001.  See id., ¶ 20.

The nature of the files accessed and deleted is also very telling.  For example, Plaintiffs accessed and/or deleted the following files:

- Letter to Dr. L.-D. Chen, Professor at University of Iowa, from Seaba (file name: L.D.-Memo.11.01.doc, last accessed on Seaba's hard drive on December 7, 2001, deleted).  See Litchfield Aff., ¶ 26, and Ex. B.  This letter referenced Seaba as the President/CEO of Red Path Energy.

- Memo to Dr. Levi Thompson, Professor at University of Michigan, from Phillips (file name: Levi 11-23 Memo #2.doc, last accessed on Seaba's hard drive on December 7, 2001 and on Phillips' hard drive on November 30, 2001, both deleted).  See id., ¶ 26, and Exs. C and D.  This letter referenced Phillips as Vice President and Seaba as President/CEO of Red Path Energy.

- MesoSystems task report detailing an activity report from Optomec, Inc., related to a MesoSystems project (file name: MesoSystems task report.doc,

5

last accessed on Seaba's hard drive on December 7, 2001, deleted). See id., ¶ 26, and Ex. E.

- Letter from Thomas Payne of Power Factors regarding Seaba's formation of Red Path Energy (file name: MmdkRedPathproposal112801-draft4.doc, last accessed on Seaba's hard drive on December 7, 2001, deleted). See id., ¶ 26, and Ex. F.

- Draft of a business plan for an entity formed to compete with MesoSystems' spin-off company (file name: Red Path BP.12.1.01.doc, last accessed on Seaba's hard drive on December 7, 2001, deleted). See id., ¶ 26, and Ex. G.

- Two versions of lists of expense projections for MesoFuel (file name: MesoFuel Expense Projections Alpha Phase 6-02v1.xls, last accessed on Seaba's hard drive on December 22, 2001, and on Phillips' hard drive on December 7, 2001, not deleted; and file name: MesoFuel Expense Projections Alpha Phase 6-02.xls, last accessed on Phillips' hard drive on December 7, 2001, not deleted). See id., ¶ 26, and Exs. H and I.

- Draft of a separation agreement between MesoSystems and Seaba (file name: BA010870053B SEABAv1.doc, last accessed on Seaba's hard drive on December 7, 2001, deleted). See id., ¶ 26, and Ex. J.

- Confidentiality agreement between MesoSystems and Team Specialty (file name: NDA Team Specialty.doc, last accessed on Phillips' hard drive on December 7, 2001, deleted). See id., ¶ 26, and Ex. K.

- Summary of events related to Plaintiffs' employment with MesoSystems (file name: Summary of Events.doc, last accessed on Phillips' hard drive on December 7, 2001, not deleted). See id., ¶ 26, and Ex. L.

Because Plaintiffs had previously borrowed an HP CD-Writer from MesoSystems prior to the cessation of their employment and did not return it until January 30, 2002, see Albrecht Aff., ¶¶ 4-5, NTI also examined the hard drives to determine if Plaintiffs had

used the CD-burner, which is a hardware device that allows users to burn (i.e., copy) files\folders to a CD-Rom, during the relevant time period. See Litchfield Aff., ¶ 22. On Windows registry on Phillips' laptop, NTI found an entry for an HP CD-Writer · 8200F. See id. NTI also found a directory, which was created on Phillips' computer on November 5, 2001, containing files that allow a user to burn files to a CD. See id. The executable file (the file that launches the software) that allows a user to burn CDs was last accessed on Mr. Phillips' computer was December 11, 2001. See id. Similarly, Seaba's registry also had an entry showing an HP CD-Writer + 8200f had been installed on it. See id., ¶ 23. The directory on Seaba's computer that contains files that allow a user to burn files to a CD was created on November 11, 2001. See id. The executable file was last accessed on January 28, 2002. See id.

