IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

03 MAY 27 PM 4:21

CLERK-ALBUQUERQUE

JAMES SEABA and
CORY PHILLIPS,

Plaintiffs,

v. Civ. No. 02-103

LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

Defendant.

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO CONDUCT A COMPLETE SEARCH OF ALL ELECTRONIC ASSETS FOR DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS AND TO PRODUCE LAPTOP COMPUTER FOR INSPECTION**

Plaintiffs respectfully request that the Court enter an Order, pursuant to Fed.R.Civ.P. 37, compelling Defendant to conduct a complete search of all of its computer files, servers, work stations, and other electronic assets for documents responsive to Plaintiffs' Requests for Production of Documents, and for costs and fees associated with bringing this Motion. As grounds for this Motion, Plaintiffs state:

On July 12, 2002, Plaintiff James Seaba served his First Request for Production to Defendant. Defendant served its objections and Responses to Plaintiff James Seaba's First Request for Production on August 13, 2002.

84



On September 6, 2002, Plaintiff Cory Phillips served his First Request for Production to Defendant.    Defendant served its objections and Responses to Plaintiff Cory Phillips' First Request for Production on October 22, 2002.

On April 4, 2003, Plaintiffs' counsel took the deposition of Dr. Charles Call, Defendant's CEO.    At his deposition, Dr. Call testified that he did not know whether MesoSystems searched any of its archived computer and electronic files for documents responsive to Plaintiffs' discovery requests.  *See* Exhibit A hereto, deposition of Charles Call, p. 54, ln. 12 – 23.    Dr. Call later testified that the laptop computer that he was using in 2001 had "crashed" and that none of his e-mail or other electronic files were backed up on MesoSystems' server.  *Id.*, p. 106, ln. 1 to p. 108, ln. 9.  Significantly, all of the events that are at issue in this case occurred during 2001.  Dr. Call then testified that he thought that the laptop he had been using in 2001 was thrown away, although MesoSystems did try to recover some data from it.  *Id.*, p. 108, ln. 10 to 18.

In response to this information, Plaintiffs' counsel noticed a Rule 30(b)(6) deposition for the MesoSystems' representative who could address electronic data storage issues.  On May 16, 2003, Plaintiffs' counsel took the deposition of Ms. Samantha League who was designated by Defendant to testify on its behalf in response to the Rule 30(b)(6) Notice.  At her deposition, Ms. League testified that MesoSystems' server contains historical data going back through 2001.  *See* Exhibit B hereto, Deposition of Samantha League, p. 24, ln. 6 – 9; and p. 24, ln 24 to p. 25, ln. 6.    In response to Plaintiffs' discovery requests in this case, Ms. League was asked to coordinate the search for certain electronic

documents. She accomplished this by asking various individuals to search on their computers for responsive e-mails. *Id.*, p. 32, ln. 9 – 19. Ms. League did not give any of these individuals specific instructions on which files they should search in. *Id.*, p. 32, ln. 20 to p. 33, ln. 3. Significantly, Ms. League conceded at her deposition that she does not know whether the individuals she contacted searched their deleted items folders, their temporary folders, their archive folders, or their "sent item" folders for responsive materials. *Id.*, p. 33, ln. 4 to p. 34, ln. 9; and p. 35, ln. 13 – 16.

Ms. League further testified that she did not conduct a complete search of MesoSystems' server for responsive documents. *Id.*, p. 40, ln. 5 to p. 44, ln. 13.

Contrary to Dr. Call's testimony, Ms. League testified that his "crashed" laptop is still available in Albuquerque. *Id.*, p. 44, ln. 23 to p. 45, ln. 7. She also testified that she was able to retrieve at least some documents from this computer. *Id.*, p. 45, ln. 8 to p. 46, ln. 7. While searching for documents responsive to Plaintiffs' discovery requests, however, she did not search the documents that she had been able to retrieve from Dr. Call's computer. *Id.*, p. 46, ln. 11 – 23.

By letter dated May 22, 2003, Plaintiffs' counsel asked counsel for Defendant to provide assurance that Defendant would conduct a complete search of its electronic files for documents responsive to Plaintiffs' prior discovery requests. *See* Exhibit C hereto, letter dated May 22, 2003 from Angelo J. Artuso to Paul E. Smith. To date, Plaintiffs' counsel has received no response from Defendant.

