UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

Plaintiffs,

v.

MESOSYSTEMS TECHNOLOGY, INC.,

Defendant.

NO. 02-CV-103 LH/RHS

## DEFENDANT'S MOTION TO COMPEL

Defendant, MesoSystems Technology, Inc. ["MesoSystems"], by and through its attorneys of record, Bauman, Dow, McIntosh & León, P.C. (Alberto A. León) respectfully moves this Court for an order pursuant to Fed.R.Civ.P. 37(a)(2)(B) compelling James Seaba, Nancy Seaba and Erika Phillips to answer deposition questions and compelling Plaintiffs to answer interrogatories and requests for production on the grounds that:

1.      Nancy Seaba appeared for a deposition upon oral examination in accordance with a notice of deposition and subpoena served on Nancy Seaba on May 2, 2003. A copy of the notice of deposition and subpoena is attached to this motion as **Exhibit A**.

2.      Erika Phillips appeared for a deposition upon oral examination in accordance with a notice of deposition and subpoena served on Erika Phillips on May 2, 2003 and an amended notice of deposition on May 7, 2003. A copy of the notice of deposition and subpoena is attached to this motion as **Exhibit B**.



3.     During examination of Nancy Seaba by attorney for MesoSystems. Nancy

Seaba refused, without substantial justification, to respond as follows:

Q.     Can you tell me about the conversations that you have had with Mr. Artuso?

Mr. Artuso:  Objection. Calls for material affected by the attorney client privilege and I'll instruct the witness not to answer.

Q.     Your instruction binds to any conversations that you ever had with her?

Mr. Artuso:   That's correct. Deposition of Nancy Seaba, May 13, 2003 [the "Seaba Dep"] p. 7:8-15 attached as **Exhibit C**.

4.     During examination of Nancy Seaba by attorney for MesoSystems. Nancy

Seaba refused, without substantial justification to respond as follows:

Q.     Have you talked to anyone about this deposition outside of this meeting that we're talking about with your attorneys, family members, other people outside your attorneys?

A.     My father.

Q.     Tell me about your conversations with your father.

Mr. Artuso:   Objection. Calls for material protected by the attorney client privilege. Her father is licensed in Iowa. Seaba Dep p. 9:7-25.

5.     During examination of Nancy Seaba by attorney for MesoSystems. Nancy

Seaba refused, without substantial justification to respond as follows:

Q.     Do you know what kind of printer it is?

A.     I know it's a printer fax machine.

Q.     Do you know the brand?...

A.     I don't know. Seaba Dep p. 53:16-24.

6.     The questions to which this motion relates and the responses of Nancy

Seaba are contained in the transcript of deposition testimony attached to this motion as

**Exhibit C**.

7.     Nancy Seaba refused to answer the question to which this motion relates

regarding the brand of printer she owns on the ground that she does not know.

8.     MesoSystems is entitled to discovery of the brand of printer owned by

Plaintiff James Seaba.  Nancy Seaba asserts that she does not know what brand the

printer is after, "We looked. We read the subpoena and we looked high and low for any

information related to it and we don't have any. We don't have any receipts. We don't

have any information of the printer...." Seaba Dep p. 54:8-13.  It is not reasonable that

Nancy Seaba did not look at the printer itself throughout the diligent search for

information described above. It is not reasonable that Nancy Seaba did not ascertain the

brand name of the printer when she looked at the printer itself.

9.     Nancy Seaba refused to answer the question to which this motion relates

regarding conversations she had with her father regarding her deposition on the ground

that the communications are attorney client privileged.  Nancy Seaba further refused to

answer whether she has paid her father or her father's firm any attorney's fees or costs for

expenses related to this case.  Seaba Dep p. 11:2-16.

10.     MesoSystems is entitled to discovery of any conversations Nancy Seaba

had with her father regarding this lawsuit.  Nancy Seaba's assertion of the attorney client

privilege is erroneous.  Parties asserting an objection of attorney-client privilege bear the

burden of establishing that it applies.  They must make a clear showing that the asserted

objection applies. Boyer v. Board of County Comm'rs, 162 F.R.D. 687, 688 (D. Kan. 1995) (internal citations and quotations omitted). To carry the burden, they must describe in detail the information to be protected and provide precise reasons for the objection to discovery. National Union Fire Ins. Co. v. Midland Bancor, Inc., 159 F.R.D. 562, 567 (D. Kan. 1994). A "blanket claim" as to the applicability of a privilege does not satisfy the burden of proof. See Kelling v. Bridgestone/Firestone, Inc., 157 F.R.D. 496, 497 (D. Kan. 1994).

The attorney-client privilege... is to be extended no more broadly than necessary to effectuate its purpose." Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150 F.R.D. 193, 196 (D. Kan. 1993). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advise or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "[The privilege] protects only those disclosures— necessary to obtain informed legal advice—which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976) (citations omitted).

Under federal common law the essential elements of the attorney-client privilege are: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

4

disclosure by himself or by the legal advisor, (8) except the protection be waived. Great Plains Mut. Ins. Co., 150 F.R.D. at 196 n.4 (citation omitted).

A basic element of the attorney-client privilege is that the attorney be in the appropriate role during communication with the client. Communications must be made in the role of an attorney in order to qualify for the attorney-client privilege. Likewise, a full-time practicing attorney does not imbue all confidential communications with the privilege. John William Gergacz, Attorney-Corporate Client Privilege, P 3.02[2][a][iv] (2d Ed. 1990). The privilege does not extend to communications not made in professional confidence. Pacific Employers Ins. Co. v. P.B. Hoidale Co., 142 F.R.D. 171, 173 (D. Kan. 1992) (citation omitted).

Ms. Seaba testified that her father is not representing her in this case and that the Modrall Firm is representing her and providing her with legal advice relevant to this lawsuit. Ms. Seaba further testified that her father is a retired judge and is not in active legal practice. Although Mr. Artuso indicated that Ms. Seaba intended for communications with her father to be confidential, Ms. Seaba did not indicate that the conversations with her father were intended to be confidential at the time they had the conversations. Ms. Seaba further testified that she had never had her deposition taken before, so she called her father to find out "what the process was." Ms. Seaba never mentioned any particular legal advice she sought from her father. Finally, Arthur A. McGiverin, Ms. Seaba's father, is licensed to practice law in Iowa. He is not licensed in New Mexico or Washington, the states in which this litigation and related litigation are proceeding.

Ms. Seaba called her dad to tell him she was going to have her deposition taken, much like any daughter might call her father. The fact that Ms. Seaba's father happens to be a licensed attorney in Iowa does not change the nature of the communication between Ms. Seaba and her father into an attorney-client privileged communication.

11.     Nancy Seaba refused to answer the question to which this motion relates regarding conversations she had or witnessed involving her husband's attorney on the ground that the communications are attorney client privileged.

12.     MesoSystems is entitled to discovery of any conversations Nancy Seaba had or witnessed involving her husband's attorney regarding this lawsuit. Nancy Seaba's assertion of the attorney client privilege is erroneous because Nancy Seaba has failed to establish the elements of the attorney-client privileged relationship as described above. Mr. Artuso asserts that Ms. Seaba hired his firm from before the beginning of the lawsuit and instructed Ms. Seaba not to answer any questions regarding any conversations her husband's attorney has ever had with Ms. Seaba or any conversations witnessed by Ms. Seaba involving her husband's attorneys. Ms. Seaba, however, did not testify as to the relationship between herself and Mr. Artuso's law firm.   Plaintiffs have not met their burden to demonstrate the attorney-client privilege applies and have provided inadequate information regarding the timing and nature of the representation of Ms. Seaba for a determination whether the attorney-client privilege applies.

