IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

        Plaintiffs,

v.                                                    Civ. No. 02-103 LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

        Defendant.

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

There are numerous material issues of disputed fact. Defendant is, therefore, not entitled to judgment as a matter of law and its Motion for Summary Judgment should be denied.

### STATEMENT OF DISPUTED MATERIAL FACTS

Plaintiffs dispute most of the facts set forth in Defendant's Memorandum in Support of Motion for Summary Judgment ("Defendant's Brief"). For ease of reference the paragraph numbers used below correspond to the numbering in Defendant's Brief:

    1.    Undisputed.

    2.    Undisputed.

    3.    The offers of employment and the Confidential Information and Inventions Agreements signed by Plaintiffs James Seaba and Cory Phillips do not set forth all of the terms of Plaintiffs' employment with MesoSystems. *See* Exhibit A hereto. Deposition of Dr. James Seaba, p. 109, ln. 21 – 25 and p. 110, ln. 9 – 22 (there were ongoing

negotiations from before the time that Dr. Seaba started work with MesoSystems until just before his employment was terminated, about the role he was to play in the new company); Exhibit B hereto, Deposition of Dr. Cory Phillips, p. 106, ln. 14 to p. 107, ln. 2; Offer of Employment to James Seaba, Ph.D., dated August 2, 2001 (attached as Exhibit A to Defendant's Brief), at ¶4 ("the detailed provisions of the [stock] option are set forth in the SICP and an option agreement under the SICP. . . . The options are provided under the terms and conditions of the SICP") and ¶7 (benefits subject to the terms and conditions of applicable plans); Offer of Employment to Cory Phillips, Ph.D., date August 23, 2001, (attached as Exhibit B to Defendant's Brief) at ¶5 (stock options) and ¶7 (benefits); Exhibit C, hereto, e-mail between Charles Call and Cory Phillips, dated August 22, 2001 regarding employee contract; Exhibit D hereto, Deposition of Charles Call, p. 81, ln. 4 – 16 and p. 82, ln. 10 -14 (Call told Seaba that Seaba's ownership in the new company would be considerably higher than 1%), p. 120, ln. 2 to p. 121, ln. 2, p. 122, ln. 21 to p. 123, ln. 2, and p. 128, ln. 7 to p. 130, ln. 14; and Exhibit E hereto, Cory Phillips' Answer to Defendant's Interrogatory No. 12.

4.  The parties did not "agree" that there was no other agreement between Plaintiffs and MesoSystems. *See* Exhibit A, Seaba depo., p. 109, ln. 21 – 25 and p. 110, ln. 9 – 22; Exhibit B, Phillips depo., p. 106, ln. 14 to p. 107, ln. 2; Offer of Employment to James Seaba, Ph.D., dated August 2, 2001 (attached as Exhibit A to Defendant's Brief), at ¶¶4 and 7; Offer of Employment to Cory Phillips, Ph.D., date August 23, 2001, (attached as Exhibit B to Defendant's Brief) at ¶¶5 and 7; Exhibit C, hereto, e-mail between Charles Call and Cory Phillips, dated August 22, 2001; Exhibit D hereto, Deposition of Charles Call, p. 81, ln. 4 – 16, p. 82, ln. 10 – 14, and p. 120, ln. 2 to p. 121,

ln. 2, p. 122, ln. 21 to p. 123, ln. 2, and p. 128, ln. 7 to p. 130, ln. 14; and Exhibit E hereto, Cory Phillips' Answer to Defendant's Interrogatory No. 12.

5. Charles Call, as president of MesoSystems had the power to enter into a binding agreement with James Seaba with respect to the terms and conditions of the separation agreement for forming a spin-off company. *See* Exhibit F hereto, Deposition of Al Schallop, p. 87, ln. 3 to p. 88, ln. 23.

6. Charles Call, as president of MesoSystems had the power to enter into a binding agreement with James Seaba with respect to the terms and conditions of forming a spin off company. *Id.*

7. Plaintiffs did not timely receive all salary payments to which they were entitled as employees of MesoSystems. *See* Exhibit A to Defendant's Brief, Offer of Employment to James Seaba, Ph.D., dated August 2, 2001, ¶11 (severance payments if termination is without just cause); Exhibit G hereto, letter from Richard R. Rohde to Clinton Marrs, dated January 23, 2003 (Mr. Marrs is not to deliver final paychecks to Plaintiffs absent Plaintiffs' agreement that December 20, 2003 was their last date of employment); and Exhibit H hereto, letters from Samantha League to James Seaba and Cory Phillips, dated January 31, 2002 (enclosing final paychecks). *See also*, NMSA 1978, §50-4-4 (unpaid wages or compensation are to be paid within 5 days of employee discharge).

