IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

       Plaintiffs,

v.                                                                                     Civ. No. 02-103  LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

       Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL**

Fed.R.Civ.P. 37(a)(2)(A) provides, in part, that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." Defendant, MesoSystems Technology, Inc., has made no effort to confer with respect to most of the discovery requests set forth in its Motion. If it had, the Motion would have proven completely unnecessary.

For example, in paragraph 8 of its Motion, MesoSystems asserts that it is "not reasonable" that Ms. Nancy Seaba does not know the brand name of the computer printer that her husband purchased and that resides in his office at the their home. In fact, it is perfectly reasonable that Ms. Seaba did not recall this information at her deposition. Significantly, Plaintiffs' counsel did not object to questions related to the printer, although the information appears to be of little or no relevance to the issues in this case. The more efficient way for Defendant's counsel to handle this matter would have been to

ask the court reporter to leave a blank space in the deposition transcript, and to ask Ms. Seaba to provide the information when she read her transcript for possible corrections. Defendant's counsel did not choose to do this, and in fact, never asked Plaintiffs' counsel verbally or in writing if Ms. Seaba would provide the information after her deposition. Rather, Defendant chose to unnecessarily multiply the pleadings and expense in this case by filing a motion to compel.  The answer to Defendant's question is that the Seaba's currently use a Canon printer with their home computer.

In paragraph 13 of its Motion, Defendant seeks the same information with respect to the brand of printer used by Plaintiff Cory Phillips and his wife.  Again, while such information appears to be of little or no relevance to the issues in this case, Plaintiffs did not object to Ms. Phillips answering questions about the printer.  Even a cursory examination of Ms. Phillips' testimony on this issue shows that Defendant's Motion to Compel a further response is completely unfounded, because Ms. Phillips has, in fact, already answered Defendant's questions.   See Exhibit D to Defendant's Motion, Deposition of Erika Phillips, p. 59, ln. 1 – 15 (The Phillips currently own a Hewlett-Packard printer model 825.  They have owned this printer for approximately 9 months. Prior to that, they owned another Hewlett-Packard printer.  This is the printer that they had while living in Albuquerque.  Although not asked about the model number for the printer owned in Albuquerque, Ms. Phillips does not recall the model number for that printer).  In sum, there is nothing further to compel.

**Request for Production No. 5** – In paragraph 24 of its Motion, Defendant complains that it has not received complete production of all "records of communications between you [Dr. James Seaba] and Cory Phillips from January 2001 to the present . . . ."

2

Defendant has not attached a copy of the Request and Plaintiffs' response to its Motion. *See* D.N.M.LR-Civ. 37.1. A copy of the Request and Plaintiffs' response is attached as Exhibit A hereto.

Plaintiffs have objected to this Request "to the extent that it seeks materials protected by the attorney-client privilege for joint representation and to the extent that it seeks materials protected under the attorney work product doctrine." Plaintiff further states "[s]ubject to these objections, responsive, non-privileged documents and any necessary privilege log will be produced."

D.N.M.LR-Civ. 26.6 provides that a party served with an objection to a written discovery request

> must proceed under D.N.M.LR-Civ. 37.1 within twenty (20) calendar days of service of an objection unless the response specifies that documents will be produced or inspection allowed. In this case, the party must proceed under D.N.M.LR-Civ. 37.1 within twenty (20) calendar days after production or inspection of the documents. Failure to proceed within this time period constitutes acceptance of the objection. For good cause, the Court may, sua sponte or on motion by a party, change the twenty (20) day period.

Dr. Seaba's objection and response to Request for Production No. 5 was served on September 30, 2002. *See* Motion to Compel, ¶19. Pursuant to D.N.M.LR-Civ. 26.6 a Motion to Compel striking these objections was due no later than October 21, 2002. With respect to the remainder of the Response – that non-privileged, responsive documents and necessary privilege log will be produced – the short answer to Defendant's Motion is that Plaintiffs have produced responsive documents. Document nos. P 0335, P 0334, and P0497 are all communications between Dr. Seaba and Dr. Phillips. Plaintiffs have not found any other documents responsive to Request No. 5.

