UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

03 JUN 12 PM 3:58

CLERK-ALBUQUERQUE

JAMES SEABA and CORY PHILLIPS,

          Plaintiffs,

v.

MESOSYSTEMS TECHNOLOGY, INC.,

          Defendant.

NO. CIV-02-0103 LH/RHS

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Defendant MesoSystems Technology, Inc. ("MesoSystems") hereby submits this Reply to Plaintiffs' Response to MesoSystems Motion for Summary Judgment and states that there is no material fact in dispute and that MesoSystems is entitled to judgment as a matter of law against Plaintiffs on all counts.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs do not dispute Fact ¶¶ 1, 2, 7, 10, 12, 13, 14, 17, 19, 20, 23, 24, 25 and 26. Plaintiffs did not introduce any additional undisputed material facts.

Although Plaintiffs dispute Fact ¶¶ 3 and 4, the Seaba and Phillips Contracts, which Plaintiffs admit they entered into, detail the concrete terms of employment agreed upon by the parties. In ¶11 of the Phillips Contract and ¶13 of the Seaba Contract, the Plaintiffs acknowledged that, "This letter and the enclosed Confidential Information and Inventions Agreement set forth all of the terms of your employment with the Company. There is no other agreement between you and the Company." The Plaintiffs entered into fully integrated, written employment contracts with MesoSystems and acknowledged terms of that employment. Contrary to Plaintiffs citations regarding the fluid negotiations they participated in with MesoSystems with regard to the formation of a spin-off company and the expectation that Plaintiffs would eventually cease their employment with MesoSystems to work for the spin-off company, their integrated agreements did not include terms for the formation of the spin-off company as those negotiations were on-going. The Plaintiffs' agreements set forth all of the terms of Plaintiffs' employment with MesoSystems as indicated in the integration clauses. Plaintiffs cannot escape the



undisputed facts that they executed, acknowledged and accepted those terms.

Plaintiffs dispute Fact ¶¶ 5 and 6 that the MesoSystems' Board of Directors would have to ratify any agreement concerning the formation of a spin-off company and it never did. Despite Plaintiffs' own testimony to the contrary, Plaintiffs cite the deposition testimony of Al Schallop, a former board member of MesoSystems, that Call had the authority to ***terminate an employee*** of MesoSystems for the proposition that Call could unilaterally form a spin-off company. Even Plaintiffs, according to their deposition testimony, are aware that the MesoSystems' Board of Directors would have to ratify any agreement concerning the formation of a spin-off company and it never did. Deposition of James Seaba, Ph.D. taken April 2-3, 2003 (the "Seaba Dep") 197:14–199:9 attached to Defendant's Memorandum in Support of its Motion for Summary Judgment (the "Memorandum") as **Exhibit C**; Deposition of Cory Phillips, Ph.D. taken April 3, 2003 (the "Phillips Dep") 57:17–59:4 attached to Memorandum as **Exhibit D**.

Plaintiffs dispute that Phillips received all moving expense reimbursements set forth in the Phillips Contract as indicated in Fact ¶ 8. Plaintiffs cite Erika Phillips deposition for the proposition that Phillips was not fully reimbursed because "Phillips lost approximately $10,000 down payment on home being built in Ohio." Plaintiffs Response in Opposition to Defendant's Motion for Summary Judgment (the "Response") p 3. However, Plaintiffs fail to provide Erika Phillips testimony that Erika Phillips and her husband decided to back out of the contract for the sale of the Ohio home in summer of 2001, before they entered into an employment agreement with MesoSystems. Deposition of Erika Phillips p 18:4-20:12 attached as **Exhibit 1**. Cory Phillips was reimbursed $7878.36 for the expenses he submitted related to the purchase of this home in Ohio, including lighting upgrades, security system, home inspection, and other charges. Affidavit of Lisa Albrecht (the "Albrecht Aff") ¶2 attached as **Exhibit 2**. In addition, Phillips never provided proof of payment or even requested reimbursement for the down payment expense from MesoSystems. This is not surprising since a down payment on a house is not a "moving expense" under any objectively reasonable interpretation of that phrase. Under no legal theory can Plaintiffs claim a breach of contract for an expense Phillips incurred prior to MesoSystems obligation to reimburse him and for which Phillips never requested reimbursement from MesoSystems.

Plaintiffs dispute that Seaba received all moving expense reimbursements set forth in the Seaba Contract as indicated in Fact ¶ 9. Seaba never provided proof of payment for the $2800 rental expense he claims is due from MesoSystems. Presumably, it never occurred to him that rent could be considered a "moving expense." Seaba did request reimbursement for the $43,801.72 in moving expenses he was paid by MesoSystems. Albrecht Aff ¶ 3. Under no legal theory can Plaintiffs claim a breach of contract for an expense for which Seaba never requested reimbursement from MesoSystems.

