UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FILED

JAMES SEABA and CORY PHILLIPS.

Plaintiffs.

v.

MESOSYSTEMS TECHNOLOGY. INC..

Defendant.

03 JUN 18 AM 11: 22

NO. CIV-02-0103 LH/RHS

# DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS PLAINTIFS' COMPLAINT AND FOR ATTORNEY'S FEES AND COSTS AS A SANCTION FOR PLAINTIFFS' ABUSE OF THE DISCOVERY PROCESS

Defendant MesoSystems Technology. Inc. ("MesoSystems") hereby submits this Reply to Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint and for Attorney's Fees and Costs as a Sanction for Plaintiffs' Abuse of the Discovery Process (the "Motion"). MesoSystems hereby restates that there is ample evidence of Plaintiffs' numerous instances of abuse of the discovery process justifying the sanctions requested in MesoSystems' Motion.

In their Response to MesoSystems' Motion (the "Response"), Plaintiffs deny deleting, copying or altering files in the laptop computers they used while working for MesoSystems. Their denials do nothing but exacerbate their abuse of the discovery process. Plaintiffs' new affidavits submitted with the Response only add another instance of perjury to their already long list of transgressions in this litigation.

As set forth below, this Court has the sole discretion to sanction Plaintiffs for their abuse of the discovery process represented by their repeated perjurious testimony and concomitant spoliation of evidence. There is no support to the Response's misguided argument that MesoSystems must prove Plaintiffs' abuse of the discovery process by clear and convincing evidence. In fact, the very nature of Plaintiffs' acts, i.e., unlawfully deleting, reproducing and destroying important evidence in this case and then hiding their acts and lying about it during the discovery process, preclude MesoSystems from ascertaining with particularity exactly what evidence has been lost as a result of Plaintiffs' deceit.

The Response is plagued with inaccuracies. Overall, the Response is a weak effort to deviate the Court's attention from Plaintiffs' repeated instances of abuse of the discovery process, perjury and spoliation of evidence by using superfluous arguments backed by spurious facts.



## ARGUMENTS

**I**  **Applicable Law does not Require this Court to Apply a "Clear and Convincing Evidence" Standard to Sanction Plaintiffs for their Abuse of the Discovery Process.**

Contrary to Plaintiffs' assertion, the Court has the discretion to sanction a party by dismissing an action based on the party's false statements, perjurious testimony and other abuses of the discovery process. The applicable standard does not require "clear and convincing proof." Instead, the bulk of the relevant case law establishes that it is within the Court's inherent power and exercise of discretion to sanction a party in this manner. *See, e.g., Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (court has discretion to dismiss action where plaintiff manufactured evidence and committed perjury during deposition testimony); *Vargas v. Nelson Peltz & Elliot Mgmt. Servs. Co.*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) ("The federal district courts of this nation possess the inherent power to regulate litigation and to sanction litigants for abusive practices."); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (district court possesses the inherent power to deny court's processes to one "who defiles the judicial system by committing a fraud on the court"); *Reed v. Furr's Supermarkets, Inc.*, 129 N.M. 639, 645 (2000) (court is vested with wide discretion to impose discovery sanctions); *Medina v. Found. Reserve Ins. Co.*, 117 N.M. 163, 166 (1994) (choice of sanctions, including dismissal, for discovery abuse "lies within the sound discretion of the trial court, and it will be reversed only for an abuse of discretion").

The cases cited by Plaintiffs in support of their made up "clear and convincing proof" standard are inapplicable here. In *Anderson v. Dep't of Health & Human Serv.*, 907 F.2d 936 (10th Cir. 1990) and *Wallace v. Bank of Am.*, 2003 WL 1736445 (10th Cir. Apr. 2, 2003),[1] the Tenth Circuit considered a party's request to set aside a judgment under Fed. R. Civ. P. 60(b)(3) for the other party's alleged "fraud upon the court." Obviously, the standard for setting aside a judgment based on fraud upon the court should be much higher than in an action that has not proceeded to judgment. Here, MesoSystems is seeking a dismissal of Plaintiffs' action based on their repeated abuses of the discovery process, including committing perjury during their depositions and providing false answers to interrogatories. The weight of authority for dismissal as a sanction for discovery abuse is that court has discretion and the inherent power to sanction a party in this manner. *See Vargas*, 901 F. Supp. at 1579 ("The power of any court to manage its own affairs, which necessarily includes the authority to impose reasonable and appropriate sanctions on the parties to litigation before it, is deeply rooted in the common law tradition.").

