IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED

03 JUN 24 PM 3:27

JAMES SEABA and
CORY PHILLIPS,

      Plaintiffs,

v.                                  Civ. No. 02-103 LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

      Defendant.

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT TO CONDUCT A COMPLETE SEARCH OF ALL ELECTRONIC ASSETS FOR DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS AND TO PRODUCE LAPTOP COMPUTER FOR INSPECTION

Defendant MesoSystems' Opposition to Plaintiffs' Motion to Compel Defendant to Conduct a Complete Search of All Electronic Assets for Documents Responsive to Discovery Requests and to Produce Laptop Computer for Inspection ("Defendant's Response") fails to set forth a credible explanation for MesoSystems' refusal to produce the electronic information and laptop computer requested by Plaintiffs. For the reasons stated in their Motion to Compel, and the reasons set forth herein, Plaintiffs respectfully request that their motion be granted.

**I.    DEFENDANT ADMITS THAT PLAINTIFFS ARE ENTITLED TO A COMPLETE SEARCH OF ALL ELECTRONIC ASSETS FOR DOCUMENTS RESPONSIVE TO PLAINTIFFS' DISCOVERY REQUESTS.**

It is beyond dispute that "[b]road discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Under Rule 34, a party may request discovery of



any document, "including writings, drawings, graphs, charts, photographs, phone records, and other data compilations...." Fed.R.Civ.P. 34(a). The "inclusive description" of the term document should be interpreted in "accord with changing technology." Advisory Committee Note to Fed.R.Civ.P. 34. Thus, "[e]lectronic documents are no less subject to disclosure than paper records." *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y.2002) (collecting cases). This is true not only of electronic documents that are currently in use, but also of documents that may have been deleted and now reside only on backup disks. *See e.g. Antioch Co. v. Scapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D.Minn.2002) ("[I]t is a well accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable"); and *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D.Ind.2000)(computer records, including records that have been 'deleted,' are discoverable under Fed.R.Civ.P. 34).

Plaintiffs are clearly entitled to any documents responsive to their discovery requests even if they are in electronic form. Defendant's burden of production is no less than it would be if the documents were stored in metal file cabinets. Defendant readily admits that it is required to produce such documents. *See* Response at 7. Yet, despite clear authority supporting Plaintiffs' request for electronic documents, Defendant MesoSystems has failed to conduct a complete search for responsive data, offering only that "it is unlikely there is any responsive data." *See* Defendant's Response at 4.

## II. DEFENDANT HAS FAILED TO ESTABLISH THAT PRODUCTION WOULD IMPOSE AN UNDUE BURDEN AND THEREFORE COST SHIFTING IS NOT APPROPRIATE IN THIS CASE.

Recognizing its obligation to produce the requested documents, even if in electronic form, Defendant's Response urges the court to shift the cost of production to the Plaintiffs to protect it from undue burden or expense. *See* Defendant's Response at 8. Defendant has failed,

however, to demonstrate that it would be subject to any undue burden and the cost of production should, therefore, remain with the Defendant.

Defendant's Response confuses two distinct ideas; whether a party will suffer undue burden or expense, Fed. R. Civ. P. 26(b)(2), and whether the Court should engage in a cost-shifting analysis in order to relieve that burden. Cost shifting should not be considered unless and until the responding party has established that the cost of producing the electronic data is prohibitive. *See, e.g., Zubulake v. UBSWarburg, LLC*, slip op. 2003 WL 21087884 *6 (S.D.N.Y. May 13, 2003)(Scheindlin, J.) (In light of the accepted principle that electronic evidence is no less discoverable than paper evidence, cost-shifting need not be considered in every case involving the discovery of electronic data). In this case, Defendant has failed to substantiate its claims that production would be unduly burdensome or expensive. Moreover, even if Defendant had substantiated such a claim, which it has not, the facts of this case do not support shifting the burden of production from Defendant, a corporate entity, to the individual Plaintiffs.

### A. Defendant has Failed to Establish That the Cost of Production Would Subject It to Undue Burden or Expense

An undue burden or expense does not arise simply because electronic evidence is involved. *Zubulake*, at *7. To the contrary, electronic evidence is frequently cheaper and easier to produce than paper evidence because it can be searched automatically, key words can be run for privilege checks, and the production can be made in electronic form obviating the need for mass photocopying. *Id.* (citing Scheindlin & Rabkin, ELECTRONIC DISCOVERY, 41 B.C. L.Rev. at 335-341, describing the types of discoverable electronic data).

