FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

03 JUL 10 PM 4: 35

JAMES SEABA and CORY PHILLIPS,

Plaintiffs,

v.

NO. 02-CV-103 LH/RHS

MESOSYSTEMS TECHNOLOGY, INC.,

Defendant.

## DEFENDANT'S AMENDED MOTION TO COMPEL

Defendant. MesoSystems Technology. Inc. ["MesoSystems"]. by and through its attorneys of record, Bauman. Dow, McIntosh & León. P.C. (Alberto A. León) respectfully moves this Court for an order pursuant to Fed.R.Civ.P. 37(a)(2)(B) compelling James Seaba ["Seaba"] and Nancy Seaba to answer deposition questions and compelling Plaintiffs to answer interrogatories and requests for production as follows:

## I.    . Nancy Seaba's refusal to discuss conversations she has had with Mr. Artuso.

Nancy Seaba appeared for a deposition upon oral examination in accordance with a notice of deposition and subpoena served on Nancy Seaba on May 2, 2003. A copy of the notice of deposition and subpoena is attached to this motion as **Exhibit A**. During examination of Nancy Seaba by attorney for MesoSystems, Nancy Seaba refused, without substantial justification, to respond as follows:

Q.    Can you tell me about the conversations that you have had with Mr. Artuso?

Mr. Artuso:  Objection. Calls for material affected by the attorney client privilege and I'll instruct the witness not to answer.



*per Ann w/Judge Scott*

Q.      Your instruction binds to any conversations that you ever had with her?

Mr. Artuso:    That's correct.

Deposition of Nancy Seaba, May 13, 2003 [the "Nancy Seaba Dep"] p. 6:4 – 7:16

attached as **Exhibit B**.

Nancy Seaba refused to answer the question to which this motion relates

regarding conversations she had or witnessed involving her husband's attorney on the

ground that the communications are protected by the attorney client privilege.

Parties asserting an objection of attorney-client privilege bear the burden of

establishing that it applies.  They must make a clear showing that the asserted objection

applies.  Boyer v. Board of County Comm'rs, 162 F.R.D. 687, 688 (D. Kan. 1995)

(internal citations and quotations omitted).  To carry the burden, they must describe in

detail the information to be protected and provide precise reasons for the objection to

discovery.  National Union Fire Ins. Co. v. Midland Bancor, Inc., 159 F.R.D. 562, 567

(D. Kan. 1994).  A "blanket claim" as to the applicability of a privilege does not satisfy

the burden of proof.  See Kelling v. Bridgestone/Firestone, Inc., 157 F.R.D. 496, 497 (D.

Kan. 1994).

The attorney-client privilege... is to be extended no more broadly than necessary

to effectuate its purpose."  Great Plaints Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150

F.R.D. 193, 196 (D. Kan. 1993).  Its purpose is to encourage full and frank

communication between attorneys and their clients and thereby promote broader public

interests in the observance of law and administration of justice.  The privilege recognizes

that sound legal advice or advocacy serves public ends and that such advice or advocacy

2

depends upon the lawyer's being fully informed by the client. <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). "[The privilege] protects only those disclosures necessary to obtain informed legal advice—which might not have been made absent the privilege." <u>Fisher v. United States</u>. 425 U.S. 391, 403 (1976) (citations omitted).

Under federal common law the essential elements of the attorney-client privilege are: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose. (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor. (8) except the protection be waived. <u>Great Plains Mut. Ins. Co.</u>, 150 F.R.D. at 196 n.4 (citation omitted).

MesoSystems is entitled to discovery of any conversations Nancy Seaba had or witnessed involving her husband's attorney regarding this lawsuit. Nancy Seaba's assertion of the attorney client privilege is erroneous because Nancy Seaba has failed to establish the elements of the attorney-client privileged relationship as described above. Mr. Artuso asserts that Ms. Seaba. separately from her husband. hired his firm from before the beginning of the lawsuit. Mr. Artuso instructed Ms. Seaba not to answer any questions regarding any conversations her husband's attorneys have ever had with Ms. Seaba or any conversations witnessed by Ms. Seaba involving her husband's attorneys. Nancy Seaba Dep p. 6:4 – 7:16 attached as **Exhibit B**. Ms. Seaba, however, did not testify as to the relationship between herself and Mr. Artuso's law firm.

