FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
03 JUL 25 PM 3:30
[signature]
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JAMES SEABA and CORY PHILLIPS,

Plaintiffs,

v.

MESOSYSTEMS TECHNOLOGY, INC.,

Defendant.

NO. 02-CV-103 LH/RHS

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S AMENDED MOTION TO COMPEL**

Defendant, MesoSystems Technology, Inc. ["MesoSystems"], by and through its attorneys of record, Bauman, Dow, McIntosh & León, P.C. (Alberto A. León and Darci A. Carroll) respectfully replies to Plaintiffs' Response in Opposition to Defendant's Amended Motion to Compel (the "Amended Response") as follows.

**I. Nancy Seaba's refusal to discuss conversations with the Modrall Firm.**

In response to MesoSystems' request that Nancy Seaba testify as to the substance of conversations she had or witnessed involving her husband's attorney regarding her deposition or this lawsuit, Plaintiffs claim that any conversations are attorney-client privileged. Mr. Artuso asserts that Nancy Seaba hired his firm from "before the beginning of the lawsuit." Plaintiffs and Plaintiffs' counsel have not produced any evidence of such an unusual representation arrangement.

In the Amended Response, Plaintiff's counsel fault's MesoSystems' counsel for not interrogating Nancy Seaba further regarding the fact or scope of the Modrall Firm's representation of Nancy Seaba. However, Mr. Artuso, an attorney with the Modrall Firm,



unambiguously represented to MesoSystems' counsel the "fact and scope of representation" in question and instructed his client not to answer any questions. Mr. Artuso further agreed that his instruction regarded "any conversations that you [Mr. Artuso] ever had with her [Nancy Seaba]." See Nancy Seaba Dep p. 6:4 – 7:16 attached as **Exhibit B** to Defendant's Amended Motion to Compel. MesoSystems counsel fully explored Nancy Seaba's claim of privilege, respected Plaintiff's attorney's objection and instruction to Nancy Seaba not to answer further questions on the matter, and preserved the issue to be resolved by the appropriate authority, this Court.

Plaintiffs go on to argue that because this case is a matter of "common interest with her husband and Dr. Phillips," Nancy Seaba is entitled to assert attorney-client privilege for communications between Plaintiffs and their counsel for which she was present. This argument contradicts Plaintiff's position on the common interest protection raised earlier in this litigation. Magistrate Schneider ruled and Magistrate Scott agreed, that where two individuals were present at a meeting with their attorney, one was a representative of a party to a lawsuit and the other was not and the two were distinct under the law, "the fact they have the same attorney, doesn't give them both the attorney-client privilege for that particular meeting," and Plaintiff's counsel agreed. See Deposition of Ned Godshall taken April 1, 2003 p. 31:11-20 attached as **Exhibit A**. In the instant situation, Phillips and Seaba are parties to this lawsuit, but Nancy Seaba is not. The basis of Plaintiffs claims is their employment relationship with MesoSystems and alleged relationship with MesoFuel, neither of which apply to Nancy Seaba. The fact that the Plaintiffs and Nancy Seaba supposedly have the same attorney does not extend the

attorney-client privilege to Nancy Seaba when all are present with their mutual attorney, as Plaintiffs have previously asserted in this case and Magistrate Schneider and Scott ruled.

Parties asserting an objection of attorney-client privilege bear the burden of establishing that it applies. They must make a clear showing that the asserted objection applies. Boyer v. Board of County Comm'rs, 162 F.R.D. 687, 688 (D. Kan. 1995) (internal citations and quotations omitted). To carry the burden, they must describe in detail the information to be protected and provide precise reasons for the objection to discovery. National Union Fire Ins. Co. v. Midland Bancor, Inc., 159 F.R.D. 562, 567 (D. Kan. 1994). A "blanket claim" as to the applicability of a privilege does not satisfy the burden of proof. See Kelling v. Bridgestone/Firestone, Inc., 157 F.R.D. 496, 497 (D. Kan. 1994). It is Nancy Seaba's burden to demonstrate that she is entitled to claim the privilege. Nancy Seaba should produce a dated representation agreement with the Modrall Law Firm, either redacted or for in camera review, confirming the date the alleged representation began and the relationship of that representation to this case.