NTI also conducted an examination related to whether Plaintiffs had printed any files after December 6, 2001. See Litchfield Aff., ¶ 24. In that examination, NTI determined that the following files\items on Seaba's computer were printed on January 24, 2002:

- RTI_MesoSystems_1101.pdf
- Schedule_1101.doc
- Agenda 11-19.doc
- Paper 352a.doc .
- MesoFuelSuccessPlan.xls
- Travel Schedule.doc CJC 11-25-01
- HydrogenBulletin.doc
- BA010870053B Seaba v1
- And 50 Microsoft Outlook Items

See id. For Phillips' computer, many of the files that indicate whether a file has been printed had been overwritten, so a determination could not made as to what had been printed from that computer. See id., ¶ 25. However, NTI was able to determined that on

November 28, 2001, the file entitled "Air Force Solicitations.doc" was printed from

Phillips' computer.  See id.  On November 11, 2001 the file entitled "http://www.

svce.ac.in/~msubbu/LectureNotes/PetroleumTech/SulfurOxygenNitrogen.htm" was

printed from Phillips' computer.  On December 3, 2001, the following items were printed

from Phillips' computer:

- http://www.lanl.gov/projects/ccte/factsheets/noxso/remflugasdemo
  .html

- http://process-economics.com/Reports/peprpt063.htm

- http://www.iea-coal.org.uk/CCTdatabase/fgd.htm

See id.


**C.     In Connection with these Proceedings, Plaintiffs Repeatedly Provided False
        Statements Relating to Their Activities With Respect to the Laptops after the
        Cessation of Their Employment with MesoSystems.**

**1.      Plaintiffs Made False Statements in Their Answer to MesoSystems'
         Counterclaim.**

On December 16, 2002, MesoSystems filed a counterclaim against Plaintiffs.  In

its counterclaim, MesoSystems alleged that Plaintiffs had wrongfully removed certain

MesoSystems-owned property, including electronic files, from MesoSystems' premises.

See Defendant's Answer, at Counterclaim, ¶¶ 15-16.  In Plaintiffs' reply, Plaintiffs

responded to these allegations by denying that they had removed any MesoSystems-

owned property, including electronic files, from MesoSystems' premises.  See Plaintiffs'

Answer to Defendant's Counterclaim, at ¶ 14, filed with this Court on or about January

28, 2003.  NTI's subsequent examination of the hard drives of the laptops, as described

above, indicates that Plaintiffs' statement is false.

**2.      Plaintiffs Made False Statements in Their Written Answers to
         MesoSystems' Interrogatories.**

On August 16, 2002, Plaintiffs were each served with MesoSystems' First Set of

Interrogatories, Requests for Production, and Requests for Admission.  See Affidavit of

Alberto León ("León Aff."), ¶ 2.  In the discovery requests, MesoSystems propounded the following interrogatory to both Plaintiffs:

> **INTERROGATORY NO. 10:**  State whether you deleted or caused to be deleted any files, software, data or information from the hard drive of your MesoSystems laptop computer and/or any other MesoSystems computer, identifying the names and contents of said files, software, data and/or information, and the date(s) such deletion(s) occurred.

Id., Exs. A and B at Interrogatory No. 10.

Phillips answered this interrogatory as follows:

> **ANSWER:**  Yes, I am sure I have deleted files like any normal user of a computer.  However, these files are always personal related arising from emails or brought onto the system via floppy disk, CD etc.  I cannot recall the dates on which I would have deleted such material nor any other details requested in this Interrogatory.

Id., Ex. A, at Answer to Interrogatory No. 10.  Seaba answered the same Interrogatory No. 10 as follows:

> **ANSWER:**  Plaintiff objects to this Interrogatory to the extent that it seeks to imply that Plaintiff has ever wrongfully deleted any files, software, data, or information belonging to MesoSystems.  Plaintiff denies any such allegation or implication.  Subject to and without waiving this objection, Plaintiff states: I deleted e-mail on a daily basis.  I do not specifically recall deleting any other type of files during my employment with MesoSystems. Upon being fired, I did not delete any e-mail or other files from MesoSystems' laptop computer.  I gave the computer back to MesoSystems with all files intact, including the e-mail.

Id., Ex. B, at Answer to Interrogatory No. 10 (emphasis added).  NTI's examination of the hard drives indicates that Plaintiffs' answers were false.

Both Seaba and Phillips executed before a notary a Verification acknowledging the veracity of the answers to the interrogatories.  See León Aff., ¶ 2, and Exs. A and B, at Verification Page ("[Plaintiff], upon being duly sworn, states that he had read the foregoing answers to interrogatories and knows the contents thereof, and the statements contained therein are true to the best of his knowledge and belief.").