By letter dated May 27, 2003, Plaintiffs' counsel also asked Defendant for permission to have Plaintiffs' computer forensic expert examine Dr. Call's crashed computer to determine whether additional documents might be recovered. *See* Exhibit D hereto, letter dated May 27, 2003 from Angelo J. Artuso to Alberto Leon. Due to the pending deadline for discovery motions, counsel asked for a response by noon, May 27, 2003. As of the time this Motion was filed, no response had been received.

Fed.R.Civ.P. 34 provides that any party may serve a request for production on any other party to permit the inspection and copying or any designated ***documents*** "including writings, drawings, graphs . . . and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form . . . ." Computer documents and files clearly fall within the scope of materials that must be produced in response to a Rule 34 request. *See, e.g., Playboy Enterprises v. Welles*, 60 F.Supp.2d 1050, 1053 (S.D.Cal. 1999) ("by requesting 'documents' under Fed.R.Civ.P. 34, Plaintiff also effectively requested production of information stored in electronic form.").

In instances where deleted files may be recoverable, the courts have permitted the requesting party to actually inspect the computer itself. *Id.* In this instance, the files on the computer that Dr. Call used throughout 2001 (the critical time period for this case) may contain retrievable files. Plaintiffs should be permitted the opportunity to have their forensic expert examine the computer and determine which files may be recovered.

WHEREFORE Plaintiffs respectfully request that the Court enter its order requiring Defendant to conduct a complete search of their electronic document and file assets for materials responsive to Plaintiffs' requests for production, requiring Defendant to produce the laptop used by Dr. Charles Call in 2001 for inspection and data retrieval by Plaintiffs' forensic computer expert, awarding Plaintiffs' fees and costs incurred in bringing this Motion, and providing such other and further relief as the Court may deem just and proper.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: Angelo J. Artuso
Lisa Mann
Angelo J. Artuso
Attorneys for James Seaba and Cory Phillips
Post Office Box 2168
Albuquerque, New Mexico 87103-2168
Telephone: (505) 848-1800

WE HEREBY CERTIFY that a true and correct copy of the foregoing pleading was mailed to the following counsel of record this 27th day of May, 2003:

Alberto A. Leon
Post Office Box 30684
Albuquerque, New Mexico 87190-0684

Paul E. Smith
One Bellevue Center
Suite 1800
411-108th Avenue N.E.
Bellevue, WA 98004-5584

MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

By: Angelo J. Artuso
Angelo J. Artuso

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

Plaintiffs,

vs. No. CIV-02-0103 LH/WWD

MESOSYSTEMS TECHNOLOGY, INC.,

Defendant.

EXCERPT OF THE DEPOSITION OF CHARLES J. CALL
April 4, 2003
9:00 a.m.
500 Fourth St., NW

PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE this deposition was:

TAKEN BY: ANGELO J. ARTUSO
ATTORNEY FOR THE PLAINTIFFS

EXHIBIT
A

into any sort of network?

A. Yes.

Q. Okay. And is there a server of some sort that serves the network, I take it?

A. Yes.

Q. Okay. Are your files from your laptop backed up on the server regularly?

A. Yes.

Q. Does MesoSystems regularly archive the files that are on its server?

A. I believe so.

**Q. Do you know whether, in response to the discovery that's been served in this case, whether any search of the archived computer files has been made by MesoSystems for responsive E mails and documents?**

**A. Can you restate the question?**

**Q. Yes. Do you know whether, in response to the discovery that we've served in this case, whether the subpoena or the request for production or the interrogatories, has anyone at MesoSystems looked through the archived electronic files to determine whether there was responsive material?**

**A. I don't know.**

MR. ARTUSO: We would ask that that be determined, Alberto, and make sure that we've done a

MR. LEON: Angelo, this may be a good juncture. During the lunch hour, the witness became -- or recollected some information that pertains to some of the issues that you asked him this morning about computers, and I would like him to clarify the record.

Q. (By Mr. Artuso) If you would like to amplify your prior or, you know, amend your prior answers, please do so.

A. Well, it's additional information, I think.

Q. That would be fine.

A. The server -- you asked do we do backups on my computer. The answer is, yes, we do them, but we've only been doing them for about a month. Prior to that, there were no backups on my computer. And in addition to that, I had two computers, two Sony laptops, crash on me about a year ago. The one I had been using up until -- I don't remember the exact time. Let's just say February or January or something. The one I'd been using for the last couple of years, the hard drive failed, and I lost everything, and I wasn't doing backups, so that I had a -- a previous backup was one that had been done maybe months and months before that happened.