13.     During examination of Erika Phillips by attorney for MesoSystems, Erika Phillips refused, without substantial justification, to respond as follows:

Q.   What kind of computer printer did you have before that?

A.   Another Hewlett Packard, but I don't recall -- no, it wasn't Hewlett Packard it was -- no, it was a Hewlett Packard. I don't recall the number.

Q.   And is that the printer you had when you were in Albuquerque?

A.   Yes.

Deposition of Erika Phillips, May 14, 2003 [the "Phillips Dep"] p. 59:9-15 attached as **Exhibit D**.

14.   The question to which this motion relates and the response of Erika Phillips are contained in the transcript of deposition testimony attached to this motion as **Exhibit D**.

15.   Erika Phillips refused to answer the question to which this motion relates regarding the brand of printer she owns on the ground that she does not know.

16.   MesoSystems is entitled to discovery of the brand of printer owned by Plaintiff Cory Phillips. Erika Phillips asserts that she does not know what brand the printer she owned. It is not reasonable that Erika Phillips did not look at the printer itself throughout a diligent search for information regarding the printer.

17.   James Seaba appeared for a deposition upon oral examination in accordance with a notice of deposition served on James Seaba on March 6, 2003. A copy of the notice of deposition is attached to this motion as **Exhibit E**.

18.   Defendants served Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission [the "First Set"] on James Seaba on August 16, 2002.

19.     James Seaba submitted Plaintiff James Seaba's Answers to Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission on September 30, 2002 [the "Seaba Answers"].

20.     Defendants served Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission on Cory Phillips on August 16, 2002.

21.     Cory Phillips submitted Cory Phillip's Answers to Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission on September 30, 2002 [the "Phillips Answers"].

22.     Defendants served Defendant's Second Set of Interrogatories, Second Requests for Production of Documents and Second Requests for Admission [the "Second Set"] on James Seaba on April 16, 2003.

23.     James Seaba submitted Plaintiff James Seaba's Answers to Defendant's Second Set of Interrogatories, Second Requests for Production of Documents and Second Requests for Admission on May 16, 2003 [the "Second Seaba Answers"].

24.     In the First Set Request for Production No. 5 Defendants requested, "[A]ll records of communications between you and Cory Phillips from January 2001 to the present, including, but not limited to, correspondence, notes, memoranda, e-mails, voice mail recordings, transcriptions of telephone and/or cellular phone conversation." In the Seaba Answers and Phillips Answers Plaintiffs objected on the basis of attorney-client privilege and the attorney work-product doctrine and further indicated that non-privileged documents and a privilege log "will be produced." These documents have not been

8

produced.  The privilege log produced by Plaintiffs does not include communications between the Plaintiffs.

25.    Plaintiffs refused to answer the question to which this motion relates regarding records of communications between Plaintiffs on the ground that the communications are attorney-client privileged and attorney work-product.

26.    MesoSystems is entitled to discovery of communications between the Plaintiffs.  Plaintiffs have not established that the communications are entitled to attorney-client protection, or even what communications exist.  Also, MesoSystems requested communications between the Plaintiffs and did not request documents created by Plaintiffs' attorneys.  Plaintiffs have not established that the communications are attorney-work product, or even what communications exist.

27.    In the First Set Request for Production No. 12 Defendants requested, "[A]ny and all billing invoices direct to you... by attorney Clinton Marrs."   Plaintiffs produced one redacted billing invoice.  Invoices prior to December 3, 2001 were not produced although James Seaba testified that the previous balance reflected on the invoice was with respect to work Mr. Marrs did in connection with the formation of Red Path Energy.  Deposition of James Seaba, April 2-3, 2003 [the "James Seaba Dep"] p. 209:5-12 attached as **Exhibit F**.

28.    During examination of James Seaba by attorney for MesoSystems, James Seaba refused, without substantial justification, to respond to any questions regarding consultations with Clinton Marrs.  Although Ms. Mann, James Seaba's attorney stated, "However, to the extent he [Mr. Marrs] was involved in the creation of Red Path, it

9

seems to me he may very well have substantive testimony to offer that is not privileged."

James Seaba Dep p. 204:18-21.

29.     Plaintiffs refused to answer the question to which this motion relates regarding the billing invoices and work Mr. Marrs did in connection with the formation of Red Path Energy on the ground that the invoices and timing of the work are attorney-client privileged.

30.     MesoSystems is entitled to discovery of redacted billing invoices and the timing of Mr. Marrs services regarding formation of Red Path Energy.  Plaintiffs have not established that the communications are entitled to attorney-client protection, or even what communications exist.  In addition, Plaintiffs have already produced some redacted billing invoices but not others.  Plaintiffs have waived any attorney-client privilege that may have existed by producing the billing invoices.

31.     In the First Set Request for Production No. 14, Defendants requested, "[A]ll business plans pertaining to Red Path."   In the Second Seaba Answers Interrogatory 21 and Interrogatory 22, Plaintiff James Seaba refers to a Red Path Energy Business Plan that was created around the beginning of December and distributed to at least eight (8) entities or individuals.  Then, in his deposition, James Seaba testified regarding a Red Path Energy Business Plan created after December 7, 2001.  No such business plan was ever produced and counsel for Plaintiffs agreed to "look into" why the later business plan or plans were not produced.  James Seaba Dep p. 127:23 – 130:12. No Red Path Energy Business Plan or Plans created after December 7, 2001 have been produced.

32.     Plaintiffs failed to produce the document(s) to which this motion relates regarding the Red Path Energy Business Plan without justification.

33.     MesoSystems is entitled to discovery of all Red Path Energy Business Plans.

34.     In the First Set Request for Production No. 16, Defendants requested all bank statements pertaining to Red Path.  In the Seaba Answers Request for Production No. 16, Plaintiff James Seaba produced a single bank statement for January 2002 and indicated that the remaining bank statements were not mailed to him because he moved.

35.     Plaintiffs failed to produce the document(s) to which this motion relates regarding the Red Path Energy bank statements without justification.  Plaintiffs could easily get copies of the bank statements for the Red Path Energy bank account through July 2002 when the account was closed by contacting the financial institution with minimal time and effort by Plaintiffs.

36.     MesoSystems is entitled to discovery of all Red Path Energy bank statements.

37.     In response to specific requests for production by served by Plaintiffs, Defendants produced mirror image backups of Plaintiffs' computer hard drives on Plaintiffs request.  Plaintiffs have failed and refused to compensate New Technologies, Inc. for its services in producing the mirror image backups in the amount of seven hundred twenty-seven and 76/100 dollars ($727.76).  See New Technologies, Inc. Invoice No. 10478 attached as **Exhibit G**.

38.    MesoSystems is entitled to payment for compensating New Technologies. Inc. for producing the mirror image backups in the amount of seven hundred twenty-seven and 76/100 dollars ($727.76).

39.    Counsel for MesoSystems has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in this motion in accordance with Fed.R.Civ.P. 37(a)(2)(B) but has failed to resolve this discovery dispute.

WHEREFORE, Defendants pray this Court enter its order that:

A.    Nancy Seaba testify as to the brand of printer she owns.

B.    Nancy Seaba testify as to the substance of conversations she had with her father regarding her deposition or this lawsuit.

C.    Nancy Seaba testify as to the substance of conversations she had or witnessed involving her husband's attorney regarding her deposition or this lawsuit.

D.    Erika Phillips testify as to the brand of printer she owned in Albuquerque. New Mexico in September 2001 through February 2002.