8. Phillips has not received all moving expense reimbursements to which he was entitled. *See* Exhibit I hereto, deposition of Erika Phillips, p. 20, ln. 5 – 12 (Phillips lost approximately $10,000 down payment on home being built in Ohio).

9. Seaba did not receive all moving expense reimbursements to which he was entitled. *See* Exhibit A, Seaba depo, p. 112, ln. 13 to p. 113, ln.4; and Exhibit D hereto, deposition of Charles Call, p. 164, ln. 15 – 25.

10. Plaintiffs did not receive all employment benefits promised to them by Charles Call as president of MesoSystems or afforded to other of Defendant's employees. *See* Exhibit A hereto, Seaba depo, p. 113, ln. 5 –14 (Seaba unable to exercise stock options) and p. 114, ln. 6 – 14 (Seaba did not received signing bonus); Exhibit A to Defendant's Brief, Offer of Employment to James Seaba, Ph.D., dated August 2, 2001, ¶11 (severance payments if termination is without just cause); and Exhibit J hereto, letter from Kirk Soderquist to Clinton Marrs dated January 18, 2002 (conditioning receipt of COBRA notification upon Plaintiff James Seaba's agreement not to seek severance pay and upon Plaintiffs' agreement that December 20, 2001 was the date of their termination).

11. The parties continued to discuss the structure, financing, and Plaintiffs' role in the to be formed company up until November 28, 2001, at which time Charles Call, as president of MesoSystems sent Dr. James Seaba a separation agreement setting forth the terms of MesoSystem's participation in the spin-off company. *See* K hereto, Separation Agreement. By its terms, the separation agreement could not be "amended, modified, or revoked by [Defendant]" for 21 days. *Id.*, ¶9.

12. Undisputed but immaterial.

13. MesoSystems formed MesoFuel shortly after the financing from Ardesta, LLC, came through and it could safely jettison its relationship with Seaba and Phillips. *See* Exhibit L hereto, New Mexico Business Weekly article dated February 15 – 21,

4

2002, "MesoSystems spins off company" p. 29 (Funding received from Ardesta was announced in early February); and Exhibit D hereto, Call Depo., p. 118, ln. 10 – 18 (Ardesta contract for funding was signed on December 31, 2001).

14. Laboratory facilities, manufacturing facilities, and equipment sufficient to support the new company did not exist at the time that Seaba and Phillips went to work for MesoSystems. *See* Exhibit M hereto, deposition of Mike Powell, p. 46, ln. 20 to p. 47, ln. 12; p. 49, ln. 16 to p. 51, ln. 19; and p. 52, ln. 13 to p. 53, ln. 7; Exhibit N hereto, Deposition of Anand Chellappa, p. 25, ln. 19 to p. 26, ln. 9; Exhibit D hereto, Call depo., p. 85, ln. 2 – 15; Exhibit B hereto, Phillips depo., p. 60, ln. 19 to p. 62, ln. 8 and p. 122, ln. 14 - 24.

15. Call intended to deceive Plaintiffs with respect to the laboratory facilities, marketing facilities, manufacturing facilities, equipment and MesoSystems' ability to support the to-be-formed company. *See* Exhibit A hereto, Seaba Depo. p. 81, ln. 1- 17, p. 88, ln. 19 to p. 89, ln. 20, p. 90, ln. 11 - 22; and Exhibit B hereto, Phillips Depo. p. 55, ln. 18 to p. 56, ln. 15 and p. 60, ln. 19 to p. 62, ln. 8.

16. Call intended to deceive Plaintiffs as to the structure, timing and relationships of the parties in the to-be-formed company throughout the negotiations in the second half of 2001. *See* Exhibit B hereto, Phillips depo. p. 67, ln. 6 – 19; Exhibit C, hereto, e-mail between Charles Call and Cory Phillips, dated August 22, 2001; Seaba depo., p. 77, ln. 6 – 23 and p. 82, ln. 8 to p. 84, ln. 18; and Exhibit O hereto, Deposition of Ned Godshall, p. 7, ln. 18 –25 (Godshall began work as CEO of MesoFuel on January 1, 2002).