3

**Request for Production No. 12**    In paragraph 27 of its Motion, Defendant complains that it has not received complete production of all "billing invoices" sent to Plaintiffs by their attorney Clinton Marrs. Again, Defendant has not attached a copy of the Request and Plaintiffs' response to its Motion. A copy of Request No. 12 and Plaintiffs' response is attached as Exhibit A hereto.

Dr. Seaba objected to this Request "to the extent that it seeks information protected by the attorney-client privilege and the attorney work product doctrine;" and further responded that "[s]ubject to and without waving these objections . . . ." Plaintiffs attached a redacted copy of Mr. Marrs' last invoice. Dr. Seaba's objection and response to Request for Production No. 12 was served on September 30, 2002. *See* Motion to Compel, ¶19.  Pursuant to D.N.M.LR-Civ. 26.6 a Motion to Compel striking these objections was due no later than October 21, 2002. Plaintiffs have requested and will produce a redacted copy of Mr. Marrs' prior invoice once it has been received.

With respect to Dr. Seaba's deposition regarding his "consultations" with Mr. Marrs, it is not clear from Defendant's Motion what it is that they are seeking to compel. On page 13 of its Motion, Defendant asks the Court for its Order requiring Dr. Seaba to "testify as to consultations with Mr. Marrs regarding substantive testimony that Mr. Marrs has to offer that is not subject to a legitimate claim of privilege." It is not clear how Defendant expects that Dr. Seaba can testify regarding *Mr. Marrs' substantive testimony*.  Moreover, a review of Dr. Seaba's deposition transcript attached to Defendant's Motion does not show that Defendant's counsel ever asked any questions about "Mr. Marrs' substantive testimony that is not privileged;" nor does the deposition

4

transcript show that Dr. Seaba refused to answer any such questions.  Defendant's Motion to Compel further testimony on this issue is, therefore, not well taken.

**Request for Production No. 14**   In paragraph 31 of its Motion, Defendant complains that it has not received complete production of all business plans pertaining to Red Path.  Defendant has not attached a copy of Request No. 14 and Plaintiffs' response to its Motion.  A copy of the Request and Plaintiffs' response is, therefore, attached as Exhibit A hereto.

To date, Plaintiffs have been unable to find a copy of the Red Path business plan in their possession, custody, or control.  Plaintiffs will search their computer archive files again.  Defendant apparently has a copy of at least one version of the business plan.  *See* Exhibit G to Affidavit of Anton E. Litchfield (docket no. 73) filed in support of Defendant's Motion to Dismiss.  There may be a copy of the business plan still on file with Technology Ventures Corporation (TVC) or Team Specialty Products (TSP) both here in Albuquerque.  Plaintiffs' counsel will make inquiry to TVC and TSP and a copy of any response will be produced.

**Request for Production No. 16**   In paragraph 34 of its Motion, Defendant complains that it has not received complete production of all bank statements for Red Path.  Defendant has not attached a copy of Request No. 16 and Plaintiffs' response to its Motion.  A copy of the Request and Plaintiffs' response is, therefore, attached as Exhibit A hereto.

In response to Request for Production No. 16, Dr. James Seaba produced the one bank statement that he had in his possession.  Dr. Seaba's response to Request for Production No. 16 was served on September 30, 2002.  *See* Motion to Compel, ¶19.

Pursuant to D.N.M.LR-Civ. 26.6 a Motion to Compel further production was due no later than October 21, 2002. Moreover, Defendant has had the bank account information in its possession since September of last year, and could have easily requested the additional account statements directly from the bank. To the extent that Defendant requires a release to obtain this information from the Bank, Plaintiffs would be willing to provide one.

**Nancy Seaba's Communications with Her Attorneys** – Defendant asks the Court to compel Ms. Seaba to "testify as to the substance of conversations she had or witnessed involving her husband's attorney regarding her deposition or this lawsuit." Defendant's Motion, p. 12. Defendant further asks the Court to compel Ms. Seaba to "testify as to the substance of conversations she had with her father regarding her deposition or this lawsuit." *Id.* Ms. Seaba's deposition transcript reveals that objections to Defendant's questions regarding such conversations were proper. Defendant's Motion to compel further testimony with respect to these conversations is not well taken and should be denied.