Plaintiffs claim that the parties continued to discuss the structure, financing and Plaintiffs' role in the to-be-formed company up until November 28, 2001 in response to Fact ¶ 11. Although Plaintiffs testimony is to the contrary and MesoSystems contends that the fluid negotiations continued after that date, the difference in date is irrelevant to MesoSystems legal argument that the discussions continued to occur after the contracts were entered into between the parties and the employment relationship had begun. Therefore, Call's statements contemplated the formation of a company that all parties knew had not yet been formed but that all hoped would be formed sometime in the future. The change in date is irrelevant to the legal arguments based on this Fact.

Plaintiffs dispute Fact ¶¶ 15, 16 and 18 with the bald assertion that Call intended to deceive them and several citations regarding the actual representations they claim were made by Call. Plaintiffs cite no testimony regarding Call's intent except that Phillips states email he received from Call "solidified his sincerity". Plaintiffs later contend that "the question of Dr. Call's intent is fraught with factual issues and depends on witness credibility," but Plaintiffs have alleged no facts and tendered no proof of Call's intent.

## ARGUMENT

Because Plaintiffs cannot prove the thirteen counts of their Complaint, they allege two new counts in their Response. Under New Mexico's Rules of Civil Procedure and Federal case law interpreting the equivalent Federal Rules of Civil Procedure a basic purpose of pleading is to give opposing parties fair notice of the claims and defenses against them and the grounds upon which they are based. Schmitz v. Smentowski, 109 N.M. 386, 389, 785 P.2d 726, 729 (1990). These new issues are not within the issues made by the pleadings and Plaintiffs must file a motion under Rule 15 if they wish to amend their Complaint. Aside from the fact that Plaintiffs

cannot simply add counts in an effort to avoid summary judgment, the new claims of ambiguity and fraud in the inducement fail as a matter of law.

## I.   **AMBIGUITY**

Plaintiffs introduce an argument that their employment contracts are ambiguous in an effort to convince the Court to draft new terms of employment into the agreements and to persuade the Court to define the parties' potential future relationship in a "to-be-formed" company for which the parties themselves never had a meeting of the minds.  Plaintiffs acknowledge that ambiguity is a question of law to be decided by the trial court.  When the Court here reviews the contracts at issue, it will be readily apparent that the contracts are not ambiguous.

The parol evidence rule is a rule of substantive law that bars admission of evidence extrinsic to the contract to contradict and perhaps even to supplement a writing.  Bell v. Lammon, 51 N.M. 113, 179 P.2d 757 (1947).  The rule should not bar introduction of evidence to *explain* terms.  "The operative question then becomes whether the evidence is offered to contradict the writing or to aid in its interpretation." C. R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991).  "When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves...." CC Housing Corp., v. Ryder Truck Rental, Inc., 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987).  "[W]hen the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written." Estate of Griego v. Reliance Std. Life Ins. Co., 128 N.M. 676, 997 P.2d 150 (Ct. App. 2000).  An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. Stock v. Grantham, 125 N.M. 564, 570, 964 P.2d 125, 131 (1998).

> A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions.  In determining whether a term or expression in the contract is unclear, a court may consider evidence of the circumstances surrounding the making of the contract, and of any relevant usage of trade, course of dealing, and course of performance.  Further, the language of the entire agreement should be construed together.  Thus a single sentence or paragraph may not be selected as the entire dependence for the determination that a contract is uncertain, indefinite, and ambiguous.

Allsup's Convenience Stores, Inc. v. The North River Ins. Co., 127 N.M. 1, 12, 976 P.2d 1, 12 (1998) (citations omitted).

4

In this case. Plaintiffs pull two isolated phrases concerning job duties from their contracts with MesoSystems. The phrases are not ambiguous on their face, but even if they were, neither phrase is even a complete sentence from the contract and Plaintiffs clearly do not consider the contract as a whole. The contract as a whole unambiguously defines the employment relationship, rights and obligations between the parties. Plaintiffs' focus on the job duties phrases is also puzzling because Plaintiffs are not asking the Court to define Plaintiffs job duties as employees of MesoSystems or to choose between the parties differing understandings of what Plaintiffs' job duties were intended to be. Plaintiffs instead want the Court to define the parties' relationship with respect to the to-be-formed company on which the parties never reached agreement. Based on the supposed ambiguity of the job duties phrases, Plaintiffs would have the Court create and import into the contracts sweeping new terms, including the following: (1) James Seaba is the CEO of a to-be-formed company; (2) Plaintiffs are owners of a to-be-formed company; (3) MesoSystems is a passive investor in a to-be-formed company; (4) MesoSystems has laboratory facilities, marketing facilities, manufacturing facilities and equipment to support a to-be-formed company; (5) MesoSystems will create the to-be-formed company by a specific time that is "as soon as" Plaintiffs arrive in Albuquerque so Plaintiffs can "immediately begin working for the new company; and (6) all intellectual property developed by Plaintiffs is assigned to a to-be-formed company. None of this, of course, can be found in the actual contracts signed by the parties.