---

[1] It should be noted that the Response relies on the *Wallace* case which is an unpublished decision and is not binding precedent. *See* 10th Cir. R. 36.3.

## II. Even Assuming, *Arguendo*, That a Clear and Convincing Standard Did Apply Here, MesoSystems has Readily Satisfied That High Standard

As demonstrated above, a clear and convincing standard does not apply here. However, the evidence presented by MesoSystems meets that standard. MesoSystems has presented an affidavit from a reliable computer analyst, Anton Litchfield, that hundreds of files were deleted from the two computers issued to Plaintiffs while in Plaintiffs' possession, after the termination of their employment. Plaintiffs have not challenged the data generated by Mr. Litchfield. Indeed, the computer analyst hired by Plaintiffs, Brooks Hilliard, did not dispute any of the data generated by Mr. Litchfield. And it is undisputed that Plaintiffs have repeatedly taken the position in this litigation, under oath, that they did not delete any files from their computers post-termination.

In the face of this hard evidence, Plaintiffs have offered nothing but unpersuasive conjecture and speculation, and their own self-serving and conclusory affidavits denying any wrongdoing. And with their affidavits, Plaintiffs seem to be digging themselves into an even deeper hole. Plaintiffs have offered no evidence showing that someone besides themselves deleted the files. The record as a whole provides clear and convincing evidence that Plaintiffs deleted files from their computers after termination of employment and then lied about it.

## III. MesoSystems Followed a Strict and Accurate Chain of Custody Procedure which is Thoroughly Documented

In anticipation of, and upon, receiving the laptop computers, MesoSystems set up and implemented a strict chain of custody procedure to handle the receipt, storage and subsequent delivery of the computers to a computer media analyst. Affidavit of Ned Godshall (the "Godshall Affid.").
¶ 2. The Response's attempts to discredit MesoSystems' chain of custody procedure must rise into oblivion by their own weightlessness.

The Response uses Mr. Anton Litchfield's testimony to attempt to establish facts concerning MesoSystems' chain of custody procedures.[2] Mr. Litchfield or his company, however, were not involved in setting up and implementing MesoSystems' chain of custody procedures. Mr. Litchfield had no first-hand knowledge of the whereabouts of the computers at issue in this case until March 2003, more than one year after his company took possession of those computers in February 2002. Even then, he was not the employee at his company who initially handled the computers. Thus it is hardly surprising that Mr. Litchfield lacked detailed knowledge of the early stages of the chain of custody. Supplemental Affidavit of Anton Litchfield ("Litchfield Supp. Affid."), ¶¶ 5, 6; Affidavit of Scott Stevens ("Stevens Affid.") ¶¶ 6,7, being filed concurrently herewith..

---

[2] Contrary to the Responses' assertions in page 2 therein, MesoSystems did not hire Mr. Litchfield as a "computer forensic expert." Mr. Litchfield is a fact witness in this matter. Mr. Litchfield examined the laptop computers and reported his factual findings in the manner a private investigator would.

3

MesoSystems' chain of custody log (the "Log") unequivocally shows what happened to the computers from the moment they were received by MesoSystems from Plaintiffs' counsel's messenger until hard drive copies were shipped to Plaintiffs' counsel. Everyone that has come into possession of the computers for any amount of time signed the Log. The only inconsistencies in the Log are those fabricated by Plaintiffs in order to justify their wrongful actions while once more trying to deceive MesoSystems and this Court.