In *Zubulake*, the Court stated that whether or not production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an "accessible" or "inaccessible" format. *Zubulake*, at *7. Whether electronic data is accessible or inaccessible, in

3

turn, depends largely on the media on which it is stored. *Id.* The Court in *Zubulake* described five separate categories of data, noting that "active, on-line data" (such as files stored on a hard drive), "near-line data" (robotic storage of removable media), and "offline storage/archives" (consisting of optical and magnetic discs) are generally "accessible."

In this case, Defendant's on-line folders, for example, the "Deleted Items" folders, and the "Sent Items" folders on its employees' computer hard drives are easily accessible, as are the CD backups produced by Defendant's Albuquerque employees. It is undisputed that Defendant has not conducted any sort of thorough inspection of such folders or CDs for responsive documents. "For data that is kept in an accessible format the usual rules of discovery apply: the responding party should pay the costs of producing responsive data." *Id.*, at *12.

The Court in *Zubulake* also found that as a general rule information stored on backup tapes and data that has been "erased, fragmented, or damaged" is "inaccessible." *Id.*, at *8. In this case, Defendant claims to have 23 backup tapes as well as an allegedly damaged computer that belonged to its CEO, Charles Call. The facts of this case clearly show, however, that Defendant would not be subject to undue burden or expense in having to search such tapes for responsive materials.

Defendant's Response provides four categories of tapes that it claims it would be required to access in order to respond to Plaintiffs' motion to compel. With respect to each category, Defendant has failed to provide support for its gross overstatements of the time and expense that it claims would be required.

### 1. Data Recovery From the Servers in Kennewick and Albuquerque.

To recover data from its Albuquerque and Kennewick servers, Defendant estimates that it would require seven and three hours, respectively, to restore data from 18 and 5 tapes. *See*

4

Defendant's Response at 5. Plaintiffs have no reason to dispute the amount of time Defendant estimates for the restoration, but are at a loss as to the basis for Defendant's estimated rate of $105 per hour. Defendant provides absolutely no description of the cost or any explanation of why this cost is any more burdensome than discovery of paper documents.

Restoration of information from back up tapes requires the transfer of data from the tape to a disc or other readable media. *See* Exhibit A hereto, Affidavit of David May, ¶3. The process is entirely automated, requiring only that a system administrator set up the "restore operation" and initiate it. Once the process is underway, the system administrator can move on to other tasks. *Id.* Thus, the only cost for restoring backup data should be the man-hours necessary for a system administrator or other individual to initiate the restoration process. Presumably, Defendant's estimated rate of $105 does not include such man-hours, since those are specifically provided for at a rate of $57.68. *See* Defendant's Response at 6. Consequently, Defendant's estimated expense of restoring data from its Kennewick and Albuquerque server backup tapes is unsupported.

### 2. Data Recovery From Albuquerque CD's.

Defendant states that the data generated by its Albuquerque employees in 2001 was not automatically backed up to MesoSystem's server in Kennewick. Instead, Albuquerque employees were required to back up their own data on a CD. *See* Defendant's Response at 5. Significantly, Defendant states that it does not know "how many employees backed up their computers, how often they did so, and what data they backed up." In other words, Defendant admits that it has failed to undertake even a rudimentary search for responsive information. Defendant's lethargy in responding to Plaintiffs' discovery requests does not meet the burden placed upon it by the Rules of Civil Procedure and Defendant should be directed to produce the

5

backup CDs or a detailed description of its attempts to comply with Plaintiffs' requests. Moreover, as noted above, the information contained on the CDs is considered to be "accessible" such that the usual rule -- that the responding party pays the costs of producing responsive data -- should apply.

### 3. Recovery of E-mail from Servers.

Defendant estimates that it would require three hours per mailbox, for approximately 52 employees, at a rate of $105 per hour for it to recover e-mail data from its servers. *See* Defendant's Response at 6. Defendant's estimation of time for restoration of e-mail from its backup tapes is significantly overstated. *See* May Affid., ¶3. Nor does Defendant provide any description for the estimated cost of $105 per hour or any explanation of why this cost is any more burdensome than discovery of paper documents would be. Because Defendant has failed to sustain its burden of demonstrating an undue burden of production, it should be directed to restore any e-mails from its backup tapes so as to search for information responsive to Plaintiffs' discovery requests.