Mr. Artuso asserts that Nancy Seaba hired his firm from "before the beginning of the lawsuit," yet Plaintiffs and Plaintiffs' counsel have not produced any evidence of such

an unusual representation arrangement.  Accordingly, MesoSystems moves this Court to compel Nancy Seaba to produce a dated representation agreement with the Modrall Law Firm, either redacted or for in camera review, confirming the date the alleged representation began.

Plaintiffs have not met their burden to demonstrate the attorney-client privilege applies and have provided inadequate information regarding the timing and nature of the representation of Ms. Seaba for a determination whether the attorney-client privilege applies.

**II.     Nancy Seaba's refusal to discuss conversations she has had with her father.**

Nancy Seaba appeared for a deposition upon oral examination in accordance with a notice of deposition and subpoena served on Nancy Seaba on May 2, 2003.  A copy of the notice of deposition and subpoena is attached to this motion as **Exhibit A**.  During examination of Nancy Seaba by attorney for MesoSystems, Nancy Seaba refused, without substantial justification to respond as follows:

Q.     Have you talked to anyone about this deposition outside of this meeting that we're talking about with your attorneys, family members, other people outside your attorneys?

A.     My father.

Q.     Tell me about your conversations with your father.

Mr. Artuso:    Objection.  Calls for material protected by the attorney client privilege.  Her father is licensed in Iowa.

Nancy Seaba Dep p. 9:17 – 13:19 attached as **Exhibit B**.

Nancy Seaba refused to answer the question to which this motion relates regarding conversations she had with her father regarding her deposition on the ground

that the communications are attorney client privileged.  Nancy Seaba further refused to answer whether she has paid her father or her father's firm any attorney's fees or costs for expenses related to this case.  Nancy Seaba Dep p. 11:2-16 attached as **Exhibit B**.

MesoSystems is entitled to discovery of any conversations Nancy Seaba had with her father regarding this lawsuit.  Nancy Seaba's assertion of the attorney client privilege is erroneous.  Parties asserting an objection of attorney-client privilege bear the burden of establishing that it applies.  They must make a clear showing that the asserted objection applies.  Boyer v. Board of County Comm'rs, 162 F.R.D. 687, 688 (D. Kan. 1995) (internal citations and quotations omitted).  To carry the burden, they must describe in detail the information to be protected and provide precise reasons for the objection to discovery.  National Union Fire Ins. Co. v. Midland Bancor, Inc., 159 F.R.D. 562, 567 (D. Kan. 1994).  A "blanket claim" as to the applicability of a privilege does not satisfy the burden of proof.  See Kelling v. Bridgestone/Firestone, Inc., 157 F.R.D. 496, 497 (D. Kan. 1994).

The attorney-client privilege... is to be extended no more broadly than necessary to effectuate its purpose."  Great Plaints Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150 F.R.D. 193, 196 (D. Kan. 1993).  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  "[The privilege] protects only those disclosures—

necessary to obtain informed legal advice—which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976) (citations omitted).

Under federal common law the essential elements of the attorney-client privilege are: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. Great Plains Mut. Ins. Co., 150 F.R.D. at 196 n.4 (citation omitted).

A basic element of the attorney-client privilege is that the attorney be in the appropriate role during communication with the client. Communications must be made in the role of an attorney in order to qualify for the attorney-client privilege. Likewise, a full-time practicing attorney does not imbue all confidential communications with the privilege. John William Gergacz, Attorney-Corporate Client Privilege, P 3.02[2][a][iv] (2d Ed. 1990). The privilege does not extend to communications not made in professional confidence. Pacific Employers Ins. Co. v. P.B. Hoidale Co., 142 F.R.D. 171, 173 (D. Kan. 1992) (citation omitted).