**II. Nancy Seaba's refusal to discuss conversations she has had with her father.**

In response to MesoSystems' request that Nancy Seaba testify as to the substance of conversations she had with her father regarding her deposition or this lawsuit, Plaintiffs assert that conversations between Nancy Seaba and her father, a retired judge, are privileged. Plaintiff fails to explain how any communications Nancy Seaba had with her father regarding this lawsuit further the purpose of the attorney-client privilege. The attorney-client privilege... is to be extended no more broadly than necessary to effectuate

its purpose." Great Plaints Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150 F.R.D. 193, 196 (D. Kan. 1993). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "[The privilege] protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976) (citations omitted).

Particularly in light of the fact that Nancy Seaba claims that that the Modrall Firm is representing her and providing her with legal advice relevant to this lawsuit, Nancy Seaba's conversations with her father regarding this lawsuit were not "necessary to obtain informed legal advice."

Even a full-time practicing attorney does not imbue all confidential communications with the privilege, and in this case Nancy Seaba's father is a retired judge. John William Gergacz, Attorney-Corporate Client Privilege, P 3.02[2][a][iv] (2d Ed. 1990). The privilege does not extend to communications not made in professional confidence. Pacific Employers Ins. Co. v. P.B. Hoidale Co., 142 F.R.D. 171, 173 (D. Kan. 1992) (citation omitted).

Nancy Seaba's claim that her dad has "given her legal advice" does not transform the nature of the communication between Ms. Seaba and her father from conversations between family members into attorney-client privileged communications. Nancy Seaba

should be compelled to provide appropriate answers to MesoSystems' questions regarding all her conversations with her father about this case.

**III. Nancy Seaba's refusal to testify as to the type and model of printer she owns.**

Nancy Seaba refused to answer the question to which this motion relates regarding the brand of printer she owns on May 13, 2003. Defendant's Amended Motion to Compel was filed in this matter on July 10, 2003. MesoSystems did not "indicate its willingness to resolve this issue only in its Amended Motion to Compel," but rather protected MesoSystems right to this information as Plaintiffs had failed to provide the information and continued to delay in providing any information at the time the Amended Motion was filed. On the afternoon of July 22, 2003, Plaintiffs finally followed through on their offer to provide MesoSystems with the brand and model of Seaba's printer just before filing the Amended Response on the morning of July 23, 2003. As Plaintiffs have supplemented this response this question has been adequately addressed.

**IV. Plaintiff's failure to produce all bank records of Red Path Energy in response to Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission to James Seaba, Request for Production No. 16.**

Plaintiffs offered to sign a release to that MesoSystems may have access to Red Path's bank statements directly from the banking institution. See Plaintiff's Response, p. 6. Plaintiffs counsel have indicated that such a release has been "forwarded to Plaintiff James Seaba, and counsel expects to have the original release signed and returned to Defendant's counsel prior to the completion of briefing." See Amended Response, p. 2. MesoSystems has not received a signed release, and briefing is complete. Should such a

signed release be forthcoming, from Plaintiffs, then this request will be adequately addressed.

**V. Plaintiff's failure to produce all invoices from attorney Clinton Marrs in response to Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission to James Seaba, Request for Production No. 12.**

In the First Set to Phillips, Request for Production No. 11, Defendants requested "any and all billing invoices" directed to Phillips or Seaba by attorney Clinton Marrs. See First Set to Phillips, Request for Production No. 11 attached as **Exhibit C** to Defendant's Amended Motion to Compel.

In the First Set to Seaba, Request for Production No. 12, Defendants requested "any and all billing invoices" directed to Phillips or Seaba by attorney Clinton Marrs. See First Set to Seaba, Request for Production No. 12 attached as **Exhibit E** to Defendant's Amended Motion to Compel.

Although these requests for production unmistakably request "any and all" invoices, Plaintiffs now contend that MesoSystems "uses its Amended Motion to inform Plaintiffs' counsel that they seek not just the prior invoice, but rather, all invoices." See Amended Response, p. 3.

Defendant's Amended Motion to Compel was filed in this matter on July 10, 2003. MesoSystems did not "indicate its willingness to resolve this issue only in its Amended Motion to Compel," but rather protected MesoSystems right to this information as Plaintiffs had failed to provide the information and continued to delay in providing any information at the time the Amended Motion was filed. On the afternoon of July 22, 2003, Plaintiffs provided MesoSystems with a transaction list just before filing the

Amended Response on the morning of July 23, 2003. Plaintiffs continue to fail to produce the billing invoices as requested.