### 3.    Plaintiffs Provided False Statements in Their Depositions.

MesoSystems took Plaintiffs' depositions in connection with the discovery process in this case. Seaba was deposed on April 2, 2003, and Phillips was deposed on April 3, 2003. Both Seaba and Phillips were sworn in by the court reporter prior to their deposition testimony, and both acknowledged that they understood that they were under oath. See Deposition of James Seaba ("Seaba Dep."), at 4:7-9, 5:12-17, relevant portions of which are attached as Exhibit C to the León Affidavit; Deposition of Cory Phillips ("Phillips Dep."), at 4:1-3, 4:16-20, relevant portions of which are attached as Exhibit D to the León Affidavit.

At their depositions, Plaintiffs were each asked questions regarding their activities on the laptop computers after December 6, 2001, and until they returned the laptops to MesoSystems on January 30, 2002. Phillips testified as follows:

> Q:    Now that we're into it, and we'll go into it in more detail, but, you know, it just occurred to me, between the time of the cessation of your employment at MesoSystems on December 1st – December 6th, I'm sorry, 2001, and the time that the computers were returned to MesoSystems on January 30th, 2002, did you erase or delete any files on that laptop?
>
> A:    No, I did not.
>
> Q:    Any e-mails?
>
> A:    No e-mails, no files.
>
> Q:    Any cap tables?
>
> A:    No.
>
> Q:    Any work product that you generated in connection with MesoSystems?
>
> A:    No, sir.
>
> Q:    You did not delete any files whatsoever?
>
> A:    Not that I recall, no, sir.
>
> Q:    Did you copy any files into another medium?
>
> A:    Not that I recall that I did.

10

Q:      Did you do anything with that hard drive, reconfigure it or do anything at all, in that period of time?

A:      I gave it back.  That's about the extent.

Phillips Dep. at 43:11-44:8.  Phillips further testified:

Q:      Starting with "Hello Cory" and so forth.

A:      Okay.  "Hello Cory.  One, one more message.  If de   Please do not delete files from your hard drive or from your mail system. Everything on the computer is company property.  Its [sic] company files and deleting them is effectively just destroying company property and I don't think you want to go down that path.  Please bring everything in 'as is' and, hopefully, we'll see you by 3.  Take Care."

Q:      Did you follow these instructions that were given to you by Dr. Call?

        MR. ARTUSO: Objection, compound.  Which instructions?

        MR. LE[Ó]N: "Do not delete files from your hard drive or from your mail system."

A:      Yes.

Q:      So what did you do with the computer after receiving this message?

A:      Stopped using it.  It's a termination, so I stopped using the computer.  It's time to stop using it.

Phillips Dep. at 129:12-130:6.

Scaba testified in his deposition as follows:

Q:      So your testimony today, just so that we're clear, is that there were no reports on deliverables in writing that were generated as a result of your technical work for MesoSystems Technology between September 1st, 2001, and December 5th, 2001, by you or that you were involved in?

A:      I believe that to be correct.

Q:      So, then, there would be no such reports or any kind of work product in the laptop computer that MesoSystems Technology provided to you and that you returned later to MesoSystems Technology?

A:      Yeah, that would be correct.

Q:      And you would not have erased any such reports from that computer after December 5th, 2001?

A.      Definitely not.

Q.      Did you erase anything after December 5th, 2001, from the laptop computer that MesoSystems Technology provided to you?

A:      No, I did not erase anything on --

Q:      Not reports, not business plans, no e-mails, nothing after December 5th, 2001?

A:      I did not erase anything from that laptop computer.

Q:      Which would be consistent, then, with your response to interrogatory number 10? And I'm going to show it to you and allow you to read the question and the answer and make sure that your testimony today is consistent with that response there.

A:      Oh, can I read this?

Q:      Sure.

A:      It helps. "State whether you deleted or caused to be deleted any files, software, data or information from the hard drive of your MesoSystems' laptop computer and/or any other MesoSystems' computer, identifying the names and contents of said files."

All right. So, to me, this represented from the day I was hired to the day I gave the computer back. That is the way I interpret that.

Q:      Okay.

A:      You asked me --

Q:      Okay. No, that's fine. This is a different question, and your answer here was that you deleted e-mails on a daily basis, but do not recall deleting any other type of files during your employment at MesoSystems.

A:      Uh-huh.

Q:      And your testimony today is that, after December 5th, you didn't delete anything?

A:      Yeah.

Q:      That's your testimony?

A:      That's -- I don't recall deleting anything.

Q:      Did you copy any files into a different medium after December 5th, 2001 --

A:      No, I did not.