And then I borrowed an old one that Lisa had had -- I didn't borrow it. My new computer became one that was sitting on the shelf which was an old computer,

no longer being used by another employee, in this case Lisa Albrect, and I began using that one as my primary computer. And two months later that one crashed again and I went and bought a brand new computer.

So the computer I'm using now was one that I got about a year ago, sometime in the spring of last year and hadn't been doing any backups on it until very recently. Now we have a process whereby backups are made on my computer onto the server, but during those prior periods there wasn't any, and so I was explaining this to Alberto over lunch.

Q. Is it your testimony that Meso didn't have a server until a month ago?

A. Meso had a server, absolutely, but the server has -- was -- I was located in Washington, and even though we had a server here, my E -- the only thing that would have got backed up would have been E mail, and my E mail is what's -- I'm not an expert at this, okay?

So my -- I think the right terminology here is my E mail is popped to me. There -- it's a protocol, and the reason mine is done that way is because when I'm on travel I use AOL as a way to get in, a personal account as a way to get access to the net, and when you do E mail that way, your E mail is not archived in the same way that the other E mails who use what's called exchange.

**So you have an exchange server, or you can have your E mail popped, and mine is popped, and in that situation it's not really on -- there isn't archives of it kept. It's only when you go to the exchange process that it is. So I was just sort of a legacy guy on our server because most of the other employees are on an exchange server, and because I've always since the day we've started company been doing AOL and popping my E mail I've never converted over to the process.**

**Q. What did you do with the Sony laptop that you were using in 2001 that died?**

**A. I think we threw it away. Yeah, I know we -- we tried -- we tried to recover the data, and just started over.**

**Q. And it's your understanding that none of the E mail that you received or sent during that time period would be on server tapes or server backup?**

**A. That's my understanding.**

Q. And who did you get that understanding from?

A. From our IT person.

Q. Who is that?

A. Phil. I can't remember Phil's name here. Ferguson.

Q. What do you recall about your meeting with Dr. Seaba in Portland, Oregon?

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS, )
Plaintiffs, ) Civ: No.
vs. ) 02-103-LH/WWD
MESOSYSTEMS TECHNOLOGY, INC., )
Defendant. )

DEPOSITION OF SAMATHA LEAGUE
Taken at the instance of the Plaintiffs

May 16, 2003
1:30 p.m.
415 N. Quay
Kennewick, Washington

BRIDGES & ASSOCIATES
Certified Shorthand Reporters
P. O. Box 5999
Kennewick, Washington 99336
(509) 735-2400 - (800) 358-2345

1

EXHIBIT B

A. It's on the server.
Q. Okay. So the server has a historical record that may go back months or however much storage capacity it has?
A. That's correct. I can clarify here, okay?
Q. Sure.
A. I'm going to use finance data, because it seems to be easiest. I can have a finance data folder that is 50 mega bites. Every day there's a transaction made in finance, in the finance software, and it saves on that database.
Q. Right.
A. So three months from now I might not have 50 megabytes, I might have 75 megabytes.
Q. Right.
A. But I still have a record of that very first megabyte that I ever had.
Q. Okay. Now, where is that server now, the 2001 data that's getting slugged to



the server every day, where is it now?
A. That server is in this building in our server room.

Q. Okay. And so it would still have data on it from 2001?

A. That's correct.

Q. Let's talk about E-mail. I come into the office, I have my laptop computer, I plug into the wall, I enter my password, I am working away happily during the day. And I decide I'm going to send an E-mail to somebody in Albuquerque, and I know they are not on the network, so I am going to have to go through the internet and send it.

Right?

A. That's incorrect.

Q. Okay. How would I send an E-mail to someone in Albuquerque back in 2001 with my plugged in laptop?

A. At MesoSystems we used the E-mail Client Outlook. The Outlook settings were set for an E-mail firm, I guess, they provided E-mail services to us called Pacific Networks.

Q. Is that the name of the firm?

A. That is the name of the company that

provided our E-mail.

Q. Okay. And are they like an internet

for.

Q. Okay. Look at this one. This one says, "Please produce a copy of all documents that refer to, relate to or are otherwise concerned with any communication, whether written or verbal, between you and Dr. Janes James Seaba."