E.    Plaintiffs produce all records of communications between James Seaba and Cory Phillips from January 2001 to the present, including, but not limited to, correspondence, notes, memoranda, e-mails, voice mail recordings, transcriptions of telephone and/or cellular phone conversations.

F.    Plaintiffs produce any and all billing invoices directed to James Seaba. Cory Phillips or Red Path Energy by Clinton Marrs.

G.    James Seaba testify as to consultations with Mr. Marrs regarding the substantive testimony Mr. Marrs has to offer that is not subject to a legitimate claim of privilege.

H.    Plaintiffs produce any and all Red Path Energy Business Plans and specifically produce all versions of the Red Path Energy Business Plan created after December 7, 2001.

I.    Plaintiffs remit payment in full for Invoice No. 10478 to New Technologies, Inc. for its services in producing requested mirror image backups of Plaintiffs' computer hard drives.

**DATED: 05/27/03.**

Respectfully Submitted:

**BAUMAN, DOW, McINTOSH & LEÓN, P.C.**

By_____

Alberto A. León
Darci A. Carroll
PO Box 30684
Albuquerque, New Mexico 87190
(505) 883-3191-telephone
(505) 883-3194-facsimile

AND

**PERKINS COIE, LLP**

Paul E. Smith
One Bellevue Center
Suite 1800, 411
108th Avenue NE
Bellevue, Washington 98004-5584

13

(425) 453-7317-telephone
(425) 453-7350-facsimile

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Memorandum in Support of Motion for Summary Judgment was hand delivered to the following, on this 27th day of May, 2003.

Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
MODRALL LAW FIRM
Attorneys for Plaintiffs
PO Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1800


_____    _____
Alberto A. León



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

          Plaintiffs,

v.                                    Civ. No. 02-103 LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

          Defendant.

## NOTICE TO TAKE DEPOSITION

TO:   **Nancy Seaba**
      c/o Angelo J. Artuso
      Attorney for Plaintiffs
      P. O. Box 2168
      Albuquerque, NM 87103

PLEASE TAKE NOTICE that the Defendant, by and through its attorneys.

BAUMAN, DOW, McINTOSH & LEÓN, P.C. will take the oral deposition of Nancy

Seaba before a notary public and transcribed by Hickerson & Associates Court Reporters.

The deposition will commence at 8:00 a.m. on May 13, 2003, at the offices of Hickerson

& Associates Court Reporters, 616 South Main Street, Suite 204, Tulsa, Oklahoma

74119, and will continue until completed.

Pursuant to Fed.R.Civ.P. 30 and 32, all or portions of this deposition may be used

at trial.

Mrs. Seaba is to bring with her to the deposition her calendar, daytimer, journal,

PDA, or similar document or device on which she may have kept track of her



EXHIBIT

A

appointments during the year 2001; copies of all documents, including but not limited to all electronic documents and e-mails, which she has either created or received and in which any reference to MesoSystems Technology, Inc., MesoFuels, any principal or employee of MesoSystems Technology, Inc. or MesoFuels or any aspect of the above-captioned case is made; and any documents in any way related to or referring to any printer(s) either she or Dr. Seaba have owned, leased, borrowed or used from July 1, 2001 until the present.

BAUMAN, DOW, McINTOSH & LEON, P.C.

By: _____
Alberto A. León
Attorneys for Defendant
P. O. Box 30684
Albuquerque, New Mexico 87190-0684
(505) 883-3191

I HEREBY CERTIFY that a true
And correct copy of the foregoing
was mailed to counsel of record
this 2nd day of May, 2003.

_____
Alberto A. León

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

_____Eastern_____ DISTRICT OF _____Oklahoma_____

JAMES SEABA and CORY PHILLIPS,
     Plaintiffs, v.

MESOSYSTEMS TECHNOLOGY, INC.,
     Defendant

**SUBPOENA IN A CIVIL CASE**

Case Number: 02-CV-103 LH/RHS
District of New Mexico

TO: Nancy Seaba
    c/o Angelo Artuso, her attorney
    500 4th Street NW, Suite 1000
    Albuquerque, NM  87102

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Hickerson & Assoc. Court Reporters, 616 S. Main St., Suite 204, Tulsa, OK  74119 | May 13, 2003 8:00 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Attorney for Defendant_ | 5-2-03 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Alberto A. Leon, Esq., Bauman, Dow, McIntosh & Leon, P.C.
P.O. Box 30684, Albuquerque, NM  87190-0684; (505) 883-3191

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.
AO 88  Rev. 1/94) Subpoena in a Civil Case



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

    Plaintiffs,

v.             Civ. No. 02-103  LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

   Defendant.

## NOTICE TO TAKE DEPOSITION

TO: **Erika Phillips**
   c/o Angelo J. Artuso
   Attorney for Plaintiffs
   P. O. Box 2168
   Albuquerque, NM  87103

   PLEASE TAKE NOTICE that the Defendant, by and through its attorneys,

BAUMAN, DOW, McINTOSH & LEÓN, P.C. will take the oral deposition of Erika

Phillips before a notary public and transcribed by Huron Reporting Service.  The

deposition will commence at 9:00 a.m. on May 12, 2003, at the offices of  Huron

Reporting Services, 623 West Huron, Ann Arbor, Michigan  48103, and will continue

until completed.

   Pursuant to Fed.R.Civ.P. 30 and 32, all or portions of this deposition may be used

at trial.

   Mrs. Phillips is to bring with her to the deposition her calendar, daytimer, journal,

PDA, or similar document or device on which she may have kept track of her



EXHIBIT
B

appointments during the year 2001; copies of all documents, including but not limited to all electronic documents and e-mails, which she has either created or received and in which any reference to MesoSystems Technology, Inc., MesoFuels, any principal or employee of MesoSystems Technology, Inc. or MesoFuels or any aspect of the above-captioned case is made; and any documents in any way related to or referring to any printer(s) either she or Dr. Phillips have owned, leased, borrowed or used from July 1, 2001 until the present.

BAUMAN, DOW, McINTOSH & LEON, P.C.

By: _____

Alberto A. Leon
Attorney for Defendant
P. O. Box 30684
Albuquerque, New Mexico 87190-0684
(505) 883-3191

I HEREBY CERTIFY that a true
And correct copy of the foregoing
was mailed to counsel of record
this 2nd day of May, 2003.

_____
Alberto A. Leon

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

JAMES SEABA and COBY PHILLIPS,
    Plaintiffs,
        v.

MESOSYSTEMS TECHNOLOGY, INC.
    Defendants.

**SUBPOENA IN A CIVIL CASE**

Case Number: Civ. No. 02-103 LH/RHS
District of New Mexico

TO: Erika Phillips
    c/o Angelo Artuso, her attorney
    500   4th Street NW, Suite 1000
    Albuquerque, NM  87102

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Huron Reporting Services, 623 West Huron, Ann Arbor, Michigan   48103 | DATE AND TIME   May 12, 2003   9:00 a.m. |
| --- | --- |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _Attorney for Defendant_ | DATE   5-2-03 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Alberto A. Leon, Esq., Bauman, Dow, McIntosh & Leon, PC
P. O. Box 30684, Albuquerque, NM  87190-0684

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹ If action is pending in district other than district of issuance, state district under case number.
AO-88 (Rev. 1/94) Subpoena in a Civil Case

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

                **Plaintiffs,**

v.                                             Civ. No. 02-103  LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

                **Defendant.**

## AMENDED NOTICE TO TAKE DEPOSITION

**TO:**    **Erika Phillips**
        c/o Angelo J. Artuso
        Attorney for Plaintiffs
        P. O. Box 2168
        Albuquerque, NM  87103

      PLEASE TAKE NOTICE that the Defendant, by and through its attorneys,

BAUMAN, DOW, McINTOSH & LEÓN, P.C. will take the oral deposition of Erika

Phillips before a notary public and transcribed by Huron Reporting Service. The

deposition will commence at 1:00 p.m. on May 14, 2003, at the offices of Huron

Reporting Services, 623 West Huron, Ann Arbor, Michigan  48103, and will continue

until completed.