17. Undisputed.

18. Call intended that Plaintiffs would rely on his statements prior to employment. *See* Exhibit C, hereto, e-mail between Charles Call and Cory Phillips, dated August 22, 2001; and Seaba depo., p. 178, ln. 18 to p. 179, ln. 8.

19. MesoSystems has not reimbursed Seaba for all expenses the he incurred on behalf of MesoSystems during his employment. *See* Seaba depo., p. 158, ln. 13 - 21.

20. Plaintiffs were terminated without just cause approximately 3 months after going to work for MesoSystems. *See* Exhibit M hereto, Powell depo., p. 57, ln. 24 to p. 58, ln. 10.

21. TSP offered in-kind funding to Red Path. *See* Exhibit A hereto, Seaba depo., p. 217, ln. 10 21, p. 218, ln. 16 - 23, p. 222, ln. 1 – 8, and p. 223, ln. 15 – 25.

22. TSP offered in-kind funding to Red Path. *Id.*

23. Defendant unlawfully conditioned delivery of COBRA Notice upon Plaintiffs' waiver of legal rights. *See* Exhibit J hereto, letter from Kirk A. Soderquist to Clinton Marrs, dated January 18, 2002.

24. Plaintiffs incurred unreimbursed medical expenses during the time that coverage should have been provided. *See* Exhibit P hereto, invoice from TriCore Reference Labs.

25. Undisputed but immaterial.

26. At MesoSystems' direction, Scaba and Phillips established Red Path Energy, Inc. *See* Exhibit A hereto, Seaba depo., p. 63, ln. 20 to p. 64, ln. 10; and Separation Agreement, Schedule A, ¶1 (new company may do business as Redpath Energy, Inc.).

## ARGUMENT

"Summary judgment is a drastic remedy. We have cautioned that any relief pursuant to Fed.R.Civ.P. 56 should be awarded with care. The burden is on the moving party to show the absence of a genuine issue of material fact." *Conway v. Smith*, 853 F.2d 789 (10th Cir. 1988) (citation omitted).

Defendant's argument is based on two flawed premises. First, Defendant assumes that the contracts at issue in this case are not ambiguous. Second, Defendant assumes that Plaintiffs have brought an action solely for breach of contract and not for fraud in the inducement of those contracts. Both assumptions are without merit.

### The Employment Contracts are Ambiguous

In *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 845 P.2d 1232 (1993), the New Mexico Supreme Court explained that

> [t]he present law in this state concerning the interpretation of ambiguous or unclear language in written agreements may be summarized as follows: An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court. The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder.

114 N.M. at 781 (citations omitted).

In New Mexico, the question of whether a contract is ambiguous "incorporates a variety of conceptual problems including the distinctive notions of ambiguous syntax, ambiguous terms, vagueness, and general lack of clarity." *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991), fn. 2.

In this instance, the offer of employment letter signed by Dr. James Seaba provides, in part, that he "will be tasked with business plan development associated with the creation of a new ***business unit*** focused on Micro Reaction Technology applied to fuel and other chemical processes." Exhibit A to Defendant's Brief, ¶2 (emphasis added). The offer of employment provides no further description or clarity as to what Dr. Seaba's role in the new "business unit" will be, what funding, if any, Defendant will contribute to the new "business unit," how much time Dr. Seaba is to devote to developing the new "business unit" as opposed to working on other MesoSystems' projects, or even what form the new "business unit" is to take — spin off corporation, wholly-owned or partially-owned subsidiary, operating division, joint venture, or some other possible formation.

The offer of employment letter signed by Dr. Cory Phillips is similarly vague. It provides, in part, that Dr. Phillips will report to the "Executive Vice President" and as part of his duties "may also from time to time support other activities, including but not limited to product development and corporate management support, as required." Exhibit B to Defendant's Brief, ¶2. Do "other activities" include assisting Dr. Seaba with the formation of a new company? Does "product development" include work on products for the new company or is it limited to MesoSystems' existing government contract work? Does "corporate management support" include Dr. Phillips working with other

8

MesoSystems' managers and principal investigators, or is he to work for Dr. Seaba, the Executive Vice President, getting the new company off the ground?