At the deposition of Nancy Seaba, Defendant's counsel asked Plaintiffs' counsel whether the Modrall Sperling Law Firm represented Ms. Seaba. Defendant's counsel was told that Ms. Seaba has hired the Modrall Sperling law firm to represent her and to provide her with legal advice related to this case and other matters. Exhibit B hereto, deposition of Nancy Seaba, p. 6, ln. 11 - 25. Defendant's counsel was further informed that this representation began since before the lawsuit at issue in this case was filed. *Id.* Defendant's counsel asked no questions of Ms. Seaba regarding either the fact or scope of this representation. Defendant attempts to take advantage of his counsel's failure to

6

ask additional questions regarding the fact and scope of representation by arguing that Ms. Scaba's lack of testimony on this point fails to demonstrate that she is entitled to claim the privilege. *See* Motion to Compel, ¶12. Defendant's argument ignores the fact that Ms. Ms. Scaba acknowledged the attorney-client relationship in her response to counsel's question.

>    Q:    Besides praying, do you talk to anyone?
>
>    A:    I've spoken with my attorney, Angelo Artuso.
>
>    Q:    When did that conversation take place?
>
>    A:    I've spoken with him ever since he took the case, but specifically, we prepared this morning.

Exhibit B hereto, deposition of Nancy Scaba, p. 6, ln. 4 - 8.

In sum, because Ms. Scaba is represented by counsel, Defendant is not entitled to ask about the substance of her confidential communications with her attorney. Nor, is Defendant entitled to compel testimony by Ms. Scaba with regard to communications where she was present with her husband and their attorney. The fact that she has also hired the Modrall Sperling Law Firm to advise her with respect to this case (a matter of common interest with her husband and Dr. Phillips) means that she is entitled to assert the privilege. *See, e.g., Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs,* No. CIV 01-1044 LCS/DJS, 2002 U.S. Dist. LEXIS 25330 (D.N.M. December 3, 2002), at 14, Smith, J. ("The common interest doctrine 'normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party.'").

Conversations between Ms. Seaba and her father, a retired judge and licensed attorney in Iowa, are also privileged. NMRA 2003, Rule 11-503B sets forth the general rule of attorney-client privilege:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client,
>
> (1) between the client and the client's lawyer or his lawyer's representative. . . .

Rule 11-503A(1) defines "client" as "a person . . . who is rendered professional legal services by a lawyer, or who consults a lawyer or a representative of a lawyer with a view to obtaining professional legal services."

Rule 11-503A(2) defines a "lawyer" as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation."

Rule 11-503A(4) provides that "a communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

Ms. Seaba has testified that her father has given her legal advice. Exhibit B hereto, Nancy Seaba depo., p. 10, ln. 1 – 3. She has further testified that she consulted with her father "based upon his experience as a judge." *Id.*, p. 12, ln. 24 to p. 13, ln. 4. Under the criteria established by Rule 11-503, Ms. Seaba is entitled to claim a privilege with respect to her conversations with her father, regardless of whether he is working specifically on this case. There is no dispute that Ms. Seaba's father is licensed to practice in Iowa. That makes him a "lawyer" under Rule 11-503A(2). There is no

8

dispute that Ms. Seaba consulted with her father with a view to seeking legal advice. That makes her a "client" under Rule 11-503A(1). To the extent that Ms. Seaba had confidential discussions with her father, those are protected by the attorney-client privilege, and Defendant's motion to compel disclosure of such conversations is not well taken and should be denied.

**Mirror Images of Laptop Computer Hard Drives** - In paragraph 37 of its Motion, Defendant complains that it has not been compensated for the production of mirror image backups of the Plaintiffs' computer hard drives. Defendant claims that these backups were produce in response to specific production requests served by Plaintiffs. Again, Defendant has failed to attach a copy of the Request. A copy of Plaintiff James Seaba's Second Request for Production, no. 7 is attached as Exhibit C, hereto.

Dr. Seaba's Request for Production No. 7 does not ask Defendant to produce "mirror image backups" of the Plaintiffs' computers, it asks for production of the computers themselves. If the original computers had been produced for inspection, there would have been no need for Defendant to incur the expense of producing "mirror image backups." Plaintiffs should not have to bear the expense of Defendant's decision to produce mirror image backups as opposed to the original computers.