Phillips alleged understanding that he had to sign the employment contract "in order to receive funding from MesoSystems for the new company that he and Seaba were to form" was never expressed to MesoSystems and is not reflected in the contract. "As a matter of law, one party's subjective impressions, innermost thoughts, or private intentions, do not create an ambiguity." Hoggard v. Carlsbad, 121 N.M. 166, 909 P.2d 726 (Ct. App. 1996). A "party's statement of unilateral, subjective intent, without more, are insufficient to establish ambiguity in light of clear contract language." Hansen v. Ford Motor Co., 120 N.M. 203, 206, 900 P.2d 952, 955 (1995).

Plaintiffs' argument contradicts the clear language of the contract and, if accepted, would require this Court to create a new agreement between the parties. See Kirkpatrick v. Introspect Healthcare Corp., 114 N.M. 706, 845 P.2d 800 (1992). The employment contracts are not ambiguous as a matter of law.

## II.    FRAUD IN THE INDUCEMENT, FRAUD AND INTENTIONAL MISREPRESENTATIONS

Rule 9(b) states that "[i]n all averments of fraud... the circumstances constituting fraud... shall be stated with particularity." Bronstein v. Biava, 114 N.M. 351, 353, 838 P.2d 968, 970 (1992). Plaintiffs failed to even allege a cause of action for fraud in the inducement until filing their Response. The New Mexico Supreme Court determined that where the defendant's Response to Motion for Summary Judgment was the first document in which the plaintiff learned of defendant's presumed intention to bring fraud into issue, the requirement of pleading fraud with particularity was not met. Bronstein v. Biava, 114 N.M. 351, 353, 838 P.2d 968, 970 (1992). Plaintiffs have failed to plead fraud in the inducement with the particularity required.

In addition, regardless of Plaintiffs' introduction of a new cause of action for fraud in the inducement, they still cannot meet the required elements to prove their fraud claim. Plaintiffs attempt to rely on fraud in the inducement to avoid their contracts with MesoSystems. Plaintiffs point out that parol evidence is admissible to demonstrate fraud in the inducement, but this evidence is for the purpose of demonstrating fraud and not for the purpose of rewriting the contracts to conform with what terms the Plaintiffs wished they contained. "The courts cannot change or modify the language of a contract, otherwise legal, for the benefit of one party and to the detriment of another." Yankee Atomic Elec. Co. v. New Mexico and Ariz., 632 F.2d 855 (10th Cir. 1980). In Smith v. Price's Creameries, 98 N.M. 541, 544, 650 P.2d 825, 828 (1982), the New Mexico Supreme Court determined that, "in the face of the clear wording of the rights of the parties under the termination clause, the oral statement of Price's made prior to execution of the agreement cannot be deemed to constitute fraud or misrepresentation."

Plaintiffs rely heavily on a 31-year-old decision of the New Mexico Court of Appeals. Sierra Blanca Sales Co. v. Newco Indus., Inc., 84 N.M. 524, 505 P.2d 867 (1972), but Sierra Blanca is readily distinguishable. First, in Sierra Blanca, the court admitted parole evidence because the contract at issue was ambiguous, which is not the case here. 84 N.M. at 530, 505 P.2d at 873. Second, there was no evidence that the contract at issue in Sierra Blanca contained an integration clause, as is the case here. Third, the fraudulent statements alleged in Sierra Blanca were specific and concrete, that is, the party promised that he would personally guarantee that a certain payment would be made and he would ensure that another party ratified the contract. By contrast, even as alleged

by Plaintiffs, the statements attributed to Call were of a much different nature, plans for a future venture that necessarily might not come to fruition. Sierra Blanca simply does not support the proposition that the alleged statements of Call at issue here are actionable fraud.

Moreover, Plaintiffs still have presented no evidence that Call had the intent to deceive Plaintiffs and to induce them to rely or act upon the alleged misrepresentations. Eckhardt v. Charter Hospital of Albuquerque, Inc., 124 N.M. 549, 953 P.2d 722. Plaintiffs have alleged no specific facts and have tendered no proof to support the necessary elements that: (1) Call intended to deceive them, or (2) that Call did not believe his alleged assurances and promissory representations would eventually occur at the time the alleged misrepresentations were made. Even if "the question of Dr. Call's intent is fraught with factual issues and depends on witness credibility" as Plaintiffs contend, Plaintiffs have alleged no facts and tendered no proof of Call's intent.