As stated in ¶ 8 of the affidavit submitted in support of MesoSystems' Motion, and consistent with MesoSystems' Log, Ms. Lisa Albrecht, a then MesoSystems' employee, in fact received the two laptops, the CD writer and other items on January 30, 2002. Godshall Affid. ¶ 3. Contrary to the Response's statement, the initials "MDH" in the Log belong to Plaintiffs counsel's own courier, who picked up the items from Plaintiffs counsel's office at 11:53 am and delivered them to Ms. Albrecht at MesoSystems at 12:05 pm. Upon receiving the computers, Ms. Albrecht stored them in a locked file cabinet in her office at MesoSystems' premises. Albrecht Supp. Affid. ¶¶ 2, 4.

In an abundance of caution, MesoSystems' chain of custody procedure required an entry into the Log every time Ms. Albrecht accessed the locked file cabinet, even if the access took place in connection with other items returned by Plaintiffs stored therein. Godshall Affid. ¶ 3. Accordingly, on February 7, 2002, Ms. Albrecht accessed the locked cabinet and removed a coated foam block[3] and gave the foam block to Ms. Rhonda Lujan, a MesoFuel employee. Ms. Lujan's signature corresponding to that entry appears in a separate section of the Log labeled "Shipping Log" and not in the "Chain of Custody" section. Godshall Affid. ¶4; Albrecht Supp. Affid. ¶¶ 3, 5; Rhonda Lujan Affidavit, ¶3. No one but Ms. Albrecht, including Godshall, had access to the locked file cabinet during the 11 days the computers were stored therein. Ms. Albrecht retained sole possession of the only key known to open that cabinet. There were no other items stored in that file cabinet during those 11 days which required any kind of access by anyone else. Albrecht Supplemental Affidavit, ¶¶6,7; Godshall Affid., ¶5.

The Response attempts in vain to further undermine the veracity of the information in MesoSystems' Log by arguing that the computers were shipped to one person and actually received by another at New Armor Technologies, Inc. ("NTI"). The fact that the box containing the computers was addressed to Mr. Stevens at NTI but was signed in as received by Mr. French at NTI is irrelevant to the strength of MesoSystems' chain of custody procedure. It is utterly immaterial that Mr. French, and not Mr. Stevens, happened to be available to sign for the computers when the UPS truck arrived. It is only important, as was the case here, that no tampering took place and the whereabouts and integrity of the

---

[3] Incidentally, Ms. Lujan was charged with sending the foam block for analysis to determine whether these valuable materials were still usable after Plaintiff Phillips unlawfully retained those valuable MesoSystems' research and development materials for several months.

4

evidence is accounted for at all times. Litchfield Supp. Affid., ¶¶ 6, 9; Stevens Affid., ¶¶ 7, 8.

As set forth in the Albrecht Supplemental Affidavit and in the Supplemental Affidavit of Anton Litchfield, MesoSystems shipped the Log in the same container as the computers. NTI received the Log inside that container. Albrecht Supp. Affid., ¶8, and Litchfield Supp. Affid., ¶ 7. The Response's suggestion that some unknown person altered the Log to hurt Plaintiffs and help MesoSystems is ludicrous. MesoSystems has systematically and logically explained every entry in the Log. Likewise, every action of MesoSystems and NTI with respect to the custody and care of the computers is accounted for.[4] The bottom line is that when the computers were returned to MesoSystems, they were placed in a locked cabinet at MesoSystems for 11 days, then shipped to a highly reputable computer forensics firm, NTI. NTI has had the exclusive control and custody of the computers ever since. Plaintiffs have produced utterly no evidence to refute this.

Reasonably, it took MesoSystems and its counsel 11 days to research, identify and contact a reputable computer media analysis firm, and to ship the computers to NTI. Godshall Affid., ¶5; Albrecht Supp. Affid., ¶7. Contrary to the Response's suggestion, there is nothing sinister about that time span. It took 11 months to start the analysis because MesoSystems wanted to allow Plaintiffs ample opportunity to drop their frivolous lawsuit before undertaking the significant computer media analysis expenditure. During both time periods, the whereabouts of the computers is perfectly accounted for, and there is no credible allegation before this Court that anyone, besides the Plaintiffs themselves, tampered or attempted to tamper with the computers.