In addition, Defendant should be directed to conduct a thorough search of its "accessible" employee files for responsive information. At her deposition, Ms. Samantha League testified that she was asked by Defendant to coordinate the search for certain electronic documents. Ms. League admits, however, that her "search" consisted of sending out an e-mail to employees to ask them to send her any e-mails they had regarding the Plaintiffs. *See* Deposition of Samantha League at p.32, ln. 9-19, attached to Plaintiffs' Motion to Compel. Ms. League also admits she provided the employees with no direction or supervision in how they should respond to her request. *See id.* at p.33, ln. 4 – p. 34, ln. 9 and p. 35, ln. 13-16. In sum, Defendant has failed to make a reasonable effort to discover responsive documents. Defendant should be directed to

produce any and all e-mails, whether located in the sent, deleted, inbox, or other folders, or a detailed description of its attempts to comply with the Plaintiffs' requests. *See In Re Amsted Industries*, 2002 WL 31844956, *2 (N.D. Ill. 2002) (granting Plaintiffs' motion to retrieve e-mail and directing that the search include the in-box, saved, and sent folders of any relevant individual's e-mail).

### 4. Man-hours to Recover Electronic Data.

In addition to the unsubstantiated hourly rate listed by Defendant for restoration of data from its backup tapes, Defendant also claims that production would require "150 hours for a computer person to perform the ... recovery work." Defendant's Response at 6. Defendant fails to describe, however, what a computer person could possibly do for almost one month of time that would be in addition to the previously described hours required for restoration of backup data. Moreover, since a MesoSystem's system administrator should be able to perform the restoration work, the additional hourly expense listed by Defendant is unwarranted.

Defendant's unsubstantiated claims fail to show that a search of its electronic assets would be unduly burdensome or expensive. Defendant's inflated estimates are supported only by conclusory remarks in an affidavit of Ned Godshall, rather than founded on actual figures or facts propounded by a qualified network administrator. Accordingly, Defendant is not entitled to ask this Court to conduct a cost-shifting analysis, as production in this case is not outside the burden that a producing party should reasonably expect to bear.

### B. Defendant has Failed to Establish That It is Entitled to Shift the Burden of Production to the Plaintiffs.

When private parties are engaged in litigation with corporations, cost-shifting may effectively end discovery. *See Zubulake*, at *7 ("As large companies increasingly move to entirely paper-free environments, the frequent use of cost-shifting will have the effect of

7

crippling discovery"). Such is the case here. Defendant has estimated the cost of production to be approximately $40,000.00. Clearly, if Plaintiffs, who are private individuals, are required to pay $40,000.00, they will effectively be prohibited from obtaining the discovery.

Defendant's exclusive reliance on the factors set forth in *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) to support cost shifting to the Plaintiffs is not appropriate. Less than a year later, the Southern District of New York found that *Rowe* improperly favors cost shifting in violation of the usual presumption that the producing party pays the costs of production. *Zubulake*, at *9. In *Zubulake*, the Court found that: 1) the *Rowe* test is incomplete; 2) courts have improperly given equal weight to all of the *Rowe* factors, when certain factors should predominate; and 3) courts applying the *Rowe* test have not always developed a full factual record. *Id.* The Court in *Zubulake*, therefore, refused to apply *Rowe* without modification. The Court developed a test involving a seven-factor analysis. Under the *Zubulake* test, not all seven factors are weighted equally. *Id.* The test set forth in *Zubulake*, consists of the following:

1. The extent to which the request is specifically tailored to discover relevant information;
2. The availability of such information from other sources;
3. The total cost of production, compared to the amount in controversy;
4. The total cost of production, compared to the resources available to each party;
5. The relative ability of each party to control costs and its incentive to do so;
6. The importance of the issues at stake in the litigation; and
7. The relative benefits to the parties of obtaining the information.

*Id.*, at *13.

8

In *Zubulake*, the Court held that in applying these seven factors, the first two are the most important. *Id.*, at *11. Factors number 3, 4, and 5 are the second most important. *Id.* Factor number 6 – the importance of the litigation itself – is described by the Court as encompassing such questions as whether the case has the potential for broad public impact. Such cases might include "toxic tort class actions, environmental actions, so-called 'impact' or social reform litigation, cases involving criminal conduct, or cases implicating important legal or constitutional questions." *Id.*, at *10. This factor "stands alone, and . . . will only rarely come into play." *Id.*, at *12. Finally, the seventh factor is the least important because it is fair to presume that the response to a discovery request generally benefits the requesting party. Moreover, in the unusual case where production will also provide a strategic benefit to the producing party, that fact may weigh against cost shifting. *Id.*, at *11.