Ms. Seaba testified that her father is not representing her in this case and that the Modrall Firm is representing her and providing her with legal advice relevant to this lawsuit. Ms. Seaba further testified that her father is a retired judge and is not in active legal practice. Although Mr. Artuso indicated that Ms. Seaba intended for communications with her father to be confidential, Ms. Seaba did not indicate that the conversations with her father were intended to be confidential at the time they had the

6

conversations.  Ms. Seaba further testified that she had never had her deposition taken

before, so she called her father to find out "what the process was." Ms. Seaba never

mentioned any particular legal advice she sought from her father. Finally, Arthur A.

McGiverin, Ms. Seaba's father, is licensed to practice law in Iowa. He is not licensed in

New Mexico or Washington, the states in which this litigation and related litigation are

proceeding.

Ms. Seaba called her dad to tell him she was going to have her deposition taken,

much like any daughter might call her father. The fact that Ms. Seaba's father happens to

be a licensed attorney in Iowa does not change the nature of the communication between

Ms. Seaba and her father into an attorney-client privileged communication.

**III.     Nancy Seaba's refusal to testify as to the type and model of printer she owns.**

Nancy Seaba appeared for a deposition upon oral examination in accordance with

a notice of deposition and subpoena served on Nancy Seaba on May 2, 2003. A copy of

the notice of deposition and subpoena is attached to this motion as **Exhibit A**. During

examination of Nancy Seaba by attorney for MesoSystems, Nancy Seaba refused,

without substantial justification to respond as follows:

Q.     Do you know what kind of printer it is?

A.     I know it's a printer fax machine.

Q.     Do you know the brand?...

A.     I don't know.

Nancy Seaba Dep p. 53:16-24 attached as **Exhibit B**.

Nancy Seaba refused to answer the question to which this motion relates regarding the brand of printer she owns on the ground that she does not know. MesoSystems is entitled to discovery of the brand of printer owned by Plaintiff James Seaba. In response to MesoSystem's request that Nancy Seaba testify as to the brand of printer she owns, the Plaintiffs responded that the printer is a "Canon" printer. In order for this information to be of any use to MesoSystems. further information regarding the type and model of the specific printer is required. Nancy Seaba should reasonably be able to ascertain the type and model of the printer by examining the printer itself. If Plaintiffs are willing to supplement this response as indicated in Plaintiffs' Response in Opposition to Defendant's Motion to Compel ["Response"]. then this question will be adequately addressed.

**IV.     Plaintiff's failure to produce all bank records of Red Path Energy in response to Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission to James Seaba, Request for Production No. 16.**

Defendants served Defendant's First Set of Interrogatories. Requests for Production of Documents and Requests for Admission to James Seaba [the "First Set to Seaba"] on James Seaba on August 16, 2002. James Seaba submitted Plaintiff James Seaba's Answers to the First Set to Seaba [the "Seaba Answers"] on September 30, 2002. Defendants served the First Set of Interrogatories, Requests for Production of Documents and Requests for Admission to Cory Phillips [the "First Set to Phillips"] on Cory Phillips on August 16, 2002. Cory Phillips submitted Cory Phillip's Answers to the First Set to Phillips [the "Phillips Answers"] on September 30. 2002.

In the First Set to Phillips, Request for Production No. 15, Defendants requested, "all bank records of Red Path." See First Set to Phillips, Request for Production No. 15 attached as **Exhibit C**. Phillips did not produce any documents and responded, "See James Seaba's Response to Request for Production no. 16." See Phillips Answers, Request for Production No. 15 attached as **Exhibit D**.

In the First Set to Seaba, Request for Production No. 16, Defendants requested, "all bank records of Red Path." See First Set to Seaba, Request for Production No. 16 attached as **Exhibit E**. Plaintiff James Seaba produced a single bank statement for January 2002 and indicated that the remaining bank statements were not mailed to him because he moved. See Seaba Answers, Request for Production No. 16 attached as **Exhibit F**.