## VI. Seaba's refusal to testify as to the substance of his communications with Clinton Marrs.

In response to MesoSystems' request that James Seaba testify as to consultations with Mr. Marrs regarding the substantive testimony Mr. Marrs has to offer that is not subject to a legitimate claim of privilege, Plaintiffs insinuate that James Seaba cannot testify regarding Mr. Marrs' substantive testimony. During MesoSystem's attorney's examination of James Seaba, he refused, without substantial justification, to respond to any questions regarding consultations with Clinton Marrs. Although Ms. Mann, James Seaba's attorney stated, "However, to the extent he [Mr. Marrs] was involved in the creation of Red Path, it seems to me he may very well have substantive testimony to offer that is not privileged." See James Seaba Dep p. 204:18-21 attached as **Exhibit H** to Defendant's Amended Motion to Compel. As the attorney-client privilege applies only to "confidential" communications with Mr. Marrs, the fact that Mr. Marrs may offer his substantive testimony as to those communications at Plaintiffs' request necessarily defeats the confidential nature of the communications. Further, Plaintiffs' counsel waived any claim of privilege, at least as it relates to Mr. Marrs' substantive testimony concerning the formation of Red Path Energy, Inc. Certainly, as Plaintiffs intend to offer Mr. Marrs' "substantive testimony" that is "not privileged," James Seaba must testify regarding the substance of any conversations he had with Clinton Marrs regarding the "not privileged" consultations.

**VII. Plaintiffs refusal to pay for production by MesoSystems of computer mirror image backups.**

Plaintiffs again fail to address the period during which MesoSystems expressed its willingness to produce electronic information provided that Plaintiffs pay the costs associated therewith and provided that appropriate measures were taken to preserve MesoSystems' sensitive, confidential, proprietary and privileged information contained on the computers. The protection of MesoSystems' confidential information is particularly important as Plaintiffs now work for entities that compete with MesoSystems and/or its spin-off company MesoFuel, Inc.

In light of MesoSystems bearing the cost of creating backups for use by its own experts to preserve the integrity of the laptops, Plaintiffs' failure to even respond to MesoSystems' request for an appropriate protective order, and MesoSystems production of the mirror images to Plaintiffs in good faith, Plaintiffs should remit payment in full to New Technologies, Inc. for its services in producing the backups.

WHEREFORE, Defendants pray this Court enter its order that:

A. Nancy Seaba testify as to the substance of conversations she had with her father regarding her deposition or this lawsuit.

B. Nancy Seaba testify as to the substance of conversations she had or witnessed involving her husband's attorney regarding her deposition or this lawsuit or produce her individual representation agreement with said attorney.

C. Plaintiffs sign the release attached as **Exhibit G** to Defendant's Amended Motion to Compel and provide an original, fully executed release to MesoSystems' counsel so that MesoSystems may have access to Red Path's bank statements directly from the banking institution.

D. James Seaba testify as to consultations with Mr. Marrs regarding the substantive testimony Mr. Marrs has to offer that is not subject to a legitimate claim of privilege.

E. Plaintiffs remit payment in full for Invoice No. 10478 to New Technologies, Inc. for its services in producing requested mirror image backups of Plaintiffs' computer hard drives.

F. Plaintiffs remit payment for MesoSystems attorneys' fees and costs in bringing this motion.

G. Such other and further relief as the Court deems just and proper.

**DATED: 07/25/03.**

Respectfully Submitted:

**BAUMAN, DOW, McINTOSH & LEÓN, P.C.**

By______________________________
Alberto A. León
PO Box 30684
Albuquerque, New Mexico 87190
(505) 883-3191-telephone
(505) 883-3194-facsimile

AND

**PERKINS COIE, LLP**
Paul E. Smith
One Bellevue Center
Suite 1800, 411
108th Avenue NE
Bellevue, Washington 98004-5584
(425) 453-7317-telephone
(425) 453-7350-facsimile

ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Defendant's Reply to Plaintiff's Response to Defendant's Amended Motion to Compel was sent via facsimile transmission to the following, on this 25th day of July, 2003.

Lisa Mann
Angelo J. Artuso
Erin E. Langenwalter
MODRALL LAW FIRM
Attorneys for Plaintiffs
PO Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1800

______________________
Alberto A. León

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

No. Civ. No. 02-103 LH/WWD

JAMES SEABA and CORY PHILLIPS,
Plaintiffs,

vs.

MESOSYSTEMS TECHNOLOGY, INC.,
Defendant.