Q:      -- from that computer?

Was that computer in your sole possession and custody after December 5th, 2001, and the time -- between December 5th, 2001, and the time that it was returned to MesoSystems?

MS. MANN: No, because it was in my custody for some of the time.

MR. LEÓN: Well, yeah, that's right, but I'm going to -- I'm asking him.

A:      I guess that --

Q:      Maybe a better way to approach this is: What happened with that computer after December 5th, 2001:

A:      I put it in a box.

Q:      And at some point you gave it to your counsel?

A:      Correct.

Q:      When was that, more or less? A month after? Two months after? Three months after?

A:      Oh, it was in January. Mid-January, I believe.

Q:      So as far as you are concerned, there was no deleting or erasing of any files in that computer after December 5th, 2001, from the time that you had it in your possession?

A:      Correct.

Scaba Dep. at 149:16-152:17.

## III.      ARGUMENT

### A.      Standard for Sanctions for Discovery Abuse

Rules 26 through 37 of the Federal Rules of Civil Procedure govern the discovery process in federal district courts. The discovery rules require parties and their attorneys to certify under oath the veracity of the discovery responses. See, e.g., Fed. R. Civ. P. 26(g)(2) ("The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is: (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of

existing law; [and] (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; . . . ."); Fed. R. Civ. P. 30(c) ("The officer before whom the deposition is to be taken shall put the witness on oath or affirmation and shall personally, or by someone acting under the officer's direction and in the officer's presence, record the testimony of the witness."); Fed. R. Civ. P. 33(b)(1) ("Each interrogatory shall be answered separately and fully in writing under oath . . . ."). Both Plaintiffs certified under oath that their discovery responses were true. See León Aff., Exs. A and B, at Verification page; Seaba Dep. at 4:7-9, 5:12-17; Phillips Dep. at 4:1-3, 4:16-20.

Furthermore, Rule 37(d) provides that where a party fails to serve a written response to a discovery request, the court may make such orders in regard to the failure as are just, including requiring the party failing to act, or his attorney, or both, to pay the attorneys' fees and expenses caused by the failure. Where a response to a discovery request contains false information, Rule 37(d) sanctions are still available. See EEOC v. Sears, Roebuck & Co., 114 F.R.D. 615, 626 (N.D. Ill. 1987) (where a response to a discovery request contains "incorrect, incomplete and misleading data[,] Rule 37(d) is therefore still applicable, since a response containing misrepresentations . . . is as good as no response at all.") (citations omitted), aff'd, 839 F.2d 302 (7th Cir. 1988).

Rule 37 allows the Court to impose a wide range of sanctions to curb discovery abuse. See Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778 (1976)). One of the sanctions available under Rule 37 is for an "order striking out pleadings or parts thereof . . . or dismissing the action or proceeding or any part thereof." "When choosing among possible sanctions, the district court may consider the deterrent value of an order of dismissal on future litigants as well as on the parties." Wyle, 709 F.2d at 589 (citing Nat'l Hockey League, 427 U.S. at 642-43). The Tenth Circuit has held that a district court has the "discretion to dismiss a case if, after considering all the relevant

14

factors, it concludes that dismissal alone would satisfy the interests of justice."
Ehrenhaus v. Reynolds, 965 F.2d 916, 918 (10th Cir. 1992). The factors a court should
consider in determining whether to dismiss a case as a sanction for discovery abuse
include the following:

> (1) the degree of actual prejudice to the defendant; (2) the amount of
> interference with the judicial process; . . . (3) the culpability of the
> litigant; (4) whether the court warned the party in advance that
> dismissal of the action would be a likely sanction for
> noncompliance; and (5) the efficacy of lesser sanctions.

Id. at 921 (alterations in original) (citations omitted); see also Creative Gifts, Inc. v. UFO,
235 F.3d 540, 549 (10th Cir. 2000) (affirming this Court's dismissal of defendant's
counterclaims after consideration of factors related to defendant's discovery abuses).
These "factors do not constitute a rigid test; rather, they represent criteria for the district
court to consider prior to imposing dismissal as a sanction." Ehrenhaus, 965 F.2d at 921.
Furthermore, although "[a] district court should ordinarily consider and address all of the
above factors before imposing dismissal as a sanction . . . often some of these factors will
take on more importance than others." Id. at 922.