A. Okay.

Q. Do you remember looking for documents that referred to Dr. Seaba, communications with Dr. Seaba?

A. Yes.

Q. Okay. Where did you look for them?

A. For communications between MesoSystems and Dr. Seaba, I asked folks to look for E-mail and send any E-mails that they had to me.

I compiled those. And sent them on to Lisa, if I am remembering correctly.

Q. Did you give them any specific direction as to where they were supposed to look for E-mails?

A. In their own E-mail systems and on their own computers.

Q. Okay. And did you give them any

specific instructions as to where on their computers they should be looking for them?

A. No.

Q. Okay. So, do you know whether or not they all searched for their deleted files, for example?

MS. ANDRADE: Objection to the form. It calls for her to speculate as to what other people did. But if you know for a fact what other people did, you can answer.

THE WITNESS: I don't know what individual people did.

Q. (BY MR. ARTUSO:) Okay. So it's possible that they may have missed E-mails that reside in a deleted file or resides in a temp file or resides anywhere other than in their in box. If all they looked for it in their in box, it is possible they may have missed something, is that correct.

MS. ANDRADE: I am going to object. That is a mischaracterization. I don't think she specified that they only looked in their in box.

Q. (BY MR. ARTUSO:) You don't know where they looked, is that right?

A. That's correct.
Q. And now if you delete an E-mail off of your active file, it goes into a deleted file, right?
A. Correct.
Q. Okay. And if you don't look in your deleted file, you are not going to file the E-mail, right?
A. Probably not.
Q. Now, did you send out just a system wide request for people to look for communications involving Dr. Seaba, or did you ask specific individuals?
A. I don't remember if I asked specific individuals or if I sent a mass announcement out.
Q. If you had sent out a mass announcement, would that have been by E-mail?
A. Yes.
Q. Okay. So you could check and see, hopefully, you know. You use Outlook for your E-mail system, is that right?
A. Yes.
Q. And so there is a sent items folder?
A. Yes.

Q. And is your Outlook, does it auto archive files?
A. My personal Outlook does auto archive. In addition to that, I have to conserve resources, company resources. I don't keep E-mail indefinitely. So, I could, or could not. You know, I don't know that I could produce that.
Q. Okay. Now, if I understood you correctly, you didn't offer any specific tips or specific instructions for anyone when you asked for them to serve for E-mails.
So is it fair to say that you did not ask them to check their archive files on their own hard drives?
A. No, I did not.
Q. What efforts did MesoSystems make to preserve electronic file E-mail sent information once this lawsuit was filed? Did it take any specific steps to make sure that that data was being preserved?
A. I am not aware of anything that we did out of the ordinary.
Q. Is there anything that you would do in the ordinary which would be specific to a

lawsuit having been filed in an attempt to preserve data?

A. I don't know what -- I don't know that we did anything different. I don't know that anything was backed up specifically for this lawsuit.

Q. Did MesoSystems take any of the key laptops, and I am thinking -- well, let me back up. Mr. Lubeck, does he use a laptop or desktop?

A. At the time he used a laptop.

Q. Okay. Mr. Schalla in 2001, did he use a laptop or a desktop?

A. He used a laptop.

Q. Okay. And Dr. Call used a laptop?

A. Yes, sir.

Q. Okay. And Dr. Chellappa, did he use a laptop?

A. He used, in 2001, I believe he used a desktop.

Q. Okay. Did MesoSystems take any steps to take those laptops out of service or to preserve them or to do anything with their hard drives to make sure you had a good, clean

copy of how they look at the time the lawsuit

was filed?

A. No.

Q. Okay. So the individuals with those laptops, the three that we talked about that had laptops, Dr. Schalla, Dr. Chellappa, and Dr. Call, all continued to use their laptops?

A. That's correct.

Q. Does MesoSystems have any sort of a software designed to wipe its hard drives clean?

A. No.

Q. Do you have a policy with respect to what kind of software can be loaded up on the system, or are the engineers and scientists pretty much allowed to run amuck, run whatever they want on their particular machines?

A. For specific computers, no, we don't have rules as to what they can or can't put on the machines.

Q. Does MesoSystems have a voice mail system?

A. Individual buildings do have a voice mail.

a local officer here in Kennewick that you would call?

A. Yes.

Q. So you don't know where the message

would reside or how long it would stay on the system or how it would be backed up or anything like that?