      Pursuant to Fed.R.Civ.P. 30 and 32, all or portions of this deposition may be used

at trial.

      Mrs. Phillips is to bring with her to the deposition her calendar, daytimer, journal,

PDA, or similar document or device on which she may have kept track of her

appointments during the year 2001; copies of all documents, including but not limited to all electronic documents and e-mails, which she has either created or received and in which any reference to MesoSystems Technology, Inc., MesoFuels, any principal or employee of MesoSystems Technology, Inc. or MesoFuels or any aspect of the above-captioned case is made; and any documents in any way related to or referring to any printer(s) either she or Dr. Phillips have owned, leased, borrowed or used from July 1, 2001 until the present.

BAUMAN, DOW, MCINTOSH & LEÓN, P.C.

By: _____
      Alberto A. Leon
      Attorneys for Defendant
      P. O. Box 30684
      Albuquerque, New Mexico 87190-0684
      (505) 883-3191

I HEREBY CERTIFY that a true
And correct copy of the foregoing
was mailed to counsel of record
this 7th day of May, 2003.

_____
Alberto A. Leon

1              UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3   JAMES SEABA and
    CORY PHILLIPS,
4

5                   Plaintiffs,

6       vs.                           Civ No. 02-103 LH/RHS

7   MESOSYSTEMS TECHNOLOGY, INC.,

8                   Defendant.

9   _ _ _____ _ __ __ _____/

10      The Deposition of ERIKA N PHILLIPS, taken pursuant to

11   Notice in the above-entitled cause, at 421 West Huron

12   Street, in the City of Ann Arbor, Michigan, on Wednesday,

13   May 14, 2003, commencing on or about 1:00 p.m., before

14   Jennifer Marlatt, CSR-7397, a Notary Public in and for the

15   County of Clinton.

16   APPEARANCES:

17                  MODRALL, SPERLING, ROEHL, HARRIS & SISKA, PA
                    By:  Mr. Angelo J. Artuso
18                  500 4th Street, NW, Suite 1000
                    Albuquerque, New Mexico  87102
19                  (505) 848-1844

20      Appearing on behalf of the Plaintiffs.

21                  PERKINS COIE, LLP
                    By:  Mr. Paul E. Smith (031589)
22                  411-108th Avenue, Suite 1800
                    Bellevue, Washington 98004-5584
23                  (425) 453-6980

24      Appearing on behalf of the Defendant.

25


EXHIBIT
D

1   Q.   Do you know what model ??

2   A.   Well --

3   Q.   I guess I should probably be specific to time frame

4        here.  I'm asking about current, but then I'm going to

5        go back a little bit in time, too.

6   A.   Okay.  Well currently, we have a H-, I believe H-.

7   Q.   Okay.  And how long have you had that?

8   A.   Roughly, maybe nine months, maybe not even a year.

9   Q.   What kind of computer printer did you have before that?

10  A.   Another Hewlett Packard, but I don't recall -- no, it

11       wasn't Hewlett Packard it was -- no, it was a Hewlett

12       Packard.  I don't recall the number.

13  Q.   And is that the printer you had when you were in

14       Albuquerque?

15  A.   Yes.

16  Q.   Did you ever observe your attorney hooking up the

17       MesoSystems issue laptop to either your home desktop

18       computer and/or directly to the printer?

19  A.   I don't know or recall.  I don't recall.  I honestly

20       can say.  I don't remember if he ever hooked it up,

21       like, you know, to the back of our printer.

22  Q.   Do you recall him hooking up the company issued laptop

23       to any printer?

24  A.   No.

25  Q.   Do you recall him hooking it up to a CD drive?

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

        Plaintiffs,

v.                                       Civ. No. 02-103  LH/WWD

MESOSYSTEMS TECHNOLOGY, INC.,

        Defendant.

### AMENDED
### NOTICE TO TAKE DEPOSITION

TO:   **James Seaba**
       c/o Angelo J. Artuso
       Attorney for Plaintiffs
       P. O. Box 2168
       Albuquerque, NM  87103

       PLEASE TAKE NOTICE that the Defendant, by and through its attorneys,

BAUMAN, DOW, McINTOSH & LEÓN, P.C. will take the oral deposition of James

Seaba before a notary public and transcribed by Kathy Townsend Court Reporters. The

deposition will commence at 9:00 a.m. on April 2, 2003, at the offices of Bauman, Dow,

McIntosh & León, P.C., 7309 Indian School Road NE, Albuquerque, New Mexico

87110, and will continue until completed.

       Pursuant to Fed.R.Civ.P. 30 and 32, all or portions of this deposition may be used

at trial.



EXHIBIT

E

BAUMAN, DOW, McINTOSH & LEÓN, P.C.

By:_____

    Alberto A. León
    Attorneys for Defendant
    P. O. Box 30684
    Albuquerque, New Mexico 87190-0684
    (505) 883-3191

I HEREBY CERTIFY that a true
And correct copy of the foregoing
was mailed to counsel of record
this 6th day of March, 2003.

_____
Alberto A. León

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


JAMES SEABA and CORY PHILLIPS, )
                               )
              Plaintiffs,      )
                               )
vs.                            )   Case No. 02-103 LH/RHS
                               )
MESOSYSTEMS TECHNOLOGY, INC.,  )
                               )
              Defendant.       )


### DEPOSITION OF NANCY SEABA,

a witness called on behalf of the Defendant, on the 13th day
of May, 2003, at 616 South Main, Suite 204, in the City of
Tulsa, County of Tulsa and State of Oklahoma, commencing at
8:00 A.M., before the undersigned, Joni Humphries, a Certified
Shorthand Reporter in and for the State of Oklahoma.

Fee for Original:      $_____
Paid by Defendant.



_Joni Humphries_
JONI HUMPHRIES, CSR #1236


DAVIDSON REPORTING
CERTIFIED SHORTHAND REPORTERS
5508 South Lewis Avenue
Tulsa, Oklahoma  74105
Phone:  (918) 745-9959


**COPY**

EXHIBIT
tabbies
C

1    MR. LEON:  So I'm assuming you will now object to

2    any questions having to do with the substance of any

3    conversations on those basis?

4    MR. ARTUSO:  Yes, I will.

5    MR. LEON:  I'm going to ask the question anyway.

6    I'm going to hear your objection and I'm going to ask you

7    to mark that for later for a potential motion.

8    *Q    (By Mr. Leon)  Can you tell me about the

9    conversations that you've have had with Mr. Artuso?

10    MR. ARTUSO:  Objection.  Calls for material

11    affected by the attorney client privilege and I'll instruct

12    the witness not to answer.

13    MR. LEON:  Your instruction binds to any

14    conversations that you ever had with her?

15    MR. ARTUSO:  That's correct.

16    MR. LEON:  Okay.  Please mark that for later use.

17    Q    (By Mr. Leon)  So besides your conversations with Mr.

18    Artuso, did you do anything else, and your prayers, did you

19    do anything else to prepare for this deposition?

20    A    I have spoken with my husband, Jim.

21    Q    Did you look at any documents related to the case?

22    A    Not other than the one that I just handed you in this

23    one.