Such issues are at the heart of Plaintiffs' complaint in this case. *See, e.g.*, First Amended Complaint, ¶46 (with respect to the formation of a new company, Charles Call, acting on behalf of MesoSystems, told Plaintiffs that: James Seaba would be CEO of the to-be-formed company; Plaintiffs would be owners of the new company; James Seaba would be on the Board of Directors of MesoSystems; MesoSystems would be a passive investor in the new company; MesoSystems had laboratory facilities, marketing facilities, manufacturing facilities and equipment to support the to-be-formed company; MesoSystems would create the new company as soon as James Seaba and Cory Phillips arrived in Albuquerque, so they could immediately begin working for the new company); ¶26 (Call told Phillips that all intellectual property developed by Seaba and Phillips would be assigned to the new company); and ¶27 (Phillips signed the offer of employment because he understood that he had to do so in order to receive funding from MesoSystems for the new company that he and Dr. Seaba were to form. Phillips also understood, from Chuck Call, that the employment agreement was intended to be of brief duration, lasting only one to two months, until the new company could be formed).

In sum, the offers of employment in this case are singularly vague and unclear as to the duties and purposes of employment to be undertaken by Plaintiffs. The parties to this case place significantly different interpretations upon the meaning to be ascribed to such phrases as "business plan development associated with the creation of a new business unit" and "other activities, including but not limited to product development and corporate management support." *See* Statement of Disputed Material Facts, ¶¶3 and 4.

9

Even a cursory examination of the evidence shows that the contracts are ambiguous. Moreover, the evidence of surrounding facts and circumstances in this case is in dispute, will turn on witness credibility, and is susceptible of conflicting inferences. Under New Mexico law, therefore, the jury must resolve the meaning of the agreements between the Plaintiffs and Defendant, and determine whether those agreements have been breached. *See, Mark V. Inc. v. Mellekas*, 114 N.M at 781; *see also, Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 127 N.M. 1, 12, 976 P.2d 1, 12 (1998) ("Where the contextual evidence is reasonably and fairly susceptible of conflicting interpretations, the jury determines the meaning to be ascribed to particular terms as a question of fact before deciding the issues of breach and damages.").

Even if the contracts at issue in this matter were not ambiguous, which they are, the facts regarding Defendant's lack of performance under the contracts are in dispute. *See, e.g.*, Statement of Disputed Material Facts, ¶7 (plaintiffs did not timely receive all salary payments to which they were entitled), ¶8 (Phillips did not receive all moving expense reimbursements to which he was entitled), ¶9 (Seaba did not receive all moving expense reimbursements to which he was entitled), ¶10 (plaintiffs did not receive all employment benefits promised to them or afforded to other MesoSystems' employees), ¶19 (MesoSystems has not reimbursed Seaba for all expenses the he incurred on behalf of MesoSystems during his employment), ¶20 (Plaintiffs were terminated without just cause), and ¶26 (Seaba and Phillips established Red Path Energy, Inc. at MesoSystems' direction).

Finally, Defendant's Motion ignores the fact that there is another agreement at issue in this case; specifically, the Separation Agreement prepared by Charles Call, on

behalf of MesoSystems, and sent to Dr. James Seaba on November 28, 2001. The Separation Agreement, aside from being evidence that the offers of employment do not contain all of the terms and conditions of the parties' agreement in this case, provides that "Seaba will have twenty-one (21) days to review and consider this Agreement and to consult legal counsel if he so chooses, during which time the proposed terms of this Agreement will not be amended, modified, or revoked by the [Defendant]." Exhibit K hereto, ¶9. Despite this promise, Defendant revoked the Separation Agreement by firing Plaintiffs on December 6, 2001, just 8 days into the review period.

Given the ambiguous nature of the offers of employment, the numerous disputed issues of material fact, and Defendant's clear breach of the Separation Agreement, Defendant is not entitled to judgment as a matter of law on Plaintiffs' claims for Breach of Contract with James Seaba (Count V), Breach of Contract with Cory Phillips (Count VI), Breach of Covenant of Good Faith and Fair Dealing (Count VII), and Wrongful Discharge (Count IX).

### Plaintiffs have Alleged and Will Prove Fraud in the Inducement

Contrary to Defendant's position, the fraud and numerous misrepresentations made by Charles Call, to induce Plaintiffs to enter into contracts with Defendant, are separately actionable. Defendant argues that "[e]ven if Call made the asserted representations, which is specifically denied, these representations are promissory in nature and are superseded by subsequently signed contracts setting forth the relationship between the parties." Defendant's Brief, p. 7. Defendant's argument is contrary to New Mexico law. Dr. Call's fraud and misrepresentations to induce the Plaintiffs to enter into contracts with Defendant are not erased simply because the contracts are signed.