By letter dated May 1, 2003, Defendant's counsel declined to produce the original computers to Plaintiffs' expert. *See* Exhibit D hereto, letter from Alberto Leon to Angelo J. Artuso, dated May 1, 2003. Defendant's counsel proposed producing mirror image backups that were exact duplicates of the mirror image backups used by Defendant's computer expert, Anton Litchfield. In response, Plaintiffs' counsel again asked for the

original laptops and also suggested that "if the drives that Mr. Litchfield analyzed are exact bit for bit images, then I fail to understand why those cannot be shipped directly to Mr. Hilliard [Plaintiffs' expert] and why my clients should have to pay for Mr. Litchfield to make yet another copy of the drives." Exhibit E hereto, letter from Angelo J. Artuso to Alberto Leon, dated May 6, 2003. Despite these alternatives, Defendant chose to make another mirror image backup of the computer hard drives. They did so, however, on their own, and should have to bear the expense of their decision.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Compel should be denied.


Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: _Angelo J. Artuso_
    Lisa Mann
    Angelo J. Artuso
    Attorneys for Plaintiffs
    Post Office Box 2168
    Albuquerque, New Mexico  87103-2168
    Telephone: 505.848.1800

WE HEREBY CERTIFY that a true
and correct copy of the foregoing pleading
was mailed to all counsel of record this
10th day of June, 2003.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: _Angelo J. Artuso_
    Angelo J. Artuso

0301167

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

Plaintiffs,

v.                                                          Civ. No. 02-103 LH/WWD

MESOSYSTEMS TECHNOLOGY, INC.,

Defendant.

## PLAINTIFF JAMES SEABA'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS AND REQUESTS FOR ADMISSION

Plaintiff James Seaba submits the following answers and objections to Defendant's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission. Plaintiff objects to the six pages of Instructions and Definitions that precede the discovery requests to the extent that the Instructions and Definitions seek to impose obligations upon Plaintiff in excess of the requirements of the Federal Rules of Civil Procedure

## INTERROGATORIES

**INTERROGATORY NO. 1.**   Identify each person who has provided answers to these discovery requests, including but not limited to name, current address, how long they have resided at that address, mailing address and telephone number.

**ANSWER:**   James Philip Seaba, Ph.D., c/o Lisa Mann, Modrall, Sperling, Roehl, Harris & Sisk, P.A., P.O. Box 2168, Albuquerque, New Mexico 87103; (505) 848-1800.

EXHIBIT

A

**REQUEST NO. 3**: Produce all documents in support of each allegation contained in your Complaint.

**RESPONSE:** Plaintiff objects to this Request as vague and overly broad. Subject to and without waiving these objections, Plaintiff states *see* attached. *See also* documents produced, or to be produced, in response to the other Requests for Production.

**REQUEST NO. 4**: Produce all records of any and all communications with Charles Call, including, but not limited to, correspondence, notes, memoranda, e-mails, voice mail recordings, transcriptions of telephone and/or cellular phone conversations.

**RESPONSE:**   Documents responsive to this Request are attached.

**REQUEST NO. 5**: Produce all records of communications between you and Cory Phillips from January 2001 to the present, including, but not limited to, correspondence, notes, memoranda, e-mails, voice mail recordings, transcriptions of telephone and/or cellular phone conversations.

**RESPONSE:**   Plaintiff objects to this request to the extent that it seeks materials protected by the attorney-client privilege for joint representation and to the extent that it seeks materials protected under the attorney work product doctrine. Subject to these objections, responsive, non-privileged documents and any necessary privilege log will be produced.

15

**REQUEST NO. 12**: Produce any and all billing invoices direct to you or Cory Phillips by attorney Clinton Marrs.

**RESPONSE:**    Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege and the attorney work product doctrine.  Subject to and without waiving these objections, Plaintiff states *see* attached.

**REQUEST NO. 13**: Produce all documents, including, but not limited to, federal and/or state income tax returns, evidencing that your total compensation each year from R&D Americas, Inc. exceeded $200,000 with annual raises of approximately 12% as alleged in Paragraph 8 of your Complaint.