Plaintiffs further allege that the question of Plaintiff's reliance on Call's alleged misrepresentations is also fraught with factual issues. However, Plaintiffs must **reasonably** rely on a misrepresentation to their detriment. Eckhardt, 124 N.M. 549, 953 P.2d 722 (emphasis added). The Court may determine as a matter of law that it would have been unreasonable for Plaintiffs to rely on pre-contract negotiations and opinions regarding future events rather than on the terms of a written employment agreement that was the result of discussion and compromise between the parties

## III.   NEGLIGENT MISREPRESENTATION

As fully discussed in the Memorandum, Plaintiffs have not alleged an actionable misrepresentation. All of the representations that Plaintiffs contend are the basis for the negligence claim are opinions, assurances, promissory in nature, or are true. The alleged misrepresentations were communicated to Plaintiffs throughout negotiations regarding the nature and terms of Plaintiffs proposed employment with MesoSystems and before Plaintiffs entered into written employment agreements with MesoSystems. It is not reasonably foreseeable that Plaintiffs would be harmed or even that Plaintiffs would rely on promissory statements or assurances, as they each have a clearly defined written contract. Moreover, because the Plaintiffs executed a subsequent contract with an integration clause, the action for negligent misrepresentation may not be maintained. See Rio Grande Jewelers

Supply, Inc. v. Data General Corp., 101 N.M. 798, 689 P.2d 1269 (1984). MesoSystems is entitled to judgment as a matter of law on Count III and Plaintiffs make no argument to the contrary in their Response.

## IV.    DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL

Plaintiffs must plead their claim for promissory estoppel with particularity. Continental Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. 690, 698, 858 P.2d 66, 74 (1993). Their promissory estoppel claim must be rejected for Plaintiffs' failure to plead it with particularity. See Id.

In addition, the New Mexico Supreme Court has decided that reliance on oral representations contrary to an express term of an employment contract is not reasonable:

> Promissory estoppel requires the party invoking the doctrine to have acted reasonably in justifiable reliance on the promise that was made. See Eavenson v. Lewis Means, Inc., 105 N.M. 161, 730 P.2d 464 (1986). We hold as a matter of law that it was unreasonable for Chavez to change his position in reliance on oral representations contrary to an express term of an employment contract which provided that their agreement could only be modified in writing. Were we to reach a different conclusion, we believe in effect we would be rewriting the terms of the parties' contract, and this we decline to do.

Chavez v. Manville Prods. Corp., 108 N.M. 643, 646, 777 P.2d 371, 374 (1989).

MesoSystems is entitled to judgment as a matter of law on Count IV and Plaintiffs make no argument to the contrary in their Response.

## V.    BREACH OF CONTRACT WITH SEABA

Plaintiffs allege "MesoSystems has refused to provide Seaba with the benefits contemplated by the parties and promised under the Employment Agreement." See Complaint ¶70. Plaintiffs late attempt to claim the contract is ambiguous fail for the reasons cited above.

Plaintiffs received all salary payments set forth in the offers of employment they executed with MesoSystems. The statutory issue raised in the Response by Plaintiffs does not demonstrate a breach of contract as discussed more fully in Section VI below. As demonstrated in the Memorandum, Plaintiffs have presented no evidence, and there is no other factual dispute of MesoSystems alleged breaches of the Seaba Contract. MesoSystems did not breach any terms of the Seaba Contract.

Plaintiffs also allege for the first time in their Response that "Defendant's Motion ignores the fact that there is another agreement at issue in this case; specifically, the Separation Agreement prepared by Charles Call,

on behalf of MesoSystems, and sent to Dr. James Seaba on November 28, 2001." Response pp 10-11. MesoSystems did not simply "ignore" the unsigned, proposed Separation Agreement in addressing Seaba's breach of contract claim. Plaintiffs specifically pleaded that MesoSystems breached the "Employment Agreement," i.e., the Seaba Contract and the Phillips Contract--*not* the proposed Separation Agreement. Complaint ¶¶ 68-72. In addition, although Plaintiffs complain for the first time in the Response that MesoSystems "revoked the Separation Agreement by firing Plaintiffs on December 6, 2001, just 8 days into the review period" Response p 11, this is entirely inconsistent with their allegation in the Complaint that "James Seaba indicated that he would not accept those terms [of the separation agreement], just as MesoSystems had previously refused to accept those terms in connection with a different proposed deal." Complaint ¶ 38. Seaba rejected the proposed Separation Agreement and there was never a meeting of the minds on the terms of the proposed contract. As Plaintiffs point out, there was no acceptance, without which there could be no contract, and so, there was no breach. Moreover, if the Separation Agreement *had* been agreed to, it would have barred this very action because it contained a release of all claims against MesoSystems. Plaintiffs' late attempts to introduce new breach of contract claims are ineffective and cannot salvage their failure of evidence that MesoSystems breached its employment agreement with James Seaba.

## VI.   BREACH OF CONTRACT WITH CORY PHILLIPS

Plaintiffs' late attempt to claim the contract is ambiguous fail for the reasons cited above. Phillips was entitled to compensation under the Phillips Contract. Phillips Contract ¶3. Plaintiffs received all salary payments set forth in the offers of employment they executed with MesoSystems. See Fact ¶7. Plaintiffs do not dispute that Phillips received all salary payments as stated in Fact ¶7, Plaintiffs, for the first time, argue that MesoSystems did not comply with NMSA 1978, §50-4-4. That claim is irrelevant as to whether MesoSystems breached its contract with Phillips by not paying him all of the compensation he was entitled to under their agreement. MesoSystems asserts that it did not violate the statute in question. Even if the payments were not "timely," as Plaintiffs allege, the contracts did not contemplate the timing of post-termination payments. The contract was not breached.