Once the computers were in NTI's hands, Mr. Litchfield, in his deposition, provided a clear chain of custody history. Again, the Response attempts to explain Plaintiffs' wrongful acts by soiling NTI's and Mr. Litchfield's integrity and reputation with a suggestion that someone at NTI tampered with the computers. While making such grave accusations, the Response offers no evidence or a plausible scenario to back up its flimsy theories.

MesoSystems' chain of custody procedures were sound and provide solid evidence that neither MesoSystems nor NTI in any way tampered with the computers. This is evidenced by the Log and is thoroughly explained by the affidavits filed with the Motion and with this Reply. No one, other than Plaintiffs, had the kind of access to the computers that could explain the activity involving the hard drives forming the basis of MesoSystems' Motion. No one, besides Plaintiffs, had the motive to try to erase the evidence of their wrongful acts. No one, besides Plaintiffs, perjured himself to try to cover up their illicit activities. There is overwhelming support for the fact that between December 6, 2001 and January 30, 2002, Plaintiffs deleted and copied numerous files from those computers. Plaintiffs' attempts to accuse

---

[4] NTI keeps it own electronic chain of custody log in its database. The entries in NTI's database account for the whereabouts and handling of the computers at NTI. Stevens Affid., ¶ 8; Litchfield Supp. Affid., ¶¶ 8, 9.

MesoSystems and NTI of setting them up must fail and this Court should penalize Plaintiffs harshly for their actions and deceit.

### IV. The Dates Establishing Plaintiffs' Discovery Abuses, Perjury and Spoliation of Evidence are Accurate

In the Response, Plaintiffs argue that the dates MesoSystems' used to establish Plaintiffs' discovery abuse are unreliable and could have been altered. Plaintiffs' theory is basically that some unspecified person, other than Plaintiffs, on MesoSystems' behalf, changed those dates to make it appear as if Plaintiffs had deleted and copied information and files from the computers. Plaintiffs use a single bit of information to support their conspiracy theory: the internal date in Seaba's computer was 11 months ahead. To use the example that Mr. Litchfield used in his deposition, if Seaba's computer were turned on May 27, 2003, the system date would show April 27, 2004. Litchfield Dep. at 50:4-6. There are plausible explanations for that event that do not involve MesoSystems. Litchfield Supp. Affid., ¶ 11.

Curiously, the date discrepancy does not support, but contradicts Plaintiffs' hypothesis. If after January 30, 2002, the date MesoSystems received the computers, someone deleted or copied files and then changed the computers' settings to implicate Plaintiffs, the dates would have been set anywhere from a few days to a few weeks backward and not 11 months forward. To state the obvious, none of this has any impact on Phillips' computer, where no such date anomaly was found. Litchfield Supp. Affid., ¶ 12.

Further, Mr. Litchfield relied on a Windows file called "schedlog" to support his testimony that no date tampering took place. According to Mr. Litchfield, it would be extremely unlikely, if not impossible, for a lay person without extensive knowledge and experience in computer systems to even know about the existence and functioning of the schedlog file, let alone have the wherewithal to manipulate that file. It would also take specialized software to change the schedlog file without leaving obvious signs. See Litchfield Supp. Affid., ¶¶ 13, 14, 15, 16. There is absolutely no evidence that anyone at MesoSystems knew about the schedlog file, knew that it would have to be changed to cover-up date tampering, or had the specialized software needed to change the schedlog file. Mr. Litchfield simply found no traces of date or time tampering on either computer. Litchfield Supp. Affid., ¶ 17.