Application of the seven *Zubulake* factors to this case demonstrates that Defendant is not entitled to shift the cost of production to the Plaintiffs.

The request for production at issue in *Zubulake*, was for "all documents concerning any communication by or between UBS employees concerning Plaintiff." *Id.*, at *2. The Court held that this Request was sufficient to satisfy the first two factors of the test. *Id.*, at *13 (defendant is ordered to produce all responsive e-mails that exist on its optical discs or on its active servers . . . at its own expense and to produce at its expense, responsive e-mails from five backup tapes selected by Zubulake). Plaintiffs' Requests for Production in this case are equally well taken. In its Response, Defendant admits that it has produced some documents responsive to Plaintiffs' requests, it just does not want to be put to the inconvenience of conducting a thorough search. Defendant's Response, at 1 ("MesoSystems is willing, and has been willing, to conduct a search of its electronic data and make efforts to recover electronic data . . . provided that Plaintiffs pay

9

the costs associated therewith. . . ."). The first two *Zubulake* factors, thus, are in favor of Plaintiffs and counsel against cost shifting in this case.

The third factor – the total cost of production, compared to the amount in controversy – also counsels against cost shifting. Defendant estimates that the cost of searching its electronic assets for responsive materials will be $40,000. Yet, this amount is relatively insignificant when compared to Plaintiffs' estimated damages of at least $3,629,000. *See* Exhibit B hereto, Plaintiffs' Initial Disclosures, pp. 2 – 3. In *Zubulake*, it was estimated that the cost of responding to the discovery request would be $175,000 whereas the potential damages amounted to $13,000,000. *Zubulake*, at *1 and fn. 9. The ratio of discovery expenses to damages was thus 1.3 percent. Here, the ratio of discovery expenses to damages is even less ($40,000/$3,629,000 = 1.1 percent). Thus the third factor counsels against cost shifting.

The fourth factor - the total cost of production, compared to the resources available to each party - and the fifth factor - the relative ability of each party to control costs and its incentive to do so – also counsel against cost shifting. In this instance, private individuals are seeking discovery from a corporation that received $3,000,000 in investment capital last year, and which expected to have approximately 100 employees by the end of 2002. *See* Exhibit C hereto. Moreover, it is clearly within Defendant's ability to try and control the costs of the requested discovery and it will have an incentive to do so, provided that it is not allowed to shift the cost of production to Plaintiffs.

Finally, the sixth and seventh factors do not appear to be particularly important to this case. Thus, even if Defendant had established the production of responsive electronic information was creating an undue burden, which it has not, Defendant would still not be entitled to shift the costs of such production to Plaintiffs under the test set forth above.

### C. Plaintiffs Counsel is Willing to Perform Data Restoration In-House in Order to Reduce the Expense.

Plaintiffs are not insensitive to the issue of costs in this litigation. If it would assist in getting the necessary discovery at a reduced cost, Plaintiffs are willing to have their counsel's in-house system administrator restore the Defendants' backup tapes for data retrieval. Plaintiffs' counsel would also be willing to share the restored information with Defendant's counsel so that Defendant may make appropriate designations of "confidentiality" and privilege.

### III. PLAINTIFFS SHOULD BE PERMITTED TO INSPECT DR. CHARLES CALL'S LAPTOP COMPUTER.

Defendant admits that recoverable information from Dr. Call's computer may be relevant to this action. *See* Defendant's Response at 12. Accordingly, Defendant is under an obligation to produce the laptop for inspection. Ms. League has admitted that at least some partial documents have been retrieved. *See* Deposition of Samantha League at 45, line 17-24, attached to Plaintiffs' Motion to Compel. Plaintiffs should, therefore, be permitted to attempt restoration of additional documents.