In Plaintiffs' most recent response to MesoSystems' request that Plaintiffs produce all bank statements pertaining to Red Path, Plaintiffs offered to sign a release to that MesoSystems may have access to Red Path's bank statements directly from the banking institution. See Plaintiff's Response. p. 6. Attached as **Exhibit G** is such a release for Plaintiff Seaba's execution and delivery to MesoSystems' counsel.

MesoSystems is entitled to discovery of all Red Path Energy bank statements.

## V.    Plaintiff's failure to produce all invoices from attorney Clinton Marrs in response to Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission to James Seaba, Request for Production No. 12.

In the First Set to Phillips, Request for Production No. 11, Defendants requested "any and all billing invoices" directed to Phillips or Seaba by attorney Clinton Marrs. See First Set to Phillips, Request for Production No. 11 attached as **Exhibit C**. Phillips

objected to the request on the basis of attorney-client privilege or the attorney work product doctrine, did not produce any documents and responded, "See James Seaba's Response to Request for Production no. 12." See Phillips Answers, Request for Production No. 11 attached as **Exhibit D**.

In the First Set to Seaba, Request for Production No. 12, Defendants requested "any and all billing invoices" directed to Phillips or Seaba by attorney Clinton Marrs. See First Set to Seaba, Request for Production No. 12 attached as **Exhibit E**. Plaintiff James Seaba produced a single redacted invoice for December 3, 2001. See Seaba Answers, Request for Production No. 12 attached as **Exhibit F**.

Invoices prior to December 3, 2001 were not produced although James Seaba testified that the previous balance reflected on the produced invoice was with respect to work Mr. Marrs did in connection with the formation of Red Path Energy. Deposition of James Seaba, Ph.D., Volume 2, April 3, 2003 [the "James Seaba Dep"] p. 209:5-12 attached as **Exhibit H**.

MesoSystems is entitled to discovery of redacted billing invoices for Mr. Marrs services regarding formation of Red Path Energy. Plaintiffs have not established that the invoices are covered by the attorney-client privilege. In addition, Plaintiffs have already produced one redacted billing invoice, but not others. Plaintiffs have waived any attorney-client privilege that may have existed by producing the billing invoice.

Plaintiffs have agreed to "produce a redacted copy of Mr. Marrs' prior invoice once it has been received." Production of this additional invoice is necessary, however.

MesoSystems requires a redacted copy of *all* billing invoices that are responsive to
MesoSystems original request for production and subsequent inquires.

**VI.    Seaba's refusal to testify as to the substance of his communications with
Clinton Marrs.**

In the First Set to Phillips, Interrogatory No. 2, Defendants requested "the names,
addresses and telephone numbers of any persons... whom you believe have, or who
purport to have any knowledge or information relative to the subject matter of this
lawsuit, and state briefly the nature of such knowledge or information." See First Set to
Phillips, Interrogatory No. 2 attached as **Exhibit C**.  Phillips responded "17) Clinton W.
Marrs... Mr. Marrs is expected to have knowledge regarding attempts to create a
MesoSystems' Spin-off company and regarding MesoSystems' wrongful termination of
Plaintiffs." See Phillips Answers, Interrogatory No. 2 attached as **Exhibit D**.

In the First Set to Seaba, Interrogatory No. 2, Defendants made the same request
of Plaintiff Seaba.  See First Set to Seaba, Interrogatory No. 2 attached as **Exhibit E**.
Seaba gave the same answer as Phillips mentioned above. See Seaba Answers,
Interrogatory No. 2 attached as **Exhibit F**.

James Seaba appeared for a deposition upon oral examination in accordance with
a notice of deposition served on Seaba on March 6, 2003.  A copy of the notice of
deposition is attached to this motion as **Exhibit I**.