DEPOSITION OF NED GODSHALL
April 1, 2003
11:13 a.m.
500 4th Street N.W.
Albuquerque, New Mexico

PURSUANT TO THE APPLICABLE RULES OF CIVIL PROCEDURE this deposition was:

TAKEN BY: LISA MANN
Attorney for Plaintiffs

For the Plaintiff:
MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
500 Fourth Street, N.W.
Suite 1000
Albuquerque, New Mexico 87102
BY: MS. LISA MANN
MR. ANGELO ARTUSO

For the Defendant:

BAUMAN, DOW, MCINTOSH & LEON
Attorneys at Law
7309 Indian School Road N.E.
Albuquerque, New Mexico
BY: ALBERTO LEON
CHRISTOPHER BAUMAN

ALSO PRESENT: JAMES SEABA and CORY PHILLIPS

EXHIBIT
A

Page 26

with the Affidavit, we are referring to MesoSystems Technology's operations in Albuquerque, New Mexico That is it.

MS. MANN It says that.

A. I apologize for my lack of artistic abilities. We share a facility in Albuquerque, New Mexico In general this is MesoFuel and this is MesoSystems. Does that help?

Q. So, why don't we put an Exhibit sticker on it.

(Exhibit 2 - DIAGRAM OF MESOSYSTEMS/MESOFUEL'S FACILITY.)

Q. So, the document that we have now marked as Exhibit 2 is your depiction, and I will accept without your having told me, that you are not representing yourself to be an artist or that this is drawn to scale.

A. Okay

Q. This is the office facility for MesoFuel in Albuquerque, which is also an office facility, as I understand it, for MesoSystems?

A In part, yes

Q. Can I understand from Exhibit 2 that there are employees for MesoFuel on one side of this little divider?

A. That is a physical divider. Let me do this. There are offices throughout this facility And some of MesoFuel's employees are on this side of the wall around

Page 27

this corner.

Q. So, some of MesoFuel's employees actually work over on the side that you have written MesoSystems on?

A. Again, I misspoke. I mean, I didn't think you wanted that level of detail. I now will reconstruct Exhibit 2. The dash line is the line of demarcation between MesoSystems' employees and MesoFuel' employees. This wall happens to be a preexisting wall.

Q. Now, with respect to the question that started this whole mess about MesoSystems' business records, you are the person --

MS. MANN. Hold on a second

(11:50 a.m. - Magistrate is on phone )

MS. MANN: We are here.

MAGISTRATE SCHNEIDER: What is going on?

MS MANN: This is Lisa Mann and I have with me -- we have a bunch of parties and witnesses here, but the lawyers involved are me, we have got Alberto Leon for Defendant MesoSystems, and we have also got Chris Bauman, who, as I understand it, is also representing MesoSystems here today. We are in a deposition of a nonparty. The deposition is of a gentleman named Ned Godshall who we established on the record already is president and CEO of a company called MesoFuel. MesoFuel is owned, in part, by MesoSystems. And I am trying to be pretty objective here.

Page 28

Mr. Godshall, as I understand it, I asked him this question, is not being represented by counsel at this deposition but there are, as you know, two lawyers sitting here, who are, as I understand it, representing MesoSystems. During the course of my questioning at this deposition, I asked Mr. Godshall what he had done to prepare for the deposition and we ended up discerning that there had been a meeting yesterday between himself, these two lawyers, the CEO for MesoSystems, which is a party, and the wife of the CEO of MesoSystems.

I asked what was discussed at that meeting. And Mr. Leon, who as I understand it, is not Mr. Godshall's lawyer, instructed Mr. Godshall not to answer the question on grounds of attorney-client privilege.

My contention is that they have made -- I asked on the record if they would stipulate that MesoSystems and MesoFuel are one in the same company and they refuse to so stipulate. So, my contention is there can be no attorney-client privilege operative here because this witness is a third party witness who has made it clear he is not and never has been employed by MesoSystems. And that any privilege that MesoSystems might have would have been breached by the presence in this discussion that I want to ask Mr. Godshall about, of Mr. Godshall himself, who is not employed by that company.

Page 29

So, that is the question we have before Your Honor is whether there is a privilege to be asserted here and whether Mr. Godshall, who I take it will follow the lawyer's directions not to answer the questions, because Mr. Leon assures me that he will not say anything, whether there is a privilege that operates to prevent me from finding out about this meeting that went on apparently for some hours yesterday.