## B.   Plaintiffs' Complaint Should Be Dismissed for Their Abuse of the Discovery Process

Plaintiffs have provided multiple false statements in this action, both in their
responses to discovery requests and in their reply to MesoSystems' counterclaim related
to their activities with respect to their MesoSystems-issued laptops. Plaintiffs were asked
in interrogatories and in their depositions whether they had deleted any files from their
laptops. Each time, Plaintiffs responded that they had not. Furthermore, Plaintiffs
certified under oath that their responses to the discovery requests were true. However, as
the information recovered from NTI reveals, Plaintiffs' statements that they did not delete
or access any files on their laptops after the cessation of their employment on December
6, 2001, were false. Plaintiffs' statements were intended to deceive MesoSystems and

this Court for the specific purpose of hiding evidence that is highly prejudicial to Plaintiffs' case.

The purpose of discovery is "to remove surprise from trial preparation so that parties may obtain the evidence necessary to evaluate and resolve their dispute," and to "allow ultimate resolution of disputed issues to be based on full and accurate understanding of true facts." 6 James Wm. Moore, Moore's Federal Practice § 26.02, at 26-26.3 (3d ed. 1997). The rules governing discovery inherently require honesty on the part of persons responding to the discovery requests. See, e.g., Fed. R. Civ. P. 26(g)(2), 30(c), and 33(b)(1).

Moreover, the New Mexico state courts have interpreted their own Rule 1-037 (the language of which is substantially similar to the language in Fed. R. Civ. P. 37) to allow for dismissal as a sanction for repeated dishonesty in the discovery process.[1] See, e.g., Reed v. Furr's Supermarkets, Inc., 129 N.M. 639, 645-46, 11 P.3d 603 (Ct. App. 2000) (dismissing action as sanction for "an intentional pattern of deception" by plaintiff in providing false and misleading answers to interrogatories and deposition questions). The standard applied in New Mexico state courts is as follows: "[T]he touchstone to the propriety of dismissal [for false answer to an interrogatory or to a deposition question] is whether the deceitful party acted willfully, in bad faith, or in 'callous disregard for its [discovery] responsibilities.'" Id. at 645 (quoting Medina v. Found. Reserve Ins. Co., 117 N.M. 163, 166, 870 P.2d 125, 128 (1994)). "A willful violation . . . occurs when there is a conscious or intentional failure to comply with the rule's requirements." Id. at 643 (quoting Medina, 117 N.M. at 166). Intentional deceit in the discovery process "compromise[s] the function of discovery and the integrity of the court," circumvents discovery as a "mechanism for narrowing the issues and ascertaining the facts."

---

[1] Although New Mexico state court opinions are not dispositive on federal procedure, state court jurisprudence is instructive in the absence of applicable federal law, particularly in cases such as this where the state procedural rule is substantially similar to the federal rule. See KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 n.7 (1st Cir. 2003) ("Given the paucity of federal case law, we will look to states whose rules of procedure mirror the Federal Rules of Civil Procedure.").

"adversely affect[s] the integrity of the truth-seeking function of the . . . court," and is significant to the discovery process. Id. at 647-48 (citations omitted). Repeated misrepresentations or false answers demonstrate an intentional failure to comply with the requirements of the discovery rules, "indicate[] a pattern of providing false and misleading answers and establish[] willfulness and bad faith and open[] the door to the sanction of dismissal." Id. at 644. "When a party has displayed a willful, bad faith approach to discovery, it is not only proper, but imperative, that severe sanctions be imposed to preserve the integrity of the judicial process and the due process rights of the other litigants." Id. at 643 (citations omitted).

To the extent that Fed. R. Civ. P. 37 does not provide for an adequate remedy for Plaintiffs' discovery abuses in this action, the Court has the inherent power to sanction Plaintiffs for their dishonesty. See 6 Moore, supra, § 26.06[2], at 26-35 ("When an appropriate sanction for a specific abuse exists under the Rules, a court may not resort to its inherent sanctioning power but must use the sanctions available under the Rules[:] . . . [h]owever, if the rules are not adequate to the task, the court may rely on its inherent power to provide sanctions."); Wyle, 709 F.2d at 589 ("courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice"). To do so, the Court "must make a finding of willful conduct." 6 Moore, supra, § 26.06[2], at 26-35. Moreover, "the fabrication of evidence or testimony is subject to the court's inherent sanctioning power and dismissal is a potential sanction." Id. § 26.06[2], at 26-36; see also Pope v. Fed. Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (dismissal of action was sanction for fabrication); Vargas v. Peltz & Elliot Mgmt. Servs. Co., 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) (fabrication of evidence may warrant dismissal).