A. No.

Q. When you received requests to look for documents from Ned Godshall or Charles Call or anyone else responsive to this case, did you search the network server that has primarily financial and contract data on it?

A. If what they asked me for pertained to finance or data that I thought would be on the server, then, yes, I searched those areas.

Q. Did you do that personally or did you ask someone else to do it for you?

A. I would do that personally.

Q. Okay. And explain to me how you went about your search. What is it that you would ask -- or let me back up.

Where is it that you would ask the server to look for responsive information? Was

it in an active files, archived files? Where were you looking for stuff?

A. It depended on what I was asked to look for.

Q. All right.

A. If I was asked for a copy of an offer letter, I would go to the Human Resources file and I would pull up their offer letters.

Q. Human Resources file would be on the server?

A. Yes.

Q. Okay. Now, we looked at a request for production that said all documents that referred to or relate to any communication between Dr. James Seaba and MesoSystems. Let's look at that request by itself.

A. Okay.

Q. How would you have searched for responsive documents on the server to respond to that request?

A. I would first of all go, I would pull information that has to do with their hiring paperwork. Any letters that were on letterhead would be kept on the server or in

our letter book file. I went to both of those locations. Anything that was to Jim Seaba or for Cory Phillips, I pulled it and had it available.

For E-mail, I asked individuals to look, and any correspondence that they had

individually with either of those gentlemen, and asked them to send those to me. I compiled them. As I recall, I sent them to Lisa in Albuquerque.

Q. Okay. Now, if I worked in Human Resources and I typed up a letter to someone, let's say Dr. Seaba, and I presented it out and I saved it and I decided I wanted to save it to the Human Resources database file on the server, with me so far?

A. Uh-huh.

Q. And then later on I decide as I am working in that file, well, I don't need to keep that letter anymore, can I delete it? It's stored on the server. Can I delete it?

A. Yes.

Q. Okay. When I do that, it's going to be sent to a deleted file, right?

A. Correct.
Q. In your search did you query the deleted file for items that were responsive to the request?
A. Not that I recall.
Q. Now, some programs make a temporary file, and they do that automatically, right?

A. Yes.
Q. If I were in Human Resources and I typed a letter to Dr. Seaba or Dr. Phillips, and subsequently decided I wasn't going to send it, for whatever reason, but I saved it sort of in draft form, and I decided, well, I am not going to send it, and then came back later and decided to delete it because I wasn't going to send it, is it possible that a copy of it might still exist in a temporary file on the server?
A. I suppose it's possible.
Q. Okay. Now, --
A. I'm going to back up there.
Q. Okay.
A. I know that it's not possible, because we upgraded that server in 2002, and the only things that we moved over to the new

hard drives were intact files, like our Human Resources, our finance files, our contracts file.

So anything that would have been in a temp directory would not have been transferred over.

Q. Where are the old hard drives, the ones you were use anything 2001? Where are

they now?

A. They are in our server loop.

Q. So it could be possible to look on those old hard drives for temp directories to see if there is anything that might be responsive to the request there, right?

A. Yes.

Q. Okay. When you were looking for responsive documents, did you do that, did you go to the old 2001 hard drives and look in like a temp directory to see if there might be responsive materials?

A. No. If I could ask, when is the date of those requests for? If it was before we moved those files, there would have been no need to go back to old hard drives.

Q. I can find the date. It was July or August of 2002. And would that have been after the new hard drives were put into the server?

A. July 25th, 2002, sticks out in my mind as the day that we changed those hard drives.

Q. Okay. Now, Dr. Call testified that he had a laptop in 2001, and that it crashed, became nonfunctional.

Were you aware of that?

A. The only crashed hard drive -- or crashed computer that Chuck had that I'm aware of happened in March or early April of 2002.

Q. Okay. Where is that computer now?

A. To my knowledge that computer is in Albuquerque, New Mexico.

Q. Okay. And was any effort made to try and recover the hard drive of that computer, any of the data on that hard drive?

A. Absolutely. Yes.

Q. Okay. And who undertook that job to try and recover the data on that hard drive?

A. I did initially.

Q. Okay. And what were the results?

What were you able to accomplish?

A. I was able to get partial documents from his My Documents folder. I was not able to retrieve any of his Outlook file.

Q. Any other data or document that you were able to retrieve from that hard drive?

A. The condition of that hard drive was such, Chuck -- It would only boot up like one out of ten tries. So he said if we could get his My Documents files and his Outlook files,

that that was the most important thing. And that's what I concentrated on, were those two things.