24    Q    As far as your meeting with Mr. Artuso today, where

25    did that take place?

Q     This was in Albuquerque?

A     This was in Albuquerque.

Q     *Okay.  How many times did you meet her?*

A     Two or three.

Q     During these meetings, who was present besides you and Ms. Mann?

A     *Jim, and one time Cory was present, Cory Phillips.*

Q     Anybody else?

A     Ms. Mann had an assistant named Jackie Bunkley, who wasn't actually present at the meeting, but I met her at her office.

Q     Have there been any meetings or communications with Mr. Artuso or anyone in Mr. Artuso's office in which somebody else besides yourself or your husband or Mr. Phillips were present?

A     No.

Q     Have you talked to anyone about this deposition outside of this meeting that we're talking about with your attorneys, *family members, other people outside your* attorneys?

A     My father.

Q     Tell me about your conversations with your father?

        MR. ARTUSO:  *Objection.  Calls for material* protected by the attorney client privilege.  Her father is licensed in Iowa.

A    No.

Q    Have you paid your father any attorney's fees or have you paid your father or your father's firm any costs for expenses related to this case?

MR. ARTUSO:   I'm going to go ahead and object and instruct the witness not to answer on the basis of attorney client privilege.

MR. LEON:   Whether she's paid her father.   How is that privileged?

MR. ARTUSO:   Well I think that if she tells you whether or not she's paid, and the next is obviously going to be is there an invoice, and the next question is going to be produce the invoice, and then the invoice may detail the services that have been provided and provide insight into the advice and there's also the subject matter of waiver, so I'm going to instruct the witness not to answer.

MR. LEON:   Well, you know, that can all be avoided.   Invoices are redacted all the time.   Attorneys' invoices are produced all the time and they're redacted all the time to avoid attorney client privilege situations, so even if there was an invoice, I would be entitled to see it if one existed and you guys can redact any attorney client privilege information.   You guys are hiding behind attorney client privilege and it doesn't exist.   I mean you can talk to a lawyer, a family member, and every conversation that

53

1    A    I don't recall.  My husband bought it.

2    Q    Would you have bought this printer or your husband

3    have bought this printer before July 1, 2001 or after?

4    A    I don't recall.

5    Q    You don't remember how long you've had it?

6    A    No.  It's a printer.

7    Q    Do you remember where it was purchased?  I mean

8    sometimes people remember that, I mean they purchased it in

9    Albuquerque or in --

10   A    I didn't purchase it, my husband purchased it.

11   Q    Well when it first showed up at your house, do you

12   remember that?

13   A    In his office, his printer in his office?

14   Q    Right?

15   A    I don't know.  I don't know when we got it.

16   Q    Do you know what kind of printer it is?

17   A    I know it's a printer fax machine.

18   Q    Do you know the brand?

19   A    Can I have multiple choice?

20   Q    Tell me whatever you remember about it?

21   A    Okay.  I know it's a printer.  It does faxes.  It

22   copies and it's a printer.

23   Q    You don't know if it's an HP or a Brother?

24   A    I don't know.

25   Q    When you said your husband bought it, are you saying

54

1     that this is just his stuff, that you consider all of this

2     stuff to be both yours?

3     A      I use it too, but I'm not a technology expert I

4     guess.

5     Q      Do you have at home any manuals or any invoices or

6     anything that would show what this printer was and when it

7     was purchased?

8     A      We looked.  We read the subpoena and we looked high

9     and low for any information related to it and we don't have

10    any.  We don't have any receipts.  We don't have any

11    information on the printer, so we must have had it awhile.

12    But we've also moved three times in one year and it's kind

13    of hard to keep track of.

14    Q      So you didn't have any documents that in any way

15    related to or referred to any printers that you've owned

16    since July 1, 2001 to the present?

17    A      That is correct and we looked.

18    Q      And we're only talking about that one printer?

19    A      Right.

20    Q      Have there been any other printers during this

21    period?

22            MR. ARTUSO:  Objection.  What period?

23    Q      (By Mr. Leon)  July 1, 2001 to the present?

24    A      Whatever printer he had before that, but I'm not sure

25    when he got this one, so I can't tell you how long he had

```
                                              1
~1        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW MEXICO
 2            CIV. No. 02-103 LH/WWD

 3
   JAMES SEABA and
 4 CORY PHILLIPS,

 5        Plaintiffs,

 6   vs.

 7 MESOSYSTEMS TECHNOLOGY, INC.,

 8        Defendant.

 9

10

11

12        DEPOSITION OF JAMES SEABA, Ph.D.

13             April 2nd, 2003
                 9:12 a.m.
14        7309 Indian School Road, Northeast
          Albuquerque, New Mexico  87110
15

16

17        PURSUANT TO THE FEDERAL RULES OF CIVIL
18 PROCEDURE, this deposition was:

19

20 TAKEN BY:    MR. ALBERTO A. LEON
               ATTORNEY FOR DEFENDANT
21

22

23

24 REPORTED BY:  MICHELE TRUJILLO, CCR No. 226
                 Kathy Townsend Court Reporters
25               110 Twelfth Street, Northwest
                 Albuquerque, New Mexico  87102
```

```
                                              2
 1        A P P E A R A N C E S

 2 For the Plaintiffs:

 3   MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
       Attorneys at Law
 4     500 Fourth Street, Northwest, Suite 600
       Albuquerque, New Mexico  87102
 5     By:  MS. LISA MANN

 6 For the Defendant:

 7   BAUMAN, DOW, McINTOSH & LEON, P.C.
       Attorneys at Law
 8     7309 Indian School Road, Northeast
       Albuquerque, New Mexico  87110
 9     By:  MR. ALBERTO A. LEON
            MR. CHRIS BAUMAN
10
   Also Present:
11
       Dr. Ned Godshall
12     Dr. Cory Phillips

13

14        I N D E X

15 JAMES SEABA, Ph.D.                    PAGE

16    Direct Examination by Mr. Leon       4

17 CERTIFICATE OF COMPLETION OF DEPOSITION  187

18 SIGNATURE/CORRECTION PAGE               189

19
20
21
22
23
24
25
```

```
                                              3
 1              E X H I B I T S

 2 SEABA EXHIBIT:                      MARKED

 3  1  Complaint for Damages, Injunctive and
 4     Declaratory Relief              38

 5  2. First Amended Complaint for Damages,
 6     Injunctive and Declaratory Relief    19

 7  3. Resume:  James Philip Seaba, Ph.D.    38

 8  4. Plaintiff James Seaba's Answers to
 9     Defendant's First Set of Interrogatories,
10     Requests for Production of Documents and
11     Requests for Admission          40

12  5. E-mail dated 11/7/01 to Lubeck, Call and
13     Schallop from Mr. Seaba         65

14  6. Agenda for June 9th and 10th, 2001    65

15  7. Document titled "MicroReactors Applied
16     to Clean Energy," Dr. James Seaba, 5/26/01   96

17  8. Offer of Employment with MesoSystems
18     Technology, Inc., to Dr. Seaba dated 8/2/01   106

19  9. Confidential Information, Inventions and
20     Noncompetition Agreement        115

21  10. Articles of Incorporation for Red Path
22     Energy                         119

23  11. Profit Corporate Report for Red Path Energy  136

24
25
```

```
                                              4
 1        MS. MANN:  Before we start, I see that
 2 Mr. Godshall is here today.  Is he here as the corporate
 3 representative for MesoSystems?
 4        MR. LEON:  That is correct.
 5        MS. MANN:  I would like that on the record,
 6 please.
 7        JAMES SEABA, Ph.D
 8 after having been first duly sworn under oath,
 9 was questioned and testified as follows:
10        DIRECT EXAMINATION
11 BY MR. LEON:
12    Q.  Can you state your name, please?
13    A.  James Seaba.
14    Q.  Have you ever been deposed before?
15    A.  Yes, once before.
16    Q.  When?
17    A.  About 20 years ago.
18    Q.  Can you tell me in connection with what you
19 were deposed?
20    A.  I witnessed a murder.
21    Q.  Is that the only time?
22    A.  Yes.
23    Q.  Where was that?
24    A.  It was Iowa City, Iowa.
25    Q.  Who deposed you then?
```