11

It is well settled in New Mexico that "'[i]f a parol contemporaneous agreement be the inducing cause of the written contract, or forms a part of the consideration therefore, and it appears the writing was executed on the faith of the parol agreement or representation, extrinsic evidence is admissible. In such cases the real basis for its admission is to show fraud.'" *Hot Springs National Bank v. Stoops*, 94 N.M. 568, 571, 613 P.2d 710, 713(1980) (quoting *Bell v. Lammon*, 51 N.M. 113, 119, 179 P.2d 757, 761 (1947) with approval). *See also, Mertens v. Coffman*, 99 N.M. 750, 753, 663 P.2d 1207, 1210 (Ct. App. 1983) (the fact that plaintiff could have proceeded on a theory of breach of contract did not foreclose him from proceeding on the basis of fraud in inducing plaintiff to enter into the contract in the first place).

Defendant's assertion, that many of the misrepresentations are related to future events and thus not actionable, is equally unavailing for at least two reasons. First, Defendant's assertion ignores the fact that Dr. Call misrepresented to Plaintiffs that Defendant had the laboratory facilities, manufacturing facilities, and equipment sufficient to support the new company. Statement of Disputed Material Facts, ¶14. This was a misrepresentation of current facts, not an opinion and not a promise as to some future event.

Second, even promises of future performance, if made to induce another to enter into a contract, are actionable in New Mexico. In *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.*, 84 N.M. 524, 505 P.2d 867 (1972), *cert. denied*, 84 N.M. 472, 505 P.2d 67 (1972), the plaintiff entered into an employment contract with one of the defendants to perform services in connection with the sale of horses and a separate contract to sell his shares in the Ruidoso Racing Association, Inc. ("Ruidoso") to the defendants. The

plaintiff sued the defendants for breach of these contracts and for fraud in the inducement of these contracts.

Like the Plaintiffs in this case, the plaintiff in *Sierra Blanca* claimed that the defendant was liable for fraud based on promises that the defendants made prior to plaintiff actually signing the contracts. 84 N.M. at 536. Specifically, the plaintiff in *Sierra Blanca* alleged that one of the defendants, Culver, had told him that Culver would "personally see that [plaintiff] got [his money]." 84 N.M. at 537. Plaintiff also alleged that Culver had promised him that upon the closing of the stock sale, Culver would see to it that Ruidoso ratified the employment contract. *Id*. The Court noted that "[t]here is evidence that the contract was neither entered nor ratified by Ruidoso. This is evidence of false representations by Culver even though it is, in part, also evidence of Culver's breach of contract." *Id*. The Court further held that evidence that Culver had made assurances in connection with the employment contract; that those assurances had not been carried out; and that Culver made no attempt to carry out those assurances raised a factual issue as to Culver's intent. *Id*. The jury's verdict against Culver on the fraud claims was affirmed. *Id.*, at 538.

The Court in *Sierra Blanca* also found that the plaintiff had stated a claim for fraud against another defendant, Hubbard, based on Hubbard's statement prior to the signing of the employment contract that he (Hubbard) would personally pay the contract if Ruidoso did not. *Id*.

> There is deposition testimony for the following: The employment agreement was tied to the stock sale. Details of the employment contract had not been finally agreed upon at the time of Hubbard's alleged promise to pay the contract. Hubbard and his associates wanted the race track, 'we want it bad.' This testimony supports the inference that Hubbard's object in making the alleged promise

13

>to pay was to complete the stock sale, which resulted in Hubbard being one of the principals who controlled Ruidoso.

*Id.*

Finally, the Court in *Sierra Blanca* found that plaintiff has properly stated a claim for fraud against Hubbard based on Hubbard's promise, prior to the stock sale, that Hubbard would see to it that Ruidoso ratified plaintiff's employment contract. *Id.*, at 539. In reaching this conclusion, the Court rejected Hubbard's argument that the promise of ratification depended upon a condition precedent, specifically, a private meeting of the Ruidoso shareholders.