**RESPONSE:**    Plaintiff objects to this Request on the grounds that production of his entire federal and state income tax returns is overly broad and unnecessarily invades Plaintiff's right to financial privacy.  Subject to and without waiving these objections, Plaintiff states that his W-2 forms and other responsive documents are attached.

**REQUEST NO. 14**: Produce all business plans pertaining to Red Path.

**RESPONSE:**    See Response to Request for Production No. 3.

18

**REQUEST NO. 15**: Produce all organizational documents regarding Red Path, including, but not limited to, articles of organization and/or articles of incorporation, bylaws, minutes of Board of Directors meetings, and minutes of any shareholder meetings.

**RESPONSE:**   To the extent that responsive documents exist, they will be produced.

**REQUEST NO. 16**:  Produce all bank records of Red Path.

**RESPONSE:**   The bank statement for January 2002 is attached.  Plaintiff did not receive any further statements from Wells Fargo Bank because they were not forwarded to him from his old address.

**REQUEST NO. 17**: Produce all documents related to funding of Red Path, including but not limited to letters of intent, communications to potential investors, financing agreements.

**RESPONSE:**  All documents responsive to this request are attached.

19

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW MEXICO
2

3   JAMES SEABA and CORY PHILLIPS, )
                                   )
4              Plaintiffs,         )
                                   )
5   vs.                            )  Case No. 02-103 LH/RHS
                                   )
6   MESOSYSTEMS TECHNOLOGY, INC.,  )
                                   )
7              Defendant.          )

8
                 DEPOSITION OF NANCY SEABA,
9

10  a witness called on behalf of the Defendant, on the 13th day
    of May, 2003, at 616 South Main, Suite 204, in the City of
    Tulsa, County of Tulsa and State of Oklahoma, commencing at
11  8:00 A.M., before the undersigned, Joni Humphries, a Certified
    Shorthand Reporter in and for the State of Oklahoma.

12
    Fee for Original:      $_____
13  Paid by Defendant.

14

15  _____
            JONI HUMPHRIES, CSR #1236
16

17

18          DAVIDSON REPORTING
     CERTIFIED SHORTHAND REPORTERS
19         5508 South Lewis Avenue
           Tulsa, Oklahoma  74105
           Phone:  (918) 745-9959
20

21

22                                    **COPY**

23

24

25

EXHIBIT

B

1   deposition, besides not having reviewed any documents, have

2   you talked to anyone?

3   A     I've done a lot of praying.

4   Q     Besides praying, do you talk to anyone?

5   A     I've spoken with my attorney, Angelo Artuso.

6   Q     When did that conversation take place?

7   A     I've spoken with him ever since he took the case, but

8   specifically, we prepared this morning.

9   Q     How long did that preparation session take place?

10  A     Six-thirty to -- probably a little over an hour.

11          MR. LEON:  Angelo, is it going to be your firm's

12  position here that you are actually representing Mrs. Seaba

13  also?

14          MR. ARTUSO:  Yes, it is.

15          MR. LEON:  Can you tell me in terms of -- I mean

16  she's not a party in this lawsuit or there are no claims of

17  loss of consortium or anything like that.  How does that

18  work?

19          MR. ARTUSO:  She has hired us separately to

20  provide her with legal advice related to this and other

21  matters.

22          MR. LEON:  And is it your position that she's

23  hired you from the beginning of this lawsuit, before the

24  beginning of this lawsuit?

25          MR. ARTUSO:  Yes.

1    Q     (By Mr. Leon)  Is your father representing you as an

2    attorney in anything related to this case?

3    A     My father has given me legal advice.

4    Q     I'll restate my question.  Is your father acting as

5    your attorney in anything that has to do with this case?

6    A     I would say no.

7          MR. LEON:  I think that there is no privilege

8    there.

9          MR. ARTUSO:  I think that there is.  She sought

10   legal advice from him.  She communicated with him in

11   confidence.  I think it meets all the criteria for attorney

12   client privilege without it having to be specifically with

13   respect to his having entered an appearance or being a part

14   of this case.  So I'm going to instruct the witness not to

15   answer with respect to her conversations with her father.