## VII.   BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs contend that "[b]ecause more than the employment relationship is at stake in this case"

MesoSystems is not entitled to summary judgment on Plaintiffs' claim for Breach of the Covenant of Good Faith and Fair Dealing. See Response p 15. Plaintiffs fail to cite any legal authority in support of this contention.

The covenant of good faith and fair dealing depends upon the existence of an underlying contractual relationship. Azar v. Prudential Ins. Co. of Am., 2003 NMCA 62. "Every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties *in the performance and enforcement of the contract*." Paiz v. State Farm Fire and Casualty Co., 118 N.M. 203, 212, 880 P.2d 300, 309 (1994) (emphasis added). The New Mexico Supreme Court has provided the following definition:

> The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will *injure the rights of the other to receive the benefit of their agreement*. Denying a party its rights to those benefits will breach the duty of good faith *implicit in the contract*.

Cafeteria Operators, L.P. v. Coronado – Santa Fe Assocs., L.P., 124 N.M. 440. 952 P.2d 435 (1997) (citations omitted) (emphasis added). The covenant is tied to the performance of or failure to perform a contractual obligation.

New Mexico does "not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship." Silva v. Am. Fed. of State, County and Municipal Employees, 131 N.M. 364, 366, 37 P.3d 81, 83 (2001) (citations omitted). Plaintiffs' and MesoSystems' "at-will" employment relationship prevents Plaintiffs from asserting a cause of action based on the implied covenant of good faith and fair dealing. As no other contractual relationship exists between Plaintiffs and MesoSystems, MesoSystems is entitled to summary judgment as a matter of law.

## VIII.   WRONGFUL DISCHARGE

Plaintiffs concede that they are unable to substantiate their claim for wrongful discharge.

## IX.   PRIMA FACIE TORT

The prima facie tort has a single function in the Complaint: to escape possible restrictions imposed on the other alleged torts. In New Mexico, "[T]o the extent that [Plaintiff's] claim of prima facie tort does not duplicate the other torts alleged in the complaint, it would simply be a means of evading the requirements of the doctrines underlying those potential torts. This is improper." Stock v. Grantham, 125 N.M. 564, 964 P.2d 125 (Ct. App.

1998). Plaintiffs admit they intend to use the prima facie tort claim, "If the Court were convinced that we did not satisfy the elements for the established cause of action set forth above." See Response p 15. Plaintiffs also state that the prima facie tort claim is an "[A]lternative to the Wrongful Discharge claim" that Plaintiffs concede they cannot support. Id.

Plaintiffs' prima facie tort claim is duplicative of their other claims. Further, as the New Mexico Court of Appeals held in Stock, "[B]ut to the extent that it is not [duplicative of other claims], we hold that application of that doctrine in this case would be an improper means of evading proof of essential, and appropriate elements of those other claims." Id. at 576, 964 P.2d at 137. Plaintiffs are asking the Court to allow recovery under prima facie tort if their other claims are unsuccessful. That is not an appropriate use of prima facie tort. MesoSystems is entitled to judgment as a matter of law on Plaintiffs' claim of prima facie tort.

## X.    INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

Plaintiffs concede that they cannot substantiate their claim for interference with prospective contractual relations.    Whatever additional undiscovered contacts MesoSystems could have had with possible funding sources, Plaintiffs must prove that any alleged interference was improper. Anderson v. Dairyland Ins. Co., 97 N.M. 155, 637 P.2d 837 (1981).   "[C]ourts are not as willing to protect interests in prospective contractual relations as they are to protect interests in existing contracts. Where the defendant is accused of interfering with the plaintiff's opportunity to enter into contracts with third persons, a strong showing must be made that the defendant acted not from a profit motive but from some other motive, such as personal vengeance or spite." Id. at 158, 637 P.2d at 840.   MesoSystems had a clear profit motive to have conversations with possible funding sources.  One must keep in mind that Plaintiffs' proposed company and MesoSystems' proposed company were in direct competition for funding. Plaintiffs have not and cannot make a "strong showing" of motives and in fact cannot even demonstrate a prospective contractual relationship required to support the cause of action. MesoSystems is entitled to summary judgment on Count X of Plaintiffs' Complaint.

## XI.   COBRA NOTICE / COBRA BENEFITS

Plaintiffs argue that summary judgment should not be granted on their COBRA claims because (a) MesoSystems attempted to condition COBRA notice on Plaintiffs waiving legal rights and (b) Plaintiff Scaba's

wife incurred $60 in medical expenses that were not covered. Response p. 16. The first argument is belied by an examination of the letter in question, Response Ex. J, and by another letter in the record, Response Ex. G, faxed to Plaintiffs' counsel just three working days later. It is manifest on the face of these letters that MesoSystems was simply trying to deliver accurate COBRA notification documents to Plaintiffs and did not want the COBRA notification provided to Plaintiffs until it could be established what was their last day of employment, which in turn would affect the content of the COBRA notice. This is all superseded by the fact that one week later, MesoSystems sent by overnight delivery to each Plaintiff a COBRA notice with which Plaintiffs do not take issue. See Facts ¶ 23.