Even further, Plaintiffs' "smoking gun" evidence of a date discrepancy is irrelevant to this Court's inquiry. Mr. Litchfield's analysis of the schedlog file unequivocally established that the fingerprints left by Plaintiffs' unlawful activities and attempts to cover them up which took place between December 6, 2001 and January 30, 2002, appear in perfect and unadulterated temporal sequence.[5] Every time the computer is turned on (and at certain other times while the computer is running), Windows

---

[5] One must question the logic and usefulness of Mr. Hilliard statement that there are numerous ways in which dates can be falsified with techniques that are virtually impossible to detect. Shouldn't that very lack of detection prevent Mr. Hilliard from suggesting that in this case the dates may have been falsified in the first place? Mr. Hilliard fails to provide any details about, or even a hint that, any such technique was indeed used in this case.

6

records the date and time in the "schedlog" file in sequence. Windows records the date and time in the schedlog file by using the system date. If one changes the system date, it results in sequential entries in the schedlog file that are out of chronological order. For example, if a computer is turned on once per day starting on June 1, 2003, and there is no tampering with the system date, the schedlog would look like this: June 1, 2003; June 2, 2003; June 3, 2003, June 4, 2003; and so on. However, if on June 4, 2003, the system date was changed to June 1, 2003, the schedlog would look like this: June 1, 2003; June 2, 2003; June 3, 2003; June 4, 2003; June 1, 2003; June 2, 2003; and so on. The schedlog file itself could be altered or obliterated, but another part of Windows records every time that the schedlog file has been changed. The only way to cover that up would be to use specialized software that allows a user to directly access file directory information and to use that software to access the schedlog file and alter the directory on the file to wipe out any record of access or changes to the file. Litchfield Supp. Affid., ¶¶ 14,15,17.

Mr. Litchfield's examination of Scaba's and Phillips' computers conclusively showed:

● all sequential entries on the schedlog were in chronological order and there were absolutely no anomalies;

● the schedlog file itself had not been accessed or changed; and

● there was no other evidence that the system date or any other dates on the computers had been tampered with.

Mr. Hilliard, Plaintiffs' own forensic analyst, has submitted a report of his findings and an affidavit in support of Plaintiffs' Response. Mr. Hilliards' testimony does not specifically contradict Mr. Litchfield's findings, based on the latter's analysis of the computers' schedlog files.[6] In fact neither Mr. Hilliard's report, nor his affidavit, even mentions whether Mr. Hilliard analyzed the schedlog files. Mr. Hilliard executed and tendered his affidavit on June 5, 2003, 9 days after Mr. Litchfield's deposition. At his deposition, Mr. Litchfield explained his analysis of the computers' schedlog files, thus establishing the veracity and reliability of the dates relied upon by MesoSystems. Mr. Hilliard had ample opportunity to address or try to contradict Mr. Litchfield's conclusions. One can only assume that the dates relied upon by MesoSystems, based on Mr. Litchfield's analysis, remain uncontroverted. The only explanation left, in light of the evidence before this Court, is that Plaintiffs indeed engaged in the nefarious activities established in the MesoSystems' Motion to Dismiss, in this Reply and in the accompanying documents. Plaintiffs' acts should not go unpunished.

---

[6] In fact, Mr. Hilliard's May 19, 2003, letter submitted with Plaintiffs' Response states in part "I do not intend to dispute any of the specific findings described in Mr. Litchfield's report." Mr. Hilliard letter further states that he is prepared to extend his efforts to address additional evidence submitted by Mr. Litchfield. Curiously, Mr. Hilliard's affidavit, executed after MesoSystems' analyst's deposition, does not extend his efforts to address the schedlog files' analysis performed by Mr. Hilliard.