Defendant argues that any restored documents would likely contain matters subject to privilege or trade secrets. *See* Defendant's Response at 12. However, Defendant's proposed "Attorneys Eyes Only" confidentiality order is unwarranted. Such restrictions would severely limit Plaintiffs' ability to assist in the prosecution of their claims and the preparation of their defense against Defendant's counterclaims. *See* Order Granting Motion for Removal of Improper Designation of Documents, *Metatech Corp v. TRW, Inc.*, Civ. No. 95-0799 (Dec. 19, 1996)(Garcia, J.)(Defendant's wholesale categorization of "confidential-- attorney's eyes only" was improper). Defendant's concern regarding privileged or confidential information could be handled by an appropriately crafted order and procedure for discovery. It does not justify a

11

blanket refusal to permit inspection. Fed.R.Civ.P. 1 provides that the Rules of Civil Procedure shall be construed and administered to "secure the just, speedy, and *inexpensive* determination of every action." In light of Plaintiffs' offer to recover the data themselves, Defendant need not incur any expert expense in recovering data from Dr. Call's computer. If Defendant chooses to hire such an expert, then it should pay the associated costs.

## CONCLUSION

Defendant admits that it has failed to comply with valid discovery requests. Accordingly, Plaintiffs respectfully request that the Court grant their motion to compel together with an award of costs and fees incurred in bringing this Motion and such other and further relief as the Court deems just and proper.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: *[signature]*
Lisa Mann
Angelo J. Artuso
*Attorneys for Plaintiffs*
Post Office Box 2168
Albuquerque, New Mexico 87103-2168
Telephone: 505.848.1800

WE HEREBY CERTIFY that a true
and correct copy of the foregoing pleading
was hand-delivered to Defendant's counsel of
record, Bauman, Dow, McIntosh & Leon, P.C. and
mailed to all other counsel of record this
24th day of June, 2003.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: *[signature]*
Angelo J. Artuso
W0307158.DOC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

        Plaintiffs,

v.                                  Civ. No. 02-103 LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

        Defendant.

## AFFIDAVIT OF DAVID MAY

STATE OF NEW MEXICO    )
                                    ) ss.
COUNTY OF BERNALILLO    )

    David May being first duly sworn upon his oath, states:

1.    My name is David May. I am over 21 years old. I have personal knowledge of the facts stated herein and I am competent to testify as to such facts.

2.    I am the IT Director for Modrall, Sperling, Roehl, Harris & Sisk, P.A.

3.    The process of restoring data from backup tapes on a server requires transferring the data from a tape or some other backup media to a disc or other readable media. The process is almost entirely automated, requiring only that a system administrator set up a



"restore operation" and initiate the process. Once the process is underway, the system administrator can move on to other tasks.

4. I am qualified and capable of performing the tasks required to restore any available data from back up tapes.

*David May*
David May
IT Director

STATE OF NEW MEXICO )
                    ) ss.
COUNTY OF BERNALILLO )

Signed and sworn to before me on  June 24, 2003  by David May.

*Leslie A. Morse*
Notary Public

My commission expires: August 22, 2003

[OFFICIAL SEAL
Leslie A. Morse
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: August 22, 2003]

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SEABA and
CORY PHILLIPS,

    Plaintiffs,

v.                                                   Civ. No. 02-103 LH/WWD

MESOSYSTEMS TECHNOLOGY, INC.,

    Defendant.

## PLAINTIFFS' INITIAL DISCLOSURES

Plaintiffs, James Seaba and Cory Phillips, submit the following initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1):

    A.     Individuals known to Plaintiffs that are likely to have discoverable information that Plaintiffs may use to support their claims: Pursuant to D.N.M.LR-Civ 26.3(c), Plaintiffs hereby incorporate by reference the list of witnesses provided in the Initial Pretrial Report.

Plaintiffs reserve the right to list additional witnesses which may be identified during discovery in this case, in accordance with the Court's scheduling orders.

    B.     Tangible, non-privileged documents and materials, in the possession, custody, or control of Plaintiffs and that Plaintiffs may use to support their claims: Pursuant to D.N.M.LR-Civ 26.3(c), Plaintiffs hereby incorporate by reference the list and description of documents and things provided in the Initial Pretrial Report..

Plaintiffs reserve the right to list additional materials which may be identified during discovery in this case, in accordance with the Court's scheduling orders.