During examination of Seaba by attorney for MesoSystems, Seaba refused,
without substantial justification, to respond to any questions regarding consultations with
Clinton Marrs.  Although Ms. Mann, Seaba's attorney stated, "However, to the extent he
[Mr. Marrs] was involved in the creation of Red Path, it seems to me he may very well

have substantive testimony to offer that is not privileged." James Seaba Dep p. 204:18-

21 attached as **Exhibit H**.  Although counsel for Plaintiffs clearly indicated that Mr.

Marrs might testify "to the extent he was involved in the creation of Red Path," she

objected to Seaba answering any questions regarding the substance of conversations that

Seaba had with Mr. Marrs regarding the creation of Red Path including the following:

> MS. MANN:  We do not presently anticipate calling Mr. Marrs as
> a witness regarding any attorney-client privileged issues.  However, to the
> extent he was involved in the creation of Red Path, it seems to me he may
> very well have substantive testimony to offer that is not privileged…

> MR. LEON:  So your position is, then, that I can ask these
> witnesses about their conversations with him [Mr. Marrs] concerning the
> creation of Red Path?

> MS. MANN:  No that's not my position. You're not listening…
> I'm not going to discuss it.  You deal with it however you want, but we're
> not waiving any privilege.

James Seaba Dep p. 204:16 – 205:14 attached as **Exhibit H**.

Counsel for MesoSystems went on to ask Seaba the subject matter of

consultations redacted from the Clinton Marrs billing invoice and Plaintiff's counsel

instructed Seaba not to answer any questions about the substance of communications with

Mr. Marrs including communications regarding the creation of Red Path.

> Q.    Would they be consultations about Red Path Energy?

> MS. MANN:  Objection. You're not going to answer that question.
> You're not going to talk about what things are redacted in this thing.

> MR. LEON:   I'm not asking about what things are redacted.  I'm
> asking him if the entries for 12/3, 12/5, 12/6, 12/7, before mid-January, are
> in connection with Red Path Energy…

> MR. LEON:  I'm asking him if, on those dates, then, he was
> consulting Mr. Marrs in connection with Red Path Energy.

MS. MANN:   And I'm going to instruct him not to answer,
because you are asking about the substance of his communications with
his lawyer, and so he is not going to be testifying about that.

James Seaba Dep p. 206:21 – 207:16 attached as **Exhibit H**.

As Mr. Marrs may have substantive testimony to offer that is not privileged
regarding his consultations with Plaintiffs, MesoSystems should be given the opportunity
to question Seaba regarding the consultations or portions of consultations about which
Mr. Marrs may testify.  Certainly the expectation of Plaintiffs that Mr. Marrs may testify
is a waiver of any claim of attorney-client privilege that may have existed as to the
consultations with Plaintiffs that are the basis for Mr. Marrs "substantive testimony...
that is not privileged." James Seaba Dep p. 204:18-21 attached as **Exhibit H**.

## VII.   Plaintiffs refusal to pay for production by MesoSystems of computer mirror image backups.

In response to Plaintiffs' specific requests for production and at Plaintiff's
request, Defendants produced mirror image backups of Plaintiffs' computer hard drives..
Plaintiffs have failed and refused to compensate New Technologies, Inc. for its services
in producing the mirror image backups in the amount of seven hundred twenty-seven and
76/100 dollars ($727.76).  See New Technologies, Inc. Invoice No. 10478 attached as
**Exhibit J**. MesoSystems is entitled to payment for compensating New Technologies, Inc.
for producing the mirror image backups in the amount of seven hundred twenty-seven
and 76/100 dollars ($727.76).