MAGISTRATE SCHNEIDER: Let me hear from the other side.

MR. LEON: Your Honor, this is Alberto Leon. Forgive my voice. I have a cold right now.

MAGISTRATE SCHNEIDER: Half the town has it

MR. LEON: MesoSystems Technology has a substantial interest in Mr. Godshall's employer, which is MesoFuel. Ms. Mann never asked the witness whether we represented, No. 1, MesoSystems' interest in MesoFuel, but, most importantly, she hasn't inquired as to whether we represent MesoFuel which we do. Mr. Godshall was called here as a fact witness. However, he is the president and CEO of MesoFuel, who is also our clients.

All the discussion that took place yesterday took place in connection with our representation of both MesoSystems and MesoFuel. We do not have to stipulate that they are one in the same because they are not. They

Page 30

are completely separate entities It just so happens MesoSystems owns an interest in MesoFuels. However, everything that we discussed yesterday was privileged because Mr. Godshall was president and CEO of our client. MesoFuel.

MS. MANN: Then it would be my position that the discussions between a CEO of one company and a CEO of another are not made privileged by the presence of a lawyer that represents them both.

MR. LEON: I disagree with that, Your Honor. I believe they are They are -- they were meant to be kept confidential and we represent both companies and the companies are related, although they are not one in the same.

MAGISTRATE SCHNEIDER: What is the position of the wife of the MesoSystems CEO?

MS. MANN: She is not employed by either company, as I understand it.

MR. LEON: Just to clarify something that was not brought up because the questions weren't asked, Mrs Call was there at the meeting for a short period of time. She was not there for the whole meeting She was already deposed this morning and she answered every question that she knew with respect to her factual knowledge about this matter, but she was only there for a

Page 31

very brief period She was not there for the whole meeting so she was not privy to any privileged communications that took place regarding MesoFuel or MesoSystems.

MAGISTRATE SCHNEIDER: Well, off the top of my head, I have one little question in the back of my mind and that is the whole issue of sort of jointly represented, you know, Defendants or parties. And in this case, of course, one of these is not a party

MS MANN: Right.

MAGISTRATE SCHNEIDER: I am having trouble seeing, where there is no allegation that these two are, in fact, one in the same, because one of them is a wholly-owned subsidiary, it would seem to me that if they are both corporations, separate, distinct under the law, and not wholly-owned by the other, then it would seem to me that when they have a meeting, the fact they have the same attorney, doesn't give them both the attorney-client privilege for that particular meeting.

MS. MANN: That is my position.

MAGISTRATE SCHNEIDER: That is what I am going to rule. You can inquire into everything that was said.

MS. MANN: Thank you, Your Honor.

MAGISTRATE SCHNEIDER: Thank you all.

(Conversation with Magistrate Schneider

Page 32

concluded.)

Q. (By Ms. Mann) Why don't you tell me about that meeting yesterday.

A. What would you like to know?

Q. I would like to know everything that was said.

A. I don't think I can do that verbatim.

Q. Do your best.

A. Okay. I came in and I said hello. I'll try to get it in chronological order. I came in and said hello and Mr. Leon said hello back. We made introductions. Everybody introduced themselves.

Q. Let me stop you right there. Was there anybody at this meeting that you had not previously met?

A. No.

Q. Continue.

A. With what?

Q. With the rest of your recitation of what was said at that meeting.

A. Okay. Because I hadn't finished my first answer.

Q. Okay.

A. And then Mr. Leon told us about depositions, told us what to expect today.

Q. Okay. What did he tell you?

A. He told us there would be a court reporter

Page 33

sitting in the room, would be transcribing everything that was said. Told us that one or more attorneys would be asking each of us questions Specifically instructed us to be sure to answer every question factually, truthfully and as completely, to the best of our ability, as we could.

Q. Anything else about the deposition process that Mr. Leon told you about?

A. Not that I remember at this time, but, I am trying to summarize for you. I assume that for a two hour meeting, even if I could, you wouldn't want a transcription that would take two hours to recite, not that I could do that.

Q. I have all day.

A. Okay. Again, I have answered the best I can. I would be happy to answer anymore specific questions that you may have.

Q. Okay. So, you went through what the deposition is about?

A. Right.

Q. And then what did you discuss next?

A. At that point, I believe, Tina Call, Mrs. Call left. And then we discussed the order of the depositions this week. Let's see, what else? Give me a second. I am trying to remember what else we did talk about. We talked