In this case, both Plaintiffs willfully provided false answers to an interrogatory seeking information related to their activities with respect to their MesoSystems-issued computer after the cessation of their employment. Such deception is worse than a failure

to respond because in order to ascertain the veracity of Plaintiffs' representations in their
interrogatory responses and their reply to MesoSystems' counterclaim. MesoSystems was
required to engage a computer examination company to conduct extensive searches of the
hard drives from laptops. The degree of harm involved in lying in an interrogatory
answer has been articulated as follows:

> An interrogatory answer that falsely denies the existence of
> discoverable information is not exactly equivalent to no response. It
> is *worse* than no response. When there is no response to an
> interrogatory or the response is devoid of content, the party serving
> the interrogatory at least knows that it has not received an answer. It
> can move the Court for an order to compel a response . . . . If the
> response is false, however, the party serving the interrogatory may
> never learn that it has not really received the answer to the
> interrogatory. The obstruction to the discovery process is much
> graver when a party denies [the subject of the interrogatory] than
> when the party refuses to respond to an interrogatory asking [about
> the subject of the interrogatory.

Sandoval v. Martinez, 109 N.M. 5, 8-9, 780 P.2d 1152, 1155-56 (Ct. App. 1989); see also

Evanson v. Union Oil Co., 85 F.R.D. 274, 277 (D. Minn. 1979) ("Giving a false answer

[to an interrogatory] is itself sufficient evidence of bad faith. . . . An implicit condition in

any order to answer an interrogatory is that the answer be true, responsive and complete.

A false answer is in some ways worse than no answer; it misleads and confuses the other

party.").

    The results of the examination of the hard drives revealed that Plaintiffs had in

fact used the laptops after December 6, 2001, and deleted numerous files that were work

products generated on behalf of MesoSystems for which MesoSystems paid Plaintiffs to

develop, or were evidence of Plaintiffs' wrongdoing while still employed with

MesoSystems. The examination of the hard drives also revealed that on December 11,

2001, and January 28, 2002, Phillips and Seaba, respectively, also used the HP CD-

Writer, which allows files to be copied to a CD, that they had "borrowed" from

MesoSystems. The information contained on the computers at issue is not only relevant,

but crucial, to this litigation. The fact that Plaintiffs made false statements on a third

occasion in response to questions at their depositions further demonstrates the willful and intentional nature of Plaintiffs' deceit. See Reed, 129 N.M. at 643 ("Both forms of discovery abuse [a false answer to an interrogatory and a false answer to a deposition question] undermine the discovery process and demonstrate either 'a willful, intentional and bad faith attempt to conceal evidence or a gross indifference to discovery obligations.'") (quoting Medina, 117 N.M. at 166). Moreover, the documents erased constitute important evidence of wrongful activities Plaintiffs engaged in during their employment at, and after they left, MesoSystems. Accordingly, the fact that Plaintiffs deleted files, and the nature of the files erased, in and of itself constitutes spoliation of evidence and indicates Plaintiffs' intent to destroy evidence and cover their deception before MesoSystems and the Court.

Specifically, the nature and scope of the files Plaintiffs deleted shows conclusively that they stopped working for MesoSystems and started working for themselves before December 6, 2001. Plaintiffs' spoliation of evidence also shows the type of activities Plaintiffs engaged in to further their own personal interest and the interest of the company they formed to compete with MesoSystems (and MesoSystems' to-be-formed spin-off company) to MesoSystems' detriment. Plaintiffs' attempts to destroy evidence and the deceit that followed, as corroborated by NTI's examination of the computers, completely undermine Plaintiffs' case against MesoSystems. Plaintiffs' actions were highly prejudicial to MesoSystems as a defendant in this action, completely undermine this Court's authority and mock the judicial process. That is precisely why Plaintiffs' deception and perjury justify the highest level of sanctions, including the Court's dismissal of Plaintiffs' Complaint in this action.