Q. Did you try to recover the temp files or the deleted files?

A. I tried to recover his My Documents folder and his Outlook files only.

Q. Okay. And that computer is still in Albuquerque, as far as you know?

A. As far as I know, it is.

Q. When you were looking for documents that were responsive to the request for production, did you go back and check what you were able to recover from that hard drive, see

if there were any responsive documents?
A. I would not have had those files. What I was able to recover was put on a disk or CD and sent to Albuquerque. So I would not have had those.
Q. Okay. Do you know whether anyone looked at the disk or CD?
A. I don't know if the folks in Albuquerque looked for that or not.
Q. Who would have possession of that disk or CD?

A. I imagine Chuck would.
Q. Now, Dr. Call testified that he had one SONY laptop that crashed, so he ended up using or borrowing Lisa Albrecht's SONY laptop, and that it crashed a few months later.
Does that ring a bell at all?
A. No. The only one I am aware of is in March or early April, 2002.
Q. Okay.
A. And I don't know who it originally belonged to.
MR. ARTUSO: Why don't we take a five minute break. I think I am almost done.



MODRALL SPERLING
LAWYERS

Angelo J. Artuso
505.848.1894
Fax: 505.848.1891
aja@modrall.com

May 22, 2003

**VIA FAX (425) 453-7350**

Paul E. Smith
Perkins Coie
One Bellevue Center
411-108th Avenue, N.E., Suite 1800
Bellevue, WA 98004-5571

Re: Seaba, et al. v. MesoSystems Technology, Inc.

Dear Mr. Smith:

At the 30(b)(6) deposition last week, it became apparent that MesoSystems has failed to conduct a thorough search of its electronic files for documents responsive to our prior discovery requests. For example, Ms. League testified that she did not conduct a search of any temporary files or directories, did not search any "sent items" folders, did not have individuals responding to her requests search for any "deleted" items, and did not search Mr. Call's former "crashed" hard-drive. I provide these as examples. There are additional areas and resources set forth in the deposition (we are still waiting for the transcript) where a search for responsive documents should be made by MesoSystems..

Please let me know whether MesoSystems will now undertake such a search, or whether we will need to file a Motion to Compel next Tuesday. Thank you for your assistance and I look forward to your response.

Sincerely,

Angelo J. Artuso

c: Lisa Mann
Jim Scaba
Cory Phillips

0300603

EXHIBIT
C

Modrall Sperling
Roehl Harris & Sisk P.A.

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505 848.1800
www.modrall.com

# MEMORY TRANSMISSION REPORT

PAGE : 001
TIME : MAY-22-03 03:16PM
TEL NUMBER1 : 505 8481891
TEL NUMBER2 :
NAME : Modrall Sperling Law Firm

| | | |
|---|---|---|
| FILE NUMBER | : | 425 |
| DATE | : | MAY-22 03:15PM |
| TO | : | ☎375#65518#112#14254537350# |
| DOCUMENT PAGES | : | 002 |
| START TIME | : | MAY-22 03:15PM |
| END TIME | : | MAY-22 03:16PM |
| SENT PAGES | : | 002 |
| STATUS | : | OK |

FILE NUMBER : 425 *** SUCCESSFUL TX NOTICE ***

MODRALL SPERLING

**Fax Transmittal Cover Sheet**

Modrall Sperling
Roehl Harris & Sisk, P.A.

Bank of America Centre
Suite 1000
500 Fourth Street NW
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
Fax: 505.848.1891

Page 1 of 2
Date: May 22, 2003
Time: 3:13 PM
Client/Matter #: 65518-112

**Please deliver the following pages to:**

Name: Paul Smith
City: Bellevue, WA
Fax number of recipient: (425) 453-7350
From: Angelo J. Artuso

Comments: Please see attached

If you have any problem receiving our fax, please call 505.848.1800 Ext. 1894

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.