EXHIBIT

F

125

1    the exhibit.
2          Subparagraph A, can you read that out loud for
3    the record?
4      A.   Article III?
5      Q.   Yes. Article III, subpart (a). Well, actually
6    just read Article III.
7      A.   "The corporation is formed for the following
8    purposes: To engage in research and development of micro
9    reaction technology and other technologies, new products
10   pertaining thereto and new product applications; and to
11   engage in any lawful act or activity for which
12   corporations may be organized under this" – "under the
13   Act."
14     Q.   Is it your testimony today that subparagraph
15   (a) defines the purpose of NewCo?
16     A.   Yeah, that would be correct.
17     Q.   On those activities that are defined there in
18   subparagraph III(a), it was your intention to undertake
19   those activities with MesoSystems Technology at that
20   time?
21     A.   MesoSystems Technology was going to be the
22   major investor in the company.
23     Q.   In Red Path Energy, Inc.?
24     A.   Correct.
25     Q.   So it was never your intention to undertake the

126

1    activities defined in Article III in competition with
2    MesoSystems or with NewCo?
3      A.   It was never the intention of Red Path Energy
4    to compete with MesoSystems.
5      Q.   So what happened to Red Path Energy, Inc.,
6    after December 6th, 2001?
7      A.   After December 6th, we tried to continue with
8    Red Path Energy, unfortunately, without the support of
9    MesoSystems.
10     Q.   Where was the intellectual property to be used
11   in connection with Red Path Energy? Where was that going
12   to come from after December 6th, 2001?
13     A.   Well, we'd have to make our own intellectual
14   property.
15     Q.   How would Red Path Energy be funded after
16   December 6th, 2001?
17     A.   That's a good question.
18         Red Path Energy was then required to look at
19   VCs or angels or – people, basically, look for money.
20     Q.   Did you approach anybody in particular, trying
21   to obtain funding for Red Path Energy, after December
22   6th, 2001?
23     A.   Yes.
24     Q.   Can you tell me who and when?
25     A.   I can't remember all of the people we

127

1    approached.
2      Q.   Just the ones that you remember is fine.
3      A.   Well, first, we went to TVC, not for funding,
4    but to help us with the company. That's the purpose of
5    TVC in Albuquerque.
6          Then we approached -- oh, man, I'm trying to
7    think here. Just a moment.
8      Q.   How about Jarrett Carson? Did you approach
9    Mr. Carson?
10     A.   After December 7th, I called Jarrett Carson.
11     Q.   How did you first get acquainted with
12   Mr. Carson?
13     A.   I met him at a fuel cell conference.
14     Q.   When was that?
15     A.   Summer of 2001.
16     Q.   Did MesoSystems, Dr. Call or anybody related to
17   them have anything to do with you meeting Mr. Carson?
18     A.   Dr. Call was also at the conference.
19     Q.   Did Dr. Call introduce you to him or somehow
20   have anything to do with you meeting him?
21     A.   I don't recall exactly how we all got together,
22   but we all did meet at that conference.
23     Q.   Did you participate in putting together a
24   business plan for Red Path Energy after December 7th,
25   2001?

128

1      A.   Yes.
2      Q.   Do you recall who received copies of that
3    business plan?
4      A.   Well, TVC helped, so they had a copy of the
5    business plan, and from what I -- I believe my
6    understanding was, if other potential investors
7    approached them, you know, they could also show that to
8    them.
9          Who else?
10     Q.   Let's go back to the investors. I don't think
11   that I ever closed the loop on that. Besides Jarrett
12   Carson, who else did you approach for funding for Red
13   Path Energy after December 7th, 2001?
14     A.   George somebody, George -- I forget his name
15   now. He's a local VC here in -- or angel, I should say,
16   here in town.
17     Q.   How about PNM?
18     A.   PNM.
19         I don't recall, myself, approaching PNM.
20     Q.   Do you know if anybody on behalf of Red Path
21   Energy approached PNM?
22     A.   It's possible Cory may have.
23     Q.   How about Wally Hunter?
24     A.   I don't recall approaching Wally Hunter.
25     Q.   How about N plus H Power?

129

1    A. Nth power?
2    Q. Yeah, Nth Power. I'm sorry. N plus H, that's
3  nice. I'm sorry. Nth Power.
4    A. Yeah, I don't recall approaching Nth Power.
5    Q. Did you hold any discussions about Red Path
6  Energy with George Richmond after December 7th, 2001?
7    A. That was the George somebody. Thanks.
8    Q. Can you tell me about that? When did you speak
9  with George?
10    A. Well, it either had to be the end of December
11  or early January.
12    Q. Tell me about that discussion. How many
13  discussions did you guys have?
14    A. Well, I think we talked once on the phone to
15  meet at a restaurant, and then we talked at the
16  restaurant, and possibly one more time after that.
17    Q. Can you give me the substance of the
18  discussions? What did you guys talk about?
19    A. Well, we talked a little bit, and he was -- in
20  my memory, basically, he stated that -- the gist of it,
21  he wasn't going to invest in my company, but he was. of
22  course, interested, but you always get that.
23    Q. Do you know if Mr. Richmond received a copy of
24  the Red Path Energy business plan that you guys put
25  together?

130

1    A. He may have, but I can't be certain.
2    Q. Let me ask you, and I would like counsel to
3  maybe look into this.
4    MR. LEON: In response to a request for
5  production, number 14, which is one of the exhibits
6  marked in this deposition, we requested specifically all
7  business plans pertaining to Red Path, and I'm not aware
8  that we got a copy of this Red Path business plan that
9  was done after December 7th, so can we look into that?
10    MS. MANN: Sure. Request number 14?
11    MR. LEON: Number 14, yes, page 18.
12    MS. MANN: I will look into it.
13    Q. So without having the benefit of -- let me ask
14  you a couple of questions. Was this Red Path business
15  plan in any way similar or based upon the MesoFuel
16  business plan that you had done with MesoSystems?
17    A. The technology would be different.
18    Q. How about the format?
19    A. The format?
20    Q. Yes, the sections, the content. I mean, you
21  know, since I don't have it, I really can't talk about
22  it. I'm trying to see if you recollect something.
23    A. No, it -- I reformatted and redid the business
24  plan from what we had at MesoFuel, or NewCo.
25    Q. Did you do that on your MesoSystems laptop

131

1  computer, or did you do it on a separate computer?
2    A. A separate computer? I have to think
3  It was a separate computer.
4    Q. Which computer would that be?
5    A. I believe it was on my personal laptop.
6    Q. Not the one that MesoSystems gave you?
7    A. Correct.
8    Q. Did you develop -- and, again, you know, we're
9  under a confidentiality agreement here, so did you
10  develop any intellectual property in connection with Red
11  Path Energy after December 7th, 2001?
12    A. No.
13    Q. Did you attend any conferences or give any
14  papers in connection with any work or, you know, anything
15  that had to do with Red Path Energy, Inc., after December
16  7th, 2001?
17    MS. MANN: Are you asking about on behalf of
18  Red Path Energy or --
19    MR. LEON: Yeah.
20    MS. MANN: Because "to do with" is kind of --
21    MR. LEON: Yeah, I'm going to ask him did you
22  on behalf Red Path Energy first, and then I'm going to
23  ask him on behalf of anyone else.
24    Q. Let's start with on behalf of Red Path Energy.
25    A. I don't believe I ever made any presentations.