Like the plaintiff in *Sierra Blanca*, the Plaintiffs in this case have alleged that the Defendant, by and through its CEO Charles Call, made numerous misrepresentations to induce them to enter into their employment contracts. The fact that some of those representations relate to future events does not mean that there is no claim. Moreover, the question of Dr. Call's intent is fraught with factual issues and depends on witness credibility. The same is true with respect to the question of Plaintiffs' reliance on Dr. Call's misrepresentations. *See* Statement of Disputed Material Facts, ¶¶ 15, 16 and 18.

In sum, Defendant is not entitled to judgment as a matter of law on Plaintiffs' claims for Fraud (Count I), Intentional Misrepresentations (Count II), Negligent Misrepresentations (Count III), and Detrimental Reliance/Promissory Estoppel (Count IV).

## Defendant is Not Entitled to Judgment on Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing

Defendant claims that it is entitled to judgment on Plaintiffs' claims for Breach of the Covenant of Good Faith and Fair Dealing because New Mexico does not recognize

such a claim in at-will employment relationships. Defendant's Brief, p. 16. The short answer to Defendant's argument is that the agreements between Plaintiffs and Defendant encompassed more than the employment relationship. Specifically, Plaintiffs assert that Defendant has failed to act fairly and in good faith with respect to their promise to assist Plaintiffs in setting up a new company. *See, e.g.*, Statement of Disputed Material Fact,¶¶11 (Scaba was to have 21-days within which to evaluate the separation agreement for formation of the new company), and ¶26 (Red Path was incorporated by Plaintiffs at the direction of MesoSystems). Because more than the employment relationship is at stake in this case, Defendant is not entitled to judgment on Count VII of the Complaint.

## Plaintiffs' Wrongful Discharge Claim

Plaintiffs agree that based on the discovery received to date, they are currently unable to substantiate their claims for wrongful discharge. Plaintiffs have two motions to compel pending before the Court, including requests that Defendant produce documents related to all government contract audits. To the extent that any additional discovery provides facts sufficient to support this claim, Plaintiffs may seek to supplement this response.

## Defendant is Not Entitled to Judgment on the Prima Facie Tort Claim

If the Court were convinced that we did not satisfy the elements for the established causes of action set forth above, which we do, we do meet the requirements for Prima Facie Tort. No proof of adequate business justification for promises and then not delivering. Alternative to the Wrongful Discharge claim.

15

### **Plaintiffs' Claim for Tortious Interference with Prospective Contracts**

Plaintiffs agree that based on the discovery received to date, they are currently unable to substantiate their claims for Tortious Interference. Plaintiffs have two motions to compel pending before the Court, including requests that Defendant produce documents related to all contacts with possible funding sources. To the extent that any additional discovery provides facts sufficient to support this claim, Plaintiffs may seek to supplement this response.

### **Defendant is Not Entitled to Judgment on Plaintiffs' Claim for Rescission, Reformation, Injunction or Other Equitable Relief**

Defendant has asserted Counterclaims in this case seeking, in part, reimbursement for relocation expenses paid by MesoSystems. *See* Counterclaim, ¶26. In light of Defendant's own material breach of its agreements with Plaintiffs, Plaintiffs are entitled to equitable relief with respect to Defendant's claims for reimbursement.

### **Defendant is Not Entitled to Judgment on Plaintiffs' COBRA Claims**

Defendant concedes that under the facts of this case, they may have delivered Plaintiffs' COBRA Notice eleven (11) days late. *See* Defendant's Brief, p. 22. This, in and of itself is sufficient for the jury to find that Defendant has violated the statute. 29 U.S.C. §1166(c) provides that "any notification ***shall be made*** within 14 days . . . of the date on which the administrator is notified . . . ." (Emphasis added).

Moreover, in this instance it is undisputed that Defendant, by and through its counsel attempted to make notification contingent upon Plaintiffs' surrender of legal rights. *See* Statement of Disputed Material Facts ¶23. It is similarly undisputed that Plaintiffs were denied coverage for medical treatment during the 60-day election period. *Id.*, ¶24.

In light of these facts, Defendant is not entitled to judgment on Plaintiffs' COBRA claims.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment should be denied.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: *Angelo J. Artuso*
Lisa Mann
Angelo J. Artuso
Attorneys for Plaintiffs
Post Office Box 2168
Albuquerque, New Mexico 87103-2168
Telephone: 505.848.1800

WE HEREBY CERTIFY that a true
and correct copy of the foregoing pleading
was hand-delivered to all counsel of record this
2nd day of June, 2003.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: *Angelo J. Artuso*
Angelo J. Artuso

0301804