16   I suspect we're going to be talking to the Magistrate about

17   the earlier objection anyway, so we can just add this one

18   to the list.

19         MR. LEON:  Well, no.  I'm going to keep asking

20   questions and you can object.

21   Q     (By Mr. Leon)  Have you in any way entered into an

22   agreement for your father to represent you in this case?

23   Are there any letters, any retention agreements, any

24   documentation that your father is representing you in any

25   way legally in this case?

1   you have with your family member is not attorney client

2   privilege, even if it has to do with a case, you're talking

3   to your family member.

4           MR. ARTUSO:  If she has information related to

5   conversations with her father in which she did not talk to

6   him in confidence and expect it to be retained in

7   confidence, then she can testify to that.  But where she

8   had conversations with her father seeking legal advice, and

9   he's licensed in the State of Iowa, and expected those

10  conversations to remain confidential, then we're taking the

11  position that that's protected by the attorney client

12  privilege and she doesn't have to provide that information.

13          MR. LEON:  Well I think that's an erroneous

14  position and we'll have to go before a Judge to decide

15  that.

16  Q    (By Mr. Leon)  When you spoke with your father in

17  these conversations that we're talking about, was it your

18  expectation that you were going to receive legal advice the

19  way that, for example, Mr. Artuso provides legal advice?

20  A    I asked him what might happen in a deposition, you

21  know, what to expect.  I've never, you know, taken a

22  deposition before, so I asked him kind of what the process

23  was.

24  Q    Was your expectation when you asked your father these

25  questions that you were consulting your father as a family

1   member or that you were consulting your father as an

2   attorney?

3   A      My father is a retired judge.  I consulted him based

4   upon his experience as a judge.

5   Q      Does your father work in a law firm?

6   A      My father does not work in a law firm.  He is a

7   retired judge like I just said.

8   Q      Does he practice law anywhere?

9   A      He is a part-time senior judge.

10  Q      The question is does he practice law in the private

11  sense, does he work part-time in a law firm, does he handle

12  private cases?

13  A      He works part-time for the State of Iowa.

14  Q      As a judge?

15  A      That is correct.

16          MR. LEON:  I'm want to restate my questions.

17  There is no attorney client privilege here.

18          MR. ARTUSO:  We can talk to the Magistrate about

19  it.

20          MR. LEON:  She has already testified as to

21  conversations with her father anyway.  She already said she

22  asked him about depositions and he gave her deposition

23  advice, so to the extent that she's already opened the door

24  --

25          MR. ARTUSO:  If you want to ask her about that



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

                    Plaintiffs,

v.                                                Civ. No. 02-103  LH/WWD

MESOSYSTEMS TECHNOLOGY, INC.,

                    Defendant.

## PLAINTIFF JAMES SEABA'S
## SECOND REQUESTS FOR PRODUCTION TO DEFENDANT
## AND DEFENDANT'S RESPONSES THERETO

To:    James Seaba and Cory Phillips
       C/o Angelo Artuso, Esq., their attorney
       500 Fourth Street NW, Suite 1000
       Albuquerque, New Mexico  87102

In accordance with Fed. R. Civ. P. 34, Defendant MesoSystems Technology, Inc.

("MesoSystems," "you," or "your") is hereby requested to produce the following documents

and things for inspection within thirty (30) days after the service of these requests.

EXHIBIT

C

MesoFuel, Inc. The disclosure of documents containing sensitive, confidential and proprietary information to MesoSystems' and MesoFuel's direct competitors would cause serious harm to MesoSystems and MesoFuel.

MesoSystems will not produce any correspondence between it and RTI between September 1, 2001 and December 31, 2001 absent an appropriate protective order issued by the Court.

**REQUEST FOR PRODUCTION No. 7:** Please produce the computers used by James Seaba and Cory Phillips during their employment with MesoSystems.