As to the second argument, the only reason that Mrs. Seaba had $60 in medical expenses that were not covered by medical insurance is that *Plaintiffs themselves* chose to *not* elect COBRA coverage to extend their medical insurance after termination of their MesoSystems employment. See Facts ¶ 25. The Seabas presumably made the decision to not elect COBRA coverage because the premium was $536 per month for health insurance, which far exceeded the $60 medical expense incurred. Supplemental Affidavit of Samantha League (the "Supp League Aff") Ex. A, B attached as **Exhibit 3**. The argument that Plaintiffs somehow suffered legally cognizable damages because they chose not to pay a $536 premium to cover a $60 expense is frivolous. See Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1383 (10th Cir. 1997) (COBRA damages measured by "the amount of any medical bills incurred during the continuation coverage period, less premiums and applicable deductibles").

In Garcia v. Ponce Federal Bank, 779 F. Supp. 620, 631 (D.P.R. 1991), aff'd, 979 F.2d 890 (1st Cir. 1992), the federal court dismissed COBRA claims where the record established that "plaintiffs: (1) did receive proper COBRA notice; (2) had a sixty-day period in which to elect continued COBRA coverage; and (3) chose to not elect coverage within the sixty-day period". That is exactly the case here. It is undisputed that (a) Plaintiffs were provided with a fully compliant COBRA notice on January 30, 2002, which would have allowed them to elect COBRA medical insurance coverage from when their regular employee benefits ran out, (b) the notice gave Plaintiffs 60 days to make an election of COBRA coverage, and (c) Plaintiffs chose not to elect COBRA coverage. Facts ¶¶ 23-25; see also Supp League Aff Ex. A, B. Whether the January 30, 2002 COBRA notice-- which was indisputably in full compliance with the law--was timely or was 11 days late as Plaintiffs argue,

Plaintiffs' COBRA claims are completely insubstantial, Plaintiffs have suffered no damages whatsoever, and their COBRA claims should be dismissed.

## XII.   EQUITABLE RELIEF

Assuming *arguendo* that MesoSystems has breached either the Scaba Contract or Phillips Contract, Plaintiffs have an adequate remedy at law in damages. There is no basis for the equitable remedies claimed. In addition, if the contracts were to be rescinded, there would be no basis for Plaintiffs' breach of contract claims in Counts V and VI.

**WHEREFORE,** Defendant MesoSystems moves this Court for its order granting summary judgment against Plaintiffs.

DATED: 06/13/03.                    Respectfully Submitted:


**BAUMAN, DOW, McINTOSH & LEÓN, P.C.**


By_____
        Alberto A. León
        Christopher P. Bauman
        PO Box 30684
        Albuquerque, New Mexico 87190
        (505) 883-3191-telephone
        (505) 883-3194-facsimile


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Memorandum in Support of Motion for Summary Judgment was hand delivered to the following, on this 13th day of June, 2003.

Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
MODRALL LAW FIRM
Attorneys for Plaintiffs
PO Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1800


_____
        Alberto A. León

13

1              UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF NEW MEXICO

3    JAMES SEABA and
     CORY PHILLIPS,

4
                                              COPY
5              Plaintiffs,

6       vs.                            Civ No. 02-103 LH/RHS

7    MESOSYSTEMS TECHNOLOGY, INC.,

8              Defendant.

9    _____/

10       The Deposition of ERIKA K PHILLIPS, taken pursuant to

11   Notice in the above-entitled cause, at 623 West Huron

12   Street,  in the City of Ann Arbor, Michigan, on Wednesday,

13   May 14, 2003, commencing on or about 1:00 p.m., before

14   Jennifer Marlatt, CSR-7337, a Notary Public in and for the

15   County of Clinton.

16   APPEARANCES:

17              MODRALL, SPERLING, ROEHL, HARRIS & SISKA, PA
                By:  Mr. Angelo J. Artuso
18              500 4th Street, NW, Suite 1000
                Albuquerque, New Mexico  87102
19              (505) 848-1894

20      Appearing on behalf of the Plaintiff.

21              PERKINS COIE, LLP
                By:  Mr. Paul E. Smith (21158)
22              411-108th Avenue, Suite 1800
                Bellevue, Washington 98004-5584
23              (425) 453-6980

24      Appearing on behalf of the Defendant.

25

EXHIBIT
1

1   A.   Yes.

2   Q.   **And did you meet Dr. Call during his visit?**

3   A.   Yes.

4   Q.   **Okay.  Can you tell me what kind of interactions you**

5        **had with Dr. Call during his trip to Columbus in the**

6        **summer of 2001?**

7   A.   He and Dr. Seaba and his wife, Nancy, picked us up and

8        we went to a restaurant and had dinner on a Saturday

9        evening.  And at this dinner, he discussed little bit

10       -- he elaborated and talked about his company.  And by

11       this time he, you know, we -- we discussed just, you

12       know, some of the things about -- he talked about the

13       spin-off company and we talked about some of his

14       background and where he had visited.  He told us that

15       had been to Spain and sort of made small talk.  But

16       there was some discussion about the company and, you

17       know, just different things about his background as it

18       relates to his company and what he wanted to do with

19       the new company and things of that nature.