## V.     Mr. Litchfield's Analysis Confirms Plaintiffs' Wrongdoing.

The Response's next red herring is that other activities like turning the computers on or printing files could have left a trail that MesoSystems now is presenting to the Court as evidence of Plaintiffs' spoliation of evidence. Mr. Litchfield's analysis, as once more explained in his Supplemental Affidavit, discovered evidence that numerous files had been deleted. Mr. Litchfield's analysis accounts for the possibility that documents could have been printed or the computers could have been simply turned on during the relevant dates. The evidence of file deletions and copying, as explained by Mr. Litchfield, stands alone and is independent of the seemingly harmless acts of printing or turning the computers on. See Litchfield Supp. Affid., ¶ 18. The Response's attempts to divert the Court's attention from Plaintiffs' deceit do not change the inescapable conclusion that Plaintiffs indeed deleted and copied numerous files and then lied about it under oath. Plaintiffs' argument becomes even more incredible once the contents of these files (the ones still recoverable) are read - they clearly document theft of MesoSystems' business proprietary materials and documents, and they speak of filing new patents in the name of their competing company (Redpath Energy) just days after leaving MesoSystems' employment. Amazingly, these new patent filings are identical to their MesoSystems' job tasks just days earlier. Is it any wonder, several months later, upon realizing that they now must return MesoSystems' computers, these files were both copied and then deleted on or about January 28, 2002, just two days before Plaintiffs' counsel's own courier delivered the computers to Ms. Albrecht?

The Court must keep in mind, moreover, that Plaintiffs' testimony under oath went beyond whether they deleted or copied files. Both Plaintiffs categorically testified under oath that they did not do *anything* with the computers between December 6, 2001 and January 30, 2002. In his April 2, 2003, deposition, Seaba testified that after December 5, 2002, until the time he gave the computer to his counsel, he "put it in a box." See Exhibit C attached to Alberto A. León's Affidavit filed with the Motion ("León Affidavit"). In his April 3, 2003, deposition, Phillips testified that after December 6, 2001, he "stopped using the computer." See Exhibit D to the León Affidavit. Furthermore, the Response's admissions that Plaintiffs printed important MesoSystems' documents after the cessation of their employment at MesoSystems, confirm their intent to deceive MesoSystems and this Court in their earlier depositions and interrogatories.

Phillips' wife, however, admitted in her deposition testimony that Phillips had used his computer at "various times" after employment terminated. E. Phillips Dep. at 58:5-12. Plaintiffs now admit in their Response that they printed important MesoSystems' documents after the cessation of their employment at MesoSystems, confirming their intent to deceive MesoSystems and this Court. This admission alone absolutely contradicts Plaintiffs earlier categorical statement that they had stopped using their computers once employment terminated.

There is evidence strongly supporting MesoSystems' contention that Plaintiffs not only knew about the additional partition in their hard drives, but they purposely created them and stored documents therein. The D-drive was created in Seaba's computer on September 5, 2001, and on Phillips' computer on September 4, 2001. See Litchfield's Supp. Affid., ¶ 20. Those dates coincide with when Plaintiffs started working for MesoSystems, and MesoSystems received the computers and assigned them to Plaintiffs. See Chuck Call's Supplemental Affidavit filed concurrently herewith, ¶3. Seaba's D-drive contains numerous Office-related files, e-mail messages, a personal letter to the IRS, and Power Point presentations originally created during Seaba's tenure at Honda R&D Americas, Inc., Seaba's employer immediately before MesoSystems. To imply that MesoSystems planted those documents in Seaba's D-drive is disingenuous at best, since MesoSystems could not possibly have had such documents. Curiously, there is also a MesoSystems' presentation in Seaba's D-drive almost identical to the Honda presentation but with references to Honda and the Honda logo replaced by MesoSystems'. See Litchfield's Supp. Affid., ¶ 21, 22, 23. True to an already established pattern of behavior, it appears that Seaba took proprietary documents, materials and information generated while at Honda and therefore belonging to Honda, and intended to pass them off as work product generated for MesoSystems.

The fact that some of the files Plaintiffs deleted contained Dr. Call's name is irrelevant to this Court's inquiry. It is also irrelevant that Plaintiffs have chosen in hindsight to use some of the documents they wrongfully deleted or failed to delete to bolster their case.[7] Plaintiffs' motives to delete and copy numerous files could have been many, among them (1) to cover up the timing of the formation of their competing company, i.e., Red Path Energy, Inc.; (2) to cover up communications with third parties regarding their competing activities; (3) to hide their misappropriation of Honda's and MesoSystems' proprietary information; or (4) to hide the unauthorized delivery to third parties of important proprietary information belonging to MesoSystems. Plaintiffs are the only ones who ultimately know in detail what their root motives were. Only some of these deleted files were recoverable. The fact remains that Plaintiffs deleted important proprietary files from MesoSystems' computers, many of which contained important evidentiary information in this case. Plaintiffs then repeatedly lied under oath about their activities, thus grossly abusing the discovery process.