EXHIBIT B

C. Computation of Damages - Plaintiffs have not yet completed the computation of all of the damages that they may claim in this case, and indeed, the calculation of certain damages will require expert assistance. Notwithstanding the foregoing, at this time, Plaintiffs claim the following categories and amounts of damages:

1. Compensatory damages:

   a. James Seaba - $60,000 (difference between salary at Honda and Defendant) x not less than 3 months employment at MesoSystems = $180,000.00;

   b. Cory Phillips - $15,000 (difference between salary at Honda and Defendant) x not less than 3 months employment at MesoSystems = $45,000.00;

   c. Damages arising from MesoSystems failure to honor its agreement to establish a new company and from tortious interference with Plaintiffs' prospective contracts. Computation of these damages will require expert assistance, and Plaintiffs will disclose the amount and basis for these damages in accordance with the Court's scheduling orders. Subject to revision based on expert assistance, Plaintiffs note that: 1) MesoSystems itself, placed an initial value on the new company in excess of $3,000,000.00; and 2) Plaintiffs suffered a loss of future expected income from the operation of the new company; 3) Plaintiffs suffered a loss of potential work as a result of MesoSystems' tortious interference in an amount of not less than $300,000.00.

   d. Unpaid bonus and employee travel and moving expense reimbursements:

   James Seaba - not less than $40,000 (bonus) + not less than $13,000 (travel expenses) + $5,000.00 country club membership;

   Cory Phillips - not less than $10,000 (moving expenses);

    e. Severance pay James Seaba - not less than $35,000 - annual salary

    ($140,000/12 months) x 3 months;

    f. Stock options in MesoSystems

      not less than $275,000 for James Seaba

      not less than $25,000 for Cory Phillips

5.  Damages for violations of COBRA - $100 per day x not less than 5 days x 2 = not less than $1,000.00

6.  Emotional distress damages. The amount of such damages will be determined by a jury.

6.  Punitive damages. The amount of such damages will be determined by a jury, and will necessarily depend upon both Defendant's net worth and the size of any compensatory award.

7.  Attorneys' fees. The amount of such fees cannot be computed at this time. In the event that such fees are awarded, Plaintiffs will submit appropriate materials detailing the attorneys' fees and costs incurred in this case.

8.  Prejudgment interest and post-judgment interest at the statutorily provided rates.

Plaintiffs reserve the right to supplement and amend this disclosure.

  D.  Insurance: No claims are currently pending against Plaintiffs in this matter. Therefore, no agreement of insurance is believed to exist which may provide coverage for the amount of any reasonably expected judgment.

# Kennewick Firm Given $3 Million

*March 21, 2002*
*By Wendy Culverwell, Tri-City Herald staff writer*

A Kennewick company that makes equipment to detect anthrax and other airborne bacteria has received a $3 million investment that will allow it to double its payroll in the coming year.

MesoSystems Technology Inc., formed in 1997 by two Battelle researchers, won support from Ardesta LLC, an Ann Arbor, Mich., company that supports promising young companies. Ardesta got stock in MesoSystems in exchange for its support.

Stephen Johns, a co-founder and senior vice president for Ardesta, will join the MesoSystems board of directors.

The two companies celebrated their new partnership at a reception Wednesday in the Founder's Club at the Tri-Cities Coliseum.

MesoSystems gained national attention last fall as anthrax fears gripped the country.

BioCapture, the company's signature product, is a bright yellow, toaster-sized device that can capture airborne bacteria stashing it in a saline solution where it is kept alive for lab testing. It also has a port for equipment that can immediately detect if there is a biological agent at the scene.

The portable units are used to detect harmful airborne biological organisms such as anthrax. A number of fire departments in major cities have signed on, including the Seattle Fire Department. BioCapture was in place in Seattle when protesters took to the streets during the World Trade Organization riots.

The device sells for about $9,600, which puts it in range for smaller agencies that respond to scenes contaminated by hazardous substances.

Sherry Liikala, MesoSystems director of marketing, said the Ardesta investment allows her company to pursue research and development goals and to get products to market faster.

The company already has added about seven people and will double in size to 100 employees by the end of the year, Liikala said.

It will expand from its current quarters on North Kellogg Street to 12,000 square feet at the Port of Kennewick's Vista Field Development Facility at 415 N. Quay St., also in Kennewick.

Liikala said the terrorist attacks and subsequent anthrax scare heightened MesoSystems' profile with the public, but the company was doing homeland security work well before that.

"Even though we've been doing it since day one, a lot of people have really paid more attention in the last six months," she said.

EXHIBIT C

In a nod to a common complaint of Tri-City business - that investors are wary of doing business in the Mid-Columbia - Liikala said company officials were gratified that Ardesta saw the potential.

Chuck Call, MesoSystems founder, was pleased. "We're thrilled to be able to raise capital," he said, noting that even though finding investors is extremely difficult, "it can be done."