In response to MesoSystems' request that Plaintiffs remit payment in full for
Invoice No. 10478 to New Technologies, Inc. for its services in producing requested
mirror image backups of Plaintiffs' computer hard drives, Plaintiffs argue that

MesoSystems should have to bear the expense of producing the backup images because Plaintiffs requested production of the computers themselves.  Plaintiffs do not explain the period during which MesoSystems expressed its willingness to produce electronic information provided that Plaintiffs pay the costs associated therewith and provided that appropriate measures were taken to preserve MesoSystems' sensitive, confidential, proprietary and privileged information contained on the computers.  The protection of MesoSystems' confidential information is particularly important as Plaintiffs now work for entities that compete with MesoSystems and/or its spin-off company MesoFuel, Inc.  Although MesoSystems, in good faith, provided these mirror images to Plaintiffs in order to allow Plaintiffs the opportunity to conduct their own examination of the data contained on the laptops so that Plaintiffs could adequately respond to MesoSystems' pending Motion for Sanctions, Plaintiffs have yet to pay for these mirror images.

While information stored in computer format is discoverable, the producing party must be protected against undue burden, expense and invasion of privileged matter.  See Playboy Enters. v. Welles, 60 F. Supp. 2d 1050, 1053 (S. D. Cal. 1999).  In order to protect the integrity of the information on the actual, original computers at issue, MesoSystems created mirror image backups of the computer hard drives for the experts to analyze and manipulate.  In this manner, the original information is protected, but discovery may still proceed.  However, MesoSystems should not be required to bear the costs of this expensive undertaking.  Although the general rule is that the party responding to discovery requests bears the cost of compliance, "a court may protect the responding party from 'undue burden or expense' by shifting some or all of the cost of

production to the requesting party." Rowe Entm't Inc. v. William Morris Agency. Inc.. 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002). In light of MesoSystems bearing the cost of creating backups for use by its own experts to preserve the integrity of the laptops. Plaintiffs' failure to even respond to MesoSystems' request for an appropriate protective order. and MesoSystems production of the mirror images to Plaintiffs in good faith. Plaintiffs should remit payment in full to New Technologies. Inc. for its services in producing the backups.

WHEREFORE, Defendants pray this Court enter its order that:

A.     Nancy Seaba testify as to the brand. including model/type. of printer she owns.

B.     Nancy Seaba testify as to the substance of conversations she had with her father regarding her deposition or this lawsuit.

C.     Nancy Seaba testify as to the substance of conversations she had or witnessed involving her husband's attorney regarding her deposition or this lawsuit or produce her individual representation agreement with said attorney.

D.     Plaintiffs sign the release attached as **Exhibit G** and provide an original. fully executed release to MesoSystems' counsel so that MesoSystems may have access to Red Path's bank statements directly from the banking institution.

E.     Plaintiffs produce any and all billing invoices directed to James Seaba. Cory Phillips or Red Path Energy by Clinton Marrs.

F.     James Seaba testify as to consultations with Mr. Marrs regarding the substantive testimony Mr. Marrs has to offer that is not subject to a legitimate claim of privilege.

G.     Plaintiffs remit payment in full for Invoice No. 10478 to New Technologies, Inc. for its services in producing requested mirror image backups of Plaintiffs' computer hard drives.

H.     Plaintiffs remit payment for MesoSystems attorneys' fees and costs in bringing this motion.

I.     Such other and further relief as the Court deems just and proper.

**DATED:  07/10/03.**

Respectfully Submitted:

**BAUMAN, DOW, McINTOSH & LEÓN, P.C.**

By _Darci A. Carroll for_
        Alberto A. León
        PO Box 30684
        Albuquerque, New Mexico 87190
        (505) 883-3191-telephone
        (505) 883-3194-facsimile

        AND

**PERKINS COIE, LLP**
        Paul E. Smith
        One Bellevue Center
        Suite 1800, 411
        108th Avenue NE
        Bellevue, Washington 98004-5584
        (425) 453-7317-telephone
        (425) 453-7350-facsimile
ATTORNEYS FOR DEFENDANT

16

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing Memorandum in Support of Motion for Summary Judgment was hand delivered to the following, on this 10th day of July, 2003.

Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
MODRALL LAW FIRM
Attorneys for Plaintiffs
PO Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1800


_____
Alberto A. León

17

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN.  SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**