Given Plaintiffs' willful, bad faith and gross indifference to their discovery obligations, their perjurous testimony during the discovery process, attempts to perpetrate a fraud upon MesoSystems and the Court, and their spoliation of important evidence by deleting relevant files from their MesoSystems-issued computers, MesoSystems requests

that the Court grant its motion and sanction Plaintiffs by dismissing their complaint with prejudice.  Such a sanction is particularly appropriate in this case, since the foundation of Plaintiffs' case is based on several scenarios requiring the fact finder to assess Plaintiffs' credibility related to the facts and circumstances surrounding their interactions with MesoSystems' principals, interactions that led to the cessation of their employment. Further, the overwhelming majority of counts in Plaintiffs' complaint alleges uncorroborated representations and promises Plaintiffs supposedly received from MesoSystems' representatives.  MesoSystems is now in the position of being forced to prepare its case not knowing whether Plaintiffs have provided other false information, the veracity of which is not so easily verifiable.

Plaintiffs' deception is significant to the discovery process in this case, as they have provided false testimony under oath, i.e., perjured themselves, and attempted to perpetrate a fraud upon the Court and MesoSystems.  Such conduct compromises the integrity of both the discovery process and the truth-seeking function of the Court, and it circumvents discovery as a mechanism for narrowing the issues and ascertaining the facts.  Because Plaintiffs repeatedly lied, under oath, about facts that are easily verifiable, their credibility is significantly undermined for the remainder of the proceedings. Dismissal of Plaintiffs' complaint is thus warranted in this case.

**C.    MesoSystems Is Entitled to Recover Its Attorneys' Fees and Costs in Defending this Lawsuit and Uncovering Plaintiffs' Deceit**

A false answer to an interrogatory is "equivalent to, if not worse than, failing to answer at all" and "a false answer in a deposition is akin to a 'failure . . .. to attend a . . . deposition.'" Reed, 129 N.M. at 643 (quoting N.M. Dist. Ct. R. Civ. P. 1-037(D), the language of which is substantially similar to Fed. R. Civ. P. 37(d)); see also Life Music, Inc. v. Broadcast Music, Inc., 41 F.R.D. 16, 24 (S.D.N.Y. 1966) ("An 'I don't remember' answer, is in effect, a representation that the party has no present recollection and is therefore unable to testify.  If that representation is false (that is, the party does in fact

have a present recollection), and 'I don't remember' answer is nothing more than a refusal to answer."). A party who fails to answer an interrogatory or fails to attend a deposition may be sanctioned, and such sanction is to include an award of attorneys' fees and costs caused by the failure, unless the court finds that the failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(d). In addition, courts have allowed the recovery of costs incurred in investigating the veracity of interrogatory answers. See Evanson, 85 F.R.D. at 278 ("[defendant] will be sanctioned . . . by being required to pay plaintiffs' attorneys' fees and expenses in connection with the investigation of the interrogatory answers").

Under no circumstances can Plaintiffs' false testimony under oath be justified, and no circumstances would make an award of expenses unjust. Plaintiffs have displayed a willful, bad-faith approach to discovery, as evidenced by their repeated false answers to MesoSystems' discovery. Instead of being able to rely on the discovery process to learn the relevant facts of this action, as the Federal Rules of Civil Procedure contemplate, MesoSystems had to engage a company specializing in the examination of computer-generated files and media. After doing so, MesoSystems learned that Plaintiffs had made false statements in their reply to its counterclaim and had lied in their responses to MesoSystems' discovery requests. Therefore, MesoSystems requests that the Court sanction Plaintiffs by awarding MesoSystems its attorneys' fees and costs in defending this action, including the costs incurred in uncovering Plaintiffs' deceit, to be paid by Plaintiffs.

## IV.   CONCLUSION

For the foregoing reasons, MesoSystems respectfully requests that the Court grant its motion and sanction Plaintiffs for their pattern of providing false answers under oath to MesoSystems' discovery requests and deposition questions by dismissing their complaint, with prejudice, and award MesoSystems its attorneys' fees and costs, including the costs paid to NTI to uncover Plaintiffs' deceit.

DATED: April 22, 2003.

BAUMAN, DOW, McINTOSH & LEÓN, P.C.

By: _____

Alberto A. León
Christopher P. Bauman
Attorneys for Defendant
P. O. Box 30684
Albuquerque, New Mexico 87190-0684
(505) 883-3191

I HEREBY CERTIFY that a true
and correct copy of the foregoing
was hand delivered to counsel of
record this 22nd day of April, 2003.

_____
Alberto A. León

22