MODRALL SPERLING
LAWYERS

Angelo J. Artuso
505.848.1894
Fax: 505.848.1891
aja@modrall.com

**VIA FACSIMILE TRANSMISSION TO: 883-3194**

May 27, 2003

Alberto León
Bauman, Dow, McIntosh & León
P. O. Box 30684
Albuquerque, New Mexico 87190-0684

Re: Seaba, et al. v. MesoSystems

Dear Mr. León:

With respect to MesoSystems' most recent responses to James Seaba's second request for production, I have the following questions and concerns:

**Request for Production No. 1** - Please let me know when we will receive a copy of check nos. 9704 and 9571.

**Request for Production No. 2** - I have attached a draft copy of our Motion to Compel Defendant's Discovery Responses. As you can see from the attached motion, we are seeking entry of the draft Protective Order that we sent to you on April 16, 2003, as well as an order compelling MesoSystems to produce those documents that it has indicated it will not produce absent an appropriate protective order. Because the deadline for discovery motions is today, I ask that you please let me know by no later than **Noon today** whether we need to add Request for Production No. 2 to the attached motion, or whether you will produce documents responsive to this request once the court has entered the appropriate protective order.

**Request for Production No. 4** - I believe that you waived any attorney/client privilege and/or work product protection for private investigator files when you attached the affidavit of Robert Hamic to your motion to supplement your reply memo in support of motion to dismiss or transfer for improper venue. If I am not mistaken, you further waived any protection for the private investigator files when you cited his findings to the court at the hearing on the motion to dismiss or to change venue. In light of these waivers, I ask that you please reconsider your objections to Request for Production No. 4. Again, I

Modrall Sperling
Roehl Harris & Sisk P.A.

Bank of America Centre
Suite 1000
500 Fourth Street NW
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800

www.modrall.com

EXHIBIT
D

need to know by **Noon today** whether you will agree to produce responsive documents.

**Request for Production No. 5** - You are incorrect in asserting that plaintiffs have made no allegations in their First Amended Complaint related to RTI. In fact, plaintiffs have asserted that, as a result of MesoSystems' improprieties in charging time and materials on Department of Defense contracts (on which RTI was a participant), they were terminated. Thus, documents related to RTI are directly relevant to the matters at issue in this case. Also, you indicate that you will not produce responsive documents absent an appropriate protective order. Please see my discussion regarding Request for Production No. 2 above, and let me know by **Noon today** whether I need to add Request for Production No. 5 to the current motion, or whether you will agree to produce responsive documents once a protective order has been entered.

**Request for Production No. 6** - Please see discussion regarding Request for Production No. 5 above.

Finally, at her deposition on May 16, 2003, Samantha League testified that Dr. Call's old laptop computer is still here in Albuquerque, New Mexico. Ms. League also testified that she attempted to recover some of the files from that computer. We would like to have our expert, Brooks Hilliard, examine the hard drive of Mr. Call's old computer to determine whether, with his software and methods, he might be able to recover additional files. Please let me know by no later than Noon today whether you will permit such an inspection.

Thank you for your assistance with these matters.

Sincerely,

Angelo J. Artuso

AJA\jev\K:\dox\client\65518\112\W0300970.WPD
Enclosure

cc: Lisa Mann, w/o encl.
James Seaba, w/o encl.
Cory Phillips, w/o encl.

# MEMORY TRANSMISSION REPORT

PAGE : 001
TIME : MAY-27-03 09:18AM
TEL NUMBER1 : 505 8481891
TEL NUMBER2 :
NAME : Modrall Sperling Law Firm

| | | |
|---|---|---|
| FILE NUMBER | : | 478 |
| DATE | : | MAY-27 09:14AM |
| TO | : | ☎54#65518#112#8833194 |
| DOCUMENT PAGES | : | 009 |
| START TIME | : | MAY-27 09:15AM |
| END TIME | : | MAY-27 09:18AM |
| SENT PAGES | : | 009 |
| STATUS | : | OK |

FILE NUMBER : 478 *** SUCCESSFUL TX NOTICE ***

MODRALL SPERLING

**Fax Transmittal Cover Sheet**

Page 1 of 9
Date: May 27, 2003
Time: ______________
Client/Matter #: 65518-112

**Please deliver the following pages to:**

Name: ALBERTO LEON
City: Albuquerque
Fax number of recipient: 883-3194
From: ANGELO J. ARTUSO

Modrall Sperling
Roehl Harris & Sisk, P.A.

Bank of America Centre
Suite 1000
500 Fourth Street NW
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
Fax: 505.848.1891
www.modrall.com

Comments:

If you have any problem receiving our fax, please call 505.848.1800 Ext. 1604

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.