132

1    Q. How about attending conferences on behalf of
2  Red Path Energy after December 7th, 2001?
3    A. No, I don't believe so.
4    Q. Can you tell me what conferences at all you
5  have attended since December 7th. 2001, up to, let's say
6  -- when did you start your present employment?
7    MS. MANN: August of 2002.
8    A. August of 2002.
9    Q. Between December 7th, 2001, and August of 2002,
10  can you tell me all of the conferences that you attended
11  during that time?
12    A. I attended a DOE conference.
13    Q. You attended that as an individual or on behalf
14  of any company?
15    A. I attended that. I was a private consultant,
16  and my client was Phillips Petroleum.
17    Q. Any other conference?
18    A. Not that I recall.
19    Q. During this time, December 2001 to August of
20  2002, did you have any jobs? Did you do any work?
21    A. Yes, I was a private consultant.
22    Q. Did you do these under any kind of corporation
23  or entity that you formed. or did you do this as an
24  individual?
25    A. I did it as a -- I did it under an LLC.

192

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW MEXICO
2                   Civ. No. 02-103 LH/WWD

3    JAMES SEABA and
4    CORY PHILLIPS,

5         Plaintiffs,

6         vs.

7    MESOSYSTEMS TECHNOLOGY, INC.,

8         Defendant.

9

10

11              DEPOSITION OF JAMES SEABA, Ph.D.
12                        VOLUME 2

13                    April 3rd, 2003
                        9:07 a.m.
14              7309 Indian School Road, Northeast
                Albuquerque, New Mexico  87110
15

16

17         PURSUANT TO THE FEDERAL RULES OF CIVIL
18    PROCEDURE, this deposition was:

19

20    TAKEN BY:    MR. ALBERTO A. LEON
                   ATTORNEY FOR DEFENDANT
21

22

23

24    REPORTED BY:  MICHELE TRUJILLO, CCR No. 226
                    Kathy Townsend Court Reporters
                    110 Twelfth Street, Northwest
25                  Albuquerque, New Mexico  87102
```

193

```
1              A P P E A R A N C E S

2    For the Plaintiffs:

3         MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
          Attorneys at Law
4         500 Fourth Street, Northwest, Suite 600
          Albuquerque, New Mexico  87102
5         By:  MS. LISA MANN

6    For the Defendant:

7         BAUMAN, DOW, McINTOSH & LEON, P.C.
          Attorneys at Law
8         7309 Indian School Road, Northeast
          Albuquerque, New Mexico  87110
9         By:  MR. ALBERTO A. LEON

10   Also Present:

11        Dr. Ned Godshall
          Dr. Cory Phillips
12

13

14              I N D E X

15   JAMES SEABA, Ph.D.                        PAGE

16        Direct Continued Examination by Mr. Leon  195

17   CERTIFICATE OF COMPLETION OF DEPOSITION    233

18   SIGNATURE/CORRECTION PAGE                  235

19
20
21
22
23
24
25
```

194

```
1              E X H I B I T S

2    SEABA EXHIBIT:                           MARKED

3    12.  E-mail dated 11/12/01 to Mr. Lubeck,

4         Mr. Schallop and Mr. Seaba from Dr. Call    198

5    13.  Invoice to Rod Path Energy from Vogel.

6         Campbell, Blueher & Castle, P.C.            205

7    14.  E-mail dated 12/4/01 to Dr. Seaba

8         from Dr. Call                               231

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

195

```
1              JAMES SEABA, Ph.D.
2    after having been previously duly sworn under oath,
3    was questioned and testified as follows.
4              DIRECT EXAMINATION (Continued)
5    BY MR. LEON:
6         Q.  Dr. Seaba, I just wanted to remind you that
7    you're still under oath --
8         A.  Right.
9         Q.  -- and that all of the rules, explanations that
10   we went through yesterday at the beginning, still apply
11   today.
12        A.  Okay.
13        Q.  I understand that you have a clarification to
14   make concerning your testimony yesterday.
15        A.  Yes, yes.  I think one is actually in error,
16   and another one is incomplete, but both of them relate to
17   employment issues before and after I came to MesoSystems.
18            Those issues with regard to Blue Star
19   Technologies, where, in fact, I was considering
20   employment at Blue Star while I was at Honda, at the same
21   time I was considering, you know, other options, such as
22   MesoSystems and Velosys, et cetera.
23        Q.  Before you move far away from Blue Star, can I
24   ask you a follow-up question on that?
25        A.  Yeah, sure.
```

204

1  knowledge.
2      Had we taken him off the list, it would have
3  been deceptive. He has knowledge. That knowledge is
4  privileged.
5      MR. LEON: Well, then I'm going to ask you:
6  Are you going to -- do you intend to bring him as a
7  witness? Because any --
8      MS. MANN: We do not.
9      MR. LEON: -- attempt on your part to bring him
10  as a witness or offer any testimony by him is going to be
11  opposed with -- strenuously, if I may say.
12      MS. MANN: I have no doubt that you will
13  strenuously do lots of things. However, Mr. Marrs has
14  knowledge, and so he was appropriately listed as a person
15  with knowledge.
16      We do not presently anticipate calling
17  Mr. Marrs as a witness regarding any attorney-client
18  privileged issues. However, to the extent he was
19  involved in the creation of Red Path, it seems to me he
20  may very well have substantive testimony to offer that is
21  not privileged.
22      What he did would not necessarily --
23      MR. LEON: So your position is, then, that I
24  can ask these witnesses about their conversations with
25  him concerning the creation of Red Path?

205

1      MS. MANN: No, that's not my position. You're
2  not listening.
3      MR. LEON: I am listening.
4      MS. MANN: Okay. Then listen up. Mr. Marrs
5  is --
6      MR. LEON: And I don't want any lectures,
7  please. Let's make it swift, and let's move on.
8      MS. MANN: You raised this question.
9      MR. LEON: I raised the question, but your
10  lectures tend to go on for five minutes. Tell me what
11  your position is.
12      MS. MANN: Then I'm not going to discuss it.
13  You deal with it however you want, but we're not waiving
14  any privilege. You obviously don't want to know what our
15  position is.
16      MR. LEON: We will, obviously, have to take it
17  to the Court, then.
18      MS. MANN: That's fine.
19      MR. LEON: I'm going to ask the court reporter
20  to mark this as Exhibit Number 13.
21      (Seaba Exhibit 13 marked.)
22      MS. MANN: And I would ask, in the future, that
23  you stop characterizing things incorrectly. You
24  characterized the answer to interrogatory number three as
25  listing witnesses when it emphatically did not, and that

206

1  was your interrogatory.
2      Q. (By Mr. Leon) I've handed you what has been
3  marked as Exhibit 13.
4      A. Is this complete?
5      Q. Yes, it is. Can you tell me if you recognize
6  that document, please?
7      A. Yes.
8      Q. What is that?
9      A. It's our bill from Clinton Marrs.
10      Q. I will refer you to the first date on the bill.
11  Can you read that for me, please?
12      A. It's December 3rd, 2001.
13      Q. Your testimony today has been that you did not
14  consult Mr. Marrs about filing a lawsuit in this matter
15  until mid-January sometime; is that correct?
16      A. Yeah, that's correct.
17      Q. Then whatever items are listed here, which are
18  redacted, were consultations about something else but
19  filing a lawsuit in this matter?
20      A. Correct.
21      Q. Would they be consultations about Red Path
22  Energy?
23      MS. MANN: Objection. You're not going to
24  answer that question. You're not going to talk about
25  what things are redacted in this thing