**RESPONSE:**

MesoSystems objects to this request on the ground that it seeks the production of the original computers used by Plaintiffs during their employment. The contents of the hard drives of the computers contain sensitive, confidential and proprietary information. Plaintiffs have formed a company that is designed to directly compete with MesoSystems and its subsidiary, MesoFuel, Inc. Furthermore, prior to returning the computers to MesoSystems and after the cessation of Plaintiffs' employment with MesoSystems, Plaintiffs accessed, copied, printed, and deleted certain files from the computers. Production of the original computers, therefore, could result in the further spoliation of evidence by Plaintiffs. Additionally, the production of the computers containing sensitive, confidential and proprietary files and other information to MesoSystems' and MesoFuel's direct competitors would cause serious harm to MesoSystems and MesoFuel. Without waiving these objections, MesoSystems responds as follows:

Pursuant to the terms set forth in the May 1, 2003, and May 7, 2003 letters from Alberto León to Angelo Artuso, and the May 6, 2003 letter from Mr. Artuso to Mr. León, MesoSystems has produced to Plaintiffs' designated expert, Brooks Hilliard, of Business Automation Associates, Inc., exact bit for bit images of the hard drives from both computers used by James Seaba and Cory Phillips during their employment with MesoSystems.

**REQUEST FOR PRODUCTION No. 8:** Please produce a copy of all documents that refer to, are concerned with, or otherwise reflect either the work or the hours worked, or both, on Department of Defense contracts by James Seaba and Cory Phillips while employed by MesoSystems.

**RESPONSE:**

MesoSystems objects to this request because it has already produced responsive documents in response to Plaintiff Cory Phillips' First Requests for Production to Defendant at Request for Production No. 6, and Plaintiff James Seaba's First Requests for Production to Defendant at Request for Production No. 8. See MTI 00250-251, 00253-270. Therefore, this request is overly burdensome and duplicative in that it requests documents that Plaintiffs already possess. As such, it is not reasonably calculated to lead to the discovery of admissible evidence.

See MTI 00250-251, 00253-270. MesoSystems has located and will produce one additional time sheet for Seaba for the first two weeks of September 2001.

# BAUMAN, DOW, McINTOSH & LEÓN
## A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

*Street Address:*
7309 Indian School Road NE
Albuquerque, New Mexico 87110

*Telephone: 505.883.3191*
*Fax: 505.883.3194*
*E-Mail: aal@bdmlawfirm.com*

*Mailing Address:*
*Post Office Box 30684*
*Albuquerque, New Mexico 87190-0684*

May 1, 2003

**VIA FACSIMILE (505) 848-1891**

Angelo J. Artuso, Esq.
MODRALL LAW FIRM
500 4th St. NW #1000
Albuquerque, NM 87103

   RE:   *Seaba, et al. v. MesoSystems Technology, Inc. – Various Discovery Issues*

Dear Mr. Artuso:

   This responds to your April 29, 2003 letters to me concerning the referenced matter. We have reviewed the discovery schedule proposed in your letters. This letter contains MesoSystems Technology's ("MST") proposal. I believe the schedule proposed herein sensibly addresses all parties' issues while allowing the case to move along as expeditiously as possible.

   MST has authorized our office to provide your office exact SAFEBACK image files for both laptop computers by or before May 5, 2003,[1] premised in our understanding that the image files and any results of their analysis will be treated as confidential materials. Only your office and your analyst would at any time have possession of the image files and of any documents or reports issued in connection with the analysis of the image files. Your clients would have no access to the image files or any copies thereof, and would not receive electronic copies of any part of those files. We do not object to your office reviewing paper copies of documents with your clients. However, we want to make sure your clients cannot retain possession of copies of any part of the hard drives in any medium. Your clients' access to the laptops already damaged MST and we want to minimize any further harm. Please communicate your agreement to the conditions herein in writing as soon as possible.

   Based on the amount of time that it took Mr. Litchfield to analyze the hard drive duplicates, it should not take your analyst more than ten (10) days to complete his analysis, which takes us to May 15, 2003. We can produce Mr. Litchfield for deposition within one week or by May 22, 2003. We can take your analyst's deposition within three working days of Mr. Litchfield's deposition or by May 27, 2003. I would anticipate that your clients can then file a response to our Motion to Dismiss and for Sanctions by June 3, 2003.