20  Q.   **What do you recall Dr. Call saying about his**

21       **background?**

22  A.   Well, I do recall us discussing -- he went into some

23       discussion saying that he, he was the father or the

24       grandfather of microreactors or microtechnology,

25       something of that nature.  And we talked a little bit

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

Plaintiffs,

v.

MESOSYSTEMS TECHNOLOGY, INC.,

Defendant.

NO. CIV-02-0103 LH/RHS

## AFFIDAVIT OF LISA ALBRECHT

STATE OF NEW MEXICO )
                     ) ss.
COUNTY OF BERNALILLO )

Lisa Albrecht, upon her oath states the following to be true and correct:

1.      I was formerly employed at MesoSystems Technology, Inc. ("MesoSystems"). In my capacity as a former employee of MesoSystems, I am attesting to the facts stated herein.

2.      James Seaba was in the Bay area in California from October 22-26, 2001. During that trip Seaba was involved with at least two business functions at MesoSystem's expense including a trip to Symyx and Entrepreneurial Boot Camp. Both functions were reimbursed in the amount of $1403.28 by MesoSystems on check # 09571 dated December 6, 2001.

3.      Cory Phillips was reimbursed $7878.36 for the expenses he submitted related to the purchase of his home in Ohio that was not consummated, including lighting upgrades, security system, home inspection, and other charges. The total of $7878.36 was reimbursed by MesoSystems on check # 09341(full amount of $10,010.20) dated November 15, 2001.



EXHIBIT
2

FURTHER AFFIANT SAYETH NAUGHT.

_Lisa Albrecht_ (signature)
Lisa Albrecht

STATE OF NEW MEXICO        )
                           ) ss.
COUNTY OF BERNALILLO       )

    This instrument was acknowledged before me by Lisa Albrecht  this 12th day of June 2003.

_Phyllis L. Blair_ (signature)
NOTARY PUBLIC

My Commission Expires:

12/22/04

OFFICIAL SEAL
Phyllis L. Blair
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 12/22/04

2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

              Plaintiffs,

    v.

              NO. CIV-02-0103 LH/WWD

MESOSYSTEMS TECHNOLOGY, INC.,

              Defendant.

## SUPPLEMENTAL AFFIDAVIT OF SAMANTHA LEAGUE

STATE OF WASHINGTON       )
                         ) ss.
COUNTY OF BENTON          )

      Samantha League, upon her oath states the following to be true and correct:

          1.      I am employed as the Human Resource Manager of MesoSystems Technology, Inc. ("MesoSystems"). In my capacity as Human Resource Manager, I am attesting to the facts stated herein.

          2.      Attached hereto as Exhibit A is a true and correct copy of the COBRA notice sent by MesoSystems to Plaintiff James Seaba by overnight mail on January 30, 2002.

          3.      Attached hereto as Exhibit B is a true and correct copy of the COBRA notice sent by MesoSystems to Plaintiff Cory Phillips by overnight mail on January 30, 2002.

FURTHER AFFIANT SAYETH NAUGHT.

_Samantha League_
Samantha League

EXHIBIT
3

STATE OF WASHINGTON        )
                           ) ss.
COUNTY OF BENTON           )


     This instrument was acknowledged before me by Samantha League  this _ll_ th day of June, 2003.

                                                _Leslie Anderson_
                                                NOTARY PUBLIC

My Commission Expires:

    _8-19-08_

2



**MesoSystems Technology, Inc.**
1021 N. Kellogg St.
Kennewick, WA 99336
(509) 737-8383
Fax: (509) 737-8484
sleague@MesoSystems.com
www.MesoSystems.com

January 30, 2002

Letter No. 02-005

James P. Seaba
9300 Farragut Dr. NE
Albuquerque, NM 87111

## SUBJECT: NOTICE OF RIGHT TO CONTINUE MEDICAL/DENTAL COVERAGE

**Medical (Premera Blue Cross)**
GROUP NAME: MesoSystems
GROUP NUMBER:  38759
SUBSCRIBER'S ID NUMBER: 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

**Dental (Guardian)**
GROUP NAME: MesoSystems
GROUP NUMBER: G-350304
SUBSCRIBER ID NUMBER: 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

Dear Dr. Seaba:

Your Group Health coverage would normally terminate as of December 31, 2001. Federal law, however, permits you to continue coverage, at your expense, for a continuation period of 18 months or through June 30, 2003.