Plaintiffs' Response provides some of the strongest ammunition in MesoSystems' arsenal. The Response stresses that the "metadata" for the Red Path Energy Business Plan Plaintiffs erased from the computers reveals that the author was Lisa Oglesby, a/k/a Lisa Albrecht. Using rather twisted logic, the Response concludes that Plaintiffs did not create that document so their deletion of it cannot constitute

---

[7] For example, the so-called "separation agreement" was among the documents Plaintiffs deleted. The parties never agreed to the terms in that document and never executed it. Therefore, that document has no contractual value whatsoever.

evidence of wrongdoing. Nothing could be farther from the truth. In reality, Plaintiffs' argument only confirms that thy stole a proprietary business plan created by MesoSystems, plagiarized it, created a competing entity's business plan, and attempted to use it to obtain funding from sources they had learned about from their MesoSystems' employment. Plaintiffs then proceeded to delete the Red Path Energy Business plan to try to hide the long chain of mischief and, when questioned about it, repeatedly lied under oath.

## VI.  MesoSystems has Established Plaintiffs Spoliation of Evidence in this Case.

Plaintiffs argue that even if they deleted files, it is not that significant because many or most of the deleted files can be recovered. This argument is flawed on several levels. Even if the deleted files can be recovered, it takes nothing away from the fact that Plaintiffs lied about the fact that they had deleted the files. It also does not address the fact that Plaintiffs concededly were specifically instructed by MesoSystems' CEO to not delete any files from their computers and did so anyway. Also, there is no evidence that all of the deleted files are recoverable; Plaintiffs deleted hundreds and hundreds of files, and some may prove to be unrecoverable. Finally, Plaintiffs offer no legal authority for the counterintuitive argument that when one attempts to destroy files or documents and does not fully succeed in doing so, that this does not amount to spoliation.

Interestingly, the Response cites *Aramburu v. The Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997). The *Aramburu* case provides a definition of spoliation of evidence which strongly supports MesoSystems' position in this litigation. Under *Aramburu*, "bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." *Id* at 1407. The Response pretends to use the holding in *Aramburu* to support their theory that "deleted" is not the same as "destroyed." Nowhere in that decision does the 10th Circuit even insinuate that intentional deletion from electronic media does not constitute destruction under its definition of spoliation. On the contrary, the Aramburu Court focuses on the intention to destroy records (i.e., bad faith) versus the negligent misplacement of documents. *Id*. As demonstrated by the overwhelming weight of the evidence MesoSystems has presented to the Court, the Plaintiffs had every intention of making a substantial amount of evidence disappear forever. The fact that MesoSystems has recovered some of the deleted files at great effort and expense does not condone Plaintiffs' conduct, nor does it make it any less reprehensible and punishable. A bank robber surrounded outside the bank cannot simply hand over the bag of money and then maintain his innocence based on the fact that he did not succeed in making his escape.

As set forth above in page 7, Plaintiffs' admission in the Response that they printed "files and e-mails from each of the computers" between December 6, 2001 and January 30, 2002, directly contradicts their deposition testimony. See Exhibits C and D attached to the León Affidavit. It is disingenuous for

Plaintiffs to suggest, now that they were caught with their hands in the cookie jar, that they printed documents to preserve important evidence. The totality of the evidence in this case leads to one inescapable conclusion: Plaintiffs intentionally deleted and copied a substantial number of documents relevant to this litigation and belonging to MesoSystems, tried to cover their tracks and then lied about it during the discovery process in this case.[8]

### VII.    MesoSystems is Entitled to Attorney's Fees and All its Computer Analysis Costs.

The Response correctly underscores the provisions of 28 U.S.C. § 1927 ("§ 1927") under which an "attorney or other person admitted to conduct cases in any court of the United States ..." may be required to satisfy personally excess costs, expenses and fees reasonable incurred because of such conduct. Plaintiffs argue that MesoSystems' motion "lacks any reasonable factual foundation," but MesoSystems in fact has submitted extensive computer data that Plaintiffs' own analyst does not dispute. It is Plaintiffs whose filings lack a reasonable factual foundation, since they have produced nothing except their own conclusory affidavits. MesoSystems is the only party in this case that is eligible and therefore entitled to fees and costs under § 1927, and through application of this Court's discretion. But for Plaintiffs' conducts and lies in this case, MesoSystems would not have incurred substantial computer analysis and attorney's fees in trying to recover the deleted and copied information. As of the filing of this Reply, MesoSystems had incurred well over $50,000.00 in computer media analysis and attorney's fees and costs in relation with trying to recover the information and materials Plaintiffs deleted and in pursuing its Motion to Dismiss. Stevens Affid., ¶ 10; Godshall Affid., ¶7. MesoSystems will have to spend additional amounts to ascertain the full extent of the damage Plaintiffs caused and to try to recover the bulk of the documents and materials Plaintiffs deleted. See Godshall Affid., ¶8.

In fact, Plaintiffs' counsel has been on notice of its clients activities since April 22, 2003, upon MesoSystems' filing of the Motion. Instead of trying to cooperate with MesoSystems to rectify an obvious wrong, Plaintiffs' counsel has vigorously defended an untenable position thus forcing MesoSystems to invest substantial time and money to assert its rights in this matter. Penalties under § 1927 for vexatious behavior that has harassed and annoyed can, and should, only be imposed in this case against Plaintiffs and their counsel.

Pursuant to Fed.R.Civ.P. 37(s)(4)(B), MesoSystems is also entitled to attorney's fees and costs incurred in litigating its Motion, costs of computer media analysis and the expense of making Mr. Litchfield available for his deposition. The issues related to MesoSystems Motion are not at all collateral to this litigation because they involve important evidence that can seriously undermine Plaintiffs' case.

---

[8] The Responses' attack on MesoSystems handling of its own electronic data is yet another effort to distract the Court's attention away from Plaintiffs own illicit acts. MesoSystems has made, and continues to make, any and all

Accordingly, Plaintiffs are not entitled to any remedies under Fed.R.Civ.P. 54.

## CONCLUSION

For the foregoing reasons, MesoSystems respectfully requests that the Court grant its Motion and sanction Plaintiffs for their pattern of abusing the discovery process by providing false answers under oath to MesoSystems' discovery requests and deposition questions by dismissing their complaint, with prejudice. MesoSystems also requests that the Court award MesoSystems with all computer analysis costs, including any and all payments made to Mr. Litchfield's company and any and all attorney's fees and costs in connection with MesoSystems' Motion and this Reply.

Respectfully Submitted:

BAUMAN, DOW, McINTOSH & LEÓN, P.C.

By _____
Alberto A. León
Christopher P. Bauman
PO Box 30684
Albuquerque, New Mexico 87190
(505) 883-3191-telephone/(505) 883-3194-facsimile
AND

**PERKINS COIE, LLP**
Paul E. Smith
One Bellevue Center
Suite 1800, 411
108th Avenue NE
Bellevue, Washington 98004-5584
(425) 453-7317-telephone/(425) 453-7350-facsimile
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Memorandum in Support of Motion for Summary Judgment was hand delivered to the following, on this 18th day of June, 2003.

Lisa Mann
Angelo J. Artuso
MODRALL LAW FIRM
PO Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1800

_____
Alberto A. León

---

reasonable efforts to produce any and all documents and materials Plaintiffs may be entitled to in this case. Further, the parties pending discovery issues are being litigated in separate Motions to Compel pending before this Court.