207

1      MR. LEON: I'm not asking about what things are
2  redacted. I'm asking him if the entries for 12/3  12/5
3  12/6, 12/7, before mid-January, are in connection with
4  Red Path Energy.
5      MS. MANN: The ones that are redacted?
6      MR. LEON: The dates, the dates that he
7  consulted. Obviously, the document contains dates where
8  he consulted Mr. Marrs.
9      MS. MANN: I see that.
10      MR. LEON: I'm asking him if, on those dates,
11  then, he was consulting Mr. Marrs in connection with Red
12  Path Energy.
13      MS MANN: And I'm going to instruct him not to
14  answer, because you are asking about the substance of his
15  communications with his lawyer, and so he is not going to
16  be testifying about that.
17      MR. LEON: Well, Ms. Mann, he already testified
18  yesterday that he had asked Mr. Marrs to incorporate Red
19  Path Energy for him and that he had consulted Mr. Marrs
20  in that regard. I'm just asking if these dates
21  correspond to the consultations about Red Path Energy.
22      MS. MANN: My problem with your question is
23  that you're asking about substance. If you're asking, as
24  I understood -- and the reason that he was permitted to
25  answer the question yesterday is -- what he testified

**208**

1  to -- when you showed him the articles of incorporation,
2  he answered that Clinton Marrs had drafted them for Red
3  Path Energy. That's it. That's not a privileged
4  communication. That's not anything.
5      You're now asking about consultations, and
6  that's my problem. You may be able to rephrase the
7  question.
8      MR. LEON: I'll rephrase my question.
9      Q. (By Mr. Leon) I'll ask you: Are the dates in
10  this invoice relating to your request to Mr. Marrs to
11  incorporate Red Path Energy for you?
12      MS. MANN: Again --
13      Q. As you testified yesterday, you had asked him
14  to incorporate Red Path Energy for you.
15      MS. MANN: Could you rephrase it to just -- I
16  think we can get to the information you're looking for if
17  you want to just ask him if Clint Marrs was incorporating
18  Red Path during these dates, but I think, if we start
19  saying -- if you're asking about -- then you're not
20  asking what Clint did, and I don't have a problem with
21  that.
22      What I do have a problem asking is whether
23  these are consultations about something, because then we
24  deal with privileged communications.
25      Q. Well, I could ask you if the entries in this

**209**

1  invoice correspond to the work that Clinton Marrs did
2  with respect to Red Path Energy for you.
3      MS. MANN: Okay. That's fine.
4      A. Okay. Yes.
5      Q. The invoice also shows, on page number one, a
6  previous balance of $1,129.55.
7      A. Correct.
8      Q. Does that balance correspond to the work that
9  Clinton Marrs did for you in connection with Red Path
10  Energy? With the formation of Red Path Energy, to be
11  more exact.
12      A. Yeah, I believe so.
13      Q. Let's talk a little bit about -- we spoke
14  yesterday a little bit about a number of items that,
15  somehow, you had in your possession after your departure
16  from MesoSystems Technology which were later returned to
17  MesoSystems Technology.
18      A. Uh-huh.
19      Q. Among them, there were some substrates. Can
20  you tell me about those?
21      A. Yeah, I knew that there were substrates.
22      Q. They were Ce acetate substrates, and they were
23  Fe iron chromium aluminum substrates, correct?
24      A. Without looking at a piece of paper,
25  Dr. Phillips handled the substrates, so I had little

**210**

1  interaction with the substrates
2      Q. Do you know why those substrates were in
3  Dr. Phillips' possession or -- actually, let me ask you
4  this question. After your departure from MesoSystems,
5  were those substrates in Dr. Phillips' possession, to the
6  best of your knowledge?
7      A. After we left, I found out that Dr. Phillips
8  had those in his possession.
9      Q. Were there any substrates in your possession
10  after your departure from MesoSystems?
11      A. No.
12      Q. Do you know why -- and I will have an
13  opportunity, obviously to ask Dr. Phillips about it, but
14  do you know why Dr. Phillips had the substrates after
15  both of your departures from MesoSystems?
16      A. Well, again, asking Dr. Phillips would be a lot
17  better.
18      Again, my recollection is that Dr. Phillips was
19  working toward making Red Path and, you know, he works
20  independently, and since we were abruptly fired, you
21  know, obviously, we're going to be left with materials.
22      Q. Was there any reason to take these materials
23  out of MesoSystems' facilities?
24      A. I think Dr. Phillips is a better person to ask.
25      Q. Are you aware of who paid for those materials?

**211**

1      A. I believe they were charged under the DOD
2  contract for MesoSystems.
3      Q. Who paid for them, though?
4      A. MesoSystems.
5      Q. Do you have possession of anything at this
6  point that may belong to MesoSystems Technology? In
7  other words, all of the materials and everything has been
8  returned, as far as you know?
9      A. Correct.
10      Q. Do you know why it took so long to get all of
11  those materials to MesoSystems, or why it took as long?
12  It took almost two months, actually. Everything was
13  returned by February 8th, as far as I understand.
14      MS. MANN: Objection, asked and answered.
15      MR. LEON: Well, actually, I asked him about
16  the computers that were returned on January 30th. Now
17  I'm asking about the materials that were returned on
18  February 8th, so that has not been asked or answered.
19      Q. So please answer my question.
20      A. Again, the materials and substrates, I don't
21  recall exactly what time lag and what the situation was
22  for those materials.
23      Q. So your answer is that you don't know why it
24  took until February 8th to return them?
25      A. Right now, I don't recall.

**KATHY TOWNSEND COURT REPORTERS (505) 243-5018**
**110 TWELFTH STREET, NORTHWEST, ALBUQUERQUE, NM  87102**

5



# New Technologies, Inc.
**THE ULTIMATE IN COMPUTER FORENSICS**

| | | | |
|---|---|---|---|
| 2075 NE Division Street | Voice: 503-661-6912 | **www.forensics-intl.com** | Federal Tax ID: |
| Gresham, OR | Fax: 503-674-9145 | **www.secure-data.com** | 93-1221356 |
| 97030-5812 | | | |

Angelo J. Artuso
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Bank of America Centre
Suite 1000
500 Forth Street NW
Albuquerque, NM 87102

| | |
|---|---|
| Date: | May 07, 2003 |
| Invoice No: | 10478 |
| Contract No: | 03-325-001 |
| Terms: | Net 30 Days |

## Consulting Services

| | Hrs/Rate | Amount |
|---|---|---|
| 5/7/2003  Restoration of Mirror Image Backups | 1.00 265.00/hr | 265.00 |
| Restoration of Mirror Image Backups | 1.00 265.00/hr | 265.00 |
| **Total Consulting Services** | 2.00 | **$530.00** |

## Expenses :

| | |
|---|---|
| 5/6/2003  Purchase of floppy disk media | 1.00 |
| 5/7/2003  FedEx expenses | 16.76 |
| Purchase of hard drives | 180.00 |
| **Total Expenses** | **$197.76** |

| | |
|---|---|
| **Total amount of this bill** | **$727.76** |

**EXHIBIT**

G

All amounts are in U.S. Dollars

Please call Ulla Nichois, Office Controller with any questions regarding this invoice at (503) 661-6912