---

[1] As you know from our Motion for Sanctions, Mr. Litchfield, the computer media analyst that examined the laptops, used those exact same types of hard-drive duplicates for his analysis. In order to preserve the original hard-drives intact, Mr. Litchfield accessed the original hard drives only to make these duplicates. The cost for providing your clients with the copies in question will be $497.50, plus freight plus any applicable taxes. We must receive payment for providing the SAFEBACK image prior to, or upon, producing the copies requested by your clients.

**EXHIBIT**
D

Angelo Artuso, Esq.
May 1, 2003

Page Two

Per the schedule proposed in this letter, we would only have to agree to an eleven (11) day extension of the discovery period or until May 27, 2003. The extension would only apply to the taking of the two depositions mentioned above, and would not apply to any other aspect of this case.

MST is not willing to agree to a postponement of the June 25, 2003 Settlement Conference in this case. MST wants to proceed with this matter as expeditiously as possible.

We are still waiting to hear from you on the availability of Mrs. Phillips. In the meantime we will send you the Notice of Deposition for Mrs. Seaba for the date agreed upon. Please confirm that you will accept service for your clients' wives. In light of the discovery deadlines we all face, if I do not hear from you by the end of business tomorrow about Mrs. Phillips' availability, we will pick a date convenient to us prior to the expiration of the discovery deadline.

I understand that Dr. Anand Chellappa will be available to be deposed in Albuquerque on May 5, 6 or 8, 2003.

Very truly yours,

BAUMAN, DOW, McINTOSH & LEÓN, P.C.

By: _____
        Alberto A. León, Esq.

F:\Maxo\System Technology\Correspondence\5-1-03 Artuso Let.doc



## MODRALL SPERLING

LAWYERS

Angelo J. Artuso
505.848.1894
Fax: 505.848.1891
ajas@modrall.com

**VIA FACSIMILE TRANSMISSION TO: 883-3194**

May 6, 2003

Alberto León
Bauman, Dow, McIntosh & León
P. O. Box 30684
Albuquerque, New Mexico 87190-0684

Re:    Seaba, et al. v. MesoSystems

Dear Mr. León:

We have retained Mr. Brooks Hilliard as a computer forensic expert to assist us in preparing our response to the Motion to Dismiss. In your letter of May 1, 2003, you indicate that you can provide "exact SAFEBACK image files for both laptop computers ...." If Mr. Litchfield will certify that the drives you are providing to us are an exact bit for bit image of the original drives, then that will be acceptable. If, on the other hand, the drives that you wish to provide involve a SAFEBACK proprietary format, then we will need to receive the original laptops.

We would like for either the bit for bit image drives or the original laptops to be shipped to:

Business Automation Associates, Inc.
Attn: Brooks L. Hilliard
11811 North Tatum Boulevard
Suite 3031-113
Phoenix, Arizona 85028-1632
Telephone: (602) 264-9263

If the drives that Mr. Litchfield analyzed are exact bit for bit images, then I fail to understand why those cannot be shipped directly to Mr. Hilliard and why my clients should have to pay for Mr. Litchfield to make yet another copy of the drives. Similarly, if Mr. Litchfield has used a SAFEBACK proprietary process, and we need to analyze

Modrall Sperling
Roehl Harris & Sisk P.A.

Bank of America Centre
Suite 1000
500 Fourth Street NW
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,



**EXHIBIT**

E

Alberto Leon
April 29, 2003
Page 2

the original laptops, then I again fail to see why my clients should pay for such access. Please explain your justification for requesting $497.50 for copies of drives that already exist, in light of Fed.R.Civ.P. 1 which provides that the rules shall be administered, in part, to secure the inexpensive determination of every action.

Mr. Hilliard's analysis can be completed within the 10 days suggested in your letter of May 1st. We would then be in a position to take Mr. Litchfield's deposition on May 22 or 23, 2003. I am checking with Mr. Hilliard regarding his availability for deposition during the week of May 26, 2003. Presuming that we can hold to this schedule, we can file our response within one week after completion of Mr. Hilliard's deposition.

Please let me know immediately if you concur in this schedule, and when shipment of the drives will occur.

Sincerely,

Angelo J. Artuso

AJA\jev\K:\dox\client\65518\112\W0296889.WPD