This coverage will automatically cease at the end of the term noted above, when you become eligible for Medicare, when you become covered under another Employer sponsored health care plan, when this plan terminates and is not replaced or when you cease payment of the premiums, whichever occurs first.

Premiums as of January 1, 2002 are $536.40 per month for medical coverage and $99.29 per month for dental coverage. These must be paid in advance of the month for which coverage is desired. MesoSystems Technology, Inc. has continued your coverage through January 31, 2002. Medical and Dental coverage will end as of January 31, 2002. If you elect to continue your coverage you must return the enclosed documents no later than March 31, 2002. Payment of benefit premiums must be paid for past months including January 2002. Payment must be in full and received no later than 45 days from the date the election form was submitted.

|  | Coverage | Status |
|---|---|---|
| Coverage Available: | MEDICAL | EMPLOYEE/FAMILY |
|  | DENTAL | EMPLOYEE/FAMILY |



**EXHIBIT**
**3 A**



**MesoSystems Technology, Inc.**
1021 N. Kellogg
Kennewick, Washington 99336
(509) 737-8383
Fax: (509) 737-8484
www.mesosystems.com

Please sign the acknowledgement below and return a copy of this letter to me in the provided envelope. Also included is a COBRA Election Form, a Continued Group Coverage Application for Premera Blue Cross, and an Election of Continued Coverage for Guardian Life Insurance Company of America. Should you choose to transfer to COBRA, please complete these forms as well, and return to me by the date indicated on the COBRA Election Form.

If you have any questions or need further information, please feel free to contact me at (509)737-8383 or by E-mail at sleague@mesosystems.com.

Sincerely,

Samantha B. League
Human Resources Administrator


Enclosures

---

**I HAVE RECEIVED A COBRA NOTIFICATION FORM AND UNDERSTAND THE OPTIONS AVAILABLE TO ME.**

_____          _____
Signature                                          Date

_____ I Desire COBRA
_____ I Decline COBRA



**MesoSystems**

MesoSystems Technology, Inc.
1021 N. Kellogg St.
Kennewick, WA 99336
(509) 737-8383
Fax: (509) 737-8484
sleague@MesoSystems.com
www.MesoSystems.com

January 30, 2002                                               Letter No.  02-006

Cory Phillips
8605 Alta Loma
Albuquerque, NM 87113

**SUBJECT:   NOTICE OF RIGHT TO CONTINUE MEDICAL/DENTAL COVERAGE**

**Medical (Premera Blue Cross)**          **Dental (Guardian)**
GROUP NAME:  MesoSystems                   GROUP NAME:  MesoSystems
GROUP NUMBER:  38759                       GROUP NUMBER:  G-350304
SUBSCRIBER'S ID NUMBER: 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        SUBSCRIBER ID NUMBER: 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

Dear Dr. Phillips:

Your Group Health coverage would normally terminate as of December 31, 2002.  Federal law,
however, permits you to continue coverage, at your expense, for a continuation period of 18
months or through June 30, 2003.

This coverage will automatically cease at the end of the term noted above, when you become
eligible for Medicare, when you become covered under another Employer sponsored health care
plan, when this plan terminates and is not replaced or when you cease payment of the premiums,
whichever occurs first.

Premiums as of January 1, 2002 are $536.40 per month for medical coverage and $99.29 per
month for dental coverage.  These must be paid in advance of the month for which coverage is
desired.  MesoSystems Technology, Inc has continued your coverage through January 31, 2002.
Medical and Dental coverage will end as of January 31, 2002.  If you elect to continue your
coverage you must return the enclosed documents no later than March 31, 2002.  Payment of
benefit premiums must be paid for past months including January 2002.  Payment in full must be
received no later than 45 days from the date the election form was submitted.

| Coverage Available: | Coverage | Status |
|---|---|---|
| | MEDICAL | EMPLOYEE/FAMILY |
| | DENTAL | EMPLOYEE/FAMILY |



**EXHIBIT**

**3B**



**MesoSystems Technology, Inc.**
1021 N. Kellogg
Kennewick, Washington 99336
(509) 737-8383
Fax: (509) 737-8484
www.mesosystems.com

Please sign the acknowledgement below and return a copy of this letter to me in the provided envelope. Also included is a COBRA Election Form, a Continued Group Coverage Application for Premera Blue Cross and an Election of Continued Coverage for Guardian Life Insurance Company. Should you choose to transfer to COBRA, please complete these forms as well, return to me by the date indicated on the COBRA Election Form.

If you have any questions or need further information, please feel free to contact me at (509)737-8383 or by E-mail at sleague@mesosystems.com.

Sincerely,

Samantha B. League
Human Resources Administrator

Enclosures

---

**I HAVE RECEIVED A COBRA NOTIFICATION FORM AND UNDERSTAND THE OPTIONS AVAILABLE TO ME.**

_____    _____
Signature                                    Date

_____ I Desire COBRA
_____